**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TODD KORTEKAMP AS EXECUTOR OF THE ESTATE OF JACK KORTEKAMP AND GERALDINE KORTEKAMP AS SURVIVING SPOUSE, Plaintiffs, | ) | C.A. No. 08-043S |
| v. | ) | **EXPEDITED HEARING AND ORAL ARGUMENT REQUESTED** |
| 3M CO., et al., Defendants. | ) | |

## PLAINTIFFS' MOTION FOR REMAND

NOW COME PLAINTIFFS, by and through their counsel, and file this Motion for Remand. As grounds for this Motion, Plaintiffs respectfully state the following, and refer the Court to the Memorandum in Support of Plaintiffs' Motion for Remand, filed herewith:

1. Plaintiffs, **Jack and Geraldine Kortekamp**, filed this asbestos personal injury case in Providence Superior Court of the Rhode Island Trial Court on June 16, 2006. This case was filed against several defendants alleging that plaintiff, Jack Kortekamp, was exposed to asbestos through contact with asbestos-containing products. These exposures to asbestos were a proximate cause of his mesothelioma, a terminal, painful cancer with which Mr. Kortekamp was diagnosed on April 29, 2006.

2. Plaintiff, Jack Kortekamp, succumbed to his mesothelioma on August 17, 2006. The Order granting leave to add Todd Kortekamp as the Executor of the Estate of Jack Kortekamp and to Amend to add Wrongful Death and Survivor Claims was signed on May 14, 2007. The Amended Complaint reflecting same was filed on May 16, 2007.

3. Defendant General Electric (hereinafter "GE") was a named party defendant in the original and Amended Complaints. Counsel for GE filed an Entry of Appearance in this State Court case on July 25, 2006.

4. The State Court Complaint alleges negligence, strict liability, and breach of warranties claims against Defendants, based on their failure to warn of the health hazards associated with asbestos exposure. No claim arising under Federal Law is alleged in the Complaint. No federal question is raised and no federal issue needs to be decided to establish Defendants' liability under the causes of action in the Complaint.

5. Approximately two months before the Superior Court trial, GE removed this case to the United States District Court under 28 U.S.C. §1442(a)(1) (federal officer or agency removal), on or about January 31, 2008. GE bases removal upon the fact that Plaintiff was exposed to asbestos contained in Navy turbines (located at the Knolls Atomic Power Laboratory, owned and operated by GE, hereinafter "KAPL") that were manufactured by GE in accordance with military specifications. GE also asserts that removal is proper on the ground of derivative sovereign immunity.

6. Remand is proper because GE has failed to allege or establish each necessary element for federal officer removal. Specifically, GE has failed to show that its removal is timely, that it was acting under the direction of a specific federal officer, that there is a causal nexus between an explicit federal directive and decedent's asbestos-related injury, and that its alleged federal government contractor defense is colorable.

7. Although GE has removed based upon its marine turbines, Plaintiffs' claims are not limited to turbines.

8. GE's case for removal should be limited to the facts and evidence asserted in its Notice of Removal. Accordingly, GE should not be permitted to file a written response to Plaintiffs' Motion and offer additional facts and evidence to support removal and its allegations of federal subject matter jurisdiction. If GE files such a written response, the Plaintiffs request that it be stricken from the record. In the alternative, if GE is permitted to file a written response, the Plaintiffs reserve the right to respond in writing.

9. Alternatively, if the Court is not inclined to allow Plaintiffs' Motion to Remand, Plaintiffs respectfully request that the Court sever the Plaintiffs' claims against defendant GE, and remand Plaintiffs' remaining state law claims against all other Defendants back to Rhode Island State court for disposition. No other Defendant has joined GE in this removal.

10. In further support of this motion, Plaintiffs submit their Memorandum in Support of Plaintiffs' Motion to Remand, filed herewith.

WHEREFORE, Plaintiffs respectfully request this Honorable Court ALLOW their Motion for Remand. In the alternative, Plaintiffs respectfully ask that the Court SEVER Plaintiffs' claims against defendant GE and REMAND the remainder of Plaintiffs' state law claims against all other Defendants, along with such other and further relief as this Court deems appropriate.

PLAINTIFFS RESPECTFULLY REQUEST AN EXPEDITED HEARING AND ORAL ARGUMENT. Plaintiffs estimate the total time for oral argument to be one hour or less.

Dated: February 19, 2008
Providence, Rhode Island

Respectfully Submitted,
The Plaintiffs,

By: /s/ Mark T. Boivin

**John E. Deaton, Esq. (#6537)**
jdeaton@deatonlawfirm.com
**Mark T. Boivin, Esq. (#7515)**
mboivin@deatonlawfirm.com
**Mason J. Waring, Esq. (#7737)**
mwaring@deatonlawfirm.com
The Deaton Law Firm
One Richmond Square, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400 Tel.
(401) 351-6401 Fax

## CERTIFICATION OF SERVICE

I hereby certify that on this 19th day of February 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Mark T. Boivin
Mark T. Boivin

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TODD KORTEKAMP AS EXECUTOR OF THE ESTATE OF JACK KORTEKAMP AND GERALDINE KORTEKAMP AS SURVIVING SPOUSE, Plaintiffs, | ) | C.A. No. 08-043S |
| v. | ) | **EXPEDITED HEARING AND ORAL ARGUMENT REQUESTED** |
| 3M CO., et al., Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND**

## INTRODUCTION

General Electric (hereinafter "GE") filed its Notice of Removal in this case just over 2 months before the state court trial date and exactly 555 days from the date its counsel first entered its appearance in the matter. GE removed under the guise that it was acting as a federal officer pursuant to 28 U.S.C. §1442(a)(1) (federal officer or agency removal) when it negligently, and without warning, exposed the plaintiff Jack Kortekamp, to asbestos – significantly contributing to his development of malignant mesothelioma and causing premature death. GE based its removal upon the fact that Plaintiff was exposed to asbestos contained in marine turbines, located at the Knolls Atomic Power Laboratory (hereinafter "KAPL")[1], that were manufactured by GE pursuant to government contracts. GE also asserts that removal is proper on the grounds of derivative sovereign immunity. No other defendant has joined in the removal.

Because GE has failed to timely remove the case and has failed to establish its grounds for removing under the law, Federal jurisdiction is lacking, and this case should be remanded to state court.

[1] KAPL was designed, owned and operated by GE. GE considered KAPL to be a proprietary interest.

## TABLE OF CONTENTS


BACKGROUND ..... 3

SUMMARY OF THE ARGUMENT ..... 4

LAW AND ARGUMENT ..... 6

I. REQUIREMENTS FOR JURISDICTION UNDER 28 U.S.C. §1442(a)(1) ..... 6

II. THERE IS A STRONG FEDERAL PRESUMPTION AGAINST REMOVAL JURISDICTION ..... 7

III. REMOVAL IS UNTIMELY BECAUSE GE FILED ITS NOTICE OUTSIDE OF THE THIRTY-DAY WINDOW PERMITTED BY 28 U.S.C. § 1446(b) ..... 9

IV. GE'S AFFIDAVITS ARE INSUFFICIENT TO SUPPORT REMOVAL ..... 12

V. GE IS NEITHER A FEDERAL OFFICER NOR A PERSON ACTING UNDER A FEDERAL OFFICER ..... 16

VI. GE DOES NOT ASSERT A COLORABLE FEDERAL DEFENSE ..... 21

VII. GE CANNOT ESTABLISH A CAUSAL NEXUS BETWEEN ITS ACTIONS UNDER THE CONTROL OF A FEDERAL OFFICER AND THE PLAINTIFFS' CLAIMS ..... 27

VIII. DERIVATIVE SOVEREIGN IMMUNITY DOES NOT APPLY ..... 36

IX. ALTHOUGH GE HAS REMOVED BASED UPON ITS MARINE TURBINES, PLAINTIFFS' CLAIMS ARE NOT LIMITED TO TURBINES ..... 37

X. GE SHOULD NOT BE PERMITTED TO OFFER ADDITIONAL EVIDENCE TO CARRY ITS BURDEN UNDER § 1442(a)(1) ..... 37

XI. EQUITABLE CONSIDERATIONS REQUIRE REMAND ..... 38

XII. IF THE COURT ELECTS NOT TO REMAND THE ENTIRE CASE, PLAINTIFFS REQUEST THAT THE COURT SEVER AND REMAND THE REMAINING DEFENDANTS ..... 39

CONCLUSION ..... 40

**BACKGROUND**

This case was originally filed in Rhode Island Superior Court on June 16, 2006. GE was a party defendant in the original complaint. GE was served and its counsel, Jeffrey M. Thomen, filed an Entry of Appearance on July 25, 2006. In the state court Complaint, Plaintiffs' allege negligence, strict liability and breach of warranties claims against the Defendants based upon their failure to warn of the health hazards associated with asbestos exposure. No claim arising under Federal law is alleged in the Complaint. No federal question is raised and no federal issue must be decided to establish Defendants' liability under the causes of action set forth in the Plaintiffs' Complaint.

Since 1990, all Rhode Island asbestos cases have been filed in the State Superior Court. The last asbestos verdict in Rhode Island State Court was in 1986. Since that time, neither a jury has been impaneled in an asbestos law suit nor any evidence presented at trial. Rhode Island Superior Court is regarded as a most efficient and fair asbestos forum.

