# Exhibit A

To Memorandum in Support of Plaintiffs' Motion For Remand
C.A. No. 08-043S

C Hilbert v. McDonnell Douglas Corp.
D.Mass.,2008.
Only the Westlaw citation is currently available.

United States District Court,D. Massachusetts.
William J. HILBERT, et al., Plaintiffs,
v.
McDONNELL DOUGLAS CORP., et al., Defendants.
**Civil Action No. 07CV11900-NG.**

Jan. 3, 2008.

**Background:** Navy aircraft mechanic and his wife brought civil action in state court against manufacturers of aircraft components and contractors responsible for aircraft's assembly and upkeep, alleging they failed to warn him about hazards of asbestos exposure. The District Court, Nancy Gertner, J., adopted the opinion of Dein, United States Magistrate Judge, and remanded the case to state court after defendants sought removal. Defendants again sought removal and mechanic and his wife moved to remand.

**Holdings:** The District Court held that:

(1) complaint did not provide sufficiently specific facts or allegations to trigger 30-day window for removal with regard to federal contractor defense;

(2) mechanic's deposition and list of his aircraft did provide sufficiently specific facts or allegations to trigger 30-day window for removal;

(3) defendants were not estopped from reviving removal argument; and

(4) defendants did not demonstrate a colorable federal defense based on federal contractor defense, as required to remove case under federal officer removal statute.

Motion granted and case remanded.

**[1] Removal of Cases 334 107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

Where a defendant attempts to remove a civil action from state court, under statute requiring notice of removal to be filed within 30 days after receipt of initial pleading or other paper from which it may first be ascertained the case is removable, and the plaintiff contends that removal is untimely, the burden is on the removing defendant to demonstrate compliance with the procedural bar. 28 U.S.C.A. § 1446(b).

**[2] Removal of Cases 334 79(1)**

334 Removal of Cases

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

334VI Proceedings to Procure and Effect of Removal
334k78 Time for Taking Proceedings
334k79 In General
334k79(1) k. In General. Most Cited Cases

In determining whether the defendants had notice of the grounds for removal, courts look to information within the four corners of the pleadings. 28 U.S.C.A. § 1446(b).

**[3] Removal of Cases 334 ⚷79(1)**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k78 Time for Taking Proceedings
334k79 In General
334k79(1) k. In General. Most Cited Cases

In order to place the defendants on notice of the grounds of removal for purposes of the federal contractor defense, a plaintiff must provide sufficiently specific facts or allegations to allow the defendant reasonably to identify the contracts through which the defense is being asserted. 28 U.S.C.A. § 1446(b).

**[4] Removal of Cases 334 ⚷79(1)**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k78 Time for Taking Proceedings
334k79 In General
334k79(1) k. In General. Most Cited Cases

Navy aircraft mechanic and his wife's complaint alleging defendants failed to warn him about hazards of asbestos exposure, while he was working on military aircraft, did not provide sufficiently specific facts or allegations to allow defendants to reasonably identify contracts through which federal contractor defense was later asserted, and therefore 30-day window for removal was not triggered, where, in effect, the complaint only stated that the mechanic worked for the Navy over a period of approximately 20 years and at an open-ended list of locations. 28 U.S.C.A. § 1446(b).

**[5] Removal of Cases 334 ⚷79(1)**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k78 Time for Taking Proceedings
334k79 In General
334k79(1) k. In General. Most Cited Cases

Deposition of Navy aircraft mechanic and list of his aircraft provided as part of discovery provided sufficiently specific facts or allegations to allow defendants in mechanic's action, manufacturers of aircraft components, and contractors responsible for aircraft's assembly and upkeep, who allegedly failed to warn mechanic of hazards of asbestos exposure, to reasonably identify contracts through which federal contractor defense was later asserted, triggering 30-day window for removal, as the deposition and list detailed the particular aircraft the mechanic had worked on, as well as the manufacturer responsible for making certain components for each aircraft. 28 U.S.C.A. § 1446(b).

**[6] Removal of Cases 334 ⚷82**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k82 k. Parties to Notice or Petition. Most Cited Cases

Federal officer removal constitutes an exception to the general rule that removals must be unanimously agreed to by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the defendants. 28 U.S.C.A. § 1442(a)(1).

**[7] Removal of Cases 334 ⚷21**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases

**Removal of Cases 334 ⚷79(1)**

334 Removal of Cases
334VI Proceedings to Procure and Effect of Removal
334k78 Time for Taking Proceedings
334k79 In General
334k79(1) k. In General. Most Cited Cases
Defendants, who were manufacturers of aircraft components and contractors responsible for aircraft's assembly and upkeep that allegedly failed to warn Navy aircraft mechanic of hazards of asbestos exposure, were not estopped from reviving removal argument, in mechanic and his wife's action against them, based on federal contractor defense, after previously being denied removal due to a failure to produce evidence as to contracts and regulations that applied during the relevant period, where mechanic and his wife had arguably not provided defendants with enough information to allow defendants to specify which contracts were at issue until after the first removal proceeding. 28 U.S.C.A. § 1442(a)(1).

**[8] Judgment 228 ⚷715(1)**

228 Judgment
228XIV Conclusiveness of Adjudication
228XIV(C) Matters Concluded
228k715 Identity of Issues, in General
228k715(1) k. In General. Most Cited Cases
One of the prerequisites for the use of collateral estoppel is a congruence between the issues, that the issue sought to be precluded is identical to the issue previously decided.

**[9] Removal of Cases 334 ⚷21**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases

**Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases
There are three prerequisites to removal under the federal officer removal statute: first, the defendant seeking removal must demonstrate a colorable federal defense; second, the defendant must show a causal nexus between the act taken under color of office and the conduct of which the plaintiff complains, and third, the defendant must be a federal officer, or acting under a federal officer. 28 U.S.C.A. § 1442(a)(1).

**[10] Removal of Cases 334 ⚷107(7)**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

A defendant seeking removal under the federal officer removal statute is not obliged to prove that the federal contractor defense will be successful, only that it has some basis in law and fact; however lenient, the burden of demonstrating compliance with the standard remains on the defendant. 28 U.S.C.A. § 1442(a)(1).

**[11] Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

In seeking to determine whether defendants seeking removal under federal officer removal statute have met their burden of showing federal contractor defense has some basis in law and fact, on a motion to remand, a court is permitted to look beyond the pleadings to the evidence submitted by the parties regarding the motion. 28 U.S.C.A. § 1442(a)(1).

**[12] Products Liability 313A ⚷26**

313A Products Liability
313AI Scope in General
313AI(A) Products in General
313Ak26 k. Defenses in General; Limitation of Liability. Most Cited Cases

A defendant may not defeat a failure-to-warn claim simply by showing the elements of the federal-contractor defense to a design-defect claim.

