# Exhibit K

To Memorandum in Support of Plaintiffs' Motion For Remand
C.A. No. 08-043S

LEXSEE 1999 U.S. DIST. LEXIS 4433

Cited
As of: Feb 15, 2008

**DAVID E. MEGILL and JENNY LEE W. MEGILL, his wife, Plaintiffs, v. WORTHINGTON PUMP, INC., et al., Defendants.**

**Civil Action No. 98-76-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***1999 U.S. Dist. LEXIS 4433***

**March 26, 1999, Decided**

**DISPOSITION:** [*1] Plaintiffs' motion to remand granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff brought an action in state court against defendant, who supplied equipment to United States Navy vessels, alleging that he was injured by exposure to asbestos in the equipment through defendant's' negligence. Defendant filed a notice of removal from state to federal court pursuant to *28 U.S.C.S. § 1442(a)(1)*, and plaintiff filed a motion to remand.

**OVERVIEW:** Plaintiff brought an action in state court alleging that he was injured through exposure to asbestos manufactured by defendant while working on board United States Navy vessels. Plaintiff asserted that defendant was negligent in failing to substitute other materials for asbestos, to warn, and to adequately research the dangers of asbestos. Defendant filed a notice of removal pursuant to *28 U.S.C.S. § 1442(a)(1)*. Plaintiff filed a motion to remand to state court, which the court granted. It held that to establish removal jurisdiction under *28 U.S.C.S. § 1442(a)*, a defendant must establish that it was a person within meaning of the statute, that plaintiff's claims were based upon defendant's conduct acting under a federal office, that it raised a colorable federal defense, and that there was a causal nexus between claims and the conduct performed under color of a federal office. The court concluded that because defendant had not established that the U.S. Navy prohibited it from effecting product safety, there was no causal connection between plaintiff's claims and the conduct performed under color of a federal office and thus there was no colorable federal defense.

**OUTCOME:** The court granted plaintiff 's motion to remand his action, in which he alleged exposure to asbestos containing-equipment on United States Navy vessels, to state court, after defendant removed the action to federal court. The court held that because there was no causal connection between plaintiff's claims and the conduct performed under color of a federal office, there was no colorable federal defense.

**CORE TERMS:** asbestos, contractor, specifications, removal, federal officer, warning, pump, state law, federal office, asbestos-containing, manufacture, colorable, vessel, color, distribute, state tort, causal connection, supplied, military, naval, exposure, gasket, failure to warn, military equipment, direct orders, design defect, supervised, discovery, civilian, removing

**LexisNexis(R) Headnotes**

***Civil Procedure > Removal > Basis > General Overview***
[HN1] See *28 U.S.C.S. § 1442(a)(1)*.

***Civil Procedure > Jurisdiction > General Overview***
***Governments > Federal Government > Claims By & Against***
***Governments > Federal Government > Employees & Officials***
[HN2] Where a defendant attempts to remove litigation from state to federal court pursuant to the federal officer removal statute, *28 U.S.C.S. § 1442(a)(1)*, it is defendant's burden to demonstrate that subject matter jurisdiction exists and that removal is proper. There is a distinction between the removal provisions of § 1441, which are to be strictly construed against removal and pursuant to which all doubts should be resolved in favor of remand, and the provisions of *§ 1442(a)*, the federal officer removal statute, which are to be broadly construed.

***Civil Procedure > Removal > Basis > General Overview***
***Governments > Federal Government > Claims By & Against***
[HN3] To establish removal jurisdiction under *28 U.S.C.S. § 1442(a)*, a defendant must establish that: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

***Torts > Products Liability > Design Defects***
***Torts > Products Liability > Duty to Warn***
***Torts > Public Entity Liability > Immunity > Sovereign Immunity***
[HN4] Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the discretionary function would be frustrated - i.e., they assure that the design feature in question was considered by a government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability. This analysis has been applied in failure to warn cases.

***Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution***
***Torts > Products Liability > Duty to Warn***
***Torts > Public Entity Liability > Liability > General Overview***
[HN5] The government contractor defense pre-empts state tort law when the state-imposed duty of care that is the asserted basis of the contractor's liability is precisely contrary to the duty imposed by the government contract. In order to establish that this displaces any state law duty to warn, defendant must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear that the requirement of government approval of reasonably precise specifications mandates that the federal duties be imposed upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, and thus that the government itself dictated the content of the warnings meant to accompany the product.

**COUNSEL:** For plaintiffs: Robert Jacobs, Esquire, Vincent J.X. Hedrick, II, Esquire, Jacobs & Crumplar, Wilmington, Delaware.

