# Exhibit N

To Memorandum in Support of Plaintiffs' Motion For Remand
C.A. No. 08-043S

LEXSEE 2002 U.S. DISTRICT LEXIS 22036

Cited
As of: Feb 15, 2008

**BRENT F. FILSON and ELDA MAGALIS RIERA-FILSON, Individually and as Trustees of the Brent Filson Communications Retirement Plan f/k/a Brent Filson Defined Benefit Pension Plan and Trust, Plaintiffs v. SUE C. LANGMAN, HORACE E. LAPRADE, TERESA A. LAPRADE, RICHARD P. ZAMPICENI d/b/a ZAMPICENI ASSOCIATES, METROPOLITAN LIFE INSURANCE COMPANY, NEW ENGLAND LIFE INSURANCE COMPANY, NEW ENGLAND SECURITIES CORPORATION, DANIEL LUSSIER, LISA LUSSIER, MARK R. POUDRIER, and DIANE PATRICK POUDRIER, Defendants**

**CIVIL ACTION NO. 99-30021-FHF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

***2002 U.S. Dist. LEXIS 22036***

**November 13, 2002, Decided**

**DISPOSITION:** [*1] Defendants' motions for summary judgment with respect to Filsons' IAA claim for damages in Count III were sua sponte granted. Summary judgment with respect to Filsons' IAA claim for damages against defendant Horace LaPrade in Count III was granted. Filsons' remaining pendent state law claims to state court were remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff investors brought suit in state court for claims arising from the failure of an investment strategy and the case was removed. Two defendants moved separately for summary judgment on six of the investors' 10 state law claims and on their federal law claim alleging that defendants violated § 206 (*15 U.S.C.S. § 80b-6*) of the Investment Advisers Act of 1940 (IAA).

**OVERVIEW:** The court found it appropriate to address only those parts of defendants' summary judgment motions relating to the investors' federal law claim. The investors demanded judgment for damages plus interest and costs, and such other relief as the court deemed appropriate. The only private remedies available under the IAA remained rescission of an investment advisers contract and restitution of fees paid thereunder under § 215 of the IAA. The investors failed to advance proper grounds for relief. Their complaint asked only for "damages" under § 206 and failed to ask for rescission and restitution under § 215. The court took the investors' failure to advance a theory of relief pursuant to § 215 of the IAA to mean that they have waived their rights to rescission and restitution, and this was fatal to the investors' only federal law claim. The court found it appropriate to dismiss sua sponte the investors' federal IAA claim against a nonmoving defendant since it too was unwinnable. The substantial questions of state law weighed in favor of a Massachusetts state court deciding these issues, thus the court found it appropriate to remand the remainder of the case to state court.

**OUTCOME:** Defendants' motions for summary judgment with respect to the investors' IAA claim for damages was granted. Summary judgment with respect to the investors' IAA claim for damages against the non-moving defendant was granted and the investors' remaining pendent state law claims were remanded to state court.

**CORE TERMS:** summary judgment, law claims, restitution, rescission, investment advisers, private right of action, jurisdictional, federal claim, sua sponte, fraudulent concealment, eliminated, pendent, enjoin, matter of law, state law, federal question, supplemental jurisdiction, material facts, fiduciary's, equitable, discovery, remanding, monetary, life insurance, suits in equity, fiduciary duties, reasonable jury, fees paid, transacts business, statutes of limitations

**LexisNexis(R) Headnotes**

***Civil Procedure > Summary Judgment > Standards > Genuine Disputes***
***Civil Procedure > Summary Judgment > Standards > Materiality***
***Civil Procedure > Summary Judgment > Supporting Materials > General Overview***
[HN1] A court may grant summary judgment for the defendants if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, establish that there is no genuine issue as to any material fact and that the moving parties, the defendants, are entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. "Material" means that the non-moving party must point to a contested fact that has the potential to change the outcome of the suit under the governing law if a reasonable jury were to resolve the dispute over the contested fact in the nonmoving party's favor. "Genuine" means that the nonmoving party must point to competent evidence about a fact that would justify a reasonable jury deciding the issue in its favor.

***Civil Procedure > Summary Judgment > Opposition > Memoranda in Opposition***
***Securities Law > Investment Advisers > Definitions***
***Securities Law > Investment Advisers > Void Contracts***
[HN2] A limited private right of action for rescission and restitution is implied under § 215 of the Investment Advisers Act of 1940 (IAA), but a private right of action for damages is not implied under § 206 (*15 U.S.C.S. § 80b-6*) of the IAA.

