# I N D E X


| ARTICLE | TITLE | PAGE |
|---|---|---|
| I | Description of the Plant and Laboratory Facilities | 2 |
| II | General Statement of Work and Services | 3 |
| III | Statement of Architect-Engineer Services | 5 |
| IV | Statement of Construction Services | 7 |
| V | Training of Personnel | 8 |
| VI | Operation of the Plant and Process Development Facilities | 8 |
| VII | Operation of Laboratories | 10 |
| VIII | Changes | 11 |
| IX | Title To the Work | 11 |
| X | Workmanship and Materials | 11 |
| XI | Expert Technical Assistance | 12 |
| XII | Estimated Cost and Fixed-Fee | 12 |
| XIII | Cost of the Work | 14 |
| XIV | Payments | 26 |
| XV | Advances | 27 |
| XVI | Annuity Fund | 34 |
| XVII | Records and Accounts, Inspection and Audit | 36 |
| XVIII | Drawings and Other Data | 38 |
| XIX | Special Requirements | 39 |
| XX | Termination | 40 |
| XXI | Disputes | 44 |
| XXII | Convict Labor | 46 |
| XXIII | Labor | 47 |
| XXIV | Accident Prevention | 49 |
| XXV | Notice to Government of Labor Disputes | 49 |
| XXVI | Officials Not to Benefit | 50 |
| XXVII | Covenant Against Contingent Fees | 50 |
| XXVIII | Contractor's Organization | 50 |
| XXIX | Progress Reports and Changes in Personnel | 50 |
| XXX | Loading and Unloading Railway Cars | 51 |
| XXXI | Assignment of Claims | 51 |
| XXXII | Disclosure of Information | 51 |
| XXXIII | Employment of Aliens | 52 |
| XXXIV | Responsibility of Contractor-Contingencies | 53 |
| XXXV | Employees Benefit Fund | 54 |
| XXXVI | Statutory Authorization | 57 |
| XXXVII | Patents | 58 |
| XXXVIII | Term of the Contract | 60 |
| XXXIX | Options | 60 |
| XL | Disposition of Government-Owned Property | 61 |
| XLI | Anti-Discrimination | 62 |
| XLII | Code Terms | 63 |
| XLIII | Definitions | 63 |
| XLIV | Alterations | 63 |

Contract No. W-31-109 Eng-52

This document consists of 65 pages
Number 34 of 55 copies, Series B

COST-PLUS-FIXED-FEE
DESIGN, ENGINEERING, CONSTRUCTION, EQUIPPING,
TRAINING PERSONNEL, RESEARCH, DEVELOPMENT
AND OPERATION CONTRACT

WAR DEPARTMENT

CONTRACTOR: GENERAL ELECTRIC COMPANY

ADDRESS: Schenectady, New York

CONTRACT FOR: Design, Engineering, Construction, Equipping, Training Personnel, Research, Development and Operation

FIXED FEE: $1.00

ESTIMATED COST OF ARCHITECT ENGINEER SERVICES: $2,753,000.00

ESTIMATED COST OF CONSTRUCTION SERVICES: $57,147,000.00

ESTIMATED COST OF TRAINING PERSONNEL: $100,000.00

ESTIMATED COST OF OPERATION OF THE PLANT AND PROCESS DEVELOPMENT FACILITIES: $67,900,000.00

ESTIMATED COST OF OPERATION OF LABORATORIES: $9,300,000.00

PAYMENT: To be made by Finance Officer, United States Army, U. S. Engineer Office, Manhattan District, Oak Ridge, Tennessee.

The equipment, services and supplies to be obtained by this instrument are authorized by, are for the purpose set forth in, and are chargeable to the following Procurement Authorities, the available balances of which are sufficient to cover the cost of the same:

212/60905 608-3222 P470-07 - $49,000,000.00

217/80920 708-4400 P410-07 - $88,200,000.00

This contract is negotiated and executed under the First War Powers Act, 1941, and Executive Order No. 9001.

Approved
9 Sept. 1946
L. R. GROVES (signed)
L. R. GROVES
Major General, U.S.A.

This document consists of 64 pages
No. 34 of 35 copies, Series E

Contract No.
W-31-109 Eng-52

COST-PLUS-FIXED-FEE
DESIGN, ENGINEERING, CONSTRUCTION, EQUIPPING,
TRAINING PERSONNEL, RESEARCH, DEVELOPMENT
AND OPERATION CONTRACT

THIS CONTRACT, effective as of the 15th day of May, 1946, / entered into by the UNITED STATES OF AMERICA, (hereinafter called the "Government"), represented by the Contracting Officer executing this contract, and GENERAL ELECTRIC COMPANY (hereinafter called the "Contractor"), a corporation organized and existing under the laws of the State of New York.

