6. The obligation of the Government to make any of the payments to the Contractor or any subcontractor required by this Article shall be subject to any claims in connection with this contract which the Government may have against the Contractor.

7. Prior to final settlement the Contractor shall furnish the release referred to in Section 6 of Article XIV of this contract, when required.

8. Any other provision of this Article to the contrary notwithstanding, it is expressly understood and agreed that the work done by the Contractor pursuant to any notice of termination given under this Article or pursuant to this Article is part of the work under this contract, and that such work will be done and all payments in connection therewith will be made under and in accordance with the applicable terms of this contract, including but not limited to the terms providing for reimbursement, advances, disputes and responsibility of the Contractor.

9. No settlement hereunder shall prejudice the Contractor's rights to reimbursement with respect to claims subsequently found or determined to have been incurred in the performance of this contract and not known or determined at the time of such settlement.

10. For the purposes of this Article the word "subcontract" is defined as any agreement by the Contractor with any third person which involves the furnishing of any materials, supplies, machinery, equipment, or services in connection with the performance, wholly or in part, of any of the work described in this contract. A "subcontractor" is any person with whom any such agreement is made.

ARTICLE XXI - DISPUTES

Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor at his address shown herein. Within 30 days from said mailing the Contractor may appeal

in writing to the Secretary of War, whose written decision or that of his designated representative or representatives thereon shall be final and conclusive upon the parties hereto. The Secretary of War may, in his discretion, designate an individual, or individuals other than the Contracting Officer, or a board as his authorized representative to determine appeals under this Article. The Contractor shall be afforded an opportunity to be heard and offer evidence in support of his appeal. The President of the board, from time to time, may divide the board into divisions of one or more members and assign members thereto. A majority of the members of the board or of a division thereof shall constitute a quorum for the transaction of the business of the board or of a division, respectively, and the decision of a majority of the board or of a division shall be deemed to be the decision of the board or of a division, as the case may be. If a majority of the members of a division are unable to agree on a decision or if within 30 days after a decision by a division, the board or the president thereof directs that the decision of the division be reviewed by the board, the decision will be so reviewed, otherwise the decision of a majority of the members of a division shall become the decision of the board. If a majority of the members of the board is unable to agree upon a decision, the president will promptly submit the appeal to the Under Secretary of War for his decision upon the record. A vacancy in the board or in any division thereof shall not impair the powers, nor affect the duties of the board or division or of the remaining members of the board or division respectively. Any member of the board, or any examiner designated by the president of the board for that purpose, may hold hearings, examine witnesses, receive evidence and report the evidence to the board or to the appropriate division, if the case is pending before a division. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract. Any sum or sums allowed to the Contractor under the provisions of this Article shall be paid by the United States as part of the cost

of the articles or work herein contracted for and shall be deemed to be within the contemplation of this contract. All disputes, concerning questions of fact, involving matters classified by the Government as "secret" hereunder shall be decided by the Contracting Officer subject to appeal by the Contractor to the Secretary or Under Secretary of War, personally notwithstanding any contrary provision of this contract. The decision of the Secretary or the Under Secretary shall be final and conclusive upon the parties hereto.

## ARTICLE XXII – CONVICT LABOR

The Contractor shall not employ any person undergoing sentence of imprisonment at hard labor. This provision shall not be construed to prevent the Contractor or any subcontractor hereunder from obtaining any of the supplies, or any component parts or ingredients thereof, to be furnished under this contract or any of the materials or supplies to be used in connection with the performance of this contract, directly or indirectly from any Federal, State or territorial prison or prison industry; provided that such articles, materials, or supplies are not produced pursuant to any contract or other arrangement under which prison labor is hired by or employed or used by any private person, firm or corporation.





52

## ARTICLE XXIII - LABOR

A. The following provisions shall apply only to labor employed in construction work at the site of the Plant and the Government Laboratory:

1. Rates of Wages.

(a) The Contractor or his subcontractors shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less or more than those stated in Appendix B attached hereto and made a part hereof (subject to Executive Order Number 9250 and the General Orders and Regulations issued thereunder) regardless of any contractual relationship which may be alleged to exist between the Contractor or subcontractor and such laborers and mechanics; and the scale of wages to be paid shall be posted by the Contractor in a prominent and easily accessible place at the site of the work. The Contracting Officer shall have the right to withhold from the Contractor so much of accrued payments as may be considered necessary by the Contracting Officer to pay to laborers and mechanics employed by the Contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the Contractor, subcontractors, or their agents.

