EXECUTION COPY

# CONTRACT NO. AT(45-1)-1350

Between

THE UNITED STATES OF AMERICA

Represented by

UNITED STATES ATOMIC ENERGY COMMISSION

And

GENERAL ELECTRIC COMPANY

PI 4095

CONTRACT AT(45-1)-1350

This Contract, AT(45-1)-1350, by and between the UNITED STATES OF AMERICA, hereinafter called the "Government", represented by the ATOMIC ENERGY COMMISSION, hereinafter called the "Commission", and GENERAL ELECTRIC COMPANY, hereinafter called the "Contractor", a corporation organized and existing under the laws of the State of New York:

WITNESSETH THAT:

WHEREAS, for the period from May 15, 1946, to the effective date of this Contract (hereinafter called the "Contract"), under the provisions of Contract W-31-109-Eng-52 as amended between the Commission and the Contractor, the Contractor, among other things, managed, operated and maintained the Hanford Works at Richland, Washington,(hereinafter called the "Plant"), and the Knolls Atomic Power Laboratory, Schenectady, New York, all in the manner provided in said Contract W-31-109-Eng-52; and

WHEREAS, the parties desire now to provide under the provisions of this Contract for the management, operation and maintenance of the Plant by the Contractor, and for the performance by the Contractor of the other work hereinafter described; and

WHEREAS, it has been determined by the Commission that the making of this Contract will facilitate the national defense, and the Contract has been negotiated and entered into under the provisions of the Atomic Energy Act of 1954, as amended, ("the Act") and the Act of August 28, 1958, (Public Law 85-804; 72 Stat. 972), and Executive Order 10789;

NOW THEREFORE, in consideration of the mutual covenants hereinafter set forth, the parties hereto mutually agree as follows:

EFFECTIVE DATE

1. The parties hereto have negotiated and signed this Contract upon condition that this Contract shall be binding upon the parties and shall have force and effect only:

(a) If, on or before June 30, 1959, or such later date as the parties may agree upon in writing, the parties have received written notice that the President of the United States has exempted from the provisions of law relating to contracts the specific action of the Commission in executing this contract containing Article XXXV--Responsibility of Contractor - Atomic Hazards-- and has approved the preservation of Article XXXIV - Responsibility of Contractor - Atomic Hazards-- in Contract W-31-109- Eng 52 as amended by Supplemental Agreement No. 40 thereto, including his affirmation of the exemption theretofore previously granted by him, and

(b) When the effective date has been entered hereon in the manner described below, provided, however, that in no event shall the effective date of this Contract be:

(i) A date other than the effective date of Supplemental Agreement No. 40 to Contract W-31-109-Eng-52; or

(ii) Earlier than the date of receipt by the parties of written notice of the aforesaid action by the President.

2. Subject to the provisions of section 1, above, upon receipt by the parties of the written notice referred to therein, the effective date hereof shall be entered hereon and initialled by the parties hereto in the space below.

The effective date of this Contract is the 14th day of [handwritten], 1

[Initials] ______________ For the Government

[Initials] ______________ For General Electric Company

COVERAGE OF THIS CONTRACT

(a) On and after the effective date hereof, all rights, duties, and activities of the parties with respect to the work hereinafter described shall be governed by the provisions of this Contract;

(b) The rights and obligations of the parties which have been incurred, or which have accrued or matured under the provisions of Contract W-31-109-Eng-52, prior to the effective date of this Contract, shall in no wise be impaired, limited, enlarged, or affected by reason of the provisions hereof, except to the extent that any specific provision of this Contract is expressly stated to be retroactive in its application.

(c) All materials, tools, machinery, equipment, supplies, and other property, all drawings, designs, specifications, and other engineering, technical, scientific, and operating data and all advances furnished to or acquired by the Contractor in connection with work at or for the Plant under Contract W-31-109-Eng-52 shall, to the extent that they or any of them are in the custody or possession of the Contractor on the effective date of this Contract, remain in the custody or possession of the Contractor for use in connection with the work to be performed hereunder; and all purchase orders, subcontracts, leases, licenses, permits, and other contractual commitments with third parties relating to work at or for the Plant under Contract W-31-109-Eng-52 and outstanding on the effective date of this Contract shall continue in effect for application to or use in connection with the work to be performed hereunder.

ARTICLE I - DESCRIPTION OF THE PLANT

The Plant is a Government-owned facility located in Benton, Grant, Franklin, and Adams Counties, Washington, with administrative headquarters at Richland, Washington. It embraces approximately six hundred square miles

of land on which are located several manufacturing areas, consisting of Hanford-type nuclear reactors together with facilities for uranium fuel preparation, plutonium and uranium separation, plutonium fabrication, uranium recovery, and auxiliary facilities which are designed and used for the production and processing of plutonium and other products and materials. The principal manufacturing facilities of the Plant on the effective date of this Contract are listed in Appendix "A", attached hereto and made a part hereof. The Plant also includes control, research and development laboratories required to support the operating facilities, for development of processes and methods designed to improve, modify, or replace current processes, and for improving procedures for controlling radiation hazards. The Plant also includes portions of the community of Richland, first-aid stations, administrative buildings, shops, warehouses, utilities, equipment, structures, roads, railroads, and a wide variety of facilities to serve the Plant.

ARTICLE II - GENERAL STATEMENT OF WORK AND SERVICES

1. (a) The Contractor shall furnish or procure the services, labor, materials, tools, machinery, equipment facilities, and supplies not furnished by the Commission and do all things necessary or proper to accomplish the purposes of this Contract, and do all things which may be required to operate, manage, maintain, safeguard, re-equip, close down, place and maintain in permanent or temporary standby condition, dismantle, demolish, or dispose of, the whole or any part of the Plant, all in accordance with the provisions of this Contract.

(b) Except as may be otherwise specifically provided in this Contract or agreed upon from time to time, the scope of work of this Contract does not include the manufacture of products in any of the

commercial facilities of the Contractor.

2. The Government shall make available to the Contractor all classified information over which the Government has control and which is necessary for the performance of the work under this Contract.

3. The Contractor shall initiate such recommendations to the Commission for the modification, improvement, alteration, or repair of existing plants or facilities or construction of new plants or facilities as it may deem essential to the continued or safe operation of the Plant or necessary to permit realization of benefits and advantages attained in the course of work hereunder.

4. The Contractor shall perform to the extent permitted by law, or arrange for the performance of, architect-engineer and other services incidental to design, development, procurement of materials and equipment, inspection and supervision of construction, alteration and repair work, in accordance with the provisions hereinafter set forth.

5. The Contractor shall develop, establish, and administer industrial health and safety programs at or for the Plant, including safeguards designed to meet the radiation hazards connected with the work.

6. The Contractor shall maintain all office space provided by the Commission at the site of the work for the representatives of the Commission and itself.

7. (a) The Contractor is authorized to administer and renew the present leases and licenses on land, on houses, stores and other buildings at the Plant and to make and administer new leases and licenses to such persons and under the terms of such agreements of lease or license as shall be approved by the Commission, and the

Contractor is hereby appointed as agent of the Government for this purpose. To the extent mutually agreed upon in writing, the Contractor shall perform incidental services in connection with the disposal by the Commission of real and personal property at the Plant. The Contractor agrees to manage or operate and maintain the facilities, utilities, and properties of the Commission in and about the community of Richland and, to the extent mutually agreed upon in writing, at other points. In carrying out the work under the preceding sentence, the Contractor agrees to act as agent of the Government to the extent and for the purposes designated in writing by the Commission from time to time.

(b) The Contractor agrees to provide public and municipal services at the Plant and its vicinity, including the management and operation of community police and fire departments; to operate, manage, and maintain roads and streets, public buildings and grounds and other facilities and properties of the Commission in and about the Community and its vicinity and at such other points as the parties may agree in writing.

8. (a) Where the Commission finds pursuant to Section 33 of the Act that private facilities or laboratories are inadequate to the purpose, and so authorizes, the Contractor will conduct for others at the Plant such activities and studies of the type specified in Section 31 of the Act as the Commission deems appropriate to the development of atomic energy. Such work performed by the Contractor shall constitute a part of the work under this Contract.

(b) When the Commission so authorizes, the Contractor may

utilize the Plant for its own account upon such terms and conditions as the Commission shall prescribe.

(c) The Contractor recognizes that the Commission may desire to effectuate the purposes of Section 33 of the Act by permitting the conduct by others at the Plant of activities and studies of the type specified in Section 31 of the Act. The performance of any specific activity or study of such type at the Plant shall be subject to mutual agreement between the Commission and the Contractor, provided that the Contractor shall not withhold agreement to such performance except on the ground that the safety or security of the Plant, the performance of the work under this Contract or the potential liabilities of the Contractor in respect of operation of the Plant will be adversely affected. All work reasonably required to be performed by the Contractor relating to activities and studies by others shall constitute a part of the work under this Contract.

(d) In addition to the work and services described in this Contract, the Contractor shall perform under the provisions of this Contract, other work or services related to other programs of the Commission or of other Government agencies, as the parties shall agree upon in writing from time to time.

9. (a) The Contractor may, with the approval of the Commission, perform under the provisions of this Contract work incidental or related to the work described in this Contract.

(b) In this Contract

(1) the words "work" and "services" and the phrase "work and services" are used interchangeably;

(2) the word "approval" shall mean either prior authorization or subsequent ratification.

10. The Government will furnish the principal raw materials necessary for the operation of the Plant and reserves the right to furnish any other materials for such operations.

11. In addition to all specific approvals and controls provided for elsewhere in this Contract, the work shall be subject to the general control of the Commission.

ARTICLE III - ARCHITECT-ENGINEER SERVICES

1. The Contractor shall perform to the extent permitted by law, or arrange for and supervise the performance of, the following architect-engineer services to the extent authorized or directed by the Commission from time to time which may be necessary in connection with any construction of additions to the Plant, and auxiliary facilities, or any modifications or alterations to the existing Plant, and auxiliary facilities:

(a) Make all necessary topographical and other surveys and maps; arrange for and supervise necessary test borings and other subsurface investigations.

(b) Prepare, subject to the approval of the Commission, preliminary studies, sketches, and layout plans and reports, including estimates of cost of the proposed work and of all structures, utilities, and appurtenances thereto.

(c) Determine what interests in land are or will be necessary in the performance of the work. Unless otherwise agreed upon, the Government will itself handle the acquisition of interests in land.

(d) Prepare estimates of material quantities required to

construct Plant facilities.

(e) Prepare final designs, detailed working drawings, and specifications necessary for the effective coordination and efficient execution of construction work and revise such drawings and specifications as required by the Commission.

(f) Prepare cost estimates and design, procurement and construction schedules for proposed facilities at the Plant.

(g) Furnish all governing lines, bench marks, and layout data essential to the work of construction contractors.

(h) Furnish supervision or management services (as provided in Article IV) for construction, alteration, and repair work.

(i) Check and approve all shop and working drawings submitted in connection with the construction work to assure that they conform with approved drawings.

(j) Make, arrange for or supervise such field and laboratory tests of materials and workmanship as the Commission may require. Inspect and report to the Commission as to the conformity or nonconformity of the workmanship and materials to specifications.

(k) Consult with the Commission or with third parties at the request of the Commission on any questions which may arise in connection with the work.

(l) Prepare partial and final estimates of quantities and values of work done by others under construction contracts necessary to provide data required under the payment provisions of such contracts.

(m) Perform such other architectural and engineering services as may be incidental or related to the above.

2. The Commission agrees in the assignment of the work described in Section 1 above to use its best efforts to adjust the work load by contracts with others so that the Contractor's forces engaged in architect-engineer work will insofar as possible be maintained at a reasonably stable level.

3. None of the foregoing provisions of this Article III shall apply to those work assignments which the Contractor may undertake on its own initiative in order to meet its obligations under Section 3 of Article II, and under Article VI of this Contract.

ARTICLE IV - MANAGEMENT SERVICES IN CONNECTION WITH CONSTRUCTION

1. The Contractor shall perform management services in respect of any construction, alteration, or repair work at the Plant, including any additions thereto, to the extent authorized or directed by the Commission from time to time, which may include, but shall not be limited to, the following:

(a) Perform functions incidental or related to the awarding of collateral contracts (construction contracts awarded by the Commission for performance at the Plant, subcontracts under such contracts, and architect-engineer contracts awarded by the Commission).

(b) Furnish procurement and supply services.

(c) Perform accounting and administrative services.

(d) Assist in the preparation and execution of policies, instructions, rules, and regulations governing the activities of collateral contractors pertaining to security, safety, fire protection, and the safeguarding of property.

(e) Perform incidental services in connection with construction.

2. The Contractor will perform the following services to the extent mutually agreed by the parties.

(a) Auditing services with respect to collateral contractors and suppliers thereof.

(b) Functions with respect to insurance and workmen's compensation for collateral contractors, including representation of such contractors, conduct of litigation, and payment of claims and expenses.

3. In the performance of management services hereunder, the Contractor shall use its best efforts to assure the orderly and economical prosecution of the work and the satisfactory completion of the work within the time schedules and within the approved estimate of cost.

4. In its capacity as architect-engineer-manager, the Contractor shall, to the extent authorized or directed by the Commission, manage, direct, coordinate, and supervise the work of collateral contractors. Unless otherwise authorized by the Commission, the Contractor shall not waive the requirements of any collateral contracts nor issue orders or make changes in the work under collateral contracts which will materially affect the cost of the work or which will require the execution of a change order or supplemental agreement to the contract involved. The Contractor is not authorized to make decisions with respect to claims or disputes under such contracts. The Contractor shall advise and consult with and make recommendations to the Commission with respect to all such matters.

ARTICLE V - TRAINING OF PERSONNEL

The Contractor will hire or select the personnel necessary for the operation of the Plant and, when such personnel are available, shall train them, at the Plant, or elsewhere, in the duties and functions of their respective positions, including training and education of its employees at the Plant of a kind and character equivalent to that provided in its other organizational

components. The extent and character of the work to be done by the Contractor under this Article shall be subject to the approval of the Commission.

ARTICLE VI - OPERATION OF THE PLANT PRODUCTION & PROCESS DEVELOPMENT FACILITIES

1. The Contractor shall use its best efforts to operate the Plant production facilities at the actual capacity thereof, unless otherwise requested by the Commission.

2. While the Contractor will use its best efforts to operate the Plant for the production of the products, it is recognized by the Commission that the Contractor cannot and does not make any guarantee or representation that any quantity of the products will be produced.

3. In the operation of the Plant the Contractor shall use its best efforts to produce the products to conform with specifications to be established by the Commission, but it is recognized that variances therefrom may be unavoidable and the Contractor makes no guarantee that said specifications will be met.

4. In carrying out the work under this Article, the Contractor is authorized to and shall do all things necessary or convenient in the operating and closing down of the Plant production and process development facilities, or any part thereof.

5. The Contractor shall maintain a mutually agreed upon system of inspection concurrent with operations.

6. Upon completion of processing or manufacture of the products, the Contractor shall store the products and prepare them for shipment. The Commission shall take physical delivery of the products at the final processing buildings, and the Contractor will have no responsibility for shipping the products subsequent to such physical delivery. However, after delivery of the

products to the Commission and upon request of the Commission, the Contractor shall render the Commission such assistance in connection with shipment of the products as may be necessary.

7. In view of the fact that the production of plutonium and other activities conducted under this Contract involve new art, it is recognized that improvements and innovations in production processes, plant design, and plant operation can be achieved and that new products and materials may be developed.

The Contractor accordingly agrees to work on a continuing basis toward improving production techniques and processes, including matters relating to feed materials, radiation hazards, health and safety, instrumentation, recovery or disposal of radioactive wastes, economy, efficiency, or any other aspect of plant operations. To this end, the Contractor shall initiate and conduct research studies, investigations, and development work in such manner as the parties may agree. In addition, the Contractor will perform such specific studies and investigations as the Commission may from time to time request. The Contractor shall prepare and submit periodic reports covering the work performed in this field and special reports upon request, showing the progress of research studies, investigation, and development work, and shall furnish reports summarizing its activities, findings, and conclusions. Such reports shall be furnished in such quantity and arrangement as to form and with such frequency as may be required by or acceptable to the Commission.

ARTICLE VII - CHANGES

The Commission, by written order, may at any time issue additional instructions or require additional work or services within the general scope of this Contract, or may direct the omission of work or services. If any

such change causes a material increase or decrease in the amount or character of the work and services to be performed, an equitable adjustment of the fixed fee or fees to be paid the Contractor shall be made and this Contract shall be modified in writing accordingly. Any claim for adjustment under this Article must be asserted within ninety days of receipt of the order requiring the change, unless the Commission shall grant a further period of time prior to the date of final settlement of this Contract. If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Article XX - Disputes, but nothing provided in this Article shall excuse the Contractor from proceeding with the work so changed.

ARTICLE VIII - TITLE: WORKMANSHIP AND MATERIALS

1. Title to all materials, tools, machinery, equipment, and supplies for which the Contractor shall be entitled to reimbursement under this Contract shall vest in the Contractor and thereupon shall pass from the Contractor and vest in the Commission; provided that, unless waived in writing by the Commission, the right of final inspection and acceptance or rejection of such materials, tools, machinery, equipment, and supplies is reserved to the Commission.

2. Except as otherwise authorized by the Commission, the Contractor shall at all times endeavor to execute the work in the best and most workmanlike manner by qualified, careful, and efficient workers and to use materials of a quality appropriate to the requirements of the work.

ARTICLE IX - MATERIALS, EQUIPMENT AND SERVICES FURNISHED BY OTHER ORGANIZATIONAL COMPONENTS OF THE CONTRACTOR

1. (a) Materials and equipment (including services normally supplied

in connection therewith) of a type manufactured or sold by an organizational component of the Contractor other than the Plant or by an affiliate of the Contractor shall, except as provided in subsection (d) hereof, be procured by the Commission under separate contracts unless the Contractor advises the Commission in advance that neither it nor its affiliates will submit a bid or proposal of its own.

(b) In all cases in which the Contractor has design responsibility, the Contractor shall prepare proper specifications, drawings, and such other data as may be necessary on a basis which will permit fair and open competition and orderly and timely procurement with relation to the work.

(c) In those cases in which the Commission determines that it will procure such materials and equipment by negotiation from an organizational component of the Contractor other than the Plant or from an affiliate of the Contractor, such procurement will be under terms and conditions and at prices to be negotiated by the Commission and the Contractor (acting through an organizational component other than the Plant) or by the Commission and the affiliate, it being understood that such prices will normally include a reasonable profit or fixed fee.

(d) For the convenience of the work under this Contract, the Contractor may, with the approval of the Commission, supply any materials and equipment from stores and supplies of other organizational components of the Contractor or affiliate. Unless otherwise agreed the cost to the Commission of such materials and equipment shall be the

amount at which such items are normally liquidated upon transfers from one organizational component of the Contractor to another.

(e) With respect to any material or equipment furnished by the Contractor or affiliate pursuant to this Section 1, the Contractor or affiliate shall not be chargeable with any knowledge of any kind as to the purpose for which or the circumstances under which such material or equipment may be used, merely by reason of the fact that such knowledge is possessed by personnel of the Plant.

2. The Contractor shall be free, subject to the approval of the Commission but not obligated to utilize the facilities and services of other organizational components of the Contractor on a cost basis without fee (other than the fees provided in Article X) except as otherwise approved by the Commission, for the pursuance of research, technical and engineering assistance and consultation, including fabrication, testing or other shop or laboratory operations in support of the work under this Contract. Cost reimbursement principles governing the performance of such services shall be generally similar to those contained in the Contractor's existing CPFF contracts with other Government agencies and shall be set forth in a statement of principles which shall be prepared by the Contractor and approved by the Commission. It is understood and agreed that such statement may be modified to the extent found appropriate by the parties to accommodate particular transactions.

Except as may be otherwise agreed by the parties, all provisions of this Contract consistent with the agreed statement of cost principles applicable to the particular transaction shall apply to work performed under this Section 2.

ARTICLE X - OBLIGATION OF FUNDS AND FIXED FEES

1. The amount obligated by the Commission with respect to this Contract is $51,996,120.21 . The Commission may increase the contract obligation by written notice to the Contractor; however, any decrease in obligation would be effected only with the concurrence of the Contractor.

2. The amounts obligated under Section 1 of this Article, as the same may be modified from time to time, shall constitute a limitation upon the liability of the Government except under Article XXXIII - Nuclear Hazards Indemnity, and Article XXXV - Responsibility of Contractor - Atomic Hazards, and except for insurance provided under Article XV of this Contract.

3. The Contractor shall receive in full and complete compensation for its undertakings and performance hereunder, including all profit and all items or kinds of expense not allowable under the terms of this Contract, the following:

(a) payment of costs as provided in Article XII;

(b) a fixed fee at the rate of $60,000.00 per annum for the period ending June 30, 1959, for community management services pursuant to Article II, Section 7. For the period after June 30, 1959, the fixed fee to be paid for such services will be the amount agreed upon by the parties.

(c) a fixed fee at the rate of $2,196,000.00 per annum for performance of all other undertakings under this Contract exclusive of community management services, such fee having been computed in recognition of the fact, among others, that the Contractor will incur general, administrative, and other expenses (including incentive compensation paid to employees) attributable

to the work and not otherwise reimbursed; provided that said fixed fee shall be at the rate of $2,236,000.00 per annum when the production reactor plant, which on the effective date of this Contract is in the design stage for construction, reaches the point of beneficial use at which operational loading commences.

It is expressly stipulated by the parties that no fixed fee shall be paid for the operation of any transportation system.

4. (a) The fees established in Section 3 of this Article shall be subject to such adjustment as is provided for in Article VII - Changes, and Article XIX - Termination.

(b) It is estimated that the cost of Contractor's undertakings hereunder will be at the average rate of approximately $104,898,000.00 per annum. It is estimated that the operating costs for the reactor plant described in paragraph (c) of Section 3 of this Article X will increase the foregoing estimate approximately $7,375,000.00 per annum. It is understood that neither the Government nor the Contractor guarantees the correctness of any estimate of cost for performance of its undertakings under this Contract, and that there shall be no adjustment in the amount of the Contractor's fixed fees by reason of errors in the computation of estimates or of differences between such estimates and the actual cost for performance of such undertakings.

(c) The fees established in Section 3 of this Article have been determined in light of the fact that a portion of the work may be subcontracted. Such subcontracting shall entail no adjustment

in the fees stipulated in Section 3 of this Article.

ARTICLE XI - INCENTIVE FEE

It is recognized that in the future it may become practicable and in the best interests of the Commission and the Contractor to renegotiate this Contract to provide for an incentive fee. It is accordingly agreed that within six months after notice in writing by either party to the other, requesting such action, the parties will proceed with negotiations with a view to arriving at contractual provisions based on the payment of a reasonable incentive fee to the Contractor, which contractual provisions will be embodied in a modification hereto, or in a new contract. If the parties fail to agree upon such contractual provisions, this Contract shall remain in full force and effect.

ARTICLE XII - COST OF THE WORK

1. The costs allowable under this Contract shall be the cost and expenses (including allowances in lieu of actual costs) described in the paragraphs of this Section that are actually incurred by the Contractor in performing the work under this Contract in accordance with its terms, and are necessary or incident thereto. Allowable costs shall, in no event, include any items made non-reimbursable by Section 2 of this Article.

(a) Costs for labor (including wages and salaries at or for the Plant), materials, tools, machinery, equipment, supplies, services, utilities, power, and fuel necessary or proper for either temporary, recurring, intermittent, or permanent use. Payroll costs under this Section 1 shall be limited to wages and salaries of those persons on the payroll of the Plant.

(b) Payments made pursuant to subcontracts, purchase orders,

and all other agreements entered into under the provisions of this Contract, or Contract W-31-109-Eng-52 prior to the effective date of this Contract, including payments made for terminations thereof, and including intra-company transactions authorized by other provisions of this Contract.

(c) Losses and expenses not compensated by insurance or otherwise, including settlements made with the written approval of the Commission, actually sustained by the Contractor in connection with the work, whether before or after completion of such work; unless the Commission, pursuant to Article XV, Section 1 of this Contract, has directed the Contractor to procure insurance against such losses and expenses and the Contractor, after the lapse of a reasonable time, has failed to procure such insurance.

(d) Costs incurred pursuant to agreements made as a result of collective bargaining with representatives of the Contractor's employees.

(e) Expenditures for the purchase, operation, use, maintenance, and disposition of buildings, structures, utilities, fixtures, equipment, and facilities required in connection with any phase of the work hereunder, including those needed for manufacture, research, and development, and for shops, offices, storage space, dormitories, first-aid stations, real estate, community facilities, and any other structures facilities, or activities requested or approved by the Commission.

(f) Payments made by the Contractor under the Social Security Act, any other federal or state unemployment insurance, disability benefit, or similar law.

(g) Taxes and assessments which the Contractor is required to pay on account of this Contract, including but not limited to, all property, sales, excise, use, import, or export taxes, duties or imposts which the Contractor is required to pay on or for any land, site, plant, laboratory, equipment, process, organization, materials, supplies, or personnel or on monies received as reimbursement therefor. This paragraph includes penalties in all cases in which the act or omission giving rise to the penalty was done or omitted with the approval of the Commission.

(h) Permits, license fees, and royalties on patents used in performance of the work.

(i) Expenses in connection with the procuring or transporting of materials, supplies, or equipment, including packing, crating, shipping, demurrage, and storage charges, or expediting the production, procurement, or transportation of supplies, materials, or equipment.

(j) Expenses in connection with recruiting employees, including expenses of pre-employment investigation.

(k) Expenses of furnishing services and facilities authorized or ratified by the Commission to project-connected personnel, to the extent that such expenses are not recovered by the Contractor.

(l) Transportation, travel, and living expenses incurred by the Contractor's non-reimbursable representative engaged in performance of work hereunder, in accordance with the policies applicable for employees on the reimbursable payroll.

(m) The cost of permits, approvals, licenses, easements, and other interests in land, required in connection with the performance of work hereunder.

(n) Rental actually paid by the Contractor at rates not to exceed those approved by the Commission for equipment rented in connection with the work to be performed under this Contract, together with all other costs incidental to the obtaining and use of such equipment, including repairs, repair parts, insurance, royalties, and transportation.

(o) Rental of any equipment and facilities owned, leased, or rented by the Contractor and made available for use under this Contract as agreed upon between the parties to this Contract.

(p) Premiums on such bonds and insurance policies as the Commission may approve or require as reasonably necessary for the protection of the Government or the Contractor.

(q) Costs of small tools and work clothing furnished with the approval of the Commission, by the Contractor to its employees for use in the performance of the work.

(r) Disbursements incident to the establishment and maintenance of bank accounts, the cost of guards necessary to safeguard cash, together with disbursement incident to the payment of payrolls in connection with the work hereunder.

(s) Costs of accounting services (including salaries and other expenses in connection with regular and special audits) performed by accountants and auditors on the payroll of the Plant.

(t) Costs of legal services (including salaries, law books, legal publications, and other expenses) performed by attorneys on the payroll of the Plant.

(u) Costs of correcting or replacing rejected work which has been

performed directly by the Contractor's own forces under this Contract on a cost-plus-fixed-fee basis, whether before or after completion of such work, as well as the cost of replacement of or repairs to such work occasioned by or in connection with inspection, demonstration, use, testing, or other cause.

(v) Expenditures for communications including telephone, telegraph, cable, radio, or other types of communication service.

(w) Costs and expenses of arbitration proceedings arising out of collective bargaining agreements with labor organizations, and, with the approval of the Commission, such other arbitration proceedings at or for the Plant as may be necessary or proper in the performance of the work hereunder. Such costs and expenses shall include awards made by the arbitrators, the fees and charges of the Contractor's witnesses, the Contractor's share of the fees, disbursements, and expenses of impartial members of the arbitration tribunal and amounts due to clerks and stenographers for services rendered.

(x) Costs and expenses of litigation incurred pursuant to Article XXXII of this Contract - Litigation, including judgments, court costs and allowances, and reasonable fees and expenses of private counsel in such litigation when the Government does not furnish Government counsel. This item includes the recovery of liquidated damages or penalties, through litigation or administrative proceedings, under the Fair Labor Standards Act, the Walsh-Healey, the Eight-Hour Act, or any other federal or state laws pertaining to labor, as such statutes may be amended from time to time or other statutes enacted, in all cases in which the wage or salary rate, overtime compensation, employment, or pay practice involved was paid

or carried on with the approval of the Commission.

(y) Costs and expenses, including awards made, incurred pursuant to Article XXXII of this Contract - Litigation, in proceedings before administrative boards and tribunals of the United States or a state thereof.

(z) Expenses incurred in rendering assistance, with the approval of the Commission, to federal, state and local agencies or bodies or other public authorities, or to other contractors of the Commission.

(aa) Expenses incurred in carrying out health and safety programs.

(bb) Costs of collecting bills, and losses sustained by reason of bad debts.

(cc) Costs of professional and technical books, manuals, journals, periodicals, and other publications, and the purchase and distribution of reprints of technical articles; and with the prior authorization of the Commission, costs of publishing scientific articles relating to the work of the Plant; and the costs of membership in trade, civic, business, and professional societies and associations.

(dd) Costs and expenses of publishing and distributing the weekly Plant GE *News*, the cost properly allocable to the Plant of publishing and distributing the *Monogram* and other General Electric Company publications for employees and their dependents; advertising in newspapers and periodicals directly in furtherance of the work, including calls for bids, help-wanted advertisements, public notices and announcements, and legal advertisements, and "spot" radio and television advertising for Plant recruitment purposes.

(ee) Costs and expenses of the civil defense program for the Plant

and of boards and committees created by or with the approval of the Commission for the community of Richland, such as the Community Council, City Council, Library Board, and Park Board, to the extent mutually agreed upon.

(ff) Costs of employee relations and public relations services at the Plant.

(gg) The cost of blueprints and other reproductions produced in any of the commercial facilities of the Contractor at the same prices currently charged to the Contractor's commercial divisions for such reproductions. Billings will be adjusted annually to eliminate any loss or profit to the Contractor.

(hh) Costs incurred in carrying out security procedures and programs and Plant protection programs.

(ii) Costs incurred in the Contractor's commercial business in the State of Washington through termination by the Contractor of the employment of its employees in the work hereunder, whether upon cessation of the work or earlier, by reason of the adverse effect upon the unemployment compensation insurance rates payable in the Contractor's commercial business, due to such termination. If, under the provisions of the applicable state unemployment compensation statute then in effect, a tax credit is available to the Contractor following such termination of employment, the Contractor will apply the tax credit in payment of unemployment contributions for the Contractor's commercial business to the fullest extent possible and will pay to the Commission the amount which the Contractor's commercial components otherwise would have paid to the state after taking into account the commercial components' share of such

tax credit.

(jj) With the prior authorization of the Commission, costs of documentary films and other special media recording activities of the Plant.

(kk) Costs of materials and equipment furnished pursuant to Article IX, 1, (d).

(ll) Costs of special services (including the services of loaned employees) rendered with the prior written authorization of the Commission by other organizational components or affiliates of the Contractor, including services divisions, specifically for or on behalf of the Plant and not properly includable under Article IX of this Contract or under any other provision of this Article XII.

(mm) Costs of furnishing special work and protective clothing and protective and safety devices for the use of employees of the Contractor, in accordance with approved procedures.

(nn) Cost of replacing property of employees of the Contractor which has become contaminated in the course of their employment or of compensating such employees therefor, in accordance with the Contractor's published policies at the Plant.

(oo) It is recognized that in the course of the work it is sometimes necessary in emergency situations to afford hospitalization, provide medical services, or incur other expenses for the benefit of third parties who have been injured or disabled. In all such cases, costs reasonably incurred by the Contractor shall, to the extent not recovered, be reimbursable hereunder.

(pp) Costs provided for under other provisions of this Contract.

(qq) Such other costs as may be approved by the Contracting Officer.

2. Non-reimbursable Costs. Without prejudice to the reimbursability or non-reimbursability of other items, the following items shall not be reimbursable hereunder;

(a) Advertising, except as provided in Section 1, paragraph (dd) of this Article XII.

(b) General and administrative expenses of the Contractor's home office.

(c) Bonuses and similar compensation under any other name, except as otherwise provided in this Contract or hereafter authorized by the Commission.

(d) Commissions or bonuses (under whatever name) in connection with obtaining or negotiating for a Government contract.

(e) Except to the extent approved by the Commission, provision for contingent reserves in the possession of the Contractor.

(f) Contributions and donations.

(g) Dividend payments.

(h) Entertainment expenses.

(i) Federal taxes on income and excess profits.

(j) Interest on borrowings by the Contractor, however represented, financial charges, and discounts on the sale of Contractor's corporate bonds.

(k) Fines and penalties, unless incurred as a result of compliance with written instructions of the Commission, or in accordance with

paragraphs (g) or (x) of Section 1 of this Article XII.

(l) Losses from sales and exchanges of the Contractor's capital assets and losses on other contracts.

(m) Taxes, fees, and charges levied by public agencies which are imposed upon or arise by reason of or are measured by the Contractor's fees payable under Article X.

(n) Legal, accounting, and consulting services, and related expenses incurred in connection with organization or reorganization of the Contractor's corporate structure, defense of anti-trust suits, and the prosecution of claims against the United States.

(o) Premiums for insurance on the lives of directors, officers, proprietors, or other persons where the Contractor is the beneficiary directly or indirectly.

(p) Selling and distribution activities not applicable to the Contract products or services.

(q) Taxes and expenses in connection with corporate financing, refinancing, or refunding operations, including the listing of securities on exchanges.

(r) Other items stated to be non-reimbursable by other provisions of this Contract.

3. Salaries, Wages, Employment Policies and Employee Benefit and Relations Policies at the Plant

(a) Appendix "B", attached hereto and made a part hereof, contains a statement of the Contractor's employment, wage and salary policies, provisions governing transportation, traveling, and living expenses of prospective employees and of employees and their dependents; overtime,

holiday, vacation, and leave provisions; group insurance and savings plans; and various other employee relations plans which apply to employees of the Contractor engaged in work at or for the Plant under this Contract. The Contractor shall be reimbursed for all expenditures necessary or incident to the performance of the work hereunder made in accordance with the policies and plans set forth in Appendix "B", together with the costs of administering such policies and plans.

(b) It is also agreed that the Contractor shall be reimbursed for additional expenditures made pursuant to such other and further plans and policies, whether antedating this Contract or established subsequent thereto, as the Commission may specifically authorize from time to time.

(c) It is understood and agreed that in the event the Contractor's employee policies as set forth in Appendix "B" are changed by the Contractor on a Company-wide basis, or new policies established on a Company-wide basis, Appendix "B" will be modified in either event to include such policies; provided, however, that in either of the following cases the Commission shall not be obligated to modify Appendix "B" except upon its actual approval of the policy involved.

(1) Where the employee policy permits a discretionary decision to be made by the division or department general manager concerned as to whether the policy shall be effective; and

(2) Where the employee policy provides a benefit, which although having value to employees, nevertheless has other objectives which serve, to a substantial and significant degree, a private purpose of the Contractor apart from the performance of the work under this Contract, such as the stimulation of its commercial sales.

ARTICLE XIII - PAYMENTS

1. (a) The Contractor shall prepare and submit annually as of June 30, a certified voucher of net expenditures accrued (its net costs incurred) for the period covered by the voucher. The Commission will promptly undertake to review such voucher and will use its best efforts to complete the review within six months after submission. Upon completion of the review the Commission shall advise the Contractor whether it accepts the voucher in whole or in part. Such acceptance will constitute an acknowledgement by the Commission that the net costs incurred and accepted are allowable under this Contract and that the voucher, or the accepted part thereof, has been prepared in accordance with Commission reporting requirements from records maintained in conformity with generally accepted accounting principles, but will not relieve the Contractor of responsibility it otherwise has under this Contract for the Commission's assets in its care, or for fraud, omission, or errors later becoming known.

(b) At the request of the Contractor, the Contracting Officer will determine and advise the Contractor in writing whether any work undertaken or proposed to be undertaken by the Contractor is within the scope of this Contract and whether its performance is or was warranted under the circumstances.

2. The annual fixed fees provided for in Article X shall be paid in equal monthly installments on or before the day of the month on which this Contract becomes effective, the first such payment to be made within 30 days following the effective date of this Contract.

3. The Commission reserves the right to pay directly to the parties concerned all amounts owed by the Contractor for materials, supplies, services,

transportation charges, machinery, equipment, or payrolls.

4. (a) If and when in the opinion of the Contractor the net aggregate of expenditures, contingent obligations, and outstanding commitments allowable under this Contract may exceed the amount obligated under this Contract, the Contractor shall give notice thereof in writing referring to this paragraph. The giving of such notice shall not be deemed to limit the amount for which the Contractor shall be reimbursed under the provisions of this Contract.

(b) In the event that the notice provided for in (a) above is given by the Contractor to the Commission, the parties will immediately consult as to the steps to be taken and the Contractor advised whether certain of its supply contracts and purchase orders are to be terminated for the convenience of the Government and whether the Commission desires to reduce the scale of operations or terminate the Contractor's work in part, for the convenience of the Government.

(c) Thereafter, in the event of failure of the Government to make any payments or advances as provided in this Contract, the Contractor may suspend its performance hereunder until the full amount of any deficiency shall have been paid. Notwithstanding any other provision of this Contract, the Contractor shall not be bound to take any action in connection with the performance of this Contract which would require the use or commitment of funds in amounts exceeding the total amount obligated by the Commission under Section 1 of Article X, less the total of the following: (1) the net aggregate of expenditures; (2) pending claims; (3) outstanding commitments; (4) the total unpaid amount of the Contractor's fees; and (5) an amount required for sixty days' operation under this Contract.

Notwithstanding the cessation of work by the Contractor as authorized by the preceding sentence, the Contractor shall, to the extent requested by the Commission and within the limits of available funds, do all things necessary or proper for a reasonable period of time to close down the Plant.

(d) In the event the Contractor discontinues work pursuant to the provisions of (c) above, the Contractor's fees shall be subject to equitable adjustment in accordance with Article VII of this Contract - Changes.

(e) The exercise by the Contractor of any of the rights provided for in this Section 4 of Article XIII shall be without prejudice to any other rights or remedies of the Contractor on account of such failure by the Government; and failure of the Contractor to exercise such rights shall not constitute a waiver thereof with respect to any continuing or subsequent failure on the part of the Government.

5. Upon completion of the work hereunder, the Commission shall make adequate provision with respect to any sum that may be necessary to settle any unsettled claims in connection with this Contract. The Contractor shall, if required, furnish the Commission with a release of all claims which it has against the Commission arising under and by virtue of this Contract other than claims, if any, as may be specifically excepted by the Contractor from the operation of the release, and other than any claim subsequently found or determined to have been incurred in the performance of this Contract and not known to the Contractor or determined at the time of furnishing the foregoing release.

ARTICLE XIV - ADVANCES

1. From time to time, the Commission at the request of the Contractor shall advance to the Contractor, without payment of interest thereon by the Contractor, sums sufficient to defray currently the cost of the work.

2. Until all advance payments hereunder are liquidated, all funds received as advance payments under this Article shall be deposited in special bank accounts at member banks of the Federal Reserve System or any "insured" bank within the meaning of the Act creating the Federal Deposit Insurance Corporation (Act of August 23, 1935; 49 Stat. 684) as amended (12 U.S.C. 264), separate from the Contractor's general or other funds. Such special bank accounts shall be so designated as to indicate clearly to the banks their special character and purpose, and the balances in such accounts shall be used by the Contractor as a fund for making payments for the cost of the work under this Contract and any amendments thereto and not for other business of the Contractor.

3. Title to the unexpended balance of any funds advanced and of any bank account established pursuant to this article shall remain in the Government and be superior to any claim or lien of the bank of deposit or others. It is understood that an advance to the Contractor hereunder is not a loan to the Contractor and will not require the payment of interest by the Contractor, and that the Contractor acquires no right, title, or interest in or to such advance other than the right to make expenditures therefrom as provided in this article. The bank of deposit shall act with respect to such account in accordance with any written directions of the Contracting Officer, and shall not be liable to any party to this Contract for any action taken in accordance with such directions, nor for the withdrawal of funds from such account by checks properly signed by the Contractor and properly endorsed in the absence of contrary directions from the Contracting

Officer. Any directions received by the bank of deposit upon stationery of the Commission and purporting to be signed by or at the direction of the Commission shall, insofar as the rights, duties, and liabilities of the bank of deposit are concerned, be deemed to be the written directions of the Contracting Officer. Bank accounts established pursuant to this article shall be subject to inspection and audit by representatives of the Government at all reasonable times. The Contractor shall transmit to the Contracting Officer in prescribed form an agreement in duplicate from the bank or banks clearly setting forth the special character of the account being established for the purposes of this Contract and the responsibilities of the bank thereunder.

4. Disallowances presented to the Contractor by the Government shall not constitute grounds for the withholding of advances by the Commission in whole or in part; provided, however, that upon acceptance of such disallowances by the Contractor or upon final determination thereof adversely to the Contractor in any disputes proceeding or litigation contemplated by Article XX - Disputes, the Contractor shall promptly pay or credit to the Commission the amount found to be due, together with six percent (6%) simple interest per annum thereon, from the date said amount was formally disallowed in writing to the date of payment thereof; and provided further, that no interest shall be charged to the Contractor with respect to the amount of any disallowance accepted by it within sixty (60) days of written notice of the disallowance. The Contractor shall have the right, if it so elects, to pay under protest, or under protest to credit to the cost of the work any amount in dispute without prejudice to its ultimate right to reimbursement, and in such cases no interest shall be charged the Contractor.

5. If the unliquidated balance of the advance payments made by the

Commission under Section 1 hereof, together with revenues received under Article XXXVII - Discounts and Revenues, exceeds the amount necessary for the current needs of the Contractor, the amount of such excess shall, upon demand by the Commission, be promptly returned to the Commission. If, upon completion of the Contract, or upon the termination thereof for any reason (for the purposes of this Article XIV only, such "completion" or "termination" shall not be deemed to have occurred until after performance by the Contractor of its obligations under Article XIX - Termination), advance payments to the Contractor exceed amounts otherwise due the Contractor, such excess shall be paid to the Government by the Contractor in cash forthwith after demand by the Commission, provided, however, that with respect to controverted items, such payment shall be made after final determination of any appeal or litigation contemplated by Article XX - Disputes.

6. Subject to the approval of the Commission, the Contractor may make subadvances to subcontractors and vendors out of the special account, upon such terms and conditions as the Commission may specifically approve. The Contractor shall not be subject to any liability with respect to funds so advanced except to return or credit to the Government such amounts of said funds as shall be returned to the Contractor by said subcontractors and vendors. The Contractor agrees, however, that it shall make all reasonable efforts to obtain from such subcontractors and vendors any refunds of such advanced funds as may be due.

7. Notwithstanding any other provision of this Article XIV, the Commission upon the request of the Contractor from time to time throughout the effective period of this Contract, shall advance to the Contractor, without interest, the amounts necessary to replenish in full the collateral or guarantee fund provided for in Article XV - Insurance. The Contractor shall not be subject to any liabili-

with respect to funds so advanced except to return or credit to the Commission such amounts of said funds as shall be returned to the Contractor; and upon the making by the Contractor of payments to insurance carriers (including the Department of Labor and Industries of the State of Washington) pursuant to Article XV - Insurance, the advance payments made to the Contractor by the Commission under this Article XIV shall be deemed to be liquidated to the extent of the payment so made by the Contractor.

ARTICLE XV - INSURANCE

1. The Contractor shall procure and maintain bonds and insurance, if obtainable, in such forms and in such amounts and for such periods of time as the Commission may approve or require.

2. In view of the unusual and unpredictable hazards involved in carrying out the work under this Contract, the Contractor and the Commission have heretofore entered into an agreement with The Travelers Insurance Company and The Travelers Indemnity Company (hereinafter collectively called the "carrier") wherein and whereby the carrier administers on behalf of the Contractor and the Commission a program of insurance against public liability for personal injury and property damage and against certain other risks covering the Contractor's activities under this Contract and under Contract W-31-109-Eng-52. Pursuant to the aforesaid agreement, the Contractor, with the approval of the Commission, has deposited the sum of $10,500,000 with the carrier to establish a collateral or guarantee fund assuring to the carrier the payment of losses sustained, together with the carrier's charges and disbursements. The carrier, in the same agreement referred to in the preceding sentence, also administers a workmen's compensation insurance program (with all losses and costs to be borne by the Government) for the employees of the Contractor engaged in work

at or for the Plant in certain states other than Washington, and said fund of $10,500,000 serves also as collateral to assure the payment of losses thereunder. It is agreed by the Contractor and the Commission that said agreement and the collateral or guarantee fund shall be continued in effect under this Contract to assure and facilitate the carrying out of such programs of insurance to be administered by the carrier or such other person or corporation as the Contractor and the Commission may designate. The Contractor agrees, however, to accept other insurance protection equivalent to that afforded by the aforesaid insurance program at any time the same can be furnished by the Commission.

3. The Contractor is authorized to make and shall be reimbursed for all payments necessary to comply with the workmen's compensation insurance laws of the states in which any part of the work is carried on. With the approval of t Commission, the Contractor is authorized to make or continue agreements with th State of Washington pertaining to workmen's compensation coverage and to make deposits with said state pursuant to such agreements.

ARTICLE XVI - RECORDS AND ACCOUNTS, INSPECTION AND AUDIT

1. The Contractor shall establish and maintain a separate and distinct set of accounts and records covering the work under this Contract performed at the Plant, except for accounts and records of the Contractor's general offices relating to General and Administrative Expense. The systems of accounting to employed shall include records and books of account showing the cost to the Contractor of all items of labor, materials, equipment, supplies, and services and other reimbursable items under this Contract, and when the monetary values thereof are furnished by the Commission, such records and books of account sha reflect all assets and property furnished by the Government which are in the custody or control of the Contractor. In keeping such accounts and records,

Contractor shall employ a system of accounting acceptable to the Commission and conforming to generally accepted accounting principles. The system of accounting shall incorporate such internal controls as the Commission may require or as may be required by generally accepted accounting principles.

2. (a) The Contractor and the Commission shall jointly have title to all books, records, correspondence, instructions, receipts, vouchers, and all writings of every description created by the Contractor heretofore in the course of the work at or for the Plant under Contract W-31-109-Eng-52 and hereafter under this Contract (apart from the drawings, designs, specifications, and other engineering, technical, scientific, and operating data referred to in Article XVII of this Contract), hereinafter referred to as "business records".

(b) Unless otherwise agreed, all business records created at the Plant shall be stored at the Plant. The Contractor shall be the custodian of said business records until the expiration of the term or earlier termination of this Contract and for seven years thereafter; provided that, in addition to the rights of the Commission hereinafter specified in this Article, the Commission shall have access thereto at all times and the right to make and remove copies thereof at Commission expense. The Commission shall also have the right to remove such records to the extent and for the periods necessary for litigation or Government investigations arising out of the work at or for the Plant under Contract W-31-109-Eng-52 or under this Contract, provided that the Contractor may make copies of the records so to be removed, at Commission expense, unless this proviso is waived by the Contractor. Notwithstanding the expiration of this Contract or its termination for any reason, the

Commission agrees to reimburse the Contractor for all reasonable costs of storage of business records at the Plant, including the salaries and reasonable expenses of the Contractor's custodial personnel, during said seven-year period.

(c) It is the intention of the parties that the business records in the custody of the Contractor during the seven-year period following the expiration or termination of this Contract shall be available for examination and reference by a successor organization and the Contractor agrees, upon request, to transfer to such successor organization or to the Commission records of current interest or importance to the Commission or a successor organization for the periods necessary to serve current needs, provided that the Contractor may make copies, prior to transfer and at Commission expense, of records to be transferred, which are of substantial importance and could not be adequately reconstructed or replaced in event of their loss, damage, or destruction, and the Commission agrees to return, or to require the successor organization to return, such records to the Contractor when they have served the purposes for which they were transferred. Similarly, in the event that any portion of the work under this Contract should be performed by an organization other than the Contractor, whether before or after the expiration or termination of this Contract, the Contractor's business records shall be made available or transferred to such other organization in the manner prescribed in the preceding sentence.

(d) The Contractor agrees to establish and carry out a program for the periodic destruction of business records not having sufficient value

to warrant their permanent retention. Except as otherwise mutually agreed by the parties hereto, this program will be governed by the retention periods prescribed from time to time by federal statutes, regulations, or administrative determinations in accordance with established federal procedures for records; and the Contractor agrees that upon request of the Commission, it will submit from time to time particular classes of records for such administrative determination as to appropriate retention periods. Notwithstanding the foregoing, in the event that the Contractor's company-wide policies pertaining to the disposal of particular classes of records prescribe longer retention periods than those determined pursuant to the preceding sentence, the Contractor shall be permitted to retain such records for such longer periods at Commission expense, subject to the provisions of paragraph (e) below. The Contractor shall also have the right, in lieu of the destruction of records as required by this paragraph, to remove and store them at its own expense, in which event the ultimate disposition of such records shall be governed by the provisions of paragraph (e) below.

(e) Upon the expiration of the aforesaid seven-year period of custodianship, all business records then remaining in its custody may be removed and retained, in whole or in part, by the Contractor at its expense, or at the option of the Contractor, delivered, in whole or in part, to the Commission at the place at which such records have been kept. In either event, the party thereafter having possession of said records will afford access thereto by the other party, and the right to make copies at the latter's expense, at all times. In the event the

removal of such business records, or any part thereof, is or may be required for litigation or for Government investigations, the party in possession of such records shall immediately notify the other to the end that copies thereof may be made prior to the removal of such records, at the expense of the party desiring such copies. The Contractor agrees not to destroy records retained by it without giving the Commission sixty days' written notice of its intention so to do. Within said sixty-day period, the Commission shall have the right to notify the Contractor to pack and ship at Commission expense to a destination designated by the Commission, all or any portion of such records included in the Contractor's notice to the Commission. Upon failure of the Commission to give such notice to the Contractor within said sixty-day period, the Contractor shall be free to dispose of all or any part of such records; provided that classified records shall be destroyed in accordance with Commission procedures. Similarly, the Commission agrees not to cause records delivered to it pursuant to this paragraph to be destroyed without giving the Contractor sixty days' written notice of its intention so to do. Within said period of sixty days, the Contractor shall have the right to notify the Commission to pack and ship, at the Contractor's expense, to a destination designated by the Contractor, all or any portion of such records included in the Commission's notice to the Contractor, to the extent permitted by security regulations then in effect.

(f) In cases in which the Contractor has responsibility for compliance with monetary limits or other requirements set forth in particular appropriation acts, any duly authorized representative of the Contractor shall be accorded the privilege of examining the portions of the books,

records, and papers of the Commission which relate to the actual cost of the work or other pertinent matters.

(g) This Section 2 of Article XVI shall be applicable to the ownership, access, custody, storage and disposition of records created under this Contract, as well as to records created in work at or for the Plant under Contract W-31-109-Eng-52 prior to the effective date of this Contract.

3. (a) The Contractor agrees that the Comptroller-General of the United States or any of his duly authorized representatives shall until the expiration of three years after final payment under this Contract, have access to and the right to examine any pertinent books, documents, papers, and records of the Contractor involving transactions related to this Contract. The Contractor further agrees to include in all of its subcontracts hereunder executed, a provision to the effect that the subcontractor agrees that the Comptroller-General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment under such subcontract, have access to and the right to examine any pertinent books, documents, papers, and records of such subcontractor involving transactions related to the subcontract. The term subcontract as used in this Section of Article XVI only means any purchase order or agreement to perform all or any part of the work or to make or furnish any materials required for the performance of this Contract, but does not include (i) purchase orders not exceeding $1,000; (ii) subcontracts or purchase orders for public utility services at rates established for uniform applicability to the general public; or (iii) subcontracts or purchase orders for

general inventory items not specifically identifiable with the work under this Contract.

(b) Nothing in this Contract shall be deemed to preclude an audit by the General Accounting Office of any transaction under this Contract.

(c) To the extent permitted by law, the Commission may authorize the Contractor to dispose of the records referred to in paragraph (a) above prior to the expiration of the periods stated therein.

4. The Commission shall at all times be afforded access to the premises, materials, and all work being carried on hereunder and shall have the right to inspect the same; and the Contractor shall make its pertinent books of account, relating to costs claimed for reimbursement under this Contract, available to the Commission or its duly authorized representatives for inspection and audit.

5. The Contractor agrees to establish and carry out a program of internal audit, which will provide an audit of financial transactions and an objective reporting of the manner in which established policies and procedures relating to work under this Contract are being performed. In any auditing phase in which the scope of coverage and basic standards of such internal audit program do not meet the scope and standards for internal auditing as established, published, and furnished to the Contractor by the Commission from time to time, the Contractor will advise the Commission thereof. Nothing in this section shall be construed as in any way precluding the Contractor from increasing the scope of its audits over and above the requirements of the Commission scope and standards or from the application of more rigid or precise standards. Such audits of subcontractors' and suppliers' accounts as may be necessary will normally be performed by the Contractor. However, in order to avoid as far as possible duplication in auditing functions performed by the Contractor and the Commission, the Contractor

agrees to comply with any reasonable requests of the Commission that particular auditing functions be performed exclusively by the Commission; and the Commission agrees that it will comply with reasonable requests of the Contractor for the Commission to perform particular audits of the contracts of suppliers and subcontractors hereunder.

ARTICLE XVII - DRAWINGS AND OTHER DATA

1. All drawings, designs, specifications, and other engineering, technical, scientific, and operating data (all of which papers are hereinafter in this Article referred to as "said data") prepared by the Contractor specifically for this Contract and for the Plant under Contract W-31-109-Eng-52 prior to the effective date of this Contract are the property of the Government, and shall be delivered to the Commission upon its request, subject to the right of the Contractor to have access thereto.

2. The Government shall have full right to use said data at any time without additional payment to the Contractor, subject to the provisions of Section 6 of Article XXXVIII - Patents.

3. The provisions of this Article XVII shall be retroactive in their application to and from the 15th day of May, 1946.

ARTICLE XVIII - SPECIAL REQUIREMENTS

1. The Contractor hereby agrees that it will obey and abide by all applicable laws of the United States of America; of the state, territory, or political subdivision thereof wherein the work is done, or of any other duly constituted public authority.

2. Except as otherwise authorized in writing by the Commission, the Contractor will reduce to writing every subcontract, purchase order, or other agreement (all of which instruments are hereinafter in this Section 2 of