**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TODD KORTEKAMP AS EXECUTOR OF THE ESTATE OF JACK KORTEKAMP AND GERALDINE KORTEKAMP AS SURVIVING SPOUSE, | ) | |
| Plaintiffs, | ) | C.A. No. 08-043S |
| v. | ) | |
| 3M CO., et al., | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO GENERAL ELECTRIC COMPANY'S ("GE") OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

**INTRODUCTION**

GE has done nothing to effectively rebut the fact that it untimely filed its Notice of Removal. Furthermore, the fact that this removal was a procedural delay tactic thrown up against the proverbial wall to see if it would stick. GE has only now, untimely, attempted to support its assertion that federal subject matter jurisdiction exists in this case by presenting new evidence and legal theories in its Opposition. Notwithstanding that this evidence should be excluded from consideration, it does not establish GE's burden in this failure to warn case. Furthermore, the KAPL contract, when looked at objectively and in its entirety, clearly establishes: (1) that the government neither prevented GE from warning nor gave GE any direction regarding asbestos warnings at KAPL; (2) that there is no conflict between GE's duty to warn and the KAPL contract or any related federal policy; (3) that GE had unfettered discretion to manage all aspects of KAPL including design, safety and warnings; (4) that GE was permitted and expected to deviate from any existing specifications. In light of this explicit

contractual language, GE is unable to make even a colorable showing of any of the three elements of the *Mesa* test or the federal contractor defense, in this failure to warn case.

**TABLE OF CONTENTS**


**I. IT IS TOO LATE FOR GE TO AMEND OR SUPPLEMENT ITS DEFICIENT NOTICE OF REMOVAL** .......... 4

**II. NOTWITHSTANDING THE FACT THAT THE EXTRA DETAILS AND ADDITIONAL EVIDENCE PRESENTED BY GE IN ITS OPPOSITION SHOULD BE EXCLUDED FROM CONSIDERATION, THE NEW EVIDENCE FAILS TO ESTABLISH THAT GE IS ENTITLED TO REMOVAL UNDER §1442(a)(2)** .......... 6

**a. The KAPL Contract – Contract No. W-31-109-Eng-52** .......... 8

**i. The KAPL Contract Explicitly Required GE To Abide By Local, State, And Federal Law And Contemplates That GE Might Be Subject To Civil Liability Regarding Its Performance** .......... 9

**ii. The Government Deferred To GE's Expertise And Discretion For Nearly Every Matter Addressed In The Contract** .......... 10

**iii. Under The Contract, GE Was Responsible For The Creation And Implementation Of Asbestos-Safety Rules, Regulations, Warnings, Procedures And Testing At KAPL** .......... 11

1. *The 1986 report regarding the possible overexposure to asbestos at KAPL clearly establishes that GE had the contractual duty to manage all aspects of safety at KAPL and GE failed to uphold these duties* .......... 11

**b. The Betts Affidavit** .......... 13

**III. EVEN ASSUMING THAT GE IS ALLOWED TO ASSERT ITS PREEMPTION THEORY, GE SHOULD FAIL** .......... 14

## I. IT IS TOO LATE FOR GE TO AMEND OR SUPPLEMENT ITS DEFICIENT NOTICE OF REMOVAL

In GE's Opposition to Plaintiffs' Motion to Remand ("GE's Opposition"), GE has improperly presented new evidence and legal theories in an attempt to support removal. As the removing party, GE had the burden (within 30 days pursuant to §1446(b)) to present sufficient evidence to support its claim of federal subject matter jurisdiction. In its Notice of Removal, GE presented no such evidence. Because all jurisdictional evidence and legal theories must have been presented in GE's Notice of Removal, and because the 30 day window in which GE was permitted to remove has run, only the evidence and legal theories in GE's Notice of Removal should be considered in ruling on Plaintiffs' Motion to Remand.

A notice of removal, pursuant to §1442(a)(1), must contain substantially more detail and support than the one filed by GE. A Notice of Removal may be amended pursuant to § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Noting that every Court of Appeals that has considered this issue is in agreement, the U.S. Supreme Court interpreted this statute to "remedy inadequate jurisdictional allegations, but <u>not</u> defective jurisdictional facts." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (emphasis added). Further, the Fifth Circuit opined that "[s]ection 1653 provides a method for curing defective allegations of jurisdiction where the defect is merely one of the pleading and <u>not one of an absence of proof of facts</u> necessary to establish" jurisdiction. *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991) (emphasis added) (internal quotation omitted) *quoting Aetna Casualty & Surety Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986). Moreover, such an insufficient notice cannot be amended or supplemented, after the time for removal has expired. *See McGlasson v. Barger*, 220 F.Supp. 938 (D. Colo. 1963). "[A]

petition for removal may not be amended to supply jurisdictional averments that have been lacking." *Id.* pp. at 940-41. A removing defendant, which fails to provide the requisite facts and evidence, cannot amend or supplement, after the time for removal has expired, except to clarify facts already timely and properly alleged. *Id.* 'Clarifying' does not include adding extra details or offering additional evidence. *Id.*

The *McGlasson* Court refused to consider late-filed affidavits and stated that:

> [N]o factual allegations to support jurisdiction appear in the petition for removal....the Court cannot look to the affidavits filed at the hearing on this matter for a factual basis upon which removal may rest since, in essence, they are an effort to amend the petition for removal beyond the [] period within which removal must be effected.

*Id.* at 940-41. In *McGlasson*, (where as actual federal officers, defendants had the advantage of a liberal interpretation of the removal statute), the court remanded the case because there was "a complete absence of any facts in [the notice] which would justify a finding that [the] defendants did that which they [were] charged with doing under color of their office." *Id.* at 939-40 ("any basis for federal jurisdiction under Section 1442(a)(1) is expressly denied in the complaint and no factual allegations to support jurisdiction appear in the petition for removal").

In GE's Opposition, GE first produced some *jurisdictional evidence*, albeit insufficient,[1] to support removal. GE also raised a preemption theory, as an additional ground for removal, for the first time. Now that the time for removal has clearly run, GE can't raise a new theory of federal subject matter jurisdiction to support removal. GE is only allowed to provide clarification of the facts and evidence that it presented with its Notice of Removal. GE chose to remove pursuant to § 1442(a)(1) federal officer removal and has asserted the federal contractor defense as its purported federal defense to satisfy that requisite prong of the *Mesa* test. GE

[1] The new evidence includes the Betts Affidavit, sections of the KAPL Contract, manuals, and a plethora of new facts and theories.

strategically chose which facts and evidence to provide in support of its Notice of Removal. GE has to now use that evidence and stay with the theories that it chose. This side step by GE is further evidence that GE has not and cannot carry its burden.

Even assuming that GE's Notice on February 1, 2008 was timely filed (which it was not), the time for removal expired on or about February 5, 2008. Thus, GE's time to supplement its petition for removal with supporting evidence expired on February 5, 2008. Therefore, it is clear that GE was not entitled to amend or supplement its deficient Notice by adding new legal theories, facts, evidence and supporting documents included in its Opposition to Plaintiffs' Motion for Remand, filed March 7, 2008.

## II. NOTWITHSTANDING THE FACT THAT THE EXTRA DETAILS AND ADDITIONAL EVIDENCE PRESENTED BY GE IN ITS OPPOSITION SHOULD BE EXCLUDED FROM CONSIDERATION, THE NEW EVIDENCE FAILS TO ESTABLISH THAT GE IS ENTITLED TO REMOVAL UNDER §1442(a)(2)

When GE filed its Notice of Removal, GE had the burden to establish: (1) that GE was a federal officer or a 'person' acting under a federal officer; (2) that GE was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiffs' claims; and (3) that it asserts a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 129 (1989). Specifically, in this failure to warn case, GE had to establish all three of these elements regarding GE's decision not to warn of the hazards of asbestos in its turbines and elsewhere at KAPL. GE has failed to make such a showing both in its Notice of Removal and Opposition to Plaintiffs' Motion to Remand.

The fact that this is a failure to warn case and not a design defect case is critical to how this case should be analyzed and what evidence is required to make a colorable showing of the government contractor defense. GE admits that this is a failure to warn case. *See* GE's

Opposition at 2. The well established case precedent, from nearly every Circuit, where Courts have declined to apply the *Boyle* design defect analysis in a failure to warn case, is outlined in Plaintiffs' Motion to Remand. See Plaintiffs' Motion to Remand at pp.22 and 30. Despite its admission, and the heavy weight of authority against it, GE has continued to improperly insist on the application of the general analysis for design defect claims in this case.

Here, the government did not prevent GE from warning and there is not a scintilla of evidence that GE would be acting contrary to the KAPL Contract or government policy by complying with its State law duty to warn of the hazards of asbestos at KAPL. *See contra Boyle v. United Tech. Corp.*, 487 U.S. 500, 512. In *Boyle*, a design defect case, a Marine pilot drowned when the helicopter he was flying crashed into the ocean off the Virginia coast. The pilot survived the impact, but could not escape from the sinking helicopter. The pilot's estate alleged, as one theory of liability under Virginia tort law, that the helicopter manufacturer defectively designed the escape hatch to open outward instead of inward, and, as a result, the hatch could not be opened when the aircraft was submerged. *Id.* at 503. For GE to satisfy the *Mesa* test and make out the federal contractor defense it must show that the government dictated or prohibited asbestos warnings at KAPL the same way the government specifically required the helicopter manufacturer to design the escape hatch to open outward in *Boyle*. GE has not and cannot do this. To the contrary, the KAPL Contract gave GE control over nearly every aspect of KAPL including design, safety and training. *See* discussion *infra*. The Contract also specifically stated that GE would deviate from government specifications. The Contract also required GE to comply with local, State and Federal law. There is no conflict between the State law duty to warn and federal policy or specifications if the government explicitly required GE to follow State law.

**a. <u>The KAPL Contract – Contract No. W-31-109-Eng-52</u>**

GE would have this Court assume that because there was a contract between the government and GE and the contract involved cutting-edge and potentially hazardous nuclear technology, that GE cannot be sued in civil court. These facts do not alone support removal nor do they establish a colorable claim for the government contractor defense. GE has not and cannot support this assertion with evidence. Nor does the case precedent support such a sweeping conclusion. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1942) ("Many private corporations[']...business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").

In its Notice of Removal, GE neither produced the KAPL Contract nor relied upon its explicit provisions to support removal. GE provided the first evidence of the actual KAPL Contract between GE and the government in its Opposition to Remand. Plaintiffs obtained a copy of the KAPL Contract along with other KAPL records, on March 13, 2008, in response to a Freedom of Information Act ("FOIA") request. *See* KAPL Contract No. W-31-109-Eng-52 (attached as Exhibit A). The language of the contract makes it clear that GE had an enormous amount of discretion with regard to every aspect of KAPL including the design, construction and operation of the facility; specifications, design, construction and materials of all products produced; as well as, the hiring, training and safety of all personnel.

**i. The KAPL Contract Explicitly Required GE To Abide By Local, State, And Federal Law And Contemplates That GE Might Be Subject To Civil Liability Regarding Its Performance**

Absent any contractual provision that supports a mere colorable showing of the elements that GE must establish, GE highlights a clause indemnifying GE against loss or liability arising out GE's performance. *See* GE's Opposition at 5. This clause merely states that the government will reimburse GE for costs and judgment arising out of civil liability from performance of the contract. This provision includes no prohibition on civil suits against GE.[2]

GE argues that it should not be held to its State law duty to warn with regard to its performance of the Contract. GE is wrong. The contract clearly states, in multiple sections on multiple issues, that GE must comply with local, State and Federal law. In designing and constructing the facility, GE was to "[m]ake all reasonable efforts to obtain necessary permits and approvals from all local, State and Federal authorities []." *See* Contract at p.5 ¶ 1(c). Most Significantly, pursuant to Contract Article XIX entitled SPECIAL REQUIREMENTS, GE was required to:

> [p]rocure all necessary permits and licenses; obey and abide by all applicable laws of the United States of America, States, Territory, or political subdivision thereof wherein the work is done, or of any other duly constituted public authority.

*Id.* at p.39 ¶ b. GE was further required to operate KAPL in compliance other laws including:

> all applicable provisions of the Walsh-Healey Public Contracts Act[3] (Act of June 30, 1936; Public Law 846 – 74th Congress; 49 Stat. 2036; 41 U.S.C. 34-35) and

---

[2] Even assuming that this indemnification clause was sufficient to support removal, this evidence was not produced, much less referred to, by GE in its Notice of Removal. As a result this indemnification clause and any surrounding issues are not before this Court. Surely it would be a stretch for GE to argue that it was unaware of the indemnification clause, or any other significant provision, of this contract when it filed its Notice.

[3] The Walsh-Healey Public Contracts Act (PCA) requires contractors engaged in the manufacturing or furnishing of materials, supplies, articles, or equipment to the U.S. government or the District of Columbia to pay employees who produce, assemble, handle, or ship goods under contracts exceeding $10,000, the federal minimum wage for all hours worked and time and one half their regular rate of pay for all hours worked over 40 in a workweek. *See* U.S. Department of Labor (http://www.dol.gov/compliance/laws/comp-pca.htm#basic).

> all applicable regulations, determinations and exemptions of the Secretary of Labor now or hereafter in effect issued by the Department of Labor pursuant thereto.

**ii. The Government Deferred To GE's Expertise And Discretion For Nearly Every Matter Addressed In The Contract**

GE also failed to mention several other provisions in the contract that outline GE's responsibilities and ultimately, the broad scope of authority that GE had regarding all aspects of KAPL. GE argues that it was unable to deviate from detailed Navy specifications. This is simply untrue. The Contract explicitly states that the products produced at the plant, including turbines, would deviate from any existing Navy specifications because "variances therefrom are unavoidable." *See* Contract at p.8 ¶ 3.

> In the operation of the Plant the Contractor [GE] shall use all reasonable efforts to produce the Products to conform with the specifications to be mutually agreed upon by the Contracting Officer and the Contractor, but it is recognized that variances therefrom are unavoidable and the Contractor makes no guarantees that said specifications will be met.

*See* Contract at p.8 ¶ 3. (emphasis added). Furthermore, GE was obligated to "[p]repare final designs, detailed working drawings and specifications necessary for the effective coordination and efficient execution of the construction work []."*See* Contract at p.5 ¶ 1(e). GE was also "free, but not be obligated, to use any materials, supplies, and equipment." *See* Contract at p.4 ¶ 11. GE used its discretion under these provisions to use asbestos and not warn of its dangers. This language is fatal to GE's argument and ultimately prevents GE from making a colorable showing of the three elements of the *Mesa* test and the government contract defense in this failure to warn case. In light of this language, GE can't argue that it was under the iron clad control of the Navy with regard to the materials and means used to design, construct and operate

KAPL and its turbines. This language would even prevent GE from meeting its burden if this were a design defect case.

**iii. Under The Contract, GE Was Responsible For The Creation And Implementation Of Asbestos-Safety Rules, Regulations, Warnings, Procedures And Testing At KAPL**

GE states that it had a detailed and comprehensive safety and training program at KAPL. *See* GE's Opposition at 12. The Contract clearly states that "[t]he Contractor shall procure and train personnel for the operation of the Plant and Laboratories." *See* Contract at p.3 ¶ 7. Part of training would most assuredly include warning of the known asbestos-dangers and providing procedure to safely avoid them. In its Opposition, GE has attempted to paint the picture that GE had a comprehensive safety program in place that complied with all contractual obligations, was subject to Congressional oversight and complied with all applicable State laws. Jack Kortekamp was exposed to asbestos at KAPL in the late 1950's and early 1960's. GE eludes that because a 1991 Government Accounting Office ("GAO") Report stated that KAPL met federal standards at that time, with exception for the 1986 asbestos overexposure, KAPL was and has been "safe" since Mr. Kortekamp was there. This is a disingenuous play on dates by GE.

1. *The 1986 report regarding the possible overexposure to asbestos at KAPL clearly establishes that GE had the contractual duty to manage all aspects of safety at KAPL and GE failed to uphold these duties*

In addition to the KAPL Contract obtained by the Plaintiffs via FOIA request, Plaintiffs received documents regarding the 1986 asbestos overexposure at KAPL. Included, is a report of the Board of Investigation appointed by the government to investigate and report on the possible exposure of personnel to asbestos between July and September 1986 at the Kesserling Site of KAPL. *See* Report of Board of Investigation ("Report") at p.1 sect. I (attached as Exhibit B).

"The Board was to evaluate the control of asbestos work at the Site by KAPL,[4] and if deemed necessary, to identify any corrective actions which need to be taken to ensure adequate protection for asbestos workers." *Id.* at p.1 sect.II. "In conducting its investigation the Board interviewed responsible managers and personnel of the General Electric Company []." *Id.*

The most important fact to be drawn from the report is that the Board clearly acknowledged that it was GE's responsibility to oversee all aspects of safety at KAPL. *See id.* at p.3 sect.V (A)(1). The government contracted duties to GE, and GE failed to uphold them. This report is consistent with the sworn statements of, retired GE KAPL engineer and safety officer, Jack Shannon contained in his affidavit attached to Plaintiffs' Motion to Remand as Exhibit G. KAPL was an asbestos nightmare that GE management ignored.

The Board found that overexposure was a result of several faults in the way GE ran KAPL. Specific problems relevant to whether GE adequately trained and warned workers of the hazards of asbestos include: (1) inadequate training; (2) inadequate guidance to ensure that Navy personnel members could perform the work safely and monitor their own asbestos exposure while performing work; (3) lack of engineered procedures prepared by GE to limit release of and potential exposure to asbestos by the workers. All of the deficiencies were a result of GE failing to perform its contractual safety duties.

A section of the Board's analysis entitled "Responsibility" sums up GE's responsibility and its failure to meet it:

> KAPL operating management failed to meet their responsibility to provide adequate planning and control of asbestos work to insure safe performance of asbestos work by Navy asbestos workers. Kesselring Site Safety Office management failed their [sic] responsibility to provide adequate and reasonable asbestos controls training to plant crews.

---

[4] The Board refers to GE as KAPL. *Id.* at p.3 sect.V (A)(1)

*See* Report at p.29 ¶ G. In light of this finding by the government, it is incredible that GE would argue that the government somehow prevented GE from warning Mr. Kortekamp of the dangers of asbestos at KAPL.

**b. The Betts Affidavit**

Assuming arguendo that the Court considers the Affidavit of Lawrence Betts as evidence in support of GE's removal, it provides no relevant evidence regarding KAPL. Mr. Betts provides a lot of great information about the Navy generally; however, just as with the Hobson and Lehman affidavits that were the sole evidence with its Notice of Removal, Mr. Betts has no personal knowledge of the KAPL facility, the KAPL contract or the actual specifications, if any, provided by the Navy to GE regarding asbestos use or warnings at KAPL. Any statements made by Mr. Betts regarding GE at KAPL are based upon pure speculation. Further, any statements regarding the actual contract or Navy specifications (if any) for KAPL should be excluded from consideration because they are hearsay and in violation of the Best Evidence Rule.

Mr. Betts affidavit is better suited to provide information regarding equipment supplied by manufacturers for ships. But GE's activities at KAPL were different. Truly, the Navy outsourced the entire operation with all of its obligations and responsibilities to GE, including safety. GE had control and discretion over the means and great leeway with regard to the final product. Even if the Navy did provide some specification regarding warnings at KAPL, GE was contractually given tremendous leeway to deviate from specifications – in fact, the Contract states that it is unavoidable that GE will deviate from Navy specifications. GE chose not to warn of the dangers of asbestos at KAPL, and nothing Mr. Betts has stated addresses this truth.

## III. EVEN ASSUMING THAT GE IS ALLOWED TO ASSERT ITS PREEMPTION THEORY, GE SHOULD FAIL

As discussed *supra*, the KAPL contract explicitly stated that GE had to comply with the local, State and Federal law when performing its work under KAPL. *See* Plaintiffs' Reply at p.9. Surely it cannot be said that the government, in requiring GE to comply with State law (including the State law duty to warn), intended to cause preemption and displacement of State law. Such an argument ignores the plain language of the KAPL contract. Thus, GE's preemption argument should fail.

## CONCLUSION

For the above reasons, and for the reasons articulated in their Motion to Remand, the Plaintiffs' request that this Honorable Court remand this case to state court.

Dated: March 14, 2008
Providence, Rhode Island

Respectfully Submitted,
The Plaintiffs,

By: /s/ Mark T. Boivin

**John E. Deaton, Esq. (#6537)**
jdeaton@deatonlawfirm.com
**Mark T. Boivin, Esq. (#7515)**
mboivin@deatonlawfirm.com
**Mason J. Waring, Esq. (#7737)**
mwaring@deatonlawfirm.com
The Deaton Law Firm
One Richmond Squaré, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400 Tel.
(401) 351-6401 Fax

**CERTIFICATION OF SERVICE**

I hereby certify that on this 14th day of March 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Mark T. Boivin
Mark T. Boivin