During the last decade alone, GE has been a named defendant (and an active litigant) in numerous asbestos lawsuits filed in Rhode Island Superior Court. The majority of these cases involved asbestos exposure related to marine turbines and other equipment (i.e. generators, pumps, electrical boards etc...) manufactured by GE and supplied to the United States Navy. Despite these facts, this is the first time that GE has removed a Rhode Island State Court asbestos case based on federal officer removal.

Why is GE removing this case after years of actively litigating numerous similar cases in Rhode Island State Court? The policy behind federal officer removal is clear – to protect federal officers and those acting under the color of a federal officer from potential state court bias and parochialism. If GE were experiencing bias and parochialism in Rhode Island State Court why

didn't it remove an earlier case? The answer is clear. GE has removed this case in order to have it transferred to the MDL 875 (often referred to as the "Big Black Hole"). This is evidenced by GE's filing of its Notice of Tag-Along Action in the United States District Court for the Eastern District of Pennsylvania on February 8, 2008. Transfer to the MDL will surely lead to substantial delay of this case. *See Hilbert v. McDonnell Douglas Corp.*, 2008 WL 53266 *1 (D.Mass.)(attached as Exhibit A)(remanding the case before it, the court acknowledged that transfer to the MDL would lead to substantial delay).

## SUMMARY OF THE ARGUMENT

GE's removal of this case was untimely. GE alleges that the first removable issue arose at a January 4, 2008 deposition when a shipmate testified that Mr. Kortekamp trained at KAPL. GE neglected to inform this Court that Plaintiffs' Answers to Interrogatories filed November 20, 2006, listed among his asbestos exposures in the Navy – turbines, reactors and pumps. Those Interrogatory answers also specifically identify the U.S.S. Skate (SSN 578) as the submarine upon which Mr. Kortekamp served while in the Navy. GE manufactured pumps that were installed on this ship. This case should be remanded because GE failed to remove for well over one year after it had clear and unambiguous information that Mr. Kortekamp was a Navy machinist mate and engine room operator who was exposed to turbines, reactors and pumps in the Navy.

GE has also has failed to carry its burdens to establish grounds for removal under §1442(a)(1). In its Notice of Removal, GE asserts, in general terms that:

> GE manufactured and designed the marine steam turbines according to precise and detailed specifications promulgated by Navy Sea Systems Command.

*See Notice of Removal* at ¶ 11. GE is not a federal officer. GE's notice does not specifically allege that any government officer expressly specified the use of asbestos as a component of the marine turbines on which Mr. Kortekamp worked. It does not identify any discretionary decision by a federal officer which caused the decedent to be exposed to asbestos. GE has not provided copies of any government contracts, turbine or reactor specifications, or like information in support of its removal.

The only alleged support for GE's claims is in the form of general affidavits. The statements in the affidavits are not based on the personal knowledge of the facts of this case. Neither affiant states they were ever at the KAPL facility. The Hobson affidavit is dated October 17, 2003. In it, Mr. Hobson does not identify the federal officer who was supposedly giving GE detailed directions. The Lehman affidavit is dated October 4, 2004 and also contains no information relevant to the facts of this case. In its Notice of Removal, GE relies only upon very general recitals concerning federal control and attempts to use irrelevant hearsay evidence that clearly violates the best evidence rule to support its assertions. Because these insufficient affidavits are the only evidence presented by GE in support of removal, remand should be granted.

In support of their Motion to Remand, Plaintiffs have provided the affidavit of John P. Shannon, a GE engineer who personally worked at KAPL for over 30 years (beginning in 1959) and whose job responsibilities included Industrial Safety and Industrial Hygiene. Mr. Shannon was responsible for asbestos exposure safety issues. Mr. Shannon's sworn statements establish that it was GE (not the Navy) that made the decisions to use asbestos and <u>not to warn</u> of the asbestos hazards created by GE's products at KAPL.

This case must be remanded because GE has failed to meet its burden to establish the required elements of federal officer jurisdiction. It has failed to allege and show that it was acting under the express direction of a specific federal officer in using asbestos-containing materials in the turbines. It has failed to show it has a colorable defense to plaintiffs' claims. Moreover, it cannot show a causal nexus between the directive of a federal officer and the Plaintiffs' claims. This is supported by the plethora of case law holding that §1442 removal jurisdiction does not apply in asbestos cases where Plaintiffs' claims are based on failure to warn, rather than on defective design. In addition to the fact that GE has not carried its burden, Mr. Shannon's testimony that GE made the decision to use asbestos and not to warn of its dangers strongly supports remand.

GE also cannot rely upon derivative sovereign immunity because that doctrine has no application in this case. Finally, even if this court concludes that GE has met its burdens with respect to removal under §1442(a)(1), this Court should decline to maintain jurisdiction over the entire controversy, sever the claims against GE and remand as to the other Defendants, none of which have joined the removal.

## LAW AND ARGUMENT

### I. REQUIREMENTS FOR JURISDICTION UNDER 28 U.S.C. §1442(a)(1)

The Supreme Court of the United States has stated that §1442(a) is "a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant. Section 1442(a), therefore, cannot independently support Art. III 'arising under' jurisdiction." *Mesa v. California*, 489 U.S. 121, 136 (1989).

For this Court to have subject matter jurisdiction over this action pursuant to §1442(a)(1) (often referred to as "federal officer removal"), GE has the burden to establish the following:

(1) the removing defendant must be a federal officer or a 'person' acting under a federal officer;

(2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiffs' claims; and

(3) the removing defendant asserts a colorable federal defense.

*Id.* at 129.

In this case, GE has not met its burden because it is not a federal officer, it has provided no evidence that it was acting under the direction of an officer of the United States when it used asbestos components and failed to warn of the consequent dangers, it has provided no evidence of a colorable federal defense, and finally, it has not provided evidence that a causal nexus exists between its actions and the Plaintiffs' claims.

## II. THERE IS A STRONG FEDERAL PRESUMPTION AGAINST REMOVAL JURISDICTION

Removal under §1442 is "an exceptional procedure which wrests from state courts the power to try [cases under] their own laws. Thus the requirements of the showing necessary for removal are strict." *Screws v. United States*, 325 U.S. 91, 111-112 (1945). When a case is removed to federal court, there is a "strong presumption" against federal court removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant, who was the removing party, bears the burden of proving the propriety of removal, including jurisdiction. *Id.* at 566-67; *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Courts "strictly construe the removal statute against removal jurisdiction." *Gaus*, 980 F.2d at 566; *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). Federal jurisdiction "must be rejected if there is <u>any doubt</u> as to the right of removal in the first instance." *Duncan*, 76 F.3d at 1485 (emphasis added). In

determining whether to remand a removed civil action due to lack of subject matter jurisdiction, "any doubt should be resolved in favor of remand." *St. Francis Hospital and Medical Center v. Blue Cross & Blue Shield of Connecticut, Inc.*, 776 F.Supp. 659, 661 (D. Conn. 1991); 28 U.S.C. §§1441(a), 1447(c); *see also Ryan v. Dow Chemical Co.*, 781 F.Supp. 934 (E.D.N.Y. 1992).

The purpose of §1442 is to prevent state courts from interfering with the implementation of federal law. *Freiberg v. Swinerton & Walberg Prop. Servs, Inc.*, 245 F.Supp.2d 1144, 1150 (D.Colo. 2002). "Because it is premised on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking the benefit from its provisions bear a special burden of establishing the official nature of their activities." *Id.* Thus, a private company such as GE faces an even tougher standard for removal than would a government employee or entity. "[T]he government contract defense by a corporation raises straightforward common law issues that state courts are as adept as handling as the federal judiciary." *Good v. Armstrong World Industries, Inc.* 914 F.Supp. 1125, 1130 (E.D. Pa. 1996).

The rationale behind a strict interpretation of §1442(a)(1) removal was explained in *Good*:

> The Supreme Court fashioned the government contract defense to displace state law because there exists a unique federal interest in civil liability arising out of the performance of federal procurement contracts. [citation omitted] I question whether that federal interest exists in this case. The impact of this personal injury action on the federal interest in protecting future defense procurement – the fundamental point of the government contract defense – is speculative. It is common knowledge that asbestos is no longer used in the design and manufacture of equipment, so that this lawsuit cannot interfere with a federal program involving products that contain asbestos. Therefore, the adjudication of this personal injury action in state court does not threaten the enforcement of a federal policy sufficient to warrant removal.
>
> Even assuming that the federal interest underlying the government contractor defense is present, simply noting the presence of a federal interest does not

> provide a sufficient or necessary basis to allow removal. . .When enacting the federal officer removal statute, Congress sought to distinguish lawsuits on the basis of their susceptibility to state court manipulation. The government contractor defense is not subject to such manipulation. Unlike a federal officer's defense of immunity, the government contract defense by a corporation raises straightforward common law issues that state courts are as adept at handling as the federal judiciary.

*Good*, 914 F.Supp. at 1131. The fact that GE has been an active asbestos litigant in Rhode Island State Court since 1990, without removing under §1442, further supports the fact that Rhode Island State Courts have repeatedly and adeptly handled the issues of law and fact presented in this case.

## III. REMOVAL IS UNTIMELY BECAUSE GE FILED ITS NOTICE OUTSIDE OF THE THIRTY-DAY WINDOW PERMITTED BY 28 U.S.C. § 1446(b)

GE filed its Notice of Removal in this case just over 2 months before the state court trial date and exactly 555 days from the date its counsel first entered its appearance in the matter. Nevertheless, GE asserts that its removal is timely because the deposition taken on January 4, 2008 of Fred Stafford was the "first indication of specific GE equipment." *See Notice of Removal* at ¶ 6. GE's assertion is without merit and remand should be granted because both the Complaint and Plaintiffs' Answers to Interrogatories provided sufficient notice of a removable issue.

### a. The Complaint Provided Notice Of A Removable Issue

Section 1446(b) allows a defendant 30 days after receipt of the initial pleading to seek removal. "The question is not whether the initial pleading discloses the potential for removal but whether it discloses that the case is not removable." *Knudsen v. Samuels,* 715 F. Supp. 1505, 1507 (D. Kan. 1989). The burden is on the removing defendant "to show that the case stated in the initial pleading was not removable then." *Richman v. Zimmer, Inc*., 644 F. Supp. 540, 541 (S.D. Fla. 1986). The above cases hold that, unless the initial Complaint forecloses removal, the

defendant has a duty to investigate and, if appropriate, remove the case within 30 days of receiving the initial Complaint. GE did not investigate the allegations and failed to timely remove within 30 days of the initial Complaint.

Plaintiffs' Complaint in this matter clearly sets forth that Jack Kortekamp was exposed to asbestos while in the U.S. Navy as a boiler engineer. *See Complaint* at ¶ 4 (attached as Exhibit B). Certainly, GE could not foreclose the possibility of removal after a reading of the allegations of the Complaint. As demonstrated by the repeatedly used Affidavits submitted with the Notice of Removal, GE has been fully aware of its longstanding relationship with the U.S. Navy for years and with the alleged basis for removal it claims arises from that relationship. Given this knowledge, GE could not have precluded removal based on the face of the Complaint. Moreover, while Plaintiffs believe that GE had sufficient notice to start the clock for removal when it received the Complaint, the Complaint itself does not need to form the basis for removal.

**b. <u>Notwithstanding the Sufficient Notice In The Complaint, Plaintiff's Answers To Interrogatories Provided Sufficient Notice</u>**

Even if grounds for removal are not apparent from the initial pleading, the 30 day time period in which to remove begins on the date the defendant receives "other paper" specifically indicating the nature of the claims and the potential for removal. 28 U.S.C. §1446(b). "Other paper" has been defined to mean "documents generated within the state court litigation." *Zbranek v. Hofheinz*, 727 F.Supp. 324, 326 (E.D. Tex. 1989).

On August 2, 2006, days after obtaining service on GE, Plaintiffs filed Answers to Interrogatories and Requests for Production in the state court case. GE admits receiving these "other papers" in its Notice of Removal, but contends that they did not provide sufficient detail as to inform GE that this case is removable. GE's claim is factually and legally incorrect. Even

a "clue" that the case was removable is enough to start the clock running on removal. *Richman*, 644 F. Supp. at 542.

Plaintiffs' Answers to Interrogatories filed in 2006 included an Exposure Chart which set forth the dates and locations of Jack Kortekamp's asbestos exposures. *See Exposure Chart* at p.4 (attached as Exhibit C). The Exposure Chart set forth in detail:

(a) the dates of Mr. Kortekamp's Navy service;

(b) the places of service, including the ship he served on – the USS Skate – and its Hull Number or Naval Ship designation number (SSN 578);

(c) Mr. Kortekamp's specific jobs in the Navy - Engine Room Operator and Machinist Mate 1st Class; and,

(d) the specific products which Plaintiffs' alleged exposed Mr. Kortekamp to asbestos in the Navy - "Pumps, compressors, turbines, reactors [etc.]."

GE was fully aware of the fact that it manufactured the pumps on the USS Skate. *See Department of Navy records* (attached as Exhibits D, E and F, which clearly reference GE pumps built for SSN 578). GE brazenly ignores this fact, and instead asserts that it was not until much later testimony regarding a different product (marine steam turbines) that if first had any clue that the allegations against it related to machinery used by the Navy. GE knew that it supplied the pumps to Mr. Kortekamp's submarine. GE cannot deny knowledge of its contract with the U.S. Navy to supply pumps, or its actions.

"Failure to comply with the thirty day limitation to file a petition for removal is an absolute bar regardless of whether the removal would have been proper if timely filed." *Sanborn Plastics, Corp. v. St. Paul Fire and Marine Insurance Co.*, 753 F. Supp. 660, 664 (N.D. Ohio 1990) (emphasis added); *See also Marler v. Amoco Oil Co.*, 793 F. Supp. 656 (E.D. N.C. 1992)

("30-day time limit…must be strictly applied"); *Stack v. Strang*, 191 F. 2d 106 (2nd Cir. 1951) (time limit applies to federal officer removal). Here, it is undisputed that GE did not file its Notice of Removal until January 31, 2008. At the very latest, GE had specific and detailed information to inform it that this case was removable on August 2, 2006, when it received Plaintiffs' Discovery Responses. Because GE failed to remove the case thirty days from the time it had such information, this case should be remanded in its entirety so that it may proceed to trial in Rhode Island State Superior Court.

## IV. GE'S AFFIDAVITS ARE INSUFFICIENT TO SUPPORT REMOVAL

GE has relied entirely upon two affidavits. Both affidavits are insufficient to support removal. The Plaintiffs have provided an affidavit of a former GE employee with personal knowledge of all relevant aspects of KAPL including contracts, policies and procedures of warnings (or lack thereof) regarding asbestos at KAPL.

### a. GE's Affidavits – Lehman and Hobson

GE's first affidavit is from Ben J. Lehman, a retired Rear Admiral of the U.S. Navy. The Lehman affidavit is dated October 4, 2004. Mr. Lehman has no personal knowledge of the equipment, activities, specifications or procedures at KAPL. Most importantly, the Lehman affidavit makes no mention of the actual contracts and relationship between GE and the Navy regarding KAPL. Nowhere in Mr. Lehman's affidavit does he even mention KAPL.

Mr. Lehman describes the content of written specifications, technical and engineering drawings, operating manuals, safety or hazard information and any other written information that generally accompanied a piece of equipment. *See Lehman Affidavit* ¶ 4 and ¶ 5. These statements amount to nothing more than hearsay. The most reliable evidence to determine the content of the contracts and specifications between GE and the Navy regarding KAPL are the

documents themselves. For this reason, paragraphs 4 and 5 should be stricken by the Court. Additionally, these paragraphs should be stricken because GE has attempted to use Mr. Lehman's affidavit to establish the content of the written documents without producing the actual documents. The "Best Evidence Rule" requires the original document to prove "content of a writing, recording, or photograph." *See* Fed. R. Evid. 1002. Cleary, the best evidence to determine the content of the contracts and specifications between GE and the Navy regarding KAPL, are the documents themselves.

Similar problems exist with the affidavit of David Hobson. The Hobson affidavit is dated October 17, 2003. Mr. Hobson has no personal knowledge of the equipment, activities, specifications or procedures at KAPL. All of Mr. Hobson's statements related to policies and procedures are regarding Navy vessels, not KAPL. Mr. Hobson does not even identify the federal officer who was supposedly giving GE detailed directions. Ultimately, the Hobson affidavit contains no information relevant to the facts of this case. Again, the most reliable evidence of contracts and specifications regarding KAPL would be found in the documents themselves. GE has neither produced these documents nor any other evidence supporting removal.

**b. <u>Plaintiff's Affidavit – Shannon</u>**

In support of their Motion to Remand, Plaintiffs have provided an affidavit of John P. Shannon. *See Shannon Affidavit* (attached as Exhibit G). Mr. Shannon was a GE engineer who (unlike Lehman and Hobson) personally worked at KAPL for over 30 years (beginning in 1959) and whose job responsibilities[2] included Industrial Safety and Industrial Hygiene "in order to bring these safety functions [of the non-nuclear reactor program including turbines] up to the

[2] GE appointed Mr. Shannon as KAPL's Laboratories Engineer in charge of non-nuclear reactor safety. *See Shannon Affidavit* at ¶ 3.

same high level of safety as the Nuclear Safety Program." *Id.* at ¶ 3. This position included addressing asbestos exposure safety issues. *Id.* Mr. Shannon stated that "[i]n the more than 30 years that I spent at KAPL, I do not recall ever meeting or coming across either Admiral Lehman or Mr. Hobson." *Id.* at ¶ 7.

The KAPL facility was designed, constructed and operated by GE. *Id.* at ¶ 4. It was at KAPL that GE designed, built and operated nuclear reactors for the Navy Reactors program. *Id.* GE also, designed, built and operated a training facility for the purpose of training Navy personnel. *Id.* The training facility at KAPL was also referred to as the Kesselring site (hereinafter "KSO"). *See id.* at ¶ 4; *see also "Adventure To The Unknown"* (attached as Exhibit H) (a GE publication discussing KAPL).

Mr. Shannon personally "participated in the work at KAPL in designing the mock-ups upon which the Navy personnel would train...and in the design of reactors for the Navy. The relationship between GE and the Navy in connection with these two activities was the same." *Id.* at ¶ 5. Based upon his personal knowledge of the relationship between GE and the Navy at KAPL, Mr. Shannon stated the following:

> Specifically, the Navy would inform GE of the performance specification it desired for a reactor and propulsion system. GE would then design and construct the system to meet the performance specifications of the Navy. GE was responsible for and performed the technical design of the systems. GE was also responsible for providing instructions regarding the operation of the systems and safety information.

*Id.* (emphasis added). Furthermore, when designing reactors and mock-ups for the Navy at KAPL, "GE was responsible for conducting its work in a safe manner. GE was also responsible for designing and building safe systems." *Id.* at ¶ 6.

Based upon his personal knowledge, accumulated from over 30 years of work at KAPL, Mr. Shannon has stated unequivocally, "that the suggestion by GE that the Navy prohibited it

from *warning* about the hazards of asbestos *at KAPL* is false." *Id.* at ¶ 7 (emphasis original). Significantly, Mr. Shannon is unaware that GE ever requested permission from the Navy to warn about the hazards of asbestos at KAPL. *Id.* at ¶ 6. Nor is he aware that GE was ever refused permission by the Navy to take any action that would have increased safety precautions to persons working at KAPL. *Id.* In his position in charge of non-nuclear reactor safety, Mr. Shannon was undoubtedly aware of any interaction between GE and the Navy regarding safety and warnings.

Mr. Shannon's efforts to "[evaluate and warn] about the hazards of asbestos at KAPL…were continually frustrated by GE's KAPL management." *Id.* He specifically recalls requesting a meeting to be held in the Office of Safety Manager, Donald Martin (another GE employee), to discuss what should be done about the "asbestos nightmare at the KSO." *Id.* at ¶ 7 (emphasis added). In this meeting, the manger who would have been in charge of the asbestos remediation, Mr. Brown (also a GE employee), asked Mr. Shannon whether he "really thought" the Navy would provide funds for such a clean-up. Mr. Shannon responded that he was not sure, but recommended that GE make a formal request so that GE would not be responsible for not even requesting the money. *See id.* Mr. Brown then walked out of the room and Mr. Martin terminated the meeting.

Neither the Lehman nor Hobson affidavits establish that the Navy specified the use of asbestos at KAPL, set policies or procedures regarding warning of the hazards of asbestos at KAPL or that the Navy prohibited warning about asbestos altogether at KAPL. Furthermore, neither Lehman nor Hobson claim that GE ever tried to warn the Navy about the hazards of asbestos at KAPL. Because GE has relied upon such deficient affidavits to establish the requisite elements of removal, GE has not carried its burden and this case should be remanded.

Notwithstanding the fact that this case should be remanded on GE's failure to carry its burden, the Plaintiffs have provided the affidavit of Mr. Shannon whose sworn statements from personal knowledge stemming from his extensive experience at KAPL establish that the decision not to warn was a discretionary act by GE and not a government officer.

## V. GE IS NEITHER A FEDERAL OFFICER NOR A PERSON ACTING UNDER A FEDERAL OFFICER

GE is clearly not a federal officer. Nor has GE demonstrated that it was acting at the direction of an officer of the United States when it used or specified the use of asbestos in its turbines at KAPL and chose not to warn about the dangers of asbestos exposure at KAPL. *See* pp.21-27 *infra* establishing that GE has failed to show a colorable federal defense and pp.27-36 *infra* establishing that GE has not shown that the acts causing decedent's injury were undertaken pursuant to a specific federal directive (causal nexus). Establishing this element requires more than merely alleging that the acts in question were generally carried-out under federal auspices. *See Ryan*, 781 F.Supp. at 947 ("a person or corporation establishing only that the relevant acts occurred under the general auspices of a federal office or officer is not entitled to section 1442(a)(1) removal"); *see also Good*, 914 F.Supp. at 1129 ("if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to §(a)(1) removal"); *Arness v. Boeing North America, Inc.*, 997 F.Supp. 1268, 1273 (C.D. Ca. 1998). Rather, "removal must be predicated upon a showing that the acts that form the basis for the state [civil suit] were performed pursuant to [a federal] officer's direct orders or to comprehensive and detailed regulations." *Ryan*, 781 F.Supp. at 947; *see also Good*, 914 F.Supp. at 1129 ("removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations").

A civilian person or company acts under color of federal law only when its action "may be fairly treated as that of the [government] itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974). The fact that a corporation is performing under government contracts whose specifications it must meet does not automatically transform that corporation's conduct into government action. "Many private corporations[']...business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1942).

GE's notice of removal in this case is clearly insufficient. It does not allege (much less establish) that any federal officer expressly required it to use asbestos-containing gaskets, packing, insulation or any other component in manufacturing Navy turbines. *See Good*, 914 F.Supp. at 1129 ("[defendant] must set forth evidence showing that it did, in fact, act under a federal officer, a burden that [defendant] has not satisfied"). It does not identify any contract, agreements, regulations or specifications requiring that asbestos be used. It merely makes the unsupported allegation that its marine turbines were built under the direction of several government entities. This is not sufficient to meet the first prong of the *Mesa* test.

**a. <u>The Government Did Not Specify Asbestos Component</u>**

In order to demonstrate "acting under," the defendant is required to show that the government specifications specifically required the use of asbestos itself, rather than merely specifying a performance specification that would require the use of asbestos. *Green v. A.W. Chesterton, et al.*, 366 F.Supp.2d 149, 157 (D.ME 2005). This distinction is important. A performance specification may require that turbines have a certain size, dimension, pressure,

power output, and the like. This is entirely different than a specification that says that asbestos must be used as an ingredient. Even if a manufacturer concludes that a performance specification could only be met by the use of an asbestos-containing blanket of insulation, it does not satisfy the requirement. The government officer must have specified that asbestos be used. *Id.*

In *Green*, the plaintiff filed a suit alleging state law claims stemming from the death of her husband from asbestos exposure. One of the defendants, Viacom (formerly Westinghouse), removed the case to federal court on the basis of the government contractor defense, claiming that the asbestos-containing turbines to which the plaintiff's decedent were exposed were constructed and supplied to the United States Navy in accordance with United States Government regulations and specifications (much like the allegations here). *Green*, 366 F.Supp. at 152. Judge Kravchuk, for the United States District Court for the District of Maine, held that Viacom failed to meet its burden of proving that it was "acting under" a federal officer or agency when it incorporated asbestos into its products. *Id.* at 157. Viacom provided two affidavits in order to attempt to prove the high degree of control the Navy exercised over the construction of all military vessels. Judge Kravchuk, in reviewing the affidavits, determined that although the affidavits conveyed the "...high degree of control and oversight that the US Navy exercises over the construction and maintenance of all military vessels," the documents were not enough to meet the burden of "acting under" since they did not show conclusively that the Navy specified the use of asbestos in the turbines. *Id.* Similarly, in *Good* (a case involving exposure from turbine generators on Naval vessels), the court remanded the case because the defendant had failed to "prove that it constructed the [item in question] according to the direct and detailed

control of an officer of the United States, rather than at the general direction of an agency or other governmental department." 914 F.Supp. at 1129. As the *Good* court explained:

> Acting under the direction of the Navy...is not the same as acting under the direct and detailed control of the federal officer...[¶] Westinghouse's poor showing of the causal connection between the allegations of plaintiffs and the conduct taken under direction of a federal officer is also evidence by its failure to set forth the substance of the regulations and specifications. The complaint alleges personal injury based upon exposure to asbestos. Neither the notice nor the affidavit establishes that the Secretary of the Navy specified the use of asbestos in the design and manufacture of the turbine generators.

*Id.* at 1129-1130.

The present case is factually indistinguishable from *Green* and *Good.* GE has submitted no evidence to support its contention that it designed the turbines at issue "according to precise and detailed specifications promulgated by Navy Sea Systems Command." *See Notice of Removal* at ¶ 11. The two affidavits attached to GE's Notice do not prove GE's contentions, are complete hearsay and are from individuals who have (or had) no involvement in the particular facts of this case. Plaintiffs, on the other hand, have provided the affidavit of Mr. Shannon in which he states that the Navy provided GE with <u>performance specifications</u>. *See Shannon Affidavit* at ¶ 5. GE was responsible for meeting these performance specifications and "providing instructions regarding the operation of the systems and safety information." *Id.* Remarkably, and very telling, is the fact that nowhere in its Notice of Removal does GE allege that the Government specified that GE use asbestos in the turbines at issue.

**b. <u>The Products At Issue Were Not Specifically Designed For The Navy</u>**

Even if some federal agency did require GE to incorporate asbestos-containing components into its turbines, the components themselves were nothing more than standard, stock equipment (insulation, packing and gaskets). *See Boyle v. United Tech. Corp.*, 487 U.S. 500, 509 (1988) (government contractor defense does not apply to injury caused by "stock" item or

"standard equipment"); *see also In Re Related Asbestos Cases*, 453 F.Supp. 1142, 1151-1152 (N.D. Cal. 1982) (government contractor defense may not be applicable if defendants merely supplied Navy with same products supplied for non-military use and had not specifically manufactured asbestos products pursuant to government specifications); *In Re: Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812 (9th Cir. 1992) (government contractor defense not applicable when the product is a stock item that was not "manufactured with the special needs of the military in mind"). The mere selection of such standard components by the government does not provide the supplier or contractor with a basis for removal. These products were general items that were used on industrial, commercial, non-military marine turbines, as well as military aircraft. They were not specially designed or manufactured for a military use or purpose. The mere selection of such stock components by the government does not cloak the supplier or contractor with immunity from suit. As the Court explained in *Boyle*:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary.

487 U.S. at 509.

The asbestos materials that caused decedent's injury would have been the same standard asbestos products available in the private sector market. They were made of the same materials from which commercial, industrial or other non-military turbine insulation, packings or gaskets were made. There was nothing special or unique about them. By supplying the government with turbines that contained or required the use of asbestos-containing components as were being used in non-military turbines, GE was not acting at the direction of an officer of the United States. Because GE has failed this prong of the *Mesa* test, remand should be granted.

## VI. GE DOES NOT ASSERT A COLORABLE FEDERAL DEFENSE

The *Mesa* test requires the defendant to assert a colorable federal defense. In order for GE to carry its burden, GE "must do more than simply plead a federal defense. Rather, [it] must plead a *colorable* federal defense." *Faulk v. Owens-Corning Fiberglass, Corp.*, 48 F.Supp.2d 643, 664 (emphasis original). It is not enough for the Defendant to allege that it has a colorable defense because it supplied products to the military. If this were the case, then every lawsuit involving asbestos exposure from U.S. Navy ships would be in federal court. This case should be remanded because GE has not provided sufficient evidence to establish a federal defense in this failure to warn case.

### a. GE Has Raised The Government Contractor Defense

The government contractor defense was outlined in *Boyle*. The defense shields government contractors from liability for design defects when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. The third element of the government contractor defense requires the defendant to show either that it warned the government as to the risks involved, or that the government already knew. *Faulk*, 48 F.Supp. at 666.

Federal contractors do not enjoy any type of automatic immunity. *See Lamb v. Martin Marietta Energy Systems, Inc.*, 835 F.Supp. 959, 962-62 (W.D. Ky. 1993) (*citing United States v. Boyd*, 378 U.S. 39, 44, 84, S.Ct. 1518, 1522 (1964)). There is an important distinction between a federal defense and a federal basis for removal. A federal defense does not necessarily rise to the level where it confers federal subject matter jurisdiction – often it is simply a defense used to

counter a plaintiff's claims brought in state court. This defense is a federal basis for removal, only in specific situations, which the defendant must establish. This is so even where the federal government purchases the equipment in question. *See Lamb*, 835 F.Supp. at 966-67.

The typical case involving the government contractor defense is where the "government specifies in its contracts how to design a product, and in so doing, makes a tradeoff between effectiveness and safety. *Hilbert v. McDonnell Douglas Corp.* 2008 WL 53266, *7 (D.Mass.) *citing Boyle,* 487 U.S. at 511. Imposing state law liability on a contractor for following the federal government's precise design specifications would create an impermissible conflict between state law and federal policy. Thus, state law that ordinarily holds contractors liable for design defects will be displaced only when such defects are "derived from 'reasonably precise specifications' in government contracts". *Hilbert*, 2008 WL 53266, *7 (internal citation omitted).

### b. The *Boyle* Government Contractor Defense Does Not Apply In An Asbestos Failure To Warn Case

*Boyle* was a design defect case. In contrast, the case at hand involves claims of negligence, strict liability and breach of warranty that are based upon the Defendants' failure to warn about the health hazards associated with exposure to asbestos in their products.[3] Several Courts have rejected the military contractor defense in asbestos cases or found that the defense does not apply. *See In re Joint Eastern and Southern District Asbestos Litigation (1)*, 715

[3] Plaintiffs' negligence claims are related to Defendants' failure to warn Mr. Kortekamp of the dangers of handling asbestos without proper protection. Plaintiffs' strict liability claims are based upon defects which are the result of inadequate labeling or instructions warning Mr. Kortekamp. Defendants' failure to warn of their products dangers gives rise to Plaintiffs' claims for breach of warranty. Both the Defendants' duty to warn and the Plaintiffs' burden of proof as to the adequacy of the warning are very similar under all three theories. Finally, Mrs. Kortekamp's wrongful death and loss of consortium claims are based on the same theories as her husband's claims. If there is any doubt as to the meaning of Plaintiffs' allegations, Plaintiffs' attorneys hereby state under Rule 11 that they are only proceeding against GE on a failure to warn theory of liability and not on a theory of defective design. Thus, Plaintiffs' claims against GE are specifically limited to failure to warn of the health hazards associated with asbestos exposure, as opposed to defective design of the products in question.

F.Supp. 1167, 1169 (E.D.N.Y. 1988) (Court rejected military contractor defense holding that federal specifications were silent on the matter of warnings and defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications); *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036 (5th Cir. (Tex.) 1984), *reh'g denied* 744 F.2d 94, *cert. denied* 470 U.S. 1051; *Nobriga v. Raybestos-Manhattan, Inc.*, 683 P.2d 389 (Hawaii 1984); *In re New York City Asbestos Litigation*, 542 N.Y.S.2d 118 (1989); *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626 (2nd Cir. (N.Y.) 1990); *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 715 F.Supp. 1167 (E.D.N.Y. 1988); *Faulk v. Owens-Corning fiberglass Corp.*, 48 F.Supp.2d 653 (E.D.Tex. 1999) (applying federal law); *Good v. Armstrong World Indus.*, 914 F.Supp. 1125 (E.D. Pa. 1996); *See also* pp.30-36 *infra* (discussing asbestos and non-asbestos case precedent holding that the government contractor defense does not apply in failure to warn cases).

In granting plaintiff's Motion to Remand in *Hilbert* (a failure to warn case), the United States District Court for the District of Massachusetts noted that "a defendant may not defeat a failure-to-warn claim simply by showing the elements of the *Boyle* defense to a design-defect claim." 2008 WL 53266, *7 (D.Mass.); *citing Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003 (7th Cir.1996); *Tate v. Boeing Helicopters,* 55 F.3d 1150, 1157 (6th Cir.1995); *In re Joint Eastern and Southern Dist. New York Asbestos Litig. (In re N.Y. Asbestos),* 897 F.2d 626, 632 (2d Cir.1990). The *Hilbert* Court adopted the following adaptation of the *Boyle* test:

> when state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government;[4] (3) the contractor warned the government

[4] There are three general categories in which to classify government specifications of warnings: (1) The government may dictate the precise content of the warnings or forbid them altogether; (2) the government and contractor might engage in a back-and-forth as to the content of the warnings; or, (3) there might be extrinsic evidence that the

> about dangers in the equipment's use that were known to the contractor but not to the government.

*Hilbert*, WL 53266, *7-8. When the government is silent on whether the contractor was permitted to warn, the inquiry becomes a general analysis of whether a federal policy is harmed by holding "defendants to their state law duties to warn. If no federal policy is infringed and the contractor had discretion over whether to warn, then the affirmative federal contractor defense must fail." *Hilbert*, 2008 WL 53266, *9; *citing Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1488-90 (11th Cir.1990); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.Supp.2d 1144, 1155 (D.Colo.2002); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 327 F.Supp.2d 554, 563 (D.Md.2004) (holding that contractor defense was not available where defendants could not show that the "FCC restricted or prohibited them from providing additional safeguards or information").

**c. Application Of The *Hilbert* Analysis In The Case At Hand**

GE has provided no evidence that the government exercised its discretion and approved certain warnings regarding asbestos in turbines at KAPL. Rather, GE has only made the general assertion that it manufactured marine steam turbines according to precise and detailed specifications promulgated by Navy Sea Systems Command. *See Notice of Removal* at ¶ 11. This statement by GE, if supported by evidence, might be enough to establish the element in a design defect case, but not in a failure to warn case. GE has provided no mention of warnings about asbestos in marine turbines at KAPL. The Navy contracted with GE to design and manufacture systems to meet performance specifications, but GE performed the technical design of the systems and was responsible for providing instructions regarding the operation of the

government exercised independent judgment in approving a particular warning. *See Hilbert*, WL 53266 at *8. In the case at hand, GE has failed to establish government involvement under any of the three categories.

systems and safety information. *See Shannon Affidavit* at ¶ 5. Clearly GE, not the Navy, exercised its discretion when it chose not to warn at the GE facility, KAPL.

With regard to any warnings required by the government, GE has produced no evidence that the government provided precise content or forbade warnings regarding the dangers of asbestos at the KAPL facility. GE has provided no evidence that GE and the government engaged in a back-and-forth as to the content of warnings regarding the dangers of asbestos at the KAPL facility. Moreover, GE has produced no extrinsic evidence that the government exercised its judgment in approving a particular warning regarding the dangers of asbestos at KAPL.

Significantly, despite the fact that GE was well aware of the dangers of asbestos by 1930,[5] there is no evidence that GE ever discussed warning of the dangers of asbestos or the proper safety precautions that should have been implemented, with the government, at KAPL. In fact, GE management at KAPL made the conscious decision not to discuss KAPL's "asbestos nightmare" with the Navy, despite Mr. Shannon's request that GE contact the Navy regarding remediation of the asbestos at KAPL. *See Shannon Affidavit* at ¶ 7. It is worthy to note that this failure on the part of GE would even disqualify GE from meeting the third element of the *Boyle* design defect defense requiring the contractor to inform the government of probable dangers, related to its product, not known to the government.

**d. No Federal Policy Will Be Harmed By Holding GE To Its State Law Duty To Warn**

Finally, because it was within GE's discretion not to warn of the asbestos dangers at KAPL, the government contractor defense must fail because there is no federal policy harmed by

[5] Castleman, Barry, I., *Asbestos Medical and Legal Aspects*, Fifth Edition, p.585; 2005 Aspen Publishers, Inc. (attached as Exhibit I).

holding GE to its state duty to warn. Displacement of state law is appropriate only where "a significant conflict exists between an identifiable federal policy or interest and the [operation] of state law." *Boyle*, 487 U.S. at 507 (internal quotation omitted) (emphasis added). In order for defendants "to establish that…[the government contractor defense] displaces any state law duty to warn, defendants must show that the applicable federal contract includes warning requirements that significantly conflict that those that might be imposed by state law." *Quiles v. Sikorsky Air*, 84 F. Supp. 2d 154, 170 (D. Mass. 1999).

In the case at hand, there is no evidence of federal specifications in any contract between GE and the United States government that are in conflict with the laws of Rhode Island. Indeed, "no 'significant conflict' exists where a defendant can comply both with the federal specifications and with the standards of conduct imposed by the state." *In re Joint Eastern and Southern District Asbestos Litigation*, 715 F.Supp. at 1169 (the court rejected military contractor defense holding that federal specifications were silent on the matter of warnings and defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications); *See also In Re Hawaii Federal Asbestos Cases*, 960 F.2d at 812 (the Court said that the military contractor defense would fail because there "existed no conflict between their state law duty to provide adequate warnings to the users of their [product] and the conditions imposed on them pursuant to the agreements they had entered into with the Government").

To meet its burden, GE would have to prove that the applicable federal contract included warning requirements that significantly conflict with those that might be imposed by Rhode Island law. *In re Joint E. and S. Dist. N.Y. Asbestos Litig.*, 897 F.2d at 630. In addition, the contractor must show that whatever warnings accompanied a product resulted from a

determination of a government official, and thus, that the Government itself dictated the content of the warnings meant to accompany the product.

Rhode Island law placed a duty on GE to warn of the danger caused by exposure to its asbestos containing turbines at KAPL. In this case, there is no significant conflict between an identifiable federal interest and the operation of state law. GE has not alleged a federal policy that will be harmed by holding GE to its state law duties to warn. To the contrary, the government would most assuredly want to be informed, by its contractor (GE) of the real risks and dangers (known by GE at the time) associated with its products. This would hold especially true at KAPL where the training facility was an "asbestos nightmare." *See Shannon Affidavit* at ¶ 7.

In this case, there is no evidence that the contract(s) and specifications between GE and the United States for the manufacture of turbines at KAPL contained any requirements with regard to asbestos warnings. Therefore, there is no evidence of a conflict between the federal contract and Rhode Island law. Jurisdiction under §1442(a)(1) is not appropriate and remand should be granted.

## VII. GE CANNOT ESTABLISH A CAUSAL NEXUS BETWEEN ITS ACTIONS UNDER THE CONTROL OF A FEDERAL OFFICER AND THE PLAINTIFFS' CLAIMS

The *Mesa* test requires the defendant to show a causal nexus under 28 U.S.C. §1442(a)(1). To establish causal nexus, GE must show that the acts causing decedent's injury (the use of asbestos-containing components in turbines and failure to warn, at KAPL) were undertaken pursuant to a specific federal directive. *See Mesa*, 489 U.S. at 131-132. "[T]he removing defendant must demonstrate that the government specified the composition of the offending product at issue so that there is a 'causal nexus between the federal officer's directions

and the plaintiffs' claims." *Green*, 366 F.Supp.2d 149 at 153; *citing Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) *and Ryan*, 781 F.Supp. at 947. The analysis for this prong of the *Mesa* test is similar to whether the defendants have shown the requisite elements of the federal contractor defense. *See Hilbert*, 2008 WL 53266, *12. GE has neither pled this requisite element with anything approaching the necessary detail nor provided any evidence to show causal nexus. *See* p.22 *supra* (establishing that the *Boyle* government contractor defense does not apply in this failure to warn case because there is no evidence that the government provided any, let alone "reasonably precise," specifications regarding the use of asbestos or asbestos warnings at KAPL).

Plaintiffs' claims of negligence, strict liability and breach of warranty are based upon two main premises: (1) that plaintiff Jack Kortekamp was exposed to asbestos at KAPL [a GE facility], and (2) that GE failed to warn about the health hazards associated with asbestos. In order to show that there was a causal nexus between its actions under the control of a federal officer and the plaintiffs' claims, GE must show that the federal government specifically dictated both that GE (1) must use asbestos-containing components on turbines at KAPL and (2) must <u>not</u> warn about the dangers of the asbestos-containing products at KAPL. *See Faulk*, 48 F.Supp.2d at 653 ("the federal government did not dictate any specifications regarding the warning about asbestos-containing products").

GE has failed to establish either element. Instead, GE merely stated in its Notice of Removal that it "manufactured and designed the marine steam turbines according to precise and detailed specifications promulgated by Navy Sea Systems Command." *See Notice of Removal* at ¶ 11. GE never asserts that Navy Sea Systems Command specified the use of asbestos on the turbines, nor does GE assert that the Navy precluded GE from warning about asbestos. There is

no evidence that the government provided any specifications for GE's asbestos-containing products. Even if such specifications existed, they most certainly would have related to the use of asbestos-containing products themselves and not to – warnings placed on or with the products or given to persons who used the products. The most glaring deficiency in GE's case is that it has provided no evidence regarding Navy specifications for KAPL. KAPL was designed, owned and operated by GE, contained GE turbines, and is the only basis for removal asserted by GE. Yet, even GE's largely ineffective affidavits fail to mention KAPL. In fact, GE's affiants neither claimed to have worked at KAPL nor have personal knowledge of the facility. *See* p.12 *supra* (outlining the numerous deficiencies in GE's affidavits).

Mr. Shannon, who personally participated in the work at KAPL in designing the mock-ups [turbines] upon which the Navy personnel would train, stated that the Navy would provide performance specifications, but GE had to design and build the system. *See Shannon Affidavit* at ¶ 5. GE was responsible for providing operating instructions, safety information and performing its work in a safe manner. *Id.* GE simply does not have the excuse that "the government made me do it."

In *Faulk*, the United States District Court for the Eastern District of Texas addressed this exact issue. 48 F.Supp.2d 653. In *Faulk*, the Court found that "the federal government had provided no direction or control on warnings when using asbestos. *Id.* at 663. Moreover, the federal government did not prevent Defendants from taking their own safety precautions heeding state law standards above the minimum standards incorporated in their federal contracts." *Id.* The *Faulk* Court held that while there was evidence of detailed government specifications relating to the production of certain products, there was nothing about warnings regarding the hazards of asbestos. *Id.* at 664. The Court went on to state that since "[t]he federal officer

remained completely silent as to whether to *warn* about the use of asbestos; this silence is fatal to the 'causal nexus' necessary for the second prong." *Id.* The court in *Faulk* remanded the case.

**a. Asbestos Case Precedent**

The asbestos case law on this reoccurring pattern of mesothelioma cases being removed from state court to federal court (for transfer into MDL 875) consistently holds that removing defendants (even if they were acting under the direction of a federal officer) cannot establish the causal connection to plaintiff's failure to warn claim in the absence of showing that the federal officer prohibited the defendant from issuing a warning. *See In re Joint Eastern and Southern District Asbestos Litigation*, 715 F.Supp. at 1169 (Court rejected military contractor defense holding that federal specifications were silent on the matter of warnings and defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications); *See also In Re Hawaii Federal Asbestos Cases*:

> The appellants' failure to alert those individuals who work most closely with their insulation products . . . to the dangers of asbestos exposure was patently clear from the evidence. That the inadequacy of the defendants' warnings was a legal cause of the plaintiff's injuries cannot be denied. The plaintiffs could have taken precautionary measures or left their jobs had they been warned of the dangers. A reasonable jury, in reaching its first liability, necessarily would have found from the evidence that the defendants breached their state law duty to warn both before and after the introduction of warning labels in 1966. Thus, even were the asbestos insulation "military equipment", we would affirm the district court's decision to preclude the military contractor defense.

*In Re Hawaii Federal Asbestos Cases*, 960 F.2d at 814.

In *Freiberg*, the plaintiffs sued contractors who had used asbestos products during the construction of a nuclear weapons production facility. *Freiberg*, 245 F. Supp. 2d at 1148. The defendants removed on the basis of §1442(a)(1). *Id.* In the decision granting remand, the court succinctly stated why no causal nexus existed for a failure to warn claim:

> In their briefs and submissions in support of removal, Defendants fail to apprehend the essence of the "under color" causal connection requirement. They are being sued for unnecessarily and negligently causing their employees and other workers to be exposed to asbestos dust on the job and for failing to warn these employees and workers of the associated dangers. What they must establish for purpose of the §1442(a)(1) [sic] is that the government authority under which they worked required them to act as they did. For purposes of Plaintiffs' failure to warn claims, for example, they must establish the DOE's direction and control of the activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards. [citation omitted] Nothing in Prout's affidavit or the government contracts produced by Lummus establishes the requisite nexus between their construction and safety practices at Rocky Flats and government direction or control. Accordingly, removal jurisdiction is not established.

*Id.* at 1155.

In *Ruffin v. Armco Steel Corp.*, 959 F. Supp. 770 (S.D. Tex. 1997), the court held there is no federal officer removal jurisdiction in a case that involved substantial control by the federal government over the defendant. *See also Arness*, 997 F. Supp. at 1275. In *Ruffin*, the plaintiff worked at Armco's steel mill where he was exposed to asbestos. "Armco claims that its Houston steel plant was constructed under the control of federal officers, which presumptively provides it with sufficient basis for removal under §442(a)(1)." *Ruffin*, 959 F. Supp. at 772. The court reasoned as follows:

> Armco claims that at all times relevant to the suit, it acted under the supervision of the Secretary of Commerce and other officials from the Defense Plan Corporation ("DPC"), one of many federal corporations created to assist in the war program. Armco claims that the nexus requirement under Mesa is satisfied with proof that the plant it constructed was built pursuant to DPC plans and the state action against it arose from injuries allegedly caused from Armco's compliance with those plans. Because the plaintiff's state action is predicated on a failure to warn theory, however, Armco must not only show that the mill was built pursuant to DPC specifications (and asbestos was a government approved or mandated material) but also that DPC restricted or prohibited Armco from providing adequate precautions against or otherwise notifying its employees of the hazards of asbestos exposure.

*Ruffin*, 959 F. Supp. at 774.

The court went on to further explain that it is not enough merely to show government involvement in the procurement contract, but detailed control and indeed federal mandated conflicts with state law duties. As the court explained:

> The court finds that although Armco has proven that DPC supervised and extensively monitored the construction of the mill, Armco has failed to demonstrate that DPC exercised the same degree of control with respect to safety precautions that allegedly should have been taken to warn employees of the hazards associated with asbestos exposure. There was no evidence to show that DPC prevented Armco from issuing adequate safety warnings or that the government enacted or even considered enacting its own programs or guidelines to cover workplace safety. Nor does the evidence show that DPC controlled personnel matters or at all interfered with the duty of care Armco owed under state law to its employees. The mere fact that the government possessed the power to control or regulate employee safety neither establishes that that power was ever used nor that operational mandates of this type were ever issued. Without such proof, Armco cannot satisfy the statutory requirements for removal under §1442(a)(1).

*Ruffin*, 959 F. Supp. at 776.

The *Ruffin* court further explained that giving blanket immunity under *Boyle* and expanding federal jurisdiction is not warranted by any federal policy. As the court explained:

> The court also believes that blanket absolution of liability for all acts of neglect, whether or not committed under specific and direct order, would encourage laxity at the expense of human lives without any corresponding benefit. [¶] Finally, the court can find no threat to the enforcement of federal laws if the instant case is adjudicated in state court. . . . Furthermore, the basic intent of §1442(a)(1) removal is for protection of federal officials, as well as those acting under their direction, against state court hostility or interference with the effectuation of federal policy. In this case, there is arguably no potential federal policy violation, aside from a general government interest in cost control, requiring a federal forum for adjudication.

*Ruffin*, 959 F. Supp. at 776-777.

In *Overly v. Raybestos-Manhattan*, 1996 U.S. Dist. LEXIS 13535 (N.D. Cal. 1996) (attached as Exhibit J), defendant Avondale Industries removed an asbestos case to federal court based on federal officer jurisdiction. *See also Arness*, 997 F. Supp. At 1275. The *Overly* court

explained that "plaintiffs have proceeded against Avondale on the 'failure to warn theory' of product liability." *Overly*, 1996 U.S. Dist. LEXIS 13535 *1. Also, the court noted that "plaintiffs are not pursuing a design defect claim of products liability and have offered in writing to waive all potential claims related to design defects." *Overly*, 1996 U.S. Dist. LEXIS 13535 *3. The *Overly* court explained as follows:

> [I]n order to meet the *Boyle* test in a failure to warn case, the defendant must show that the government affirmatively instructed it regarding the provision of warnings. Defendant's only showing on this motion relates to the government's manufacturing and engineering specifications. Defendant has not demonstrated that the government provided "reasonably precise specifications" affecting Avondale's provision of warnings. [citation omitted] Absent a showing by defendant that the federal government gave specific instructions to Avondale not to warn employees of the existence of asbestos, Avondale is offered no protection by government contractor immunity. [citation omitted] Therefore defendant fails to meet the second prong of the *Mesa* standard because Avondale has no colorable federal defense to the charges in this case.

*Overly*, 1996 U.S. Dist. LEXIS 13535 *3-4.

Even in the Third Circuit, which broadly interprets the scope of federal officer removal jurisdiction, district courts remand asbestos cases back to state court in failure to warn cases. *Megill vs. Worthington Pump*, 1999 U.S Dist. LEXIS 4433 (D. Del. 1999) (attached as Exhibit K). In *Megill*, the defendant claimed that it supplied pumps to the U.S. Navy for use on navy vessels, and supplied records showing that asbestos was specifically mentioned in two specifications. *Megill*, 1999 U.S Dist. LEXIS 4433 *1-2. The *Megill* court cited the Ninth Circuit's striking of the *Boyle* defense in asbestos cases and went on to remand the case back to state court, holding as follows:

> In the case at bar, plaintiffs assert liability based on the following conduct: 1) failure to substitute other materials for asbestos; 2) failure to warn; 3) failure to adequately research the dangers of asbestos; 4) failure to adequately package, distribute and use asbestos; and 5) failure to remedy the above failures. Worthington has not established that the U.S. Navy prohibited it from substituting

> materials or otherwise changing the specifications, so long as protocol was followed. Likewise, there is no evidence of record that the U.S. Navy prohibited defendant from, or otherwise directed defendant in, issuing warnings or researching and effectuating product safety. Under these circumstances, the court concludes that there is no causal connection between plaintiff's claims and the conduct performed under color of a federal office; thus, there is no colorable federal defense.

*Megill*, 1999 U.S Dist. LEXIS 4433 *3-4.

Presumably due to the large number of asbestos cases in California, Hawaii and Texas, the Ninth and Fifth Circuits have dealt with a large number of attempted removals under §1442(a)(1). The courts in those Circuits have consistently held that §1442 removal is not available in failure to warn cases. *See Viala v. Owens-Corning Fiberglas*, 1994 U.S. Dist. LEXIS 4824 (N.D. Cal. 1994) (attached as Exhibit L) ("Thus, there is no evidence that the specifications provided by the government in any way conflicted with defendants' State law duty to design and manufacture safe products that did not cause asbestos related illnesses. In the absence of such a conflict, the government contractor defense is not colorable."); *Nguyen v. Allied Signal, Inc.*, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998) (attached as Exhibit M) ("Although defendants present evidence showing federal direction of defendants regarding the installation of insulation materials, they do not show federal direction of their activities with regard to warnings attached to asbestos products. Therefore, defendants failed to meet their first prong of the Mesa test."); *Faulk*, 48 F.Supp.2d at 665 ("Nor is there any evidence that the Federal government prohibited defendants from warning about the dangers of asbestos.") and at 666 ("There is no causal nexus between defendants' action under this [federal] control and the plaintiffs' claims . . . thus defendants' fail to satisfy…Mesa."). The *Nguyen* case was dispositive that there was no causal nexus. The court held:

> The third prong of the Mesa test requires a causal nexus between the rules imposed by the United States on the federal contractor and the liability asserted by the plaintiff. [citations omitted] Although defendants include evidence regarding the control of the federal government over the manufacture of its products, again, this evidence does not demonstrate that the federal government directed defendants not to place warnings on their products. Therefore, there was no causal connection between the control exercised by the United States over defendants and plaintiffs' legal theory of failure to warn consumers of the hazards of asbestos. The court therefore concludes that there is no federal jurisdiction over this action. Consequently, plaintiffs' motion to remand must be granted.

*Nguyen*, 1998 U.S. Dist. LEXIS 15517 *4.

**b. <u>Non-Asbestos Case Precedent</u>**

Even in cases not alleging exposure to asbestos, courts have repeatedly held that in a failure to warn claim, the government must affirmatively preclude warnings in order for the contractor to be shielded with *Boyle* immunity. *Nielson v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, (9th Cir. 1989) ("The defendants have never pointed to any mandatory specification in a paint contract that . . . precludes the inclusion of additional warnings."); *Snell v. Bell Helicopter*, 107 F.3d 744, 749 (9th Cir. 1997) ("Bell has shown neither that the government considered the appropriate warnings, if any, that should accompany the product [citation omitted], nor that it approved reasonably precise specifications constraining Bell's ability to comply with whatever duty it may have had."); *Butler v. Ingalls Shipbuilding*, 89 F.3d 582, 586 (9th Cir. 1996) ("Whereas the government contractor's defense may be used to trump a design defect claim by proving that the government, not the contractor, is responsible for the defective design, that defense is inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning . . . Ingalls was acting in compliance with reasonable precise specifications imposed on it by the United States.") ("The district court did not consider the failure to warn requirements of State law independent of the *Boyle* defense, nor did it analyze whether the specifications of Ingalls' contract with the Navy

conflicted with Ingalls' duty to warn under State law."); *See also, Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995) (state law failure-to-warn duty is independent of Boyle federal duty to warn government) (Army helicopter manufacturer).

In this case, GE has not met its burden of showing that the government provided specifications that pertained to relevant issues underlying Plaintiffs' claims, namely the failure to warn. Therefore, since GE cannot establish a causal nexus between its actions and the plaintiffs' claims, section 1442(a)(1) does not apply, federal subject matter jurisdiction is lacking, and this case should be remanded to Rhode Island Superior Court.

## VIII. DERIVATIVE SOVEREIGN IMMUNITY DOES NOT APPLY

In ¶13 of its Notice of Removal, GE implicitly raises a derivative sovereign immunity claim in order to meet the third element of federal officer removal (colorable federal defense) and not as a basis for stand-alone removal. Therefore, it would seem by GE's own admission, that if GE could not show a colorable claim to derivative sovereign immunity, then federal officer removal under §1442(a)(1) would automatically fail.

In *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010 (5th Cir., 1969) the court rejected a claim of derivative sovereign immunity asserted by the manufacturers of grenades and fuses made according to government specifications on the ground that the defendants, although having close contractual ties with the government, ultimately were independent contractors. The defendant in *Whitaker* manufactured grenades for the government, not only by following government specifications, but also by using materials supplied by the government. *Id.* at 1013. Additionally, the manufacturer in *Whitaker* operated a plant owned by the government and had an indemnification clause in its contract for losses arising from the performance of the contract. *Id.*

In the present case, GE cannot show, nor has it even alleged, a relationship as close as the Harvell-Kilgore Corp. maintained with the government. Perhaps more importantly, GE cannot show that the government specified asbestos in the turbines GE made nor can it show that the government precluded GE from warning about the hazards of asbestos.

## IX. ALTHOUGH GE HAS REMOVED BASED UPON ITS MARINE TURBINES, PLAINTIFFS' CLAIMS ARE NOT LIMITED TO TURBINES

GE in its Notice of Removal limited its basis for removal to marine turbines at KAPL. Accordingly, Plaintiffs' Motion for Remand and Supporting Memorandum has focused on marine turbines at KAPL. The Plaintiffs' claims against GE are not limited to the narrow basis asserted by GE. Plaintiffs have asserted claims against GE related to pumps and any other GE manufactured equipment aboard the USS Skate. Additionally, Plaintiffs will pursue GE's liability as designer, manufacturer, owner, operator and manager of KAPL. Mr. Shannon's affidavit clearly demonstrates that GE had control over KAPL. *See generally Shannon Affidavit.* Mr. Shannon's sworn statements make it clear that GE made the decision not to warn workers who were exposed to asbestos at KAPL such as Plaintiff, Jack Kortekamp. Hence, all of the asbestos containing material within GE's control at KAPL is a basis for GE's liability and remand.

## X. GE SHOULD NOT BE PERMITTED TO OFFER ADDITIONAL EVIDENCE TO CARRY ITS BURDEN UNDER § 1442(a)(1)

GE has requested an opportunity to respond more fully in writing should Plaintiffs file a Motion to Remand. *See Notice of Removal* at ¶ 8. The Plaintiffs respectfully request that the Court deny GE's request.

A Notice of Removal may be amended pursuant to Title 28 U.S.C. § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or

appellate courts." Noting that every Court of Appeals that has considered this issue is in agreement, the U.S. Supreme Court interpreted this statute to "remedy inadequate jurisdictional allegations, but not defective jurisdictional facts." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (emphasis added). Further, the Fifth Circuit opined that "[s]ection 1653 provides a method for curing defective allegations of jurisdiction where the defect is merely one of the pleading and not one of an absence of proof of facts necessary to establish" jurisdiction. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991) (emphasis added) (internal quotation omitted) *quoting Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

Here GE has failed to produce sufficient facts to support removal under § 1442. GE, as the removing party, was in the best position to assert its grounds for removal and federal subject matter jurisdiction when it filed its Notice of Removal. GE undoubtedly molded its Notice of Removal based upon its strategic interests at the time. GE should not be granted another opportunity to present additional proof and facts in order to establish jurisdiction. To allow this would be unduly prejudicial to the Plaintiffs who have already incurred substantial cost and delay. In the alternative, if the Court should allow Defendants to respond to Plaintiffs' Motion, Plaintiffs' reserve the right to respond in writing.

## XI. EQUITABLE CONSIDERATIONS REQUIRE REMAND

In assessing jurisdiction, equitable considerations such as comity, judicial economy, fairness, and convenience are relevant. *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir.1998); *Troconis v. Lucent Techs., Inc.*, 160 F.Supp.2d 150 (D. Mass. 2001) (Court considered issues of fairness, judicial economy, convenience, and particularly emphasized the importance of comity, in determining that remand was appropriate). *See also Filson v. Langman*, 2002 U.S.

Dist. LEXIS 22036 (D. Mass.) (attached as Exhibit N).

In this case, considerations of comity, judicial economy, fairness, and convenience weigh heavily in favor of remand. This case was filed in the Rhode Island Superior Court. If this Court were to remand this action, it would move along an established procedural course which is both fair and reasonable to the parties and the Superior Court. If this case is not remanded, it would be transferred to the MDL 875. Plaintiffs would then file an exigent motion in the MDL seeking remand back to Rhode Island Federal District Court. A real possibility exists that other asbestos defendants commonly found aboard U.S. Naval Ships, will attempt to cloak themselves with the same argument, and ultimately, could end up in this Court. Given the time and expense related to this process, the result would be monumentally unfair to the Plaintiffs, as well as to the other defendants, who would have to carry this case on their books for untold years. Ultimately, if this Honorable Court does not grant remand, and GE is allowed to remove on its asserted bases, it would invalidate eighteen years of fair and efficient administration of asbestos cases in the Rhode Island State Courts.

## XII. IF THE COURT ELECTS NOT TO REMAND THE ENTIRE CASE, PLAINTIFFS REQUEST THAT THE COURT SEVER AND REMAND THE REMAINING DEFENDANTS

In this case, severance and remand of the other defendants is proper as a matter of justice. The issues concerning this matter are unique to GE, as it is the only defendant with an alleged federal defense, and none of the other defendants in this case have joined in the Removal Notice. This case was two weeks from trial before it was removed. Allowing the entire case, including state law claims against all other defendants, to be transferred to the MDL 875 would be unfair to the Plaintiffs, and would infringe on their right to a speedy trial. *See Madden v. Able Supply Co.* 205 F.Supp.2d 695, *702 (S.D.Tex. 2002). As such, if the Court decides not to remand the

entire case back to State Court, Plaintiffs respectfully requests the Court to sever the remaining defendants and remand to Rhode Island State Court.

## CONCLUSION

This case should be remanded. GE's removal was untimely in violation of the 30-day window allowed under § 1446(b) and GE has not carried its burden under § 1442(a)(1) to support removal of this failure to warn case.

GE has relied on nothing more than inference upon inference to support removal. GE would have this Court believe that it was completely controlled by the Navy – contractually devoid of its ability to exercise good judgment and uphold its obligation under the law to warn of its products dangers. This is simply not true. GE has not and cannot support this assertion.

GE has not and cannot show that: the government required the use of asbestos in the turbines at KAPL; that the government specified asbestos warnings or prohibited them altogether at KAPL; that the Navy was aware of the asbestos dangers caused by GE products at KAPL; nor can GE support the assertion that because it had to meet rigorous design and performance specifications, GE could not have warned of the dangers associated with exposure to asbestos in or used with its products.

A more sensible evaluation of the facts known about the relationship between GE and the Navy leads to the conclusion that GE was an expert with excellent skill and capability that was hired by the government to design, manufacture and test turbines for ships powered by the cutting-edge nuclear technology of the day. The Navy assuredly demanded quality and performance through specifications, but as Mr. Shannon attests, the technical design and safety aspects where the responsibility of GE. GE's responsibility included a duty to warn. Because GE chose not to uphold this duty, GE should be held accountable in state court. The Plaintiffs

respectfully ask this Court to grant its Motion, and Remand this case to the Rhode Island Superior Court where GE and other defendants have actively litigated these cases for eighteen years.

PLAINTIFFS RESPECTFULLY REQUEST AN EXPEDITED HEARING AND ORAL ARGUMENT. Plaintiffs estimate the total time for oral argument to be one hour or less.

Dated: February 19, 2008
Providence, Rhode Island

Respectfully Submitted,
The Plaintiffs,

By: /s/ Mark T. Boivin
**John E. Deaton, Esq. (#6537)**
jdeaton@deatonlawfirm.com
**Mark T. Boivin, Esq. (#7515)**
mboivin@deatonlawfirm.com
**Mason J. Waring, Esq. (#7737)**
mwaring@deatonlawfirm.com
The Deaton Law Firm
One Richmond Square, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400 Tel.
(401) 351-6401 Fax

**CERTIFICATION OF SERVICE**

I hereby certify that on this 19th day of February 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Mark T. Boivin
Mark T. Boivin