**[13] Products Liability 313A ⚷26**

313A Products Liability
313AI Scope in General
313AI(A) Products in General
313Ak26 k. Defenses in General; Limitation of Liability. Most Cited Cases

**States 360 ⚷18.65**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.65 k. Product Safety; Food and Drug Laws. Most Cited Cases

In order for the federal contractor defense to apply in a failure-to-warn context, the defendants must show a conflict between state law and federal policy; if there is no conflict, if both federal policy and state law can be satisfied at the same time, the contractor may not assert the defense.

**[14] Products Liability 313A ⚷26**

313A Products Liability
313AI Scope in General
313AI(A) Products in General

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

313Ak26 k. Defenses in General; Limitation of Liability. Most Cited Cases

**States 360 ⚷18.65**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.65 k. Product Safety; Food and Drug Laws. Most Cited Cases
When state law would otherwise impose liability on a federal contractor for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; and (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.

**[15] Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases
A defendant asserting the federal contractor defense in a failure-to-warn context must make a colorable showing of each element required to show a conflict between state law and federal policy in order to remove the case. 28 U.S.C.A. § 1442(a)(1).

**[16] Products Liability 313A ⚷26**

313A Products Liability
313AI Scope in General
313AI(A) Products in General
313Ak26 k. Defenses in General; Limitation of Liability. Most Cited Cases

**States 360 ⚷18.65**

360 States
360I Political Status and Relations
360I(B) Federal Supremacy; Preemption
360k18.65 k. Product Safety; Food and Drug Laws. Most Cited Cases
In determining whether federal contractor defense applies in a failure-to-warn case, if the government is silent as to whether or not contractors are permitted to warn, or there is no discussion about the content of the warnings, the question becomes whether a federal policy is harmed by holding defendants to their state-law duties to warn; if no federal policy is infringed and the contractor has discretion over whether to warn, then the affirmative federal contractor defense must fail.

**[17] Products Liability 313A ⚷34**

313A Products Liability
313AI Scope in General
313AI(B) Particular Products, Application to
313Ak34 k. Aircraft. Most Cited Cases

**Products Liability 313A ⚷62**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

313A Products Liability
313AI Scope in General
313AI(B) Particular Products, Application to
313Ak62 k. Miscellaneous Products. Most Cited Cases

**Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

Defendants, who were manufacturers of aircraft components and contractors responsible for aircraft's assembly and upkeep that allegedly failed to warn Navy aircraft mechanic of hazards of asbestos exposure, did not make a colorable showing that government exercised its discretion to issue reasonably precise specifications as to health and safety warnings regarding asbestos, as required to remove mechanic and his wife's action against them under federal officer removal statute based on federal contractor defense; while defendants submitted affidavits to support claim that military, through its contracts, exercised its discretion in such a way as to prevent defendants from warning mechanic, defendants did not submit any non-testimonial evidence of government's alleged control over the warnings, and one affidavit plainly contemplated that contractors drafted the manuals, which were permitted to contain "notes" and "warnings," and then submitted them to the government for approval. 28 U.S.C.A. § 1442(a)(1).

**[18] Removal of Cases 334 ⚷21**

334 Removal of Cases
334II Origin, Nature, and Subject of Controversy
334k21 k. Actions Against or for Acts of United States Officers. Most Cited Cases

**Removal of Cases 334 ⚷107(7)**

334 Removal of Cases
334VII Remand or Dismissal of Case
334k107 Proceedings for Remand and Review Thereof
334k107(7) k. Evidence. Most Cited Cases

A causal nexus between the act taken under the color of office and the conduct of which the plaintiff complains, as required for removal under the federal officer removal statute, is shown when there is a causal relationship between the act undertaken at the government's direction and the harms the plaintiff alleges; the complaint must arise out of the acts done by the defendant under color of federal authority and in enforcement of federal law, and the defendant must by direct averment exclude the possibility that it was based on acts or conduct not justified by the federal duty. 28 U.S.C.A. § 1442(a)(1).

Erika A. Olson, Michael C. Shepard, Shepherd Law Group P.C., Boston, MA, for Plaintiffs.
James Pettis, Robert E. Boone, III, Bryan Cave LLP, Santa Monica, CA, Katy Ellen Koski, Robert J. Muldoon, Jr., Sherin & Lodgen LLP, Marcy D. Smirnoff, Goodwin Procter LLP, Shepard M. Remis, Sheryl A. Koval, Goodwin Procter, LLP, Brian D. Gross, Cooley, Manion & Jones, PC, Michael R. Brown, Seyfarth Shaw, LLP, Boston, MA, L. Michael Brooks, Wells, Anderson & Race, Denver, CO, for Defendants.

***ORDER ON MOTION TO REMAND***

NANCY GERTNER, District Judge.

*1 William J. Hilbert ("Hilbert") and his wife, Pamela, brought a civil action for damages in state court, stemming from Hilbert's contraction of a fatal, asbestos-related disease, namely mesothelioma. The defendants, Hilbert alleges,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

failed to warn him about the hazards of asbestos exposure, while he was working on military aircraft over a twenty-year period. Although the state action was brought in early 2007, state discovery is underway. The plaintiffs represent that because Hilbert is gravely ill, their motion for an expedited trial date has been granted. The matter is on track for a trial in the spring of 2008.

Certain of the defendants seek to remove the case to federal court based on what has come to be known as the "federal contractor defense." And once in federal court, the defendants will seek even further "removal" in a sense: a transfer to the Panel on Multidistrict Litigation ("MDL"), and specifically the asbestos docket in the Eastern District of Pennsylvania, where the matter will likely be substantially delayed.

This is the second time defendants have tried to remove this case from state court. The first effort, on February 2, 2007, was unsuccessful; Magistrate Judge Dein held a hearing and issued a lengthy decision recommending remand, which I adopted. The case was returned to state court on April 13, 2007. *See* Order Granting Motion to Remand, *Hilbert v. Aeroquip, Inc.*, No. 07-CV-10205-NG (Apr. 13, 2007), *opinion at*486 F.Supp.2d 135 (D.Mass.2007).

Six months later, on October 5, 2007, the defendants tried again to effect removal. On October 15, the plaintiffs countered with a Motion to Remand (document # 11); five defendants have opposed the remand. As to those defendants who did not oppose remand, their cases were severed and returned to state court. *See* Order re: Severance (document # 41). On November 1, 2007, this Court held a hearing on the Motion to Remand and took the matter under advisement.

The defendants base removal on the "federal contractor defense." The argument is straightforward: The federal officer removal statute, 28 U.S.C. § 1442(a)(1),[FN1] grants officers of the federal government the right to remove civil and criminal actions brought against them in state court on account of their official acts. In *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), the Supreme Court construed the statute to permit removal by federal employees who were charged with state criminal offenses (deriving from traffic offenses while they were on duty) so long as they alleged a colorable federal defense.

This body of law was applied to private contractors working for the federal government, so defendants argue, in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 511-12, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). In *Boyle*, a diversity action, the plaintiff's estate alleged that a design defect in a helicopter manufactured by the defendant caused the plaintiff's death. The Court held that private military contractors could claim protection against state tort law liability for injury caused by the products they manufactured according to the federal government's explicit specifications. While the Court acknowledged the state's interests in adjudicating state tort law, the unique federal interests implicated in *Boyle* displaced that law.

***2** Taken together, *Boyle* and *Mesa*, according to the defendants, permit private military contractors to stand in the shoes of federal officers who are sued in state court, allege a colorable "federal contractor defense," and in so doing, remove the action to federal court (and thereafter to the MDL docket). A number of courts around the country have recognized the *Boyle* federal contractor defense as a substantive rule of law permitting removal under § 1442(a)(1).*See, e.g., Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250-51 (9th Cir.2006); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir.1998); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99, 102-03 (D.Conn.2007); In *re Agent Orange Product Liability Litig.*, 304 F.Supp.2d 442, 446-51 (E.D.N.Y.2004); *Good v. Armstrong World Indus., Inc.*, 914 F.Supp. 1125, 1127-28 (E.D.Pa.1996).[FN2]*Boyle* itself, however, emphasized that federal common law does not lightly displace state law. 487 U.S. at 518, 108 S.Ct. 2510.An overly generous interpretation of the *Mesa* criteria would do just that by permitting private, non-diverse defendants to remove to federal court merely because of their status as government contractors.[FN3]

Regardless, this Court need not resolve the precise interaction between *Mesa* and *Boyle.*Even under the *Mesa* "colorable defense" standard, and even assuming that the design defect cases like *Boyle* apply to a failure to warn case, the defendants' removal does not succeed. While they have provided this Court with more information than in the earlier removal efforts, their conclusory affidavits are not sufficient to demonstrate a colorable federal defense. The

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Motion to Remand (document # 11) is **GRANTED.**

## I. *PROCEDURAL HISTORY*

Plaintiff William Hilbert was employed as an aircraft mechanic in the United States Navy from 1955 to 1974, working closely with aircraft and aircraft components, including brakes. See Pl. Disclosure Form at 5, Exh. "E" to Pl. Mot. for Remand (document # 11). During that time, Hilbert was allegedly exposed to asbestos and inhaled it; he claims it is the cause of his mesothelioma. Compl. at 9, Exh. "A" to Notice of Removal (document # 1).

Hilbert now sues a number of manufacturers of aircraft components, as well as contractors who were responsible for the aircraft's assembly and upkeep. He alleges two theories of liability. The first is simple negligence related to the defendants' failure to warn him of the dangers of handling asbestos without proper protection. *Id.* at 10-12.The second is a strict liability theory, breach of warranty, also based on failure to warn. *Id.* at 12-13.His wife, Pamela Hilbert, also sues, alleging loss of consortium. *Id.* at 23.Her allegations are based on the same theories as are her husband's. *See id.*Collectively, William and Pamela Hilbert will be referred to as "plaintiffs" or "Hilbert."

All of the defendants-29 in Hilbert's original complaint-were served with process on or about January 5, 2007. Notice of Removal at 2 (document # 1). On February 2, 2007, Northrop Grumman Corp. ("Northrop Grumman") filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), invoking the jurisdiction of the Court over federal officers. *See*Docket No. 07-CV-10205-NG.Although the other defendants were aware of the action, they declined to join Northrop Grumman in the removal. The plaintiffs moved to remand to state court. *See* Motion to Remand (Docket No. 07-CV-10205-NG, document # 3). The Court referred the case for pretrial proceedings to Magistrate Judge Dein.

*3 On March 2, 2007, Magistrate Dein held a hearing on the Motion to Remand. In a lengthy and well-reasoned decision, she recommended to the Court that the Motion to Remand be granted. She concluded that nothing in the defendant Northrop Grumman's presentation was sufficient to meet even a colorable federal contractor defense. *Hilbert v. Aeroquip,* 486 F.Supp.2d at 148-49.On April 13, 2007, the Court adopted the Report and Recommendation and granted the Motion.

The case proceeded in state court for several months. The plaintiffs filed a motion for an expedited state trial date. At the November 1, 2007, hearing before this Court, the plaintiffs represented that a trial date had been set in state court for May 2008. As part of the state court discovery, William Hilbert was deposed over several days-September 10-12, 2007. In advance of the deposition, on September 7, the plaintiffs provided a list of aircraft Hilbert had serviced while a mechanic for the Navy. *See* List of Hilbert Aircraft, Exh. "E" to Notice of Removal (document # 1).

That list provided the impetus for a second removal, this one by defendants McDonnell Douglas Corporation, The Boeing Company, and Boeing North American, Inc. (collectively, "McDonnell Douglas") on October 5, 2007. *See* Notice of Removal (document # 1). They cited 28 U.S.C. § 1442(a)(1) as the basis for removal, as had Northrup Grumman, but claim to have greater factual support. Northrop Grumman also attempted to remove the action on the same day as McDonnell Douglas but, because McDonnell Douglas' removal had already taken effect, Northrop Grumman's removal was deemed unnecessary. Northrup Grumman then filed a "Notice of Joinder" to assert its federal rights, as did defendant Raytheon Aircraft Company ("Raytheon") *See* Notice of Joinder (document # 10), Notice of Joinder (document # 14). Collectively, these defendants are referred to as "the removing defendants."

In addition, McDonnell Douglas filed a Notice of Tag-Along Action with the Judicial Panel on Multidistrict Litigation (document # 6). If the case is deemed a "tag-along action," involving questions of fact common to other asbestos personal injury cases ordered transferred to the Judicial Panel pursuant to 28 U.S.C. § 1407, the case will be transferred for coordinated pretrial proceedings. No transfer order has yet been entered, and until it does, this Court retains full jurisdiction over the case. *See* Rule 1.5 of the R.P. of Judicial Panel on Multidistrict Litig., 199 F.R.D. 425 (2001).

The plaintiffs filed the instant Motion to Remand (document # 11) on October 15, 2007.[FN4]McDonnell Douglas,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Northrop Grumman, and Raytheon oppose.

On November 5, the Court declined supplemental jurisdiction over those defendants who had not asserted federal defenses. It severed the removing defendants from those who had not asserted any federal defenses, and remanded the non-removing defendants to state court. *See* Order re: Severance (document # 41).

## II. *ALLEGED PROCEDURAL BARS*

***4** In addition to disputing the merits of the removal, the plaintiffs have asserted two procedural bars. First, they argue that the removal was untimely, that it occurred outside the thirty-day window permitted by 28 U.S.C. § 1446(b). Second, they contend that the issue was necessarily decided in the first removal; therefore, the defendants should be estopped from removing again on the same grounds. Neither claim is meritorious.

### A. *Timeliness*

[1] Cases must generally be removed within thirty days of the defendant's receipt of process. 28 U.S.C. § 1446(b). To prevent plaintiffs from artfully pleading around the possibility of removal, however, Congress authorized later removal in certain circumstances. If a case is not removable from the face of the complaint, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."*Id.* Where a defendant attempts to remove under § 1446(b) and the plaintiff contends that removal is untimely, the burden is on the removing defendant to demonstrate compliance with the procedural bar. In this case, the defendants must show that the initial complaint was not removable. *See, e.g., Therrien v. Hamilton,* 881 F.Supp. 76, 78 (D.Mass.1995) (placing burden on removing party to show timely removal).

The removing defendants (including Northrop Grumman, who previously removed in February 2007) argue that the plaintiffs provided insufficient information at the initial pleading stage to permit immediate removal. Defs. McDonnell Douglas Corp., The Boeing Co., and Boeing N. American, Inc.'s Opp. to Pls.' Mot. for Remand ("McDonnell Douglas Opp.") at 10-13 (document # 24); Northrop Grumman Corp.'s Opp. To Pls.' Mot. for Remand ("Northrop Grumman Opp.") at 4-5 (document # 32); Def. Raytheon Aircraft Co.'s Response in Opp. To Pls.' Mot. to Remand ("Raytheon Opp.") at 16-17 (document # 35). Without a list of the particular aircraft Hilbert worked on, they could not know whether a federal contractor defense might be a viable option. The plaintiffs counter that the defendants had sufficient notice, pointing to the very fact of Northrop Grumman's initial removal as evidence.

[2] In determining whether the defendants had notice of the grounds for removal, courts look to information within the four corners of the pleadings. *E.g., Harris v. Bankers Life & Cas.* Co., 425 F.3d 689, 694 (9th Cir.2005); *Lovern v. General Motors Corp.,* 121 F.3d 160, 162 (4th Cir.1997). The challenge is determining how specific the pleadings must be to place the defendants on notice that their federal contracts might afford them a defense without putting too onerous a burden on plaintiffs at the preliminary pleading stage.

[3] In order to place the defendants on notice for purposes of the federal contractor defense, a plaintiff must provide sufficiently specific facts or allegations to allow the defendant reasonably to identify the contracts through which the defense is being asserted. *See Durham,* 445 F.3d at 1251 (requiring the plaintiff "to provide ... facts to support each" of the elements of the federal contractor defense); *accord Pack v. AC & S, Inc.,* 838 F.Supp. 1099, 1101-02 (D.Md.1993).[FN5]

***5**[4] In the instant case, the Complaint states: "Plaintiff William J. Hilbert during the 1950's to 1990's was employed as an aircraft mechanic. Plaintiff William J. Hilbert worked continuously around the defendants' asbestos and asbestos-containing products during the course of his employment."Compl. at 10, Exh. "A" to Notice of Removal (document # 1). The Plaintiff's Disclosure Form specified William Hilbert's employer as the United States Navy, his time of employment as 1955 to 1974, and his exposure site as "various ships, shipyards, and airfields including but not limited to" several different Navy bases. Pl. Disclosure Form at 5, Exh. "E" to Pl. Mot. for Remand (document # 11)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(emphasis added). The information conveyed by the Complaint and the Plaintiff's Disclosure Form was not enough to allow the defendants to identify the contracts. In effect, they state only that Hilbert worked for the Navy over a period of approximately 20 years and at an open-ended list of locations.FN6 The thirty-day window for removal was therefore not triggered by the Complaint and Disclosure Form.

[5] By contrast, William Hilbert's deposition, and the "List of Hilbert Aircraft" provided as part of discovery, detailed the particular aircraft Hilbert had worked on, as well as the manufacturer responsible for making the brakes for each aircraft. *See* List of Hilbert Aircraft, Exh. "E" to Notice of Removal (document # 1). This document was not delivered until September 7, 2007. *See id.* Once Hilbert identified the airplanes and the brakes, the defendants reasonably could have identified which contracts were at issue, and the thirty-day limit began to run.

McDonnell Douglas filed its Notice of Removal on October 5, 2007, within the time limit. Northrop Grumman asserted its rights the same day. Raytheon did not attempt to remove the case until October 9, 2007. *See* Raytheon's Notice of Joinder at 1-2 (document # 14). Ordinarily, if the List of Hilbert Aircraft sufficed to provide enough information to remove, Raytheon's removal would have been untimely as more than thirty days after disclosure.

[6] Federal officer removal, however, constitutes an exception to the general rule that removals must be unanimously agreed to by the defendants. *See, e.g., Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1034 (10th Cir.1998). McDonnell Douglas' removal was thus sufficient to remove the entire case, including the case as to Raytheon and Northrop Grumman. *See* Order re: Severance (document # 41) (distinguishing between defendants who had asserted the federal contractor defense and those who had not).

### B. *Preclusion*

[7] The plaintiffs also seek to invoke res judicata to preclude removal. *See* Pl. Mem. at 10-11. Because the issue was finally and necessarily decided in this Court's previous remand order, they reason, the defendants should be estopped from reviving the argument now. McDonnell Douglas and Raytheon counter that the previous removal was done by another defendant, and, in any case, that the factual basis has changed as a result of the subsequent disclosures by Hilbert. The Court agrees with the defendants.

***6**[8] One of the prerequisites for the use of collateral estoppel is a congruence between the issues-that the issue sought to be precluded is identical to the issue previously decided. *Acevedo-Garcia v. Monroig,* 351 F.3d 547, 575 (1st Cir.2003). On the previous removal, the defendant's generalized argument was properly rejected by Magistrate Judge Dein, who noted "Northrop [Grumman]'s inability to ... [produce evidence] as to the contracts and regulations which actually applied during the relevant period." *Hilbert v. Aeroquip,* 486 F.Supp.2d at 142. Magistrate Dein further found that Northrop Grumman's evidence was "remarkably silent" as to the issues pertaining to particular contracts and warnings. *Id.* at 146. In part, Northrop Grumman's vagueness and silence were arguably attributable to the fact that the plaintiffs had not provided enough information to specify which contracts were at issue. The plaintiffs now have, and the defendants' removal arguments are properly taken on their merits.

The plaintiffs' broader concern expressed at the hearing-that allowing relitigation of the removal would encourage strategic, dilatory removals by defendants-is overstated. The trigger for the thirty-day window is not any new evidence, as plaintiffs implied at the hearing, but information sufficient to allow the defendants to pin down which contracts are at issue. *See* 28 U.S.C. § 1446(b). Additional evidence received after that date will not reset the thirty-day clock in this case.

## III. *MOTION TO REMAND*

[9] There are three prerequisites to removal under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. First, the defendant seeking removal must demonstrate a colorable federal defense. Second, the defendant must show a causal nexus between the act taken under color of office and the conduct of which the plaintiff complains. Third, the defendant must be a federal officer, or "acting under" a federal officer. *See Mesa,* 489 U.S. at 132-34, 109 S.Ct. 959.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

A. *Assertion of a Colorable Federal Defense*

1. *Legal Standards*

[10] Assuming the applicability of the *Mesa* standard to private contractors, the defendant is not obliged to prove that the federal contractor defense will be successful-only that it has some basis in law and fact. *See Mesa,* 489 U.S. at 128, 109 S.Ct. 959 (" 'The validity of the defence authorized to be made is a distinct subject. It involves wholly different inquiries.'" (quoting The *Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 254, 18 L.Ed. 851 (1868))).[FN7] However lenient, the burden of demonstrating compliance with the standard remains on the defendants. *See Rossello-Gonzalez v. Calderon-Serra,* 398 F.3d 1, 11 (1st Cir.2004) (placing general burden of showing proper removal jurisdiction on the removing defendant).

[11] And, in seeking to determine whether the defendants have met that burden, the Court is permitted to look beyond the pleadings to the evidence submitted by the parties regarding the Motion to Remand. *See, e.g., Machnik,* 506 F.Supp.2d at 103 (deciding motion to remand based in part on affidavit evidence); *Ferguson v. Lorillard Tobacco Co., Inc.,* 475 F.Supp.2d 725, 730 (N.D.Ohio 2007) (same); *McMahon v. Presidential Airways, Inc.,* 410 F.Supp.2d 1189, 1196-97 (M.D.Fla.2006) (same); *Williams v. General Elec. Co.,* 418 F.Supp.2d 610, 615-16 (M.D.Pa.2005) (same).

*7 The outlines of the "federal contractor defense" were provided in *Boyle.* In the Federal Tort Claims Act, 28 U.S.C. § 1346(b), Congress authorized damages to be recovered against the United States for harm caused by the negligent or wrongful conduct of government employees, to the extent that a private person would be liable under the law of the place where the conduct occurred. It excepted from this consent to suit, however, any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved was abused. 28 U.S.C. § 2680(a).

The paradigmatic case involving discretion in the manufacture of military equipment is one in which the government specifies in its contracts how to design a product, and in so doing, makes a tradeoff between effectiveness and safety. *Boyle,* 487 U.S. at 511, 108 S.Ct. 2510. In such a case, as the Court noted, "it makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." *Id.* at 512, 108 S.Ct. 2510. Thus, the Court concluded that state law that holds government contractors liable for design defects in military equipment, where those defects derived from "reasonably precise specifications" in government contracts, presents a conflict with federal policy and must be displaced. *Id.* at 513, 108 S.Ct. 2510.

[12] The defendants claim a similar conflict with federal obligations in the plaintiffs' failure-to-warn case.[FN8] But even if the federal contractor defense is applicable to the instant failure to warn situation, [FN9] the analysis is surely more complex. Because the elements of the alleged tort are different, so are the elements of the defense; a defendant may not defeat a failure-to-warn claim simply by showing the elements of the *Boyle* defense to a design-defect claim. *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003 (7th Cir.1996); *Tate v. Boeing Helicopters,* 55 F.3d 1150, 1157 (6th Cir.1995); *In re Joint Eastern and Southern Dist. New York Asbestos Litig. (In re N.Y. Asbestos),* 897 F.2d 626, 632 (2d Cir.1990).[FN10]

[13] The Seventh Circuit has established a sensible adaptation of *Boyle* for the failure-to-warn context. In order for the federal contractor defense to apply in the failure-to-warn context, the defendants must show a conflict between state law and federal policy. *Oliver,* 96 F.3d at 1003. If there is no conflict, if both federal policy and state law can be satisfied at the same time, the contractor may not assert the defense. *See id.*

[14][15] Holding the contractor to obey state law where it can do so comports with the purpose of the *Boyle* test-"to deny the defense to a government contractor that is itself ultimately responsible" for the cause of the plaintiff's injury. *Trevino v. General Dynamics Corp.,* 865 F.2d 1474, 1481 (5th Cir.1989) (internal quotation and citation

omitted). In determining whether a conflict existed, the *Oliver* court closely tracked the criteria the Supreme Court set forth in *Boyle.* Therefore:

***8** when state law would otherwise impose liability for a failure to warn, that law can be displaced when the contractor can show that: (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.

*Oliver*, 96 F.3d at 1003-04. *Cf.* *Boyle*, 487 U.S. at 512, 108 S.Ct. 2510 (stating nearly identical standard for a design-defect case). The defendant must make a colorable showing of each element in order to remove the case. *Durham*, 445 F.3d at 1251-52. Only the first of these factors, whether the government exercised its discretion and approved reasonably precise specifications as to the warnings, is at issue here.[FN11] It bears more explication.

In considering design-defect cases in which a defendant asserts the federal contractor defense, courts have found that the government exercised its judgment as to the specifications in three broad categories of cases. Each category readily translates to the failure-to-warn context. First, the government might simply dictate the design in its entirety (the "direct control" theory). *See, e.g.,* *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 585 (9th Cir.1996). Similarly, in the case of warnings, the government might dictate the precise content of the warnings or forbid them altogether. Second, the government and the contractor might engage in a back-and-forth as to the content of the design-or, in this situation, the warnings (the "negotiation" theory). *See, e.g.,* *Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 701-03 (4th Cir.1989). Finally, there might be some extrinsic evidence that the government exercised independent judgment in approving a particular design or warning (the "extrinsic evidence" theory). *See, e.g.,* *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311, 1318 (11th Cir.1989) (noting evidence showed that Air Force was aware of possibility of chafing in wiring, but approved the design regardless); *cf.* *Trevino*, 865 F.2d at 1480 (noting that "substantive review" is sufficient to satisfy the requirement).

[16] Conversely, as the Fifth Circuit has noted, if "the government approved imprecise or general guidelines, then discretion over important design choices would be left to the government contractor." *Trevino*, 865 F.2d at 1481. *Accord* *Oliver*, 96 F.3d at 1004. The same is true of warnings. If the government was silent as to whether or not the contractors were permitted to warn, or there was no discussion about the content of the warnings, the question becomes whether a federal policy is harmed by holding the defendants to their state-law duties to warn. If no federal policy is infringed and the contractor had discretion over whether to warn, then the affirmative federal contractor defense must fail. *See, e.g.,* *Dorse v. Eagle-Picher Indus., Inc.*, 898 F.2d 1487, 1488-90 (11th Cir.1990); *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.Supp.2d 1144, 1155 (D.Colo.2002); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 327 F.Supp.2d 554, 563 (D.Md.2004) (holding that contractor defense was not available where defendants could not show that the "FCC restricted or prohibited them from providing additional safeguards or information").

**2. *Application to the Evidence***

***9**[17] Each of the defendants claims that the military, through its contracts, exercised its discretion in such a way as to prevent them from warning Hilbert about the dangers of asbestos. *See* McDonnell Douglas Opp. at 24-25 (document # 24); Northrop Grumman Opp. at 20-21 (document # 32); Raytheon Opp. at 14-15 (document # 35).[FN12] Of the three kinds of evidence of federal judgment listed above-direct control, negotiation, and extrinsic evidence-the defendants rely solely on the first. They claim that the military specifications, though not explicitly forbidding warnings about asbestos, were so precise that the defendants could not simultaneously warn about asbestos and conform to the specifications. *See* Aff. of William W. Smith ("Smith Aff.") at 27 (document # 27); Decl. of John F. DeBois ("DeBois Aff.") at 3, Exh. "A" to Northrop Grumman Opp. (document # 32).[FN13] Again, at this stage, the defendants need not prove that the military actually did exercise that level of control; they merely need colorably to show that it did so.

McDonnell Douglas offers several affidavits in support of its position;[FN14] the most important is that of Alvin Meyer, a retired Colonel of the United States Air Force, who served as chief of Bioenvironmental Engineering for the

Air Force from 1962 to 1969. Aff. of Alvin F. Meyer, Jr. ("Meyer Aff."), Exh. 75 in Supp. of McDonnell Douglas Opp. (document # 38). He stated that whether or not to issue warnings as to asbestos was within his discretion, *see id.* at 9-10, and that he did not consider asbestos a sufficiently medically dangerous component to require the warning, *id.* at 10.He further stated:

I had responsibility for what information, i.e., warnings, was provided to Air Force personnel regarding various hazardous materials encountered in the work environment.... All warnings placed on military equipment procured from government contractors, and warnings placed in technical manuals for that equipment, were under the exclusive control and required the approval of the United States government....

Although the Air force knew of risks of asbestos ..., it did not consider aircraft to pose a hazard or health threat insofar as asbestos was concerned. Consequently, the Air Force would not have approved any such warnings.

*Id.* at 10-11.

The affidavit from Colonel Meyer has two notable deficiencies. First, Meyer is a retired Air Force Colonel; his knowledge is limited on its face to that branch. Hilbert was an aircraft mechanic in the Navy. Second, assuming that Meyer's statements are relevant evidence with respect to U.S. Navy contracts, they still amount to speculation: The Air Force, he suggests, "would not have approved any warnings," and "during [his] tenure, even if a government contractor ... had suggested to the Air Force that asbestos warnings should be placed on the aircraft or in manuals, those suggestions would have been futile."Meyer Aff. at 10, Exh. 75 in Supp. of McDonnell Douglas Opp. (document # 38).

***10** McDonnell Douglas also relies on affidavits by two employees, William Smith and Edwin Volkening, who state that the company had no authority to place markings on the aircraft or components, or to alter the content of the equipment manuals. Aff. of William W. Smith ("Smith Aff.") at 27 (document # 27); Aff. of Edwin F. Volkening at 5-6 (document # 26). Significantly, Volkening, Smith, and Meyer do not cite any contractual provisions buttressing their claims.

Similarly, Northrop Grumman relies on two affidavits, one by John DeBois and one by Christopher Knott.[FN15]De Bois states:

As demonstrated by the documents I reviewed and Mr. Hilbert's testimony, and consistent with my general knowledge of Northrop's government contracts, ... [the] repair and parts manuals[ ] were issued and controlled by the Navy. Northrop had no control or discretion with regard to specifying the parts or warnings included in these Navy publications.

All warnings that would be used in conjunction with any product made for the U.S. military were provided by the military. Grumman was not permitted to add any warnings for military aircraft that were not provided by the United States.

DeBois Aff. at 2, 3, Exh. "A" to Northrop Grumman Opp. (document # 32). Knott similarly states that "[a]ll warnings permitted to be used on the delivered F-14 aircraft were subject to the direct control of the Government. Grumman was not permitted to add any warnings absent express Government review and approval."Aff. of Christopher Knott ("Knott Aff.") at 3, Exh. "B" to Northrop Grumman Opp. (document # 32). Neither cites contractual or regulatory language to support his position. But, in any event, neither cites to any reason to believe that the government would have rejected asbestos warnings.

Raytheon submits an affidavit by an employee with personal knowledge of contracting requirements through Hilbert's employment, but he only states, "I had no knowledge or awareness of any requirement to warn about asbestos in the context of aircraft repair or maintenance work. Had such a requirement existed ... I would have known about it."Aff. of Maurice R. Donaldson ("Donaldson Aff.") at 7, Exh. "F" to Raytheon Opp. (document # 35).

Raytheon cites to a contract specification which comes closest to providing an example of a contract or regulation pertaining directly to a warning: the specification controlling how warnings are produced and disseminated. U.S. Navy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aeronautical Specification for Handbooks and Catalogs, NavAer SR-167 ("Handbook Specification") (effective July 1, 1946), Exh. "F5" to Raytheon Opp. (document # 35). But the Specification's substantive value is limited. It provides only as follows:

D-9a. "Note," "Caution," and "Warning" shall be used as defined below....

(a) "Note"-any operating procedure, condition, etc., it is desired to highlight.

(b) "Caution"-to cover operating procedures, practices, etc., which, if not observed, will result in damage to equipment.

***11** (c) "Warning"-to cover operating procedures, practices, etc., which will result in loss of life or destruction of the airplane if not followed.

*Id.* at 4. Furthermore, the Specification states that "[h]andbooks and catalogs shall be subject to the final inspection and approval of the [Navy]."*Id.* at 5. Read as a whole, it is clear that the Specification regulates the form of warnings, not their content, even if they must eventually be approved by the government. *See, e.g., id.* at 4 ("Color shall be restricted to black in the presentation of 'Note,' 'Caution,' and 'Warning'. [sic]"). None of the defendants submit rejected drafts of handbooks or other evidence that might support the "negotiation" theory of government control over the warnings.

Finally, the plaintiffs also offer evidence to rebut the defendants' arguments for a federal defense. As of May 1971, the government required that "[s]pecial handling instructions, marking, and warnings shall be shown as required by [numerous regulations] ... and by statute, regardless of destination of shipment."Military Standard Marking for Shipment and Storage, MIL-STD-129E (Apr. 20, 1970), § 5.5.15.1 (May 21, 1971), Exh. "I" to Pl. Reply Mem. (docket # 07-CV-10205-NG, document # 19) (emphasis added). However, the specification post-dates some, though not all, of Hilbert's alleged exposure.

The plaintiffs also include a manual that appears to require compliance with state warnings laws, but the directive only applies on its face to "chemical products and chemical processes," not asbestos. *See* Manual L-1, Guide to Precautionary Labeling of Hazardous Chemicals at 1, 7, Exh. "J" to Pl. Reply Mem. (docket # 07-CV-10205-NG, document # 19). And the plaintiffs submit an instruction from the Secretary of the Navy, which pertains primarily to "Uniform labeling program for hazardous industrial chemicals and materials," but that document only "applies to the labeling of all hazardous materials ... wherever distribution of hazardous chemicals and materials is made to the actual consumer."SECNAV 5160.8 (Sept. 24, 1956), Exh. "K" to Pl. Reply Mem. (docket # 07-CV-10205-NG, document # 19). It does not appear to pertain to aircraft and aircraft components.

On review of the evidence, there is simply no basis upon which the Court can conclude that a conflict existed between the federal contracts and the defendants' state-law duty to warn. The defendants do not submit any non-testimonial evidence, i.e. citations to regulations or contracts, of the government's alleged control over the warnings. Indeed, despite the affiants' claim to have "reviewed numerous ... government contracts during the time period of 1955 through the present," DeBois Aff. at 2, Exh. "A" to Northrop Grumman Opp. (document # 32); *see* Smith Aff. at 2 (document # 27), the defendants fail to cite any contractual or regulatory language supporting their position, or to provide any military specifications bearing on the substance of the warnings to be provided. *See, e.g.,* Northrop Grumman Opp. at 20-21. Although they claim that the government dictated the text of non-asbestos warnings, they do not offer proof of that process.

***12** In fact, the specification submitted by Raytheon plainly contemplates that the contractors draft the manuals, then submit them to the government for approval. *See generally* Handbook Specification, Exh. "F5" to Raytheon Opp. (document # 35). The manuals were permitted to contain "Notes" and "Warnings," *id.* at 4, either of which (on the face of the Specification) might have permitted instructions to take protective measures when handling asbestos-containing components. While the submission-and-review process might provide for the sort of negotiation or "substantive review" that would demonstrate the exercise of federal government discretion, *see* Trevino, 865 F.2d at 1480, the defendants' evidence does nothing to distinguish between rubber-stamping and careful scrutiny.

Nor do the defendants rebut the obvious inference: that they never tried to warn about asbestos at all. Their

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

argument thus boils down to a bald, unsupported assertion that if they had attempted to warn about the hazards of asbestos, the government would have exercised its discretion to bar the warning. At least on this record, that sort of speculation is not remotely adequate. It does not come close to demonstrating-even colorably-that the government exercised its discretion to issue "reasonably precise specification" as to health and safety warnings. The defendants have therefore failed to assert a colorable federal defense. *Cf.* Hilbert v. Aeroquip, 486 F.Supp.2d at 148.

**B. *Existence of a Causal Connection***

[18] On these facts, whether a causal connection exists sufficient to satisfy the second prong of the *Mesa* test is closely related to whether the defendants have shown certain elements of their asserted federal defense. A causal nexus is shown when there is a causal relationship between the act undertaken at the government's direction and the harms the plaintiff alleges. The complaint must arise " 'out of the acts done by [the defendant] under color of federal authority and in enforcement of federal law, and [the defendant] must by direct averment exclude the possibility that it was based on acts or conduct ... not justified by [the] federal duty.'" *Mesa,* 489 U.S. at 131-32, 109 S.Ct. 959 (quoting *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 70 L.Ed. 449 (1926)).

On the facts of this case, the causal inquiry is closely tied to whether the government issued reasonably precise specifications as to the warnings. If the government did issue reasonably precise specifications and the defendants obeyed them, then the federal contractual obligation caused the plaintiffs' harm. The converse is also true: if the government did not issue reasonably precise specifications as to the warnings, so that the defendants could have simultaneously complied with the contractual obligations and the state-law duty to warn, then the plaintiffs' harms were not caused by the defendants' contractual responsibilities. Thus, having concluded that the defendants have not shown reasonably precise specifications as to the warnings, the Court also finds that the defendants have not shown a causal nexus between their contractual obligations and the plaintiffs' alleged injury.

***13** Since the defendants have failed to meet the standards of the other two prongs of the *Mesa* test, there is no need to consider the third.

**IV. *CONCLUSION***

The defendants have not shown that contracts or regulations provided reasonably precise specifications as to any warnings regarding asbestos. For that reason, the defendants cannot show a conflict between their federal contractual obligation and the state-law duty to warn, and have not established a colorable federal defense. By the same reasoning, the defendants have failed to establish a causal connection between acts done pursuant to the federal contract and the plaintiff's injury. Therefore, this Court does not have removal jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442, and is without subject-matter jurisdiction to hear the case. The Motion to Remand (# 5) is hereby **GRANTED,** and the case is **ORDERED REMANDED** in its entirety to state court. The plaintiffs' request for costs and fees, *see* Mot. to Remand (document # 11) at 13-14, is **DENIED.**

**SO ORDERED.**

FN1. The statute provides in pertinent part:

a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office.

28 U.S.C. § 1442.

FN2. The First Circuit has noted that private entities may properly remove a case under § 1442(a)(1), *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 486 (1st Cir.1989), but it has not explicitly addressed the contractor defense and removability.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. While removal jurisdiction is generally to be construed narrowly, the Supreme Court has instructed that a federal court should not take a " 'narrow, grudging interpretation' " of the federal officer removal statute. *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)); *see also Durham*, 445 F.3d at 1252 (noting that the federal officer statute is to be construed "broadly in favor of removal").

In contrast, Judge Weinstein has written that because the removal statute "is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities."*Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992). While Judge Weinstein disavowed the fact findings he had made in *Ryan*, it is not at all clear that he disavowed these concerns about the standard to be applied. *See In re "Agent Orange" Product Liability Litig.*, 304 F.Supp.2d 442, 445 (E.D.N.Y.2004).

FN4. In addition to the arguments in the Motion to Remand itself, the plaintiffs also incorporated by reference the arguments made in the previous removal of this case. *See* Motion to Remand at 14-15 (document # 11). Those arguments are considered and addressed herein.

FN5. This rule, though fair and workable, may well lead to different deadlines for removal for different defendants. For example, one might hypothesize a plaintiff whose only contact with Product X is through the military. Further suppose three companies: Company A makes Product X, but it has only had a single, military contract to do so, and the contract implicates warnings on Product X. Company B makes Product X, and has a blanket order from the military not contained in any contract that forbids it from placing warnings. Company C has multiple contracts, some of which contain a prohibition and some of which do not. If the plaintiff asserts a failure-to-warn claim against all three companies, they will arguably be differently situated with respect to when the clock for removal begins to run. Company A and B should be able to deduce from the complaint that they have a federal contractor defense, since both of them can assert that *every* Product X they make is controlled by the prohibition on the warnings. But Company C may not know whether the contracts with the prohibition are at issue until the plaintiff provides more information-for example, time period, geographic location, or specific model of Product X.

FN6. In addition, the plaintiffs specified that William Hilbert had been exposed to asbestos-containing projects "incorporated for use in *private* aircraft."Pl. Disclosure Form at 12 (Boeing), Exh. "E" to Pl. Mot. for Remand (document # 11); *id.* at 13 (Boeing North American); *id.* at 25 (McDonnell Douglas); *id.* at 28 (Northrop Grumman); *id.* at 32 (Raytheon) (emphasis added in each case). That statement further muddied the waters. While plaintiffs' counsel explained at the hearing that the term "private" was intended to exclude "commercial" aircraft, it might be more easily understood as applying to non-military aircraft.

FN7. The standard the defendants must meet is not even as strong as that needed to survive summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 ("If the evidence is *merely colorable* or is not significantly probative, summary judgment may be granted."(emphasis added)).

FN8. McDonnell Douglas, at least, claims a separate additional defense of derivative sovereign immunity, citing *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940).*See* McDonnell Douglass Opp. at 23-24 (document # 24). Its reliance is misplaced: *Boyle* expands and elaborates *Yearsley*, but does not set forth a separate doctrine. The *Boyle* Court simply extended immunity from performance contracts (as in *Yearsley*) to procurement contracts (as in *Boyle* ).*See Boyle*, 487 U.S. at 506, 108 S.Ct. 2510 (discussing *Yearsley*); *see also In re World Trade Center Disaster Site Litig.*, 456 F.Supp.2d 520, 561 (S.D.N.Y.2006) (noting that "[t]he purpose and scope of the [*Yearsley* ] government contractor defense was clarified and expanded in *Boyle* ").

FN9. Plaintiffs previously argued that *Boyle* did not extend to failure to warn cases because, as a matter of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

law, there was no conflict between a federal interest and the operation of state law. *See* Pl. Mem. in Supp. of Mot. to Remand at 16 (Docket No. 07-CV-10205-NG, document # 7). The First Circuit has not addressed the question, but most federal courts have recognized that there is at least a potential conflict. *See, e.g., Emory v. McDonnell Douglas Corp.,* 148 F.3d 347, 349-50 (4th Cir.1998) (collecting cases). By making out the elements of the defense, as discussed below, the defendants would show that the conflict exists.

FN10. As an initial matter, the defendants contest whether the plaintiffs' claims are, in fact, limited to failure-to-warn issues. *See, e.g.,* McDonnell Douglas Opp. at 24 (document # 24). The Court concludes, as did Magistrate Judge Dein, that the Complaint, taken at its word, incorporates only a failure-to-warn theory. *See Hilbert v. Aeroquip,* 486 F.Supp.2d at 138 & n. 1.

FN11. As to the second factor, the defendants do not rely on government-required warnings, but rather claim that the government prevented them from issuing warnings altogether. The defendants have met this factor for present purposes.

The third factor-that the contractor warned the government about dangers in the equipment's use known to the contractor but not the government-is intended to prevent contractors from withholding information from the government in order to shield them from liability. *See Boyle,* 487 U.S. at 512-13, 108 S.Ct. 2510.Here, the defendants argue that the government-not the private contractor-had superior knowledge about the hazards of asbestos. *See* McDonnell Douglas Opp. at 21 (document # 24); Northrop Grumman Opp. at 20-22 (document # 32); Raytheon Opp. at 14-15 (document # 35).*Compare* Dep. of Walter Melvin, M.D. ("Melvin Dep.") at 56, Exh. 73 (document # 38) (asserting that the U.S. Air Force had some knowledge that asbestos caused health problems as early as 1952), *and* Aff. of Alvin F. Meyer, Jr. ("Meyer Aff.") at 3, Exh. 75 (document # 38) (same), *with* Aff. of Maurice Donaldson ("Donaldson Aff.") at 5-6, Exh. "F" to Raytheon Opp. (document # 35) (asserting that he did not have knowledge of the dangers of asbestos during his tenure at Beech, predecessor to Raytheon, and that to the best of his knowledge, neither did anyone else). While the defendants' evidence here is thin, the Court finds it sufficient to make this element of the defense colorable.

FN12. The defendants also raise a separate argument to prove that the government controlled the warnings. Because the government dictated the use of asbestos and because the government knew much more about the hazards of asbestos than did the contractors, they argue, they should not be held responsible for failing to warn. While that might be a viable defense to the plaintiffs' suit, it is not the federal contractor defense. It is, rather, a state-of-the-art defense and a rebuttal to the plaintiffs' contention of causation.

FN13. They also add that the military did not require it to provide warnings. Donaldson Aff. at 7, Exh. "F" to Raytheon Opp. (document # 35). But as they do not elaborate how a non-requirement could possibly conflict with an affirmative state-law requirement, that contention is legally insufficient to make out a colorable federal defense.

FN14. McDonnell Douglas also submitted a substantial amount of other evidence, including contracts, but it is unclear what, if anything, that evidence has to do with the plaintiffs' failure-to-warn claim. For example, the exhibits include several iterations of the A-4 contract, but none of them appear to include any restrictions on warnings. Thus, the Court finds the balance of McDonnell Douglas' evidence irrelevant to the instant matter.

FN15. Like McDonnell Douglas, Northrop also offered other evidence that does not appear relevant to the plaintiffs' failure-to-warn claims.

D.Mass.,2008.
Hilbert v. McDonnell Douglas Corp.
--- F.Supp.2d ----, 2008 WL 53266 (D.Mass.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.