For Worthington Pump, Inc., defendant: Christian J. Singewald, Esquire, White & Williams, Wilmington, Delaware.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Dated: March 26, 1999

Wilmington, Delaware

Sue L. Robinson, District Judge

**I. INTRODUCTION**

Plaintiffs David E. Megill and Jenny Lee W. Megill brought suit against numerous defendants in the Superior Court of the State of Delaware in and for New Castle County. In their complaint, it is alleged that plaintiff David E. Megill was exposed to asbestos and asbestos-containing products and that plaintiffs were injured thereby. The complaint contains allegations that Worthington Pump, Inc. ("Worthington") and other defendants were

> at all times pertinent directly or indirectly engaged in the mining, manufacturing, distribution, sales, licensing, leasing, installation, removal or use of asbestos and asbestos-containing products. They were also engaged in the development, manufacture, distribution, sales, [*2] licensing or leasing of equipment procedures and/or technology necessary to mine, manufacture, sell, distribute, install, remove and the use of asbestos and asbestos-containing products.

(D.I. 2, Ex. A, 8) Plaintiffs further allege that

> the defendants were negligent in conducting the above activities in that despite the fact that the defendants knew or should have known that asbestos exposure could result in serious injury, disease and/or death they:
>
> (a) Failed to substitute, suggest, promote or require the substitution of materials other than asbestos;
>
> (b) Failed to adequately warn all the potential victims of asbestos including the plaintiff as well as other users, bystanders, household members and members of the general public of the risks of asbestos;
>
> (c) Failed to adequately test, research and investigate asbestos and/or its effects prior to sale, as to use, and/or exposure of the plaintiff and others similarly situated;
>
> (d) Failed to adequately package, distribute and use asbestos in a manner which would minimize the escape of asbestos fibers therefore adding to the exposure of the plaintiff and others similarly situated;
>
> (e) Failed [*3] to take adequate steps to remedy the above failure, including but not limited to recall of asbestos and asbestos products, to conduct research as to how to cure or minimize asbestos injuries, to distribute asbestos so as to render it safe or safely remove the asbestos now in place.

(D.I. 2, Ex. A, 13)

Through preliminary discovery, defendant Worthington determined that plaintiff David Megill was exposed to its products while working on board United States Navy vessels. Based on this information, Worthington filed a notice of removal in February 1998 pursuant to [HN1] *28 U.S.C. § 1442(a)(1)*, which provides in relevant part that

> [a] civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

Plaintiffs responded thereto by filing a motion to remand. Following limited [*4] discovery, briefing was completed.

For the reasons stated below, plaintiffs' motion to remand (D.I. 5) shall be granted.

## II. FACTS

The relevant facts of record are not in dispute. Defendant Worthington supplied various pumps to the U.S. Navy for use on naval vessels. As averred by John P. McAdams,

> all Navy combat vessel equipment, including Worthington pumps, were built according to U.S. Navy and Military specifications under the supervision of Naval officers and civilian employees. Such equipment was approved for installation aboard these vessels exclusively by the Navy and its designated officers and employees.

(D.I. 2, Ex. G, 13) According to the military specifications included in the record, asbestos was specifically mentioned twice: 1) paragraph 3.2.8 provides that "all packing and gaskets shall be in accordance with Drawing B-153" which, in turn, specifies "asbestos metallic cloth, sheet" and "asbestos metallic cloth, gasket;" and 2) paragraph 3.3.9.14 provides that "pump casing joints shall be made up using compressed asbestos sheet gaskets." (See. e.g., D.I. 2, Ex. D to Ex. F and Ex. A to Ex. G) The court has discerned no evidence that the specifications [*5] address the issues of product research (aside from quality assurance and performance testing), packaging, labels, and warnings as they relate to asbestos. Similarly, there is no evidence of record that Worthington's commercial products (which comport with commercial specifications) in any way deviated from the products sold to the Navy (which comported with military specifications). (D.I. 44 at 38-39, 115, 124)

## III. ANALYSIS

As noted above, [HN2] defendant Worthington has removed this litigation from state to federal court pursuant to the federal officer removal statute, *28 U.S.C. § 1442(a)(1)*. Consequently, it is Worthington's burden to demonstrate that subject matter jurisdiction exists and that removal was proper. *Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)*. In this regard, the Third Circuit apparently has drawn a distinction between the removal provisions of [section] 1441, which "'are to be strictly construed against removal and all doubts should be resolved in favor of remand,'" id. (quoting *Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987))*, and the provisions of the federal officer removal statute, which [*6] are to be "broadly construed." *Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259, 1262 (3d Cir. 1994)*. [HN3] To establish removal jurisdiction under *§ 1442(a)*, a defendant such as Worthington must establish that:

> (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998)*. See *Mesa v. California, 489 U.S. 121, 129, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989)*.

With respect to the first of the above requirements, the court finds that, as a corporation, defendant Worthington is a "person" within the meaning of the federal officer removal statute. See *Good v. Armstrong World Indus., Inc., 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996)*.

The second factor has been described as requiring "a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations." [*7] *Id. at 1128*. In Good, as in the case at bar, the removing defendant offered evidence that it "manufactured and supplied the equipment

pursuant to strict direction and control of the United States Navy/Department of the Navy" through "contract documents, design and construction drawings, written specifications, and personal oversight of Westinghouse's work by Naval officers and by civilian employees of the U.S. Navy." *Id. at 1128-29*. Recognizing that "the United States Navy and many individuals employed by the Navy worked with Westinghouse," the court in Good nevertheless concluded that Westinghouse had not demonstrated "that the Secretary of the Navy or any other federal officer directly controlled and supervised the work of Westinghouse." Id. The court in Good further found that none of the documents relied on by Westinghouse even mentioned asbestos, bolstering the court's conclusion in that case that no federal officer had "specified the use of asbestos in the design and manufacture" of the Westinghouse products at issue. *Id. at 1130*.

Following the Third Circuit's mandate to broadly construe the federal officer removal statute, the court finds that Worthington [*8] has "set forth the substance of the regulations and specifications" which required "the use of asbestos in the design and manufacture" of its pumps supplied to the Navy. *Id. at 1130*. Under these circumstances, the court concludes that defendant has adequately demonstrated that it acted "pursuant to an officer's direct orders or comprehensive and detailed regulations." *Id. at 1128*.

The third factor requires a removing defendant to show that there is a colorable federal defense to a plaintiff's claims. Defendant Worthington asserts the federal common law government contractor defense, as enunciated by the Supreme Court in *Boyle v. United Technologies Corp., 487 U.S. 500, 101 L. Ed. 2d 442, 108 S. Ct. 2510 (1988)*. [1] The Supreme Court, in deciding when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect, held in Boyle that

> [HN4] liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United [*9] States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated - *i.e.*, they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Id. at 512*.

1 The record contains no evidence that the pumps sold by Worthington to the U.S. Navy were different from those pumps sold commercially. Because the Third Circuit in *Carley v. Wheeled Coach, 28 V.I. 310, 991 F.2d 1117 (3d Cir. 1993)*, concluded that the government contractor defense should be available to all contractors who are "compelled by a contract to perform an obligation for the United States," even where a nonmilitary product is at issue, *991 F.2d at 1120*, the Boyle analysis is still appropriate.

[*10] The Boyle analysis has been applied in failure to warn cases, such as the one at bar. See e.g., *In re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992)*; *In re Joint E. & S. Dist. New York Asbestos Litig., 897 F.2d 626 (2d Cir. 1990)*. Indeed, the determination of whether defendant has demonstrated a colorable defense under Boyle collapses into the analysis required for determining whether defendant has shown a causal connection between plaintiffs' claims and the conduct performed under color of a federal office.

The Supreme Court in Boyle held that [HN5] the government contractor defense pre-empts state tort law when "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is **precisely contrary** to the duty imposed by the Government contract. . . ." *Boyle, 487 U.S. at 509* (emphasis added). As recognized by the courts above, in order to establish that Boyle displaces any state law duty to warn, defendant

> must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law. Moreover, it seems clear to us that Boyle's requirement

[*11] of government approval of "reasonably precise specifications" mandates that the federal duties be **imposed** upon the contractor. The contractor must show that whatever warnings accompanied a product resulted from a determination of a government official, . . . and thus that the Government itself "dictated" the content of the warnings meant to accompany the product.

In *Re Joint E. & S. Dist. New York Asbestos Lit., 897 F.2d at 630.* In In Re New York, as well as in In Re Hawaii, the respective courts found that the government in no way had prohibited the contractors from placing warnings on their asbestos-containing products. Both courts concluded that "there thus existed no conflict between [the contractors'] state law duty to provide adequate warnings to the users of their [products] and the [product design] conditions imposed on them pursuant to the agreements they had entered into with the Government." In *Re Hawaii, 960 F.2d at 812.* To put the point differently, a crucial element of both the Boyle defense and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the federal [*12] officer/government and the conduct deemed offensive in the plaintiff's complaint.

In the case at bar, plaintiffs assert liability based on the following conduct: 1) failure to substitute other materials for asbestos; 2) failure to warn; 3) failure to adequately research the dangers of asbestos; 4) failure to adequately package, distribute and use asbestos; and 5) failure to remedy the above failures. Worthington has not established that the U.S. Navy prohibited it from substituting materials or otherwise changing the specifications, so long as protocol was followed. (D.I. 44 at 25-32, 41-6) Likewise, there is no evidence of record that the U.S. Navy prohibited defendant from, or otherwise directed defendant in, issuing warnings or researching and effecting product safety. Under these circumstances, the court concludes that there is no causal connection between plaintiffs' claims and the conduct performed under color of a federal office; thus, there is no colorable federal defense.

## IV. CONCLUSION

For the reasons stated, plaintiffs' motion to remand is granted.

An order shall issue.