***Securities Law > Investment Advisers > Definitions***
[HN3] See *15 U.S.C.S. § 80b-14.*

***Governments > Legislation > Interpretation***
[HN4] A court must look in the language or structure of the statute, or in the circumstances of its enactment to determine whether Congress actually intended to afford a party a private right of action for damages.

***Contracts Law > Types of Contracts > Investment Contracts***
***Securities Law > Investment Advisers > Compensation***
***Securities Law > Investment Advisers > Void Contracts***
[HN5] The only private remedies available under the Investment Advisers Act of 1940 (IAA) remain rescission of an investment advisers contract and restitution of fees paid thereunder under § 215 of the IAA.

***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
***Civil Procedure > Summary Judgment > Notices***
***Civil Procedure > Summary Judgment > Standards > General Overview***
[HN6] Although demands for relief may be read broadly, the notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

***Civil Procedure > Summary Judgment > Standards > Appropriateness***
[HN7] District courts have the power to grant summary judgment sua sponte.

***Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview***
***Governments > Courts > Judicial Comity***
[HN8] In a federal question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion. While dismissal may sometimes be appropriate if the federal question claim is eliminated early in the proceedings, each case must be gauged on its own facts. Having granted summary judgment on the only federal claim, a court must reassess its jurisdiction, engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue. A court must balance comity, judicial economy, convenience, fairness, and the like.

***Governments > Courts > Authority to Adjudicate***
***Governments > Legislation > Statutes of Limitations > General Overview***
[HN9] The decisions of state courts are definitive pronouncements of the will of the states as sovereigns.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview***
***Governments > Courts > Judicial Comity***
***Governments > Legislation > Statutes of Limitations > General Overview***
[HN10] Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

**COUNSEL:** For Brent F Filson, Elda Magalis Riera-Filson, PLAINTIFFS: Donald W Goodrich, Donovan & O'Connor, Adams, MA USA.

For Sue C Langman, DEFENDANT: James F Martin, Robinson, Donovan, Madden & Barry, Springfield, MA USA.

For Horace E Laprade, Teresa A Laprade, DEFENDANTS: Edward D Etheredge, Etheredge & Steuer, Northampton, MA USA.

For Richard O Zampiceni, Metropolitan Life Insurance Company, New England Life Insurance Co, New England Securities Corporation, DEFENDANTS: Edwin F Landers, Jr, Sherburne, Powers & Needham, Boston, MA USA.

For Richard O Zampiceni, Metropolitan Life Insurance Company, New England Life Insurance Co, New England Securities Corporation, DEFENDANTS: William T Bogaert, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Boston, MA USA.

For Daniel Lussier, Lisa Lussier, Mark R Poudrier, Diane Patrick Poudrier, DEFENDANTS: Edward

[*2] J Ryan, Jr, Ryan, Bourdreau & Kirkpatrick, South Hadley, MA USA.

For Teresa A Laprade, Horace E Laprade, COUNTER-CLAIMANTS: Edward D Etheredge, Etheredge & Steuer, Northampton, MA USA.

For Brent F Filson, Elda Magalis Riera-Filson, COUNTER-DEFENDANTS: Donald W Goodrich, Donovan & O'Connor, Adams, MA USA.

**JUDGES:** Frank H. Freedman, Senior United States District Judge.

**OPINION BY:** Frank H. Freedman

**OPINION**

MEMORANDUM AND ORDER

November 13, 2002

FREEDMAN, S.J.

I. INTRODUCTION

Brent Filson and his wife Elda Magalis Riera-Filson (the "Filsons") bring suit for various claims arising from the failure of an investment strategy. Before the Court are the separate summary judgment motions of Sue Langman and of Richard Zampiceni d/b/a Zampiceni Associates, Metropolitan Life Insurance Company as the successor in interest to New England Mutual Life Insurance Company ("New England Mutual"), New England Life Insurance Company, and New England Securities Corporation ("NES") (collectively, the "defendants"). The defendants assert similar grounds for summary judgment, so the Court will consider the motions collectively.

I. BACKGROUND

Mr. Filson began writing speeches for General Electric Plastics [*3] executives in 1984. Though erratic, the speech writing appointments were lucrative. During 1985, the first full year of Mr. Filson's speech writing, the family reported earning $ 128,619.42, a nearly thirteen-fold increase from the previous year. Naive in financial matters and unsure of how long the writing appointments would last, the Filsons sought help in investing for their future. In the waning summer of 1986 the Filsons met with Sue Langman and later with Horace LaPrade, an attorney who no longer practiced law. Both Langman and LaPrade were insurance professionals working out of Zampiceni Associates. Richard Zampiceni operated Zampiceni Associates as a sole proprietorship that sold various investment products, including life insurance and securities, to its clients. Zampiceni Associates was a general agency for New England Mutual and a branch office of NES. Langman and LaPrade were licensed agents of New England Mutual and registered representatives with the Securities and Exchange Commission through NES.

Over the course of a decade, the Filsons relied on Langman and LaPrade to design and implement a financial strategy that in the end imploded. The financial strategy induced [*4] the Filsons to purchase costly investments recommended by Langman and LaPrade and to borrow large sums of money to satisfy their family's ongoing cash flow needs. These borrowing transactions later grew more complex, and the Filsons allege that Langman and LaPrade converted some funds for their own use. The Filsons also partnered with Langman and LaPrade in a questionable real estate venture. Investment after investment failed, yet the Filsons continued to depend on Langman and LaPrade for financial advice until August 1996.

The Filsons filed suit against the defendants in Berkshire County Superior Court on December 28, 1998. Among other things, the Filsons allege that Langman and LaPrade, as the Filsons' investment advisers, breached their fiduciary duties, rendered negligent investment advice, and employed a scheme to defraud the Filsons. Langman removed the case to this Court on February 10, 1999, invoking federal question jurisdiction pursuant to *28 U.S.C. §§ 1441 et seq.*, and supplemental jurisdiction pursuant to *28 U.S.C. § 1367(a)*, because the Filsons' state law claims arose from the same case or controversy as their federal

[*5] law claim.

Before this Court are the defendants' summary judgment motions, the Filsons' motion to strike and supplement facts to the defendants' jointly-filed concise statement of undisputed material facts, and the defendants' motions to strike the Filsons' supplemental facts. The defendants move for summary judgment on six of the Filsons' ten state law claims and on the Filsons' lone federal law claim. The Court finds it appropriate, however, to address only those parts of the defendants' summary judgment motions relating to the Filsons' federal law claim. See *Camelio v. American Federation, 137 F.3d 666, 672-73 (1st Cir. 1998)* (remand to state court of all state law claims is proper where federal law claims eliminated).

III. STANDARD OF REVIEW

[HN1] This Court may grant summary judgment for the defendants if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," establish that there is no genuine issue as to any material fact and that the moving parties, the defendants, are entitled to a judgment as a matter of law. See *Fed. R. Civ. P. 56(c)*. By "material" the Court means that the Filsons must point [*6] to a contested fact that "has the potential to change the outcome of the suit under the governing law" if a reasonable jury were to resolve the dispute over the contested fact in the Filsons' favor. *McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)* (citations omitted). By "genuine" the Court means that the Filsons must point to competent evidence about a fact that would justify a reasonable jury deciding the issue in the Filsons' favor. Id.

IV. DISCUSSION

A. Federal Investment Advisers Act

The Filsons allege that the defendants violated Section 206 of the Investment Advisers Act of 1940, *15 U.S.C. § 80b-6* (the "IAA"), and demand judgment for "damages plus interest and costs, and such other relief as this court deems appropriate." Complaint at 15. The defendants move for summary judgment because private remedies under the IAA are limited to rescission of an investment advisers contract and restitution of fees paid thereunder. See *Transamerica Mortgage Advisers, Inc. v. Lewis, 444 U.S. 11, 24-25* & n.14, *444 U.S. 11, 62 L. Ed. 2d 146, 100 S. Ct. 242 (1979)*. As such, the defendants deny the existence of an [*7] investment advisers contract and note that the Filsons' complaint fails to seek rescission and restitution under Section 215 of the IAA. The Court will assume without deciding that an investment advisers contract existed and will analyze whether the Filsons are entitled to damages under the IAA.

In Transamerica, the Supreme Court held that [HN2] a limited private right of action for rescission and restitution was implied under Section 215 of the IAA, but a private right of action for damages was not implied under Section 206. See *Transamerica, 444 U.S. at 19*. The Filsons argue that the 1990 amendments to the IAA entitle them to "*more than* [the] purely restitutionary damages" contemplated by Transamerica. Filsons' Memorandum in Opposition to Summary Judgment at 28 (emphasis in original). While many courts have explored the scope of private rights of action for damages under the IAA, see e.g., *Transamerica, 444 U.S. 11, 62 L. Ed. 2d 146, 100 S. Ct. 242*; *Goldstein v. Malcolm G. Fries & Associates, Inc., 72 F. Supp. 2d 620 (E.D. Va. 1999)*; *Laird v. Integrated Resources, Inc., 897 F.2d 826 (5th Cir. 1990)*; *Levine v. Futransky, 636 F. Supp. 899, 901-02 (N.D.Ill. 1986)*, [*8] none have considered what effect, if any, the 1990 amendments to the IAA have on private rights of action under the IAA.

The Filsons draw attention to Section 214, the section defining district court jurisdiction in IAA cases, see *15 U.S.C. § 80b-14* (the "jurisdictional section"), and note that Congress unambiguously expanded district court jurisdiction in IAA cases. The version of the jurisdictional section that the Supreme Court considered in Transamerica read:

> The district courts of the United States . . . shall have jurisdiction of violations of this subchapter . . . and, concurrently with State and Territorial courts, of all suits in equity to enjoin any violation of this subchapter . . . . Any suit or action to enjoin any violation of this subchapter . . . may be brought in any [of the district courts wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is an inhabitant or transacts business . . . .

*15 U.S.C. § 80b-14 (1979)*, cited in *Transamerica, 444 U.S. at 22 n.11*. In 1990, Congress amended the jurisdictional section to read:

[*9]

> [HN3]
>
> The district courts of the United States . . . shall have jurisdiction of violations of this subchapter . . . and, concurrently with State and Territorial courts, of all suits in equity *and actions at law brought to enforce any liability or duty created by, or* to enjoin any violation of this subchapter . . . . Any suit or action to *enforce any liability or duty created by, or* to enjoin any violation of this subchapter . . . may be brought in any [of the district courts wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is an inhabitant or transacts business . . . .

*15 U.S.C. § 80b-14 (2002)* (emphasis supplied). The Supreme Court in Transamerica specifically pointed to the absence of language similar to that which Congress added in 1990 as an indication "that Congress was simply unwilling to impose any potential monetary liability on a private suitor." *Transamerica, 444 U.S. at 21*. The Filsons now argue that the addition of such language indicates an intent to expand district court jurisdiction to encompass a private litigant's action at law to enforce liabilities [*10] and duties created by the IAA. The Court finds this contention tenuous.

[HN4] The Court must look "in the language or structure of the statute, or in the circumstances of its enactment" to determine whether Congress actually intended to afford the Filsons a private right of action for damages. See *Transamerica, 444 U.S. at 18*; see also *Thompson v. Thompson, 484 U.S. 174, 180, 98 L. Ed. 2d 512, 108 S. Ct. 513* (private rights of action may be implied from "the context, language, and legislative history" of a statute). While the addition of such language into the IAA may bolster the Filsons' position slightly, nothing else in the IAA's legislative history indicates that Congress intended the 1990 amendments to have such a sweeping effect.

Congress amended the IAA's jurisdictional provision when it passed the Securities Law Enforcement Remedies Act of 1990, Pub. L. No. 101-429 (the "SERA"). Congress enacted the SERA for the narrow purpose of arming the Securities and Exchange Commission ("SEC") "with new remedial authority that will enable the agency to operate its enforcement program in a more flexible manner." H.R. Rep. No. 101-616, at 13 (1990), reprinted [*11] in 1990 U.S.C.C.A.N. 1379, 1380. The SERA's specific amendments to the IAA granted the SEC power to assess civil monetary penalties in administrative proceedings, to order an accounting and disgorgement of profits, to issue cease-and-desist orders, and to seek monetary penalties in injunctive actions in district court for violations of the IAA and of the SEC's cease-and-desist orders. H.R. Rep. No. 101-616, at 36-37 (1990), reprinted in 1990 U.S.C.C.A.N. at 1403-04. The amendment to the jurisdictional section upon which the Filsons base their arguments is nothing more than a "conforming amendment" intended "to expand the jurisdiction of the district courts . . . to include actions at law, as well as equitable or injunctive actions, under [the IAA]" with respect to the SEC's newly expanded enforcement powers. H.R. Rep. No. 101-616, at 37 (1990), reprinted in 1990 U.S.C.C.A.N. at 1404. The House Report explains that this provision was "necessitated by" the addition of Section 209(e), which allows the SEC to seek civil penalties in district courts. See id.

Nothing in the SERA's structure indicates a further intent to open the courthouse doors to private litigants seeking [*12] damages beyond restitution. To the contrary, Congress designed an intricate regulatory scheme, handing the SEC power "to achieve the appropriate level of deterrence in each case and thereby maximize the remedial effects of [the SEC's] enforcement actions." H.R. Rep. No. 101-616, at 13 (1990), reprinted in 1990 U.S.C.C.A.N. at 1380. Implying a more expansive private right of action would upset the delicate balance that Congress intended. Courts implied a private right of rescission and restitution under the IAA for eleven years before Congress amended the IAA in 1990. See *Transamerica, 444 U.S. 11, 62 L. Ed. 2d 146, 100 S. Ct. 242*. The limitations of this private remedy having been apparent, it seems Congress opted for an alternate, more carefully gauged approach. The Court finds that [HN5] the only private remedies available under the IAA remain rescission of an investment advisers contract and restitution of fees paid thereunder under Section 215.

The Court also finds that the Filsons have failed to advance proper grounds for relief. [HN6] Although demands for relief may be read broadly, "the notice pleading standard relies on liberal discovery rules and summary judgment

[*13] motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swiekiewicz v. Sorema, 534 U.S. 506, 512-13, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002).* Thus, summary judgment becomes a juncture at which the Filsons must frame their legal theory for relief properly. The Filsons' complaint asks only for "damages" under Section 206 and fails to ask for rescission and restitution under Section 215. Compare *Goldstein, 72 F. Supp. 2d at 625* (dismissing plaintiff's IAA claim for "compensatory damages" pursuant to Section 206 because it failed to ask for rescission and restitution pursuant to Section 215) with *Laird, 897 F.2d at 840-41* (allowing plaintiff's IAA claim to go forward because the plaintiffs specifically asked for "relief ... pursuant to [Section 215] of the [IAA]"). In their Memorandum in Opposition to Summary Judgment, the Filsons concede that "they are not seeking rescission of the investment advisor contract" but maintain that they are entitled to relief because of the 1990 amendments to Section 214 of the IAA. Filsons' Memorandum in Opposition to Summary Judgment at 27-28. Although the Filsons suggest [*14] that "their demand for relief *includes* restitutionary damages," the Filsons fail to invoke their entitlement under the proper section, Section 215. *Id. at 28* (emphasis in original). The Court takes the Filsons' failure to advance a theory of relief pursuant to Section 215 of the IAA to mean that they have waived their rights to rescission and restitution, and the Court finds this fatal to the Filsons' only federal law claim. Cf. *Goldstein, 72 F. Supp. 2d at 625.*

The defendants are entitled to a judgment as a matter of law since no set of facts set forth by the Filsons can support a private claim for damages under Section 206 of the IAA. Therefore, the Court will grant partial summary judgment for the defendants with respect to the Filsons' IAA claim in Count III. See *Fed. R. Civ. P. 56(c).*

B. IAA Claim Against Mr. LaPrade

The defendant Horace LaPrade did not join any of the other defendants' motions for summary judgment nor did he file one of his own. His fate, however, is intertwined with the other defendants, and the Court finds it appropriate to dismiss sua sponte the Filsons' federal IAA claim against LaPrade, since it too is unwinnable.

[*15] See *Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996)* [HN7] ("district courts have the power to grant summary judgment sua sponte"). Sua sponte summary judgment is appropriate here because, having reached the summary judgment stage of the proceedings, "discovery [has] sufficiently advanced [such] that the parties have enjoyed a reasonable opportunity to glean the material facts." Id. Second, having had the full opportunity to oppose summary judgment on their IAA claims against the other defendants, the Filsons had "appropriate notice and a chance to present [their] evidence on the essential elements" of the IAA claim. Id. Therefore, the Court will issue an order of partial summary judgment sua sponte with respect to the Filsons' IAA claim in Count III against LaPrade.

C. Pendent State Law Claims

Having disposed of the Filsons' only federal claim, the Court must decide whether to exercise supplemental jurisdiction over the remaining pendent state law claims. [HN8] "In a federal question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets [*16] the stage for an exercise of the court's informed discretion." *Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).* "While dismissal may sometimes be appropriate if the federal question claim is eliminated early in the proceedings, each case must be gauged on its own facts." *Id. at 257.* Having granted summary judgment to the defendants on the federal claim, this Court "must reassess its jurisdiction, this time engaging in a pragmatic and case-specific evaluation of a variety of considerations that may bear on the issue." *Camelio, 137 F.3d at 672.* The Court must balance "comity, judicial economy, convenience, fairness, and the like." *Roche, 81 F.3d at 257.*

The remaining issues in the summary judgment motions involve deciding when the Filsons' claims began to accrue, whether the statutes of limitations applicable to their claims have run out, and whether the Massachusetts fraudulent concealment statute or some other equitable tolling doctrine tolled the applicable statutes of limitations. These issues are complex, fact-sensitive, and ultimately controlled by Massachusetts law. Even though [*17] the Court understands that [HN9] "the decisions of state courts are definitive pronouncements of the will of the States as sovereigns," *Bush v. Gore, 531 U.S. 98, 112, 148 L. Ed. 2d 388, 121 S. Ct. 525 (2000)*, the Court specifically notes the First Circuit's conflicting application of the Massachusetts fraudulent concealment statute and claim accrual and equitable tolling principles in the fiduciary context. Compare e.g., *Salios v. Dime Savings Bank, 128 F.3d 20, 26-27* (1st Cir. Nov. 3, 1997) (citing *Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 131 (1st Cir. 1987))* (applying a "reasonable diligence" standard where plaintiff alleges fraudulent concealment by a fiduciary under Massachusetts law) and *Kravetz v. United States Trust Co., 941 F. Supp. 1295, 1302-09 (D. Mass. 1996)* (same) with *Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 677 N.E.2d 159, 175 n.26* (Mass. Mar. 13, 1997) (applying an "actual knowledge" standard where plaintiff alleges fraudulent concealment by a fiduciary under Massachusetts law) and *Patsos v. First Albany Corp., 433*

*Mass. 323, 741 N.E.2d 841, 852 (Mass. 2001)* [*18] (declining to find as a matter of law that financial statements satisfied fiduciary's duty of disclosure). An additional complication in this case is that the Filsons allege that one of the defendants, Mr. LaPrade, represented them as legal counsel. See *Demoulas, 677 N.E.2d at 175* (suggesting plaintiff's express trust in defendants' attorneys, their inadequate explanation of documents, and their failure to supply plaintiff with documents as reasons to toll the statute of limitations). Thus, the substantial questions of state law weigh in favor of a Massachusetts state court deciding these issues. See *United Mine Workers v. Gibbs, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)* [HN10] ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Although this case has been on the Court's docket for more than three and one half years and discovery has closed, this Court has not ruled upon any other substantive matters and a pretrial conference has not been held. Viewing the entirety of the circumstances, the Court finds [*19] it appropriate to remand the remainder of this case to state court. See *Carnegie-Melon Univ. v. Cohill, 484 U.S. 343, 351-57, 98 L. Ed. 2d 720, 108 S. Ct. 614 (1988)* (district court has discretion to remand pendent state law claims originally asserted in state court); *Camelio, 137 F.3d at 672-73* (district court should have remanded case to state court after federal law claims eliminated); *Kuehl v. Lafarge Corp., 164 F. Supp. 2d 200 (D. Mass. 2001)* (remanding case to state court after all federal claims eliminated); *Roche v. Town of Wareham, 24 F. Supp. 2d 146 (D. Mass. 1998)* (remanding case after granting summary judgment on federal law claims); *Blick v. Pitney Bowes Management Services, Inc., 1995 U.S. Dist. LEXIS 20005, 1995 WL 791945*, at * 6-7 (D. Mass. Dec. 26, 1995) (remanding case after dismissing all federal law claims on summary judgment because state court was better suited to decide state law issues); see also *28 U.S.C. § 1367(c)* ("district courts may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction [*20] . . . .").

V. CONCLUSION

Accordingly, the Court GRANTS the defendants' motions for summary judgment with respect to the Filsons' IAA claim for damages in Count III (Doc. Nos. 40 and 42), sua sponte GRANTS summary judgment with respect to the Filsons' IAA claim for damages against defendant Horace LaPrade in Count III, and REMANDS the Filsons' remaining pendent state law claims to state court.

It is So Ordered.

Frank H. Freedman

Senior United States District Judge