UAW
KDN

W I T N E S S E T H T H A T :

WHEREAS, E. I. du Pont de Nemours and Company, (hereinafter referred to as "du Pont", pursuant to the provisions of Contract No. W-7412 Eng-1 with the Government, designed, constructed and is now operating a Government-owned plant at Richland, Washington (hereinafter at times referred to as the "Hanford Engineer Works" of the "Plant", and

WHEREAS, the Government deems it to be necessary to the (national defense) that the Hanford Engineer Works be continued in operation upon the termination of the aforesaid contract with du Pont, and

WHEREAS, the Government believes that the Contractor, because of its broad experience in the fields of electricity, chemistry and applied physics, is best suited to take over the operation of the Hanford Engineer Works, and

WHEREAS, the Government desires the Contractor to engage in fundamental research and development work pertaining to atomic energy, in the Contractor's Research Laboratory and in a Government Laboratory and at Hanford Engineer Works and elsewhere, and

WHEREAS, the Government desires the Contractor to design, engineer and construct the aforesaid Government Laboratory and perform other design, engineering and construction services as hereinafter provided, and

WHEREAS, the accomplishment of the work by the Contractor under a cost-plus-a-fixed-fee contract entered into after negotiations and without advertising for proposals is authorized by law,

NOW, THEREFORE, the parties hereto do mutually agree as follows:

## ARTICLE I – DESCRIPTION OF THE PLANT AND LABORATORY FACILITIES

1. The Plant, at Richland, Washington, to be made available to and operated by the Contractor consists of Type B production units, together with the necessary Product-recovery and auxiliary facilities. Said Plant includes process equipment with necessary housing thereof and control and operating facilities therefor; boiler houses; water supply, water purification plant, sewers, waste disposal facilities and storage reservoirs; laboratories, warehouses, material storages and stores buildings; repair shops; buildings and facilities for feeding and housing laborers, mechanics and other employees; hospitals and first-aid stations; change houses, laundries, gate houses, guard headquarters, and observation posts; administrative buildings, roads, walks, railroads, locomotives, cars, tractors, trucks and buses; outside lines for electricity, water, air, and steam; fences, fire fighting equipment and housing therefor; outside lighting; houses; village (including schools and other customary community facilities); and other buildings, facilities, and equipment necessary in connection with the Plant.

2. Process development facilities, to be located at and be a part of the Plant shall be designed and constructed by the Contractor on the basis of information and data theoretically and experimentally developed and furnished by the Contractor, and by others at the instance of the Government.

3. Government facilities for fundamental research and development (hereinafter sometimes referred to as the "Government Laboratory") shall be designed and constructed by the Contractor on a plot of land consisting of approximately 100 acres at or near Schenectady, New York. Said land will be acquired and owned by the Contractor and the Contractor shall make the same available to the Government for the construction and operation of the Government Laboratory. The Government Laboratory shall be designed and constructed by the Contractor on the basis of information and data theoretically and experimentally developed and furnished by the Contractor and by others at the instance of the Government. The aforesaid Government Laboratory will be operated in addition to and in conjunction with the Contractor's Research Laboratory (the Government

Laboratory and the Contractor's Laboratory being hereinafter sometimes collectively referred to as the "Laboratories").

## ARTICLE II - GENERAL STATEMENT OF WORK AND SERVICES

1. The Contractor shall proceed with the performance of the work, or any work preliminary thereto, as authorized by the Contracting Officer, provided however, that the Contractor shall, on 1 September 1946 or on such later date as shall be mutually agreed upon in writing, take over the operation of the Plant.

2. The Government shall make available to the Contractor all classified information over which the Government has control and which is necessary for the performance of the work under this contract.

3. The Contractor shall render all architect-engineer and other services incident to design, development, and procurement of materials and equipment, inspection and supervision of the construction of the work more specifically described in Article I hereof.

4. The Contractor shall have the right, but shall not be obligated, to sublet such portions of the architect-engineer and construction work (including the installation of equipment) as may be desirable or necessary in the judgment of the Contractor, and such work shall be accomplished by subcontracts or direct contracts by the Government, either on a lump-sum, unit price, or cost-plus-a-fixed-fee basis; provided that all such subcontracts shall be subject to the approval of the Contracting Officer.

5. The Contractor shall furnish or assemble the necessary force of superintendents, foremen, skilled workmen and laborers, construction tools, and hand equipment and shall construct all items of construction work required by this contract for which subcontracts are not awarded in accordance with the provisions of Section 4 of this Article.

6. The Contractor shall provide the necessary office space at the site of the work for the representatives of the Contracting Officer and itself.

7. The Contractor shall procure and train personnel for the operation of the Plant and Laboratories.

8. All work and services to be performed by the Contractor under this contract shall be subject in all respects to the approval of the Contracting Officer.

9. The Contractor is authorized to administer and renew the present leases on houses, stores and other buildings at the Plant and to make new leases to such persons and under the terms of such agreements of lease as shall be approved by the Contracting Officer, and the Contractor is hereby appointed as agent of the Government for this purpose.

10. It is recognized that du Pont, in the performance of Contract No. W-7412 Eng-1 has incurred certain claims, liabilities, obligations and commitments, and that it may be in the best interest of the Government to have certain of these claims, liabilities, obligations and commitments assumed and liquidated by the Contractor under this contract. The contractor is therefore authorized to assume and liquidate such of the aforementioned claims, liabilities, obligations and commitments as may be agreed upon by du Pont and the Contractor and approved in writing by the Contracting Officer. Any claim, liability, obligation or commitment assumed by the Contractor hereunder may be compromised or settled by the Contractor on such terms and conditions as the Contracting Officer may approve in writing.

11. In carrying out the work under this contract, the Contractor shall be free, but shall not be obligated, to use any materials, supplies, and equipment of its own manufacture, or manufactured by its affiliates and/or services described in paragraph 2 d of Article XIII, upon advising the Contracting Officer in advance in those instances where the price of an order is $250 or more, as to the prices at which and the conditions upon which such services, equipment, materials or supplies (except such as are carried in the stores of the Contractor's departments) will be supplied. Such prices and conditions shall be those generally accorded other purchasers purchasing similar quantities under like conditions, and such prices may be