(b) In the event it is found by the Contracting Officer that any laborer or mechanic employed by the Contractor or any subcontractor directly on the site of the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required by the contract to be paid as aforesaid, the Government may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been a failure to pay said required wages and prosecute the work to completion by contract or otherwise, and the Contractor and his sureties shall be liable to the Government for any excess costs occasioned the Government thereby.

(c) The regulations of the Secretary of Labor, referred to in Section 4 hereof, allow certain "permissible deductions" from the wages required by this article to be paid.

2. Eight-Hour Law. No laborer or mechanic doing any part of the work contemplated by this contract, in the employ of the Contractor or any subcontractor contracting for any part of said work contemplated, shall be required or permitted to work more than 8 hours in any one calendar day upon such work at the site thereof, except upon the condition that compensation is paid to

such laborer or mechanic in accordance with the provisions of this article. The wages of every laborer and mechanic employed by the Contractor or any subcontractor engaged in the performance of this contract shall be computed on a basic day rate of 8 hours per day and work in excess of 8 hours per day is permitted only upon the condition that every such laborer and mechanic shall be compensated for all hours worked in excess of 8 hours per day at not less than one and one-half times the basic rate of pay. For each violation of the requirements of this Article a penalty of $5.00 shall be imposed upon the Contractor for each laborer or mechanic for every calendar day in which such employee is required or permitted to labor more than 8 hours upon said work without receiving compensation computed in accordance with this article and all penalties thus imposed shall be withheld for the use and benefit of the Government; provided that this stipulation shall be subject in all respects to the exceptions and provisions of U. S. Code, title 40, Sections 321, 324, 325 and 326, relating to hours of labor, as modified by the provisions of Section 303 of Public Act No. 781, 76th Congress, approved September 9, 1940, relating to compensation for overtime.

3. Excess Wage Rates on Overtime Compensation. All wage rates, including compensation for overtime under Section 2 of this article, for laborers and mechanics engaged in work under this contract shall be approved in writing by the Contracting Officer or a representative expressly designated by him for that purpose, and any amount paid by the Contractor to any laborer or mechanic in excess of the wage rate approved for such laborer or mechanic by the Contracting Officer or a representative expressly designated by him for this purpose shall be at the expense of the Contractor and shall not be reimbursed by the Government. When, in connection with the audit and check by the Contracting Officer, or his authorized representative, of the Contractor's payrolls prior to reimbursement as contemplated in Section 3 of Article XVII hereof, it is found that one or more laborers and/or mechanics have been paid wages at rates in excess of the wage rates approved as herein provided, the reimbursement made to the Contractor on account of such payrolls shall not include any such excess payments.

4. Nonrebate of Wages. The Contractor shall comply with the regulations of the Secretary of Labor pursuant to the Act of June 13, 1934, 48 Stat. 948 ( U. S. Code, title 40, secs. 276b and 276c), and any amendments or modifications thereof, shall cause appropriate provisions to be inserted in subcontracts to insure compliance therewith by all subcontractors subject thereto, and shall be responsible for the submission of affidavits required of subcontractors thereunder, except as the Secretary of Labor may specifically provide for reasonable limitations, variations, tolerances, and exemptions from the requirements thereof.

5. Responsibility of subcontractors. The Contractor shall cause appropriate provisions to be inserted in all subcontracts covering work to be performed at the site of the Plant, or Government Laboratory, whereby the subcontractors will be required to conform to the foregoing sections of this Article, but the Contractor shall not be held responsible for the failure of any subcontractor to adhere to said provisions.

B. The following provisions shall apply only to the operation of the Plant:

The operation of the Plant under Article VI of this contract shall be performed under and in accordance with all applicable provisions of the Walsh-Healey Public Contracts Act (Act of June 30, 1936; Public Law 846 - 74th Congress; 49 Stat. 2036; 41 U.S.C. 35-45) and all applicable regulations, determinations and exemptions of the Secretary of Labor now or hereafter in effect issued by the Department of Labor pursuant thereto.

ARTICLE XXIV - ACCIDENT PREVENTION

1. In order to protect the life and health of its employees in the performance of the Construction work under this contract, the Contractor will comply with all pertinent provisions of the "Safety Requirements" approved by Chief of Engineers December 16, 1941, and revised 1 January 1946, (a copy of which is on file in the Office of the Contracting Officer), as it may be amended, and will take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for this purpose. The Contractor will maintain an accurate record of, and will report to the Contracting Officer, all cases of death, occupational disease, and traumatic injury arising out of or in the course of employment on work under this contract.

2. The Contracting Officer will notify the Contractor of any non-compliance with the foregoing provisions and the action to be taken. The Contractor shall, after receipt of such notice, immediately correct the conditions to which attention has been directed. Such notice when served on the Contractor or its representative at the site of the work shall be deemed sufficient for the purpose aforesaid.

3. If the Contractor fails or refuses to comply promptly the Contracting Officer may issue an order stopping all or any part of the work. When satisfactory corrective action is taken, a start order will be issued.

ARTICLE XXV - NOTICE TO GOVERNMENT OF LABOR DISPUTES

Whenever an actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor will immediately give notice thereof to the Contracting

Officer. Such notice shall include all relevant information with respect to such dispute.

ARTICLE XXVI - OFFICIALS NOT TO BENEFIT

No member of or delegate to Congress, or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE XXVII - COVENANT AGAINST CONTINGENT FEES

The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or in its discretion, to deduct from payments due the Contractor the amount of such commission, percentage, brokerage or contingent fee. This warranty shall not apply to commissions payable by the Contractor upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

ARTICLE XXVIII - CONTRACTOR'S ORGANIZATION

Upon the execution of this contract, the Contractor shall submit to the Contracting Officer a chart showing in general the executive and administrative organization, duties and personnel to be employed in connection with the work under the contract; the data so furnished shall be supplemented as additional information becomes available.

ARTICLE XXIX - PROGRESS REPORTS AND CHANGES IN PERSONNEL

1. The Contractor shall, promptly after the execution of this contract, prepare and submit to the Contracting Officer, for approval, a schedule showing the order in which the Contractor proposes to carry on the construction work, with dates on which he will start the several salient features of said work and the contemplated dates for completing the same. The schedule shall be in the form of a progress chart at suitable scale so as to indicate with symbols the percentage completed at any time. The Contractor shall correct the progress schedule at the end of each week and shall immediately deliver to the Contracting Officer three copies of the same.

2. The Contractor shall make all reasonable efforts to furnish sufficient technical, supervisory and administrative personnel to insure the prosecution of the construction work in accordance with the approved progress schedule. If, in the opinion of the Contracting Officer, the Contractor falls behind the progress

schedule, the Contractor shall take such steps as may be necessary to improve his progress, and the Contracting Officer may direct him to increase working days per week, or hours of labor per day; and failure to promptly comply with such directions shall be deemed sufficient cause to terminate this contract due to default of the Contractor.

## ARTICLE XXX - LOADING AND UNLOADING RAILWAY CARS

The Contractor shall load promptly all railroad cars furnished for loading upon his order and shall unload from railroad cars promptly upon arrival all shipments consigned to him and shall provide storage facilities and other facilities necessary for these purposes; and the Contractor shall not order railway cars for loading unless they can be loaded promptly and shall not cause or permit shipments to be consigned to him unless they can be unloaded from railroad cars promptly upon arrival.

## ARTICLE XXXI - ASSIGNMENT OF CLAIMS

Neither this contract, nor any interest therein or claims thereunder, shall be assigned or transferred by the Contractor to any party or parties.

## ARTICLE XXXII DISCLOSURE OF INFORMATION

1. It is understood that disclosure of information relating to the work contracted for hereunder to any person not entitled to receive it, or failure to safeguard all secret, confidential and restricted matter that may come to the Contractor or any person under his control in connection with the work under this contract, may subject the Contractor, his agents, employees, and subcontractors to criminal liability under the laws of the United States. See Title 1 of an Act approved June 15, 1917 (40 Stat. 217; 50 U.S.C. 31-42), as amended by an Act approved March 28, 1940 (54 Stat., Chap. 79), and the provisions of an Act approved January 12, 1938 (52 Stat. 3; 50 U.S.C., 45-45d), as supplemented by Executive Order No. 8381, dated March 22, 1940, 5 F.R. 1147.

2. The Contractor shall cause a like provision to be inserted in all subcontracts under this contract where classified information will be disclosed to the subcontractor.

3. Information contained in the plans and specifications may be disclosed to officers, agents, or employees of the Contractor to the extent that such disclosure is essential to the performance of this contract, subject to the provisions of Article

XXXII and to any restrictions which may be imposed by the Contracting Officer or the inspector charged with the duty of inspecting the work and/or materials covered by this contract. Information contained in the plans and specifications may be disclosed to officers, agents, or employees of corporations, partnerships or persons undertaking the performance of subcontracts or purchase orders made or placed under this contract only if the Contracting Officer shall consent to such disclosure.

4. The Government agrees that, in the event of the initiation of any investigation, examination or inquiry by any branch, agency, or instrumentality of the Government concerning the undertaking or performance of the work under the contract by the Contractor, the Contractor shall have the right to present to and to use in dealing with the Government representatives engaged in the investigation, examination or inquiry, this contract and the Record of Negotiations and all other documents, memoranda, correspondence and information concerning the undertaking or performance of the work under the contract, provided that the Contracting Officer shall first be given a reasonable opportunity, if he so desires, to consult with the highest official of such Government branch, agency or instrumentality and to inform said official that the investigation, examination or inquiry will involve the disclosure of secret matters; and provided further that, if in connection with a proposed or current investigation, examination or inquiry the Secretary of War deems that the disclosure of all or part of such information by the Contractor to any representative or representatives of the Government engaged in the investigation, examination or inquiry, would be inimical to the prosecution of the war or the national defense, and so notifies the Contractor by written directive signed by the Secretary of War, or the Acting Secretary of War, personally, the permission herein given to the Contractor to make disclosure shall be suspended with respect to that investigation, examination or inquiry to the extent set forth in such directive.

ARTICLE XXXIII - EMPLOYMENT OF ALIENS

1. The Contractor will not permit any alien employed or to be employed by it to have access to the classified drawings, specifications and accompanying enclosures relating to the performance of this contract, or to the classified models or material referred to therein, or to engineering principles, composition, subassemblies, or assemblies which are classified and vital to the functioning or use of the article or articles forming the subject matter of this contract, without the written

consent beforehand of the Secretary of War.

2. The Contractor shall cause a like provision to be inserted in all subcontracts under this contract where classified information will be disclosed to the subcontractor.

ARTICLE XXXIV - RESPONSIBILITY OF CONTRACTOR - CONTINGENCIES

1. The Government deems the work to be performed under this contract to be in the national interest and has requested the Contractor to undertake such work. In view of the fact that the Contractor is undertaking the work for a fixed fee of One Dollar ($1.00) and in view of the unusual and unpredictable hazards involved in carrying out the work under this contract, as well as the abnormal conditions now existing, it is agreed that all work under this contract is to be performed at the expense of the Government, and that the Contractor shall not be liable for, and the Government shall indemnify and hold the Contractor harmless against any delay, failure, loss, expense (including expense of litigation) or damage (including personal injuries and deaths of persons and damage to property) of any kind and for any cause whatsoever, arising out of or connected with the work, and whether or not any employee or employees of the Contractor is or are responsible therefor, unless such delay, failure, loss, expense, or damage should be established by the Government to have been caused directly by bad faith or wilful misconduct on the part of some corporate officer or officers (i.e., the Chairman of the Board of Directors President, Vice President, Secretary, Assistant Secretaries, Treasurer, Assistant Treasurers, Controller and Assistant Controllers) of the Contractor acting within the scope of his or their authority and employment; that the Government shall assume and carry on the defense of all claims, suits, or legal proceedings which may be asserted or instituted against the Contractor on account of acts or omissions in the performance of the work; and that the Government shall pay directly and discharge completely all final judgments entered against the Contractor in such litigation and all claims which may be settled by agreement approved by the Contracting Officer.

2. The necessary property records in connection with Government property furnished under this contract will be maintained by the Contractor at the Laboratories and as may be mutually agreed upon at the Plant and the Contractor assumes no responsibility for the loss or destruction of any such property unless caused by bad faith or wilful misconduct on

the part of some corporate officer or officers (as defined in paragraph 1 of this Article XXXIV) of the Contractor acting within the scope of his or their authority or employment.

3. It is recognized that the remaining life of certain of the manufacturing equipment at the Plant is problematical and the Contractor assumes no responsibility for any failure of such equipment and any replacement thereof is to be made only by mutual agreement and at the expense of the Government.

4. The Contractor shall not be required to account or pay over to the Government any unclaimed wages, salaries or other payments owed to employees, agents, subcontractors or vendors of the Contractor by reason of work performed under this contract or any unclaimed wage or salary deductions or other accumulations held for the account of any employees or agents of the Contractor so long as the Contractor is under any liability or obligation with respect to such wages, salaries, deductions, accumulations or other payments.

ARTICLE XXXV - EMPLOYEES BENEFIT FUND

1. Recognizing that the performance of manufacturing, developmental and research operations under this contract will subject employees to serious and unusual hazards with respect to which it is impossible to provide adequate protection and that the Contractor has been unable, despite extended efforts with the assistance of the Contracting Officer, to obtain satisfactory insurance coverage therefor, the Government agrees that the Contractor shall have the right to establish, maintain, and utilize, as hereinafter set forth, a benefit fund from which payments, in addition to those provided for by Workmen's Compensation Laws or other statutes or under the terms of the Contractor's employee welfare plans and policies, may be made to or on account of employees who become totally and permanently disabled or die as a result of such hazards. The Contractor, therefore, is authorized to withdraw from time to time from the sums advanced to the Contractor by the Government, pursuant to Article XV hereof, amounts sufficient to establish and replenish an Employees Benefit Fund (hereinafter referred to as the "Benefit Fund") of five million dollars ($5,000,000). The Contractor shall have the right to establish said Benefit Fund immediately upon the execution of this contract and to maintain the same for a period of ten (10) years after the termination of work hereunder.



60

2. Whenever the Contractor shall determine, with the approval of the Contracting Officer, that any employee has become totally and permanently disabled or has died as a result of any of the hazards specified in the Secret Letter referred to in Article XLII hereof, the Contractor shall have the right to pay, from the amount available in the Benefit Fund, to such employee or to his spouse, next of kin, designee or legal representative the sum of ten thousand dollars ($10,000), provided that, when any such payment has been made to an employee who has become totally and permanently disabled, no further payment under this Article shall be made by reason of the death of such employee. It is expressly understood and agreed that the Contractor assumes no obligation hereunder to make any such payment from the Contractor's own funds. No such payment shall be made except upon securing a release, in form approved by the Contracting Officer, relieving the Contractor and the Government, to the extent of the payment so made, from all claims of the recipient on account of such disability or death, except claims under workmen's compensation laws or occupational disease statutes.

3. At the sole discretion of the Contractor, the Benefit Fund may be held in cash on deposit or invested in and reinvested in United States Government Securities either in whole or in part

and from time to time, and the Contractor shall have the right to sell all or any part of such securities as and when it may see fit. All such cash shall be deposited in a bank which is a member of the Federal Reserve System, and all such securities shall either be held under a custody account with, or kept in a safety deposit box in, the same bank. All purchases and sales of such securities shall be upon the approval of any two of the Contractor's officers or employees who may be so authorized by the Contractor from time to time. Any such deposit account, custody account or safety deposit box shall be so designated as to indicate clearly to the bank its special character and purpose. The bank shall be obligated to furnish periodic written reports to the Contracting Officer setting forth the amount of cash in the deposit account and the face amount of the securities in the custody account, together with all deposits in and withdrawals from each of such accounts during the period covered by each such report. The Contractor shall furnish periodic written reports to the Contracting Officer, as well as such special reports as he may request from time to time, setting forth the face amount of securities in said safety deposit box, together with all deposits in and withdrawals from said box during the period covered by each such report. The bank shall be under no liability to any party hereto for the withdrawal of any funds or securities from the deposit account, the custody account or the safety deposit box upon proper authorization by the Contractor. Accounting for income and expense of the Benefit Fund shall be on a cash basis and not on an accrual basis. All realized interest, earnings and profits from said cash and securities shall be credited to the Benefit Fund, and all incurred costs, expenses, losses and taxes in connection with the handling and investment of and income from said cash and securities shall be charged to said Benefit Fund. Promptly after the first day of July of each calendar year hereunder the Contractor shall pay to the Government by check drawn to the order of the Treasurer of the United States the amount, if any, by which the total amount of said cash on deposit and the total amount of par value of said securities, as of the first day of said month, shall exceed the sum of five million dollars ($5,000,000). For the purpose of determining the amounts to be advanced by the Government to the Contractor from time to time to maintain the Benefit Fund at five million dollars ($5,000,000) pursuant to Section 9 of Article XV, the total sum then in the Benefit Fund shall be deemed to be the amount of cash on deposit plus the market value or the par value of securities on hand whichever is less.

4. The Benefit Fund shall be used by the Contractor solely for the purposes set forth in the Article. Any sums remaining in said Benefit Fund at the expiration of the period set forth in Section 1 of this Article shall be promptly paid or credited to the Government by the Contractor.

5. The term "employee" as used in this Article shall mean any person who is or has been employed by the Contractor or any sub-contractor and who has engaged in work under this contract.

ARTICLE XXXVI - STATUTORY AUTHORIZATION

This instrument was executed on the 6th day of September 1946, pursuant to Letter Contract designated by the same number, entered into on the 15th day of May, 1946, pursuant to the authority conferred by Section 201 of the First War Powers Act of 1941 (Act of December 18, 1941, Public No. 354, 77th Congress) and delegated thereunder by the President of the United States through the Secretary of War to the Contracting Officer. On July 27, 1946, subsequent to the signing of said Letter Contract and prior to the signing of this instrument, the Atomic Energy Act of 1946 was enacted but as of the date of the execution of this instrument the members of the Atomic Energy Commission established by that Act have not taken office. Because of the necessity in the interests of common defense and security for proceeding with the operations contemplated by said Letter Contract and by this Contract, this Contract has been signed for the Government by the Contracting Officer pursuant to said Letter Contract and the provisions of the First War Powers Act of 1941.

It is hereby agreed that this Contract shall terminate on the 30th day of September, 1946, the date of expiration of said Letter Contract as heretofore extended by amendment dated the 15th day of July, 1946, unless on or before the 30th day of September, 1946, this Contract is adopted by the Atomic Energy Commission, or its duly authorized representative, or this Contract and said Letter Contract are extended by direction of said Commission subject to termination, with the effect hereinafter in this paragraph provided, if this Contract is not adopted by said Commission prior to a subsequent date to be fixed in the extension. In the event of such termination said Letter Contract shall terminate on its expiration date pursuant to Section 6(a) of said Letter Contract as though no definitive contract had been executed by said expiration date and the Contractor thereupon shall be reimbursed as provided in said Letter Contract for all costs incurred in the performance of said Letter Contract and as a result of the termination thereof.

## ARTICLE XXXVII - PATENTS

1. It is understood and agreed that the Contractor, at the instance of the Government, will consult with representatives of the Government and when, as a result of these consultations, it is determined by the Government that any discovery made by the Contractor or its employees in the course of the work called for in this contract is novel or inventive, the Contracting Officer shall have the sole power to determine whether or not and where a patent application shall be filed, and to determine the disposition of the title to and the rights under any application or patent that may result. It is further understood and agreed that the judgment of the Contracting Officer on such matters shall be accepted as final and the Contractor, for itself, and for its employees, agrees that the inventor or inventors will execute all documents and do all things necessary or proper to carry out the judgment of the Contracting Officer. The form of agreement covering inventions and patents which the Contractor customarily makes with technical personnel employed by it has been submitted to and approved by the Contracting Officer as being sufficient for the purposes of the foregoing provisions of this Section 1. The Contractor agrees to secure the execution of said agreement by such of the personnel assigned to the work under this contract as to whom the Contractor customarily would require the execution of such an agreement as a condition of employment. All records of the Contractor concerning the work performed under this contract shall be available to the Contracting Officer. It is understood, however, that the making of prior art searches, the preparation, filing and prosecution of patent applications, the determination of questions of novelty, patentability and inventorship, as well as all other functions of a patent attorney, are excluded from the duties of the Contractor.

2. In view of the fact that the Contractor has not made an investigation as to the possibility of patent infringement or infringement of secret inventions and both parties desire to avoid the delay incident to an investigation of such possibilities, and further, in view of the fact that there is not included in the Contractor's fee any allowance for the settlement of possible claims for such infringement, it is agreed that the Government shall hold and save the Contractor harmless from liability of any nature or kind including costs and expenses for the infringement of or use of the patent rights or secret inventions of third parties arising in connection with the performance of this contract.

3. The Contractor shall promptly notify the Contracting Officer in writing of any and all claims of infringement that may from time to time be brought to the attention of the Contractor, and in the event of litigation on account thereof, the Contractor shall assist the Government at the Government's expense, in furnishing such evidence as to the use of the patents and other matters of fact as may be required by the Government in such litigation.

4. The Contractor hereby grants to the Government a perpetual, royalty-free license to practice in the Plant and in the Government Laboratory, but not elsewhere, all patented inventions, secret processes, technical information and know-how of the Contractor which are incorporated in the construction or operation of the Plant and the Government Laboratory by the Contractor. This license shall not be assignable to any transferee of the Plant and/or the Government Laboratory or any part thereof, and the Contractor reserves the privilege of asserting any and all legal rights in or to such patented inventions, secret processes, technical information and know-how against any firm or corporation; provided, however, that this Article shall not supersede or modify any existing agreements between the Contractor and the Government applying to any such inventions, processes, information or know-how.

5. The Patent Adviser attached to the Office of Scientific Research and Development, Washington, D. C., will act as the representative of the Contracting Officer for the purpose of administering the provisions of this Article, unless another representative is appointed in writing by the Contracting Officer. It is understood, however, that such Patent Adviser shall not be considered a representative of the Contracting Officer for the purpose of making any financial commitments or incurring any financial obligations hereunder.

## ARTICLE XXXVIII - TERM OF THE CONTRACT

Unless sooner terminated by the Government pursuant to Article XX or unless sooner terminated by the Contractor as hereinafter provided, this contract shall continue until December 31, 1947. By mutual agreement of the Contracting Officer and the Contractor, the contract may be extended from year to year, provided written agreement for such extension is entered into not less than 180 days prior to the year-end expiration of the contract. Notwithstanding the foregoing or any other provisions of this contract, in the event of the enactment of legislation, or of the issuance of regulations or directives under existing or future legislation, controlling or restricting or dealing with research developmental or manufacturing activities relating to the subject matter of this contract, or in the event of a denial to the Contractor of the right to subcontract certain portions of the work as permitted by this contract, or in the event the Contracting Officer directs the closing down of the Government Laboratory, the Contractor at its election may terminate this contract upon six months prior written notice to the Contracting Officer. During this period of six months prior to cessation by the Contractor of its operations under this contract, whether at the end of said period the Contractor is to be succeeded by another operator of the Plant, or the Government Laboratory, or whether operation of the Plant or the Government Laboratory is to be discontinued, the Contractor shall have the right to curtail its operations and to take such other steps as may be desirable in the judgment of the Contractor in order either to facilitate the transfer of the Plant and the Government Laboratory to another party or to place the Plant and the Government Laboratory in standby condition as the case may be.

## ARTICLE XXXIX - OPTIONS

1. The Contractor hereby grants to the Government an option to purchase the land upon which the Government Laboratory shall be situated, and as set forth in the drawing annexed hereto as Appendix A, at a price equal to the price the Contractor shall have actually paid therefor. Such option shall continue during the term of this contract or any extension thereof, plus six months thereafter. In the event the Government shall exercise the option granted hereunder, the Contractor agrees that upon payment of the price herein provided, it will convey to the Government title to said land and all easements and appurtenances thereto, free and clear of all liens and incumbrances which may be suffered to be levied against the land by the Contractor on its behalf by a special warranty deed mutually satisfactory to the parties.



22

2. The Government Laboratory buildings to be erected on land owned by the Contractor and all appurtenances and additions thereto and all equipment used therein, furnished by the Government or for which the Government is obligated to reimburse the Contractor, shall at all times be the property of the Government and shall be and remain personal property and may be removed by the Government at any time within twelve (12) months after the expiration of this contract, and permission is hereby granted by the Contractor to the Government to enter upon its premises for the purpose of removing said buildings, appurtenances, additions and equipment. In the event that the Government at any time elects to sell the Government Laboratory, or any part thereof, the Government shall give written notice thereof to the Contractor, and the Contractor shall have an option for the purchase of said Laboratory, or any part thereof, at the then fair value thereof. Within ten days after receipt by the Contractor of written notice that the Government elects to sell the Government Laboratory, or any part thereof, the Contractor may request the Government to make a finding as to the fair value of the Government Laboratory, or any part thereof, and in the event that the Contractor disagrees with such finding of fair value and no mutually satisfactory adjustment of this fair value can be made, the matter shall be determined under the Disputes clause, Article XXI of this contract. The option of the Contractor for the purchase of said Laboratory, or any part thereof, may be exercised by written notice to the Government at any time within ninety days after such final determination of fair value. To the extent permitted by law, the Government agrees that it will not sell the Government Laboratory site, buildings or facilities, or any part thereof, to any party or parties for a period of 90 days following the expiration of the aforesaid option period unless it shall first have offered the same for sale to the Contractor at a price equal to the best offer received by the Government and the Contractor shall have failed or refused to purchase the same within 30 days after the receipt of such offer. In the event of any sale to the Contractor pursuant to the provisions of this Article, the transfer of title shall be made without representations or warranties whatsoever on the part of the Government.

## ARTICLE XL - DISPOSITION OF GOVERNMENT-OWNED PROPERTY

It is recognized that property (including without limitation, radioactive isotopes, machine tool and processing equipment, manufacturing aids, raw, manufactured, scrap and waste material), title to which is or may hereafter become vested in the Government, will be used by or will be in the care, custody or possession of the Contractor in connection with the performance of this contract. With the prior approval in writing of the Contracting Officer, (whether such approval is given prior to or after the giving of a notice of the termination of this contract for the convenience of

the Government), the Contractor may transfer or otherwise dispose of such Government-owned property to such parties and upon such terms and conditions as the Contracting Officer may approve, or, with like approval by the Contracting Officer, the Contractor may itself acquire title to such property or any of it at a price mutually agreeable. The proceeds of any such transfer or disposal or the agreed price of any property, title to which is so acquired by the Contractor, shall be applied in reduction of any payment to be made by the Government to the Contractor under this contract, or shall otherwise be paid in such manner as the Contracting Officer may direct.

ARTICLE XII - ANTI-DISCRIMINATION

1. The Contractor, in performing the work required by this contract, shall not discriminate against any employee or applicant for employment because of race, creed, color, or national origin.

2. The Contractor agrees that the provisions of paragraph (1) above will also be inserted in all of its subcontracts. For the purpose of this Article, a subcontract is defined as any contract entered into by the Contractor with any individual, partnership, association, corporation, estate, or trust, or other business enterprise or other legal entity, for a specific part of the work to be performed in connection with the supplies or services furnished under this contract; provided, however, that a contract for the furnishing of standard or commercial articles or raw material shall not be considered as a subcontract.

## ARTICLE XLII - CODE TERMS

It is understood and agreed that the meaning of the code terms "Products", "production units", "Type B production units" and "principal raw material" as used in this contract, the term "specifications" as used in Article VI hereof, and the term "hazards" as used in Article XXXV hereof shall have the meaning agreed upon by the parties and set forth in a Secret Letter dated 6th September, 1946, from the Contracting Officer to the Contractor, the contents of said letter constituting a part of this contract to the same extent as if set forth fully herein.

HAW
KDN

## ARTICLE XLIII - DEFINITIONS

1. The terms "Secretary of War" and "Chief of Engineers" shall include their duly authorized representatives, as the case may be, except as otherwise expressly provided herein.

2. The term "his duly authorized representative" shall mean any person or board authorized by the Secretary of War or the Chief of Engineers, as the case may be, to act for him, except as otherwise expressly provided herein.

3. The term "Contracting Officer" shall mean the District Engineer, Manhattan District, Corps of Engineers, United States Army and, except for the signing of this contract, shall include any successory and any duly authorized representative of said District Engineer or of such successor.

## ARTICLE XLIV - ALTERATIONS

The following alterations were made in this contract before it was signed by the parties hereto; which corrections and additions have been initialled by the persons executing this contract and appear on pages 1, 5, 18, 22, 26, 57, 60, 61 and 63.

HAW
XDN

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA

BY K. D. NICHOLS (signed)
K. D. NICHOLS,
Colonel, Corps of Engineers,
Contracting Officer.

WITNESSES:

LEWIS F. HUCK (signed)
1 River Rd
Schenectady, N. Y.

S. h. SKOWBO (signed)
1 River Road
Schenectady, N. Y.

GENERAL ELECTRIC COMPANY

BY H. A. WINNE (signed)
H. A. WINNE
Vice-president

ATTEST:

A. K. WILLEY (signed)
Assistant Secretary

(SEAL)