# Exhibit A

To Plaintiffs' Reply to General Electric Company's Opposition to Plaintiffs' Motion to Remand
C.A. No. 08-043S

Classification cancelled by office of General Counsel USAEC, Ltr 12/13/48 W/C Frank/9d. 500 ...

~~SECRET~~

Contract No. W-31-109 Eng-52

This document consists of 65 pages
Number 27 of 45 copies, Series A...

COST-PLUS-FIXED-FEE
DESIGN, ENGINEERING, CONSTRUCTION, EQUIPPING,
TRAINING PERSONNEL, RESEARCH, DEVELOPMENT
AND OPERATION CONTRACT

WAR DEPARTMENT

CONTRACTOR: GENERAL ELECTRIC COMPANY

ADDRESS: Schenectady, New York

CONTRACT FOR: Design, Engineering, Construction, Equipping, Training Personnel, Research Development and Operation

FIXED FEE: $1.00

ESTIMATED COST OF ARCHITECT ENGINEER SERVICES: $2,753,000.00

ESTIMATED COST OF CONSTRUCTION SERVICES: $57,147,000.00

ESTIMATED COST OF TRAINING PERSONNEL: $100,000.00

ESTIMATED COST OF OPERATION OF THE PLANT AND PROCESS DEVELOPMENT FACILITIES: $67,900,000.00

ESTIMATED COST OF OPERATION OF LABORATORIES: $9,300,000.00

PAYMENT: To be made by Finance Officer, United States Army, U. S. Engineer Office, Manhattan District, Oak Ridge, Tennessee.

The equipment, services and supplies to be obtained by this instrument are authorized by, are for the purpose set forth in, and are chargeable to the following Procurement Authorities, the available balances of which are sufficient to cover the cost of the same:

212/60905 608-3222 P470-07 - $49,000,000.00

217/80920 708-4400 P410-07 - $88,200,000.00

This contract is negotiated and executed under the First War Powers Act, 1941, and Executive Order No. 9001.

Approved
9 Sept. 1946
L. R. GROVES (signed)
L. R. GROVES
Major General, U.S.A.

SECRET

# INDEX


| ARTICLE | TITLE | PAGE |
|---|---|---|
| I | Description of the Plant and Laboratory Facilities | 2 |
| II | General Statement of Work and Services | 3 |
| III | Statement of Architect-Engineer Services | 5 |
| IV | Statement of Construction Services | 7 |
| V | Training of Personnel | 8 |
| VI | Operation of the Plant and Process Development Facilities | 8 |
| VII | Operation of Laboratories | 10 |
| VIII | Changes | 11 |
| IX | Title To the Work | 11 |
| X | Workmanship and Materials | 11 |
| XI | Expert Technical Assistance | 12 |
| XII | Estimated Cost and Fixed-Fee | 12 |
| XIII | Cost of the Work | 14 |
| XIV | Payments | 26 |
| XV | Advances | 27 |
| XVI | Annuity Fund | 34 |
| XVII | Records and Accounts, Inspection and Audit | 36 |
| XVIII | Drawings and Other Data | 38 |
| XIX | Special Requirements | 39 |
| XX | Termination | 40 |
| XXI | Disputes | 44 |
| XXII | Convict Labor | 46 |
| XXIII | Labor | 47 |
| XXIV | Accident Prevention | 49 |
| XXV | Notice to Government of Labor Disputes | 49 |
| XXVI | Officials Not to Benefit | 50 |
| XXVII | Covenant Against Contingent Fees | 50 |
| XXVIII | Contractor's Organization | 50 |
| XXIX | Progress Reports and Changes in Personnel | 50 |
| XXX | Loading and Unloading Railway Cars | 51 |
| XXXI | Assignment of Claims | 51 |
| XXXII | Disclosure of Information | 51 |
| XXXIII | Employment of Aliens | 52 |
| XXXIV | Responsibility of Contractor-Contingencies | 53 |
| XXXV | Employees Benefit Fund | 54 |
| XXXVI | Statutory Authorization | 57 |
| XXXVII | Patents | 58 |
| XXXVIII | Term of the Contract | 60 |
| XXXIX | Options | 60 |
| XL | Disposition of Government-Owned Property | 61 |
| XLI | Anti-Discrimination | 62 |
| XLII | Code Terms | 63 |
| XLIII | Definitions | 63 |
| XLIV | Alterations | 63 |


SECRET

~~SECRET~~

This document consists of 64 pages
No. 29 of 35 copies, Series B

COST-PLUS-FIXED-FEE
DESIGN, ENGINEERING, CONSTRUCTION, EQUIPPING,
TRAINING PERSONNEL, RESEARCH, DEVELOPMENT
AND OPERATION CONTRACT

Contract No.
W-31-109 Eng-52

HAW
KDN

THIS CONTRACT, effective as of the 15th day of May, 1946, / entered into by the UNITED STATES OF AMERICA, (hereinafter called the "Government"), represented by the Contracting Officer executing this contract, and GENERAL ELECTRIC COMPANY (hereinafter called the "Contractor"), a corporation organized and existing under the laws of the State of New York.

W I T N E S S E T H  T H A T :

WHEREAS, E. I. du Pont de Nemours and Company, (hereinafter referred to as "du Pont", pursuant to the provisions of Contract No. W-7412 Eng-1 with the Government, designed, constructed and is now operating a Government-owned plant at Richland, Washington (hereinafter at times referred to as the "Hanford Engineer Works" of the "Plant", and

WHEREAS, the Government deems it to be necessary to the national defense that the Hanford Engineer Works be continued in operation upon the termination of the aforesaid contract with du Pont, and

WHEREAS, the Government believes that the Contractor, because of its broad experience in the fields of electricity, chemistry and applied physics, is best suited to take over the operation of the Hanford Engineer Works, and

WHEREAS, the Government desires the Contractor to engage in fundamental research and development work pertaining to atomic energy, in the Contractor's Research Laboratory and in a Government Laboratory and at Hanford Engineer Works and elsewhere, and

WHEREAS, the Government desires the Contractor to design, engineer and construct the aforesaid Government Laboratory and perform other design, engineering and construction services as hereinafter provided, and

WHEREAS, the accomplishment of the work by the Contractor under a cost-plus-a-fixed-fee contract entered into after negotiations and without advertising for proposals is authorized by law,

~~SECRET~~

~~SECRET~~

NOW, THEREFORE, the parties hereto do mutually agree as follows:

## ARTICLE I - DESCRIPTION OF THE PLANT AND LABORATORY FACILITIES

1. The Plant, at Richland, Washington, to be made available to and operated by the Contractor consists of Type B production units, together with the necessary Product-recovery and auxiliary facilities. Said Plant includes process equipment with necessary housing thereof and control and operating facilities therefor; boiler houses; water supply, water purification plant, sewers, waste disposal facilities and storage reservoirs; laboratories, warehouses, material storages and stores buildings; repair shops; buildings and facilities for feeding and housing laborers, mechanics and other employees; hospitals and first-aid stations; change houses, laundries, gate houses, guard headquarters, and observation posts; administrative buildings, roads, walks, railroads, locomotives, cars, tractors, trucks and buses; outside lines for electricity, water, air, and steam; fences, fire fighting equipment and housing therefor; outside lighting; houses; village (including schools and other customary community facilities); and other buildings, facilities, and equipment necessary in connection with the Plant.

2. Process development facilities, to be located at and be a part of the Plant shall be designed and constructed by the Contractor on the basis of information and data theoretically and experimentally developed and furnished by the Contractor, and by others at the instance of the Government.

3. Government facilities for fundamental research and development (hereinafter sometimes referred to as the "Government Laboratory") shall be designed and constructed by the Contractor on a plot of land consisting of approximately 100 acres at or near Schenectady, New York. Said land will be acquired and owned by the Contractor and the Contractor shall make the same available to the Government for the construction and operation of the Government Laboratory. The Government Laboratory shall be designed and constructed by the Contractor on the basis of information and data theoretically and experimentally developed and furnished by the Contractor and by others at the instance of the Government. The aforesaid Government Laboratory will be operated in addition to and in conjunction with the Contractor's Research Laboratory (the Government

→ See Amend. #10 (or KAPL)



~~SECRET~~

~~SECRET~~

For added clauses see Supp Agree #7, Amend. 3

Laboratory and the Contractor's Laboratory being hereinafter sometimes collectively referred to as the "Laboratories").

See Amendment No. 11 for additional paragraphs 4, 5, 6 and 7.

## ARTICLE II - GENERAL STATEMENT OF WORK AND SERVICES

Also, see Amend #40
" " " #42

1. The Contractor shall proceed with the performance of the work, or any work preliminary thereto, as authorized by the Contracting Officer, provided however, that the Contractor shall, on 1 September 1946 or on such later date as shall be mutually agreed upon in writing, take over the operation of the Plant.

2. The Government shall make available to the Contractor all classified information over which the Government has control and which is necessary for the performance of the work under this contract.

3. The Contractor shall render all architect-engineer and other services incident to design, development, and procurement of materials and equipment, inspection and supervision of the construction of the work more specifically described in Article I hereof.

4. The Contractor shall have the right, but shall not be obligated, to sublet such portions of the architect-engineer and construction work (including the installation of equipment) as may be desirable or necessary in the judgment of the Contractor, and such work shall be accomplished by subcontracts or direct contracts by the Government, either on a lump-sum, unit price, or cost-plus-a-fixed-fee basis; provided that all such subcontracts shall be subject to the approval of the Contracting Officer.

5. The Contractor shall furnish or assemble the necessary force of superintendents, foremen, skilled workmen and laborers, construction tools, and hand equipment and shall construct all items of construction work required by this contract for which subcontracts are not awarded in accordance with the provisions of Section 4 of this Article.

6. The Contractor shall provide the necessary office space at the site of the work for the representatives of the Contracting Officer and itself.

7. The Contractor shall procure and train personnel for the operation of the Plant and Laboratories.



~~SECRET~~

~~SECRET~~

8. All work and services to be performed by the Contractor under this contract shall be subject in all respects to the approval of the Contracting Officer.

9. The Contractor is authorized to administer and renew the present leases on houses, stores and other buildings at the Plant and to make new leases to such persons and under the terms of such agreements of lease as shall be approved by the Contracting Officer, and the Contractor is hereby appointed as agent of the Government for this purpose.

10. It is recognized that du Pont, in the performance of Contract No. W-7412 Eng-1 has incurred certain claims, liabilities, obligations and commitments, and that it may be in the best interest of the Government to have certain of these claims, liabilities, obligations and commitments assumed and liquidated by the Contractor under this contract. The contractor is therefore authorized to assume and liquidate such of the aforementioned claims, liabilities, obligations and commitments as may be agreed upon by du Pont and the Contractor and approved in writing by the Contracting Officer. Any claim, liability, obligation or commitment assumed by the Contractor hereunder may be compromised or settled by the Contractor on such terms and conditions as the Contracting Officer may approve in writing.

11. In carrying out the work under this contract, the Contractor shall be free, but shall not be obligated, to use any materials, supplies, and equipment of its own manufacture, or manufactured by its affiliates and/or services described in paragraph 2 d of Article XIII, upon advising the Contracting Officer in advance in those instances where the price of an order is $250 or more, as to the prices at which and the conditions upon which such services, equipment, materials or supplies (except such as are carried in the stores of the Contractor's departments) will be supplied. Such prices and conditions shall be those generally accorded other purchasers purchasing similar quantities under like conditions, and such prices may be

~~SECRET~~

quoted without regard to the provisions of Article XII. In the event the Government is able to obtain any of such services, materials, supplies or equipment of equal quality and quantity at a lower price or more favorable conditions from any responsible competitive source or from its own manufacture, it may undertake to do so upon so informing the Contractor within 10 days after being advised of the Contractor's prices for such services materials, supplies and equipment; otherwise the Contractor's prices so quoted shall be deemed to be negotiated prices approved by the Contracting Officer.

## ARTICLE III - STATEMENT OF ARCHITECT-ENGINEER SERVICES

1. When authorized in writing by the Contracting Officer the Contractor shall, in the shortest reasonable time thereafter, establish and maintain an office at or near the site of the work under the full-time resident direction of a Field Project Manager; and the Contractor shall perform the following services:

a. Make all necessary topographical and other surveys and maps; arrange for and supervise necessary test borings and other subsurface investigations.

b. Prepare, subject to the approval of the Contracting

HAW tracting
KDN ~~tracing~~ Officer, preliminary studies, sketches, and layout plans and reports, including estimates of cost of the proposed work and of all structures, utilities and appurtenances thereto.

c. Make all reasonable efforts to obtain necessary permits and approvals from all local, State and Federal authorities. Should it become necessary in the performance of the work and services for the Contractor to secure the right of ingress or egress to perform any of the work required by this Contract on properties not owned or controlled by the Government, the Contractor shall secure the consent of the owner, his representative, or agent, prior to effecting entry on such property. In the event the owner requires the payment of any fee for a license to enter upon and/or use such property, the Contractor, when so directed by the Contracting Officer, shall pay such fee and obtain a receipt therefor.

d. Prepare estimates of material quantities required to construct the Government Laboratory, process development and Plant facilities.

e. Prepare final designs, detailed working drawings and specifications nec[illegible]sary for the effective co-ordination

quoted without regard to the provisions of Article XII. In the event the Government is able to obtain any of such services, materials, supplies or equipment of equal quality and quantity at a lower price or more favorable conditions from any responsible competitive source or from its own manufacture, it may undertake to do so upon so informing the Contractor within 10 days after being advised of the Contractor's prices for such services materials, supplies and equipment; otherwise the Contractor's prices so quoted shall be deemed to be negotiated prices approved by the Contracting Officer.

ARTICLE III - STATEMENT OF ARCHITECT-ENGINEER SERVICES

1. When authorized in writing by the Contracting Officer the Contractor shall, in the shortest reasonable time thereafter, establish and maintain an office at or near the site of the work under the full-time resident direction of a Field Project Manager; and the Contractor shall perform the following services:

a. Make all necessary topographical and other surveys and maps; arrange for and supervise necessary test borings and other subsurface investigations.

b. Prepare, subject to the approval of the Contracting Officer, preliminary studies, sketches, and layout plans and reports, including estimates of cost of the proposed work and of all structures, utilities and appurtenances thereto.

c. Make all reasonable efforts to obtain necessary permits and approvals from all local, State and Federal authorities. Should it become necessary in the performance of the work and services for the Contractor to secure the right of ingress or egress to perform any of the work required by this Contract on properties not owned or controlled by the Government, the Contractor shall secure the consent of the owner, his representative, or agent, prior to effecting entry on such property. In the event the owner requires the payment of any fee for a license to enter upon and/or use such property, the Contractor, when so directed by the Contracting Officer, shall pay such fee and obtain a receipt therefor.

d. Prepare estimates of material quantities required to construct the Government Laboratory, process development and Plant facilities.

e. Prepare final designs, detailed working drawings and specifications necessary for the effective co-ordination

and efficient execution of the construction work and revise such drawings and specifications as required by the Contracting Officer. All reservations, topographical, utility and unit layout maps shall be inked in on linen unless otherwise ordered by the Contracting Officer. If deemed practicable by the Contracting Officer, all other drawings for structures and other items may be made on paper in pencil. Prepare copies of the specifications and sets of full size copies of working drawings in such manner and in such numbers as the Contracting Officer may require. There shall be included in the specifications all provisions which the Contracting Officer may direct to have incorporated therein relating to the awarding of the construction subcontracts contemplated by Section 4 of Article II and the conditions under which the work shall be done, including a provision if so required by the Contracting Officer that the subcontractors, and all persons employed directly or indirectly under such construction subcontracts will utilize the hospital and first-aid facilities furnished by the Contractor.

f. Prepare an estimate of the cost of the proposed Government Laboratory and process development and Plant facilities based on the approved designs, drawings and specifications therefor, and furnish for the approval of the Contracting Officer:

(1) Schedules and charts showing the proposed sequence of operations in the construction of each of the several portions of the work.

(2) Estimates showing the amounts of critical and important materials and dates when such materials will be required on the site.

(3) Labor estimates, to be prepared with the assistance of construction subcontractors, contemplated by Section 4 of Article II, showing the approximate numbers, trades and dates required to meet the schedule in (1) above.

(4) In addition to the requirements of Article XXIX, monthly progress reports in approved form showing the progress of the construction work and any deviation from the approved construction schedules.

g. Establish a permanently monumented base line, with elevations tied into the North American Datum, unless specifically exempted by written instructions of the Contracting Officer. Furnish all governing lines, bench marks, and grading

essential to the construction ~~of the Government Laboratory and process development facilities.~~

h. Supervise the construction work included in this contract to assure that every part thereof is in accordance with the approved drawings and specifications within the area and boundaries designated for the project by the Contracting Officer.

i. Check and approve all shop and working drawings submitted in connection with the construction work to assure that they conform with approved drawings.

j. Make or cause to be made such field and laboratory tests of concrete and concrete aggregates and all other materials at the site or at any time or place as the Contracting Officer may require. Inspect and report to the Contracting Officer in writing as to the conformity or nonconformity of the workmanship and materials to specifications; and on the progress of the construction work.

At the direction or with the approval of the Contracting Officer, arrange for, by subcontract or otherwise, and supervise tests and inspections of materials and workmanship by the Contractor's Laboratories or by commercial testing laboratories or other similar agencies, either at such laboratories or at the points of manufacture or fabrication of materials. The cost of such tests and inspection shall be reimbursable hereunder.

k. Consult and advise with the Contracting Officer and consult and advise with third parties at the request of the Contracting Officer, on any questions which may arise in connection with the work, in fields in which the Contractor is experienced.

l. Prepare partial and final estimates of quantities and values of work done under lump-sum and unit price subcontracts necessary to provide data required under the payment provisions of such subcontracts.

m. Perform all other architectural and engineering services within the scope of this contract required by the Contracting Officer.

ARTICLE IV - STATEMENT OF CONSTRUCTION SERVICES

1. When authorized in writing by the Contracting Officer the Contractor shall, in the shortest practicable time thereafter, furnish or procure the services, labor, materials, tools, machinery, equipment (including installation of the equipment not procured on an installed basis), facilities and supplies

not furnished by the Government, and do all things necessary for the construction and equipping of the work (including the alteration, construction of addition to, and re-equipping of the Plant) in accordance with the approved drawings and specifications. The Government reserves the right to furnish any equipment or materials necessary for the construction or equipping of the work, provided that, in the judgment of the Contractor and the Contracting Officer, such equipment or material so to be furnished is of a suitable type and in satisfactory condition.

ARTICLE V - TRAINING OF PERSONNEL

1. The Contractor shall use all reasonable efforts to hire or select the personnel necessary for the operation of the Plant and the Laboratories and, when such personnel are available, shall proceed to train them, at the Plant, Laboratories or elsewhere, in the duties and functions of their respective positions.

2. The extent and character of the work to be done by the Contractor under this Article shall be subject to the approval of the Contracting Officer.

ARTICLE VI - OPERATION OF THE PLANT AND PROCESS DEVELOPMENT FACILITIES

1. As each production unit of the Plant is turned over to the Contractor for operation, the Contractor shall use all reasonable efforts to operate such unit or units at the actual capacity thereof, unless otherwise requested by the Contracting Officer.

2. While the Contractor will make every reasonable effort to operate the Plant for the production of the Products, it is recognized by the Government that the Contractor cannot and does not make any guarantee or representation that any quantity of the Products will be produced.

3. In the operation of the Plant the Contractor shall use all reasonable efforts to produce the Products to conform with the specifications to be mutually agreed upon by the Contracting Officer and the Contractor, but it is recognized that variances therefrom are unavoidable and the Contractor makes no guarantee that said specifications will be met.

4. In carrying out the work under this Article, the Contractor is authorized to and shall do all things necessary

~~SECRET~~

or convenient in the operating and closing down of the Plant or any part thereof, including (but not limited to) the employment of all persons engaged in the work hereunder (who shall be subject to the control and shall constitute employees of the Contractor), the providing of all materials and supplies except such as the Government is to furnish and supply as elsewhere specifically provided in this contract, and the preparation of the Products for shipment.

5. The Government expressly agrees to furnish the principal raw materials necessary for the operation of the Plant and reserves the right to furnish any other materials for such operation. The Contractor shall not be obligated to utilize any material furnished by the Government unless in the judgment of the Contractor and the Contracting Officer such material is of suitable type and in satisfactory condition.

6. The Contractor shall maintain a satisfactory system of inspection concurrent with operations and no Products shall be submitted for the Government inspector's approval which has not previously been inspected by agents of the Contractor.

7. ~~The Government shall take delivery of the Products at the final processing buildings where the Products are prepared for shipment by the Contractor. The Government assumes all responsibility for the Products subsequent to such delivery and the Contractor shall have no obligation with respect to storage of the Products at the Plant subsequent to their delivery. Incident to such assumption of responsibility, the Government shall operate and protect the facilities for the transportation of the delivered Products to the Plant storage facilities located separate and apart from the Products recovery areas and shall operate and protect such storage facilities. The Contractor shall provide maintenance services (including hazard surveys) with respect to said transportation and storage facilities at the request of the Contracting Officer from time to time.~~ See Amend. No. 13

(See Amend. No. 14) 8. Except as the Commission may specify The Contractor shall have no responsibility for furnishing of personnel to provide protection and patrol in the periphery of the industrial area of the Hanford Engineer Works and on the Columbia River, adjacent thereto, or for the operation of ferries, or the manning of gate houses or barriers located at ferry landings, railroads and highways entering the industrial area of the Hanford Engineer Works. Except as the Commission may specify (See Amend. No. 14) The Government shall have full responsibility for the external or peripheral protection of the industrial area of the Hanford Engineer Works and for the operation of all ferries and, as the result of manning highway, railroad and ferry landing gate houses or barriers, for the



~~SECRET~~

control of personnel and Government material and property entering or leaving the industrial area of the Hanford Engineer Works and for the carrying out of all other security functions required to be performed at said points. The Contractor shall have responsibility for the protection of the various operating or construction areas or units of the Hanford Engineer Works and of the Construction Camp site within the industrial area, and of the Richland Village area, and will provide personnel and perform all functions required at these locations.

9. No part of the work to be performed under this Article VI shall be subcontracted unless the Contracting Officer shall have given his prior written approval thereto.

## ARTICLE VII - OPERATION OF LABORATORIES

*(Sentence deleted. See Amendment #2)*

1. ~~(In accordance with the written recommendation made by the Contractor from time to time and approved in writing by the Contracting Officer, the Contractor shall conduct fundamental research studies, investigations, and development work in the Laboratories, pertaining to atomic energy.)~~ The Contractor shall prepare and submit monthly reports as to the progress of such fundamental research studies, investigations, and development work and shall furnish a final report summarizing its activities, findings, and conclusions. Such reports shall be furnished in such quantity and form as may be required by the Contracting Officer or his duly authorized representatives.

2. In carrying out the work under this Article the Contractor is authorized to and shall do all things necessary or convenient in the operating of the Laboratories and closing down of the Government Laboratory or any part thereof, including (but not limited to) the employment of all persons engaged in work hereunder (who shall be subject to the control and constitute employees of the Contractor), and the providing of all materials and supplies except such as the Government is to furnish and supply as elsewhere specifically provided in this Contract.

3. The Government expressly agrees to furnish the principal raw materials necessary for the operation of the Laboratories and reserves the right to furnish any other materials for such operation. The Contractor shall not be obligated to utilize any materials furnished by the Government unless in the judgment of the Contractor and the Contracting Officer such material is of a suitable type and in satisfactory condition.

4. The Contractor will use all reasonable efforts to supply the necessary personnel for the operation of the Laboratories and to perform the tasks as mutually agreed upon from time to time, but it is recognized that the Contractor cannot guarantee results of the operation of the Laboratories. The Contractor shall also provide personnel for the maintenance, protection and patrol of the Laboratories to the extent and in the manner mutually agreed upon by the Contractor and the Government.

5. No part of the work to be performed under this Article VII shall be subcontracted unless the Contracting Officer shall have given his prior written approval thereto.

*6. See Amendment #1.*

~~S E C R E T~~

## ARTICLE VIII - CHANGES

1. The Contracting Officer may at any time by written order issue additional instructions or require additional work or services, with the written consent of the Contractor, or direct the omission of work or services covered by this contract. If such changes cause a material increase or decrease in the amount or character of the work and services to be done under this contract, the contract shall be modified in writing accordingly. Nothing provided in this Article shall excuse the Contractor from proceeding with the prosecution of the work so changed. There shall be no adjustment in the amount of the fixed fee as provided herein, nor any claim therefor because of any errors and/or omissions made in computing the estimated cost of the work under this contract or where the actual cost varies from the estimated cost.

## ARTICLE IX - TITLE TO THE WORK

*Sentence deleted, See Amendment #3*

(Title to all materials, tools, machinery, equipment and supplies used in construction or operation of the Plant and the Laboratories for which the Contractor shall be entitled to reimbursement under Article XIII shall vest in the Government at the F.O.B. point of shipment thereof, or at such other point or points as the Contracting Officer may designate in writing; provided that the right of final inspection and acceptance or rejection of such materials, tools, machinery, equipment and supplies at such place or places as he may designate in writing is reserved to the Contracting Officer; provided, further, that upon such final inspection the Contractor shall be given written notice of acceptance or rejection as the case ~~may be.~~) In the event of rejection, the Contractor shall be responsible for the removal of the rejected property within a reasonable time.

## ARTICLE X - WORKMANSHIP AND MATERIALS

The work shall be executed in the best and most workmanlike manner by qualified, careful and efficient workers insofar as they are available, in strict conformity with the best standard practices where such practices exist. Except as otherwise authorized by the Contracting Officer, all materials shall be of the best quality of their respective kinds. If the Contracting Officer requires that the Contractor submit for prior approval samples of materials proposed for use in the work covered by this contract, the Contractor shall make no commitments for such materials until the submitted sample has been approved by the Contracting Officer.



~~S E C R E T~~

SECRET

ARTICLE XI - EXPERT TECHNICAL ASSISTANCE

When, in the judgment of the Contractor, the complexity and nature of the project are such as to require expert technical assistance, or services, or advice in connection with special phases of the work, such as site planning, manufacturing processes, or other problems of a highly technical character, the Contractor may employ, by contract or otherwise, with the written consent and approval of the Contracting Officer obtained in advance, such supplemental professional services as are necessary for the proper performance of this contract.

ARTICLE XII - ESTIMATED COST AND FIXED-FEE

1. It is estimated that the cost of the work to be performed by the Contractor under this contract will be as follows:

a. It is estimated that the cost of the work required under Article III of this contract will be approximately Two Million, Seven Hundred Fifty-Three Thousand Dollars ($2,753,000.00), exclusive of the Contractor's fee.

b. It is estimated that the cost of the work required under Article IV of this contract (exclusive of the cost of materials and equipment to be furnished by the Government) will be approximately Fifty-Seven Million, One Hundred Forty-Seven Thousand Dollars ($57,147,000.00), exclusive of the Contractor's fee.

See Amend. No. 15 + No. 27 + No. 28 + No. 102

c. It is estimated that the cost of the work required under Article V of this Contract will be approximately One Hundred Thousand Dollars ($100,000.00) exclusive of the Contractor's fee.

d. It is estimated that the cost of the work required under Article VI of this contract (exclusive of the cost of materials to be furnished by the Government) will be approximately Sixty-Seven Million, Nine Hundred Thousand Dollars ($67,900,000.00) to 31 December 1947 for performance hereunder, exclusive of the Contractor's fee.

e. It is estimated that the cost of the work required under Article VII of this contract (exclusive of the cost of materials to be furnished by the Government), will be approximately Nine Million, Three Hundred Thousand Dollars ($9,300,000.00), to 31 December 1947 for performance hereunder, exclusive of the Contractor's fee.

(f) See Amendment #6

None of the foregoing estimates is guaranteed by the Government or the Contractor. Said estimates are based upon the data now available, are set forth in writing and have been agreed upon by the Government and the Contractor.



SECRET

~~SECRET~~

2. In consideration of its undertakings set forth in the contract, the Contractor shall receive the following:

a. Reimbursement for costs and expenses and payment of allowances and agreed rates of compensation as provided in Article XIII.

b. A fixed-fee in the amount of One Dollar ($1.00) which constitutes complete compensation for the Contractor's services, including profit other than that included in the prices quoted pursuant to Section 11, of Article II, and referred to in paragraph 2 d of Article XIII.



~~SECRET~~

~~SECRET~~

ARTICLE XIII - COST OF THE WORK

1. The Contractor shall be reimbursed in the manner hereinafter described in paragraphs 2 to 5, inclusive, for all of its costs incurred in the performance of the work, under this contract, and shall be paid in the manner hereinafter described in paragraphs 2 to 5 inclusive, by way of agreed compensation or predetermined fixed amounts or rates in lieu of such costs, to the extent that such costs or fixed compensation are claimed by the Contractor and approved by the Contracting Officer or his representative as properly allocable to the contract.

2. For purposes of payment to and accounting by the Contractor, the work to be performed under this contract is divided into four principal classifications. These classifications, and the general bases of payment therefor, are as follows:

a. Payment for all work and services performed by employees on the payroll of the Hanford Engineer Works and of the Government Laboratory (Knolls II) shall be at cost.

b. Payment for all work and services performed by employees of the Contractor's Research Laboratory (whether operated at Knolls I or in present locations, or both) shall be at cost, including a negotiated (predetermined) rate of overhead.

c. Payment for all technical and consulting work or other special services performed by employees of Departments of the Contractor other than the Research Laboratory, Hanford Engineer Works, or the Government Laboratory, except work covered by Subparagraph 2, d. of this Article, shall be at cost, including a negotiated (predetermined) rate of overhead.

d. Payment for products, materials, equipment and supplies, together with services requiring the use of facilities (such as processing, testing, analyzing, etc.) which are manufactured or furnished by employees of Departments of the Contractor other than the Contractor's Research Laboratory, Hanford Engineer Works, or the Government Laboratory, shall be at prices to be negotiated (generally in advance) by the Contracting Officer and the Contractor, it being understood that such prices will normally include a reasonable profit to the Contractor and will be those generally accorded other purchasers purchasing similar quantities under like conditions ——————



~~S-E-C-R-E-T~~

__________________ Such prices will include all work of designing and manufacturing equipment performed by employees of Departments of the Contractor other than the Contractor's Research Laboratory, Hanford Engineer Works, or the Government Laboratory. The negotiated prices contemplated in this subparagraph d. may, in some cases, take the form of a separate cost-plus-fixed-fee contract generally similar to the Contractor's existing cost-plus-fixed-fee contracts with the Government.

3. The provisions of this Paragraph 3 shall apply only to the work and services described in subparagraph 2,a. of this Article. The cost of such work and services shall include the following:

a. All labor, materials, tools, machinery, equipment, supplies, services, utilities, power and fuel necessary for either temporary or permanent use for the benefit of the work; but with respect to materials withdrawn from the Contractor's stores, whether or not such material is of its own manufacture, the actual cost shall be deemed to be the inventory cost plus the Contractor's usual handling charges for such stores.

b. Expenses of feeding, housing, and transportation of employees to the extent that these are not recovered by the Contractor from employees, provided such expenses are incurred either at the direction of the Contracting Officer or with his prior approval.

c. Salaries of all employees of the Contractor engaged in the work, whether at the site of the Plant or Government Laboratory or elsewhere, except salaries which, in accordance with the Contractor's customary accounting practices, are charged to administrative accounts and are covered by the allowance provided for in subparagraph 5, o. of this Article.

d. Buildings, trade fixtures and equipment required for field offices, commissaries, cafeterias, mess halls, dormitories, hospitals, first-aid stations, the village and community facilities in connection therewith, and other facilities necessary for the work, and the cost of maintaining and operating such buildings and facilities; provided that the Contractor may enter into a contract with a third party or parties for the operation of any such facilities, in which event such contract shall be reduced to writing and the terms thereof subject to the written approval or ratification of the Contracting Officer.

SECRET

e. Payments made by the Contractor under the Social Security Act and state unemployment compensation laws.

f. Profit sharing and extra compensation to employees, separation allowances and charges under welfare and other employee relations policies of the Contractor, insofar as the same are applicable to the work performed under this contract; provided that the Government shall be chargeable therefor only insofar as the same are consistent with the general employee relations policies existing within the Contractor's organization or as they may

including charges for Work News, Monogram and other General Electric Company publications for employees

(See Amend No. 16)



SECRET

be changed from time to time on a company-wide basis or as they may be modified with the written approval of the Contracting Officer to coincide with previous policies of du Pont at Hanford Engineer Works or due to the extraordinary circumstances and hazards surrounding the project or are incurred pursuant to agreement made as a result of collective bargaining with representatives of the employees or are expressly authorized in writing by the Contracting Officer.

g. In addition, all costs provided for in paragraph 5 of this Article.

4. The provisions of this paragraph 4 shall apply only to the work and services described in subparagraphs 2 b and 2 c of this Article. The cost of such work and services shall include the following:

a. All materials and supplies (including machinery, tools, dies, patterns, molds, jigs, fixtures, gauges, instruments and equipment) acquired or produced by the Contractor for use in the performance of the work under this contract. Such materials and supplies shall include those purchased for stock and subsequently issued for contract operations, those acquired under subcontracts and purchase orders, those directly chargeable to the maintenance, repair or replacement of machinery, tools, instruments, equipment, dies, molds, jigs, gauges, patterns, fixtures, and facilities which are or which are to become the property of the Government and to be used in the performance of the work provided for under this contract, and materials and supplies directly chargeable to plant alterations or to the rearrangement of plant or facilities or to the installation or removal of equipment or plant facilities. Such materials and supplies shall also include those scrapped for any reason, and waste resulting from the contract operations. Title to such waste and scrap material shall remain in the Government with the exception, however, of all ordinary manufacturing waste and scrap such as borings, turnings, short ends and pieces, punchings, skeletons and the like, (but not including scrap or waste which may result from valuable or special materials furnished by the Government), title to which shall vest in the Contractor as compensation for the cost of collecting and disposing of such material. This method of reimbursing the Contractor for the collection and disposal of waste and scrap material has been determined in advance by the Contracting Officer and agreed to by the contracting parties as representing reasonable and proper compensation for the work and such compensation does not include any element of profit nor reimbursement for any expenditures or items of cost for which reimbursement or payment is provided elsewhere in this Article. With respect to materials withdrawn from the Contractor's stores, whether or not such material is of its own manufacture, the actual cost shall be deemed to be the inventory cost plus the Contractor's usual handling charges for such stores.

S-E-C-R-E-T

b. All labor falling within the classes described in subparagraphs 2, b. and 2, c. of this Article which is directly and properly chargeable to the cost of work provided for under the contract, including the following: all compensation of scientists, physicists, chemists, engineers, draftsmen and other technicians or consultants, and all salaries or wages of employees performing shop labor including machining, testing, assembling, inspecting, packing, crating, boxing, loading, unloading, dismantling and moving or removing work or equipment called for by the contract, constructing and maintaining or replacing machinery, tools, equipment, instruments, dies, molds, jigs, gauges, patterns and fixtures (including Government-owned facilities) which are to be used in the performance of work hereunder, and conducting tests or demonstrations both within and without the Contractor's Plant.

c. Overhead (exclusive of General Expense) in amounts equal to the sum of the products of (i) the percentages set forth in the table below and (ii) the cost of labor for which reimbursement is authorized in accordance with the provisions of subparagraph 4, b. of this Article. In determining such amounts, the percentage indicated below for a given department or laboratory shall be applied to the labor performed by employees on the payroll of that department or laboratory:

| | |
|---|---|
| Research Laboratory...................... | 101% |
| General Eng. & Consult'g Lab............. | 123% |
| Electronics Department................... | 112% |
| Apparatus, Chemical and other Depts...... | 120% |

See Amend #26 in Supp Agm. #2.

These overhead rates have been determined in advance by the Contracting Officer and agreed to by the contracting parties as representing a reasonable and proper proportionate share of all of the Contractor's overhead (exclusive of General Expense) applicable and allocable to the performance of this contract and as not including any expenditures or items of cost for which direct reimbursement or payment is provided elsewhere in this Article nor any element of profit whatsoever. The overhead rate established in this paragraph for the Contractor's research Laboratory shall be redetermined by the Government and the Contractor and mutually agreed upon as of April 1, 1947, and at six month intervals thereafter; the overhead rates established above for other Departments or Laboratories of the Contractor shall be redetermined by the Government and the Contractor and mutually agreed upon as of April 1, 1947, and annually thereafter in accordance with arrangements now existing between the Contractor and other government procurement services. The rates so redetermined shall than be substituted for those set forth in this subparagraph 4, c. of Article XIII, provided, however, that such redetermined rates shall apply only to work performed after the date of redetermination.

Also see Amend 31 Supp. #6

See Amend 34 Supp #9

See Amend #43 Supp #15

KDM

-18-

S-E-C-R-E-T

~~SECRET~~

d. In addition, all costs provided for in paragraph 5 of this Article.

5. The provisions of this paragraph 5 shall apply to all the work and services described in subparagraphs 2, a., 2, b., and 2, c. The Contractor shall receive payment for the following items in addition to but without duplication of the amounts payable under the provisions of paragraphs 2, 3 and 4 of this Article.

a. Expenses of procuring or endeavoring to procure personnel and expediting the production and transportation of materials, supplies and equipment, including transportation and traveling expenses incident thereto.

b. Costs in connection with annuity contracts for the benefit of employees of du Pont who transfer to the payroll of the Contractor in order to compensate such employees for loss of past service benefits under pension plans of du Pont, such annuity contracts to be obtained in accordance with the provisions of Article XVI hereof.

c. All payments and expenditures made pursuant to subcontracts entered into for the purpose of carrying out this contract.

d. The actual cost of expenditures made by the Contractor in securing permits, approvals, licenses and easements provided for under subparagraph 1 (c) of Article III, and the cost of consulting services provided for under Article XI.

e. Expenditures incident to purchase, maintenance and operation (including services of necessary personnel) of one or more airplanes or charter of airplanes for use in connection with the work under this contract provided, however, that such purchasing or chartering shall have prior approval in writing of the Contracting Officer.

f. Rental actually paid by the Contractor at rates not to exceed those approved by the Contracting Officer for equipment rented in connection with the construction or other work to be performed under this contract.

g. Rental of any equipment and facilities owned by the Contractor and leased to the Government for use under this contract at rates to be agreed upon by the contracting parties.

~~SECRET~~

h. All costs of transportation, packing, crating, boxing, shipping, loading, unloading, moving, dismantling, removal, demurrage charges and storage charges on materials, supplies and equipment, including expenses of removal of rejected property under Article IX.

i. First class railroad transportation, including chair or sleeping accommodations, as customarily permitted by the Contractor and/or other transportation expenses of employees of the Contractor actually incurred in connection with the performance of the work hereunder and supported by such receipts as are required by the Contractor in the regular conduct of its business. Reimbursement to the Contractor for such transportation expenses of employees shall be limited to the costs as borne by the Contractor. Transportation by employee-furnished automobile for required travel of employees hereunder shall be reimbursed at the rate of 5¢ per mile as representing the actual cost of such transportation, or such higher rate as may hereafter be paid to the employees under a revised company-wide policy of the Contractor. The Contractor will, in addition to the reimbursement for transportation, be paid as a predetermined fixed amount by way of agreed upon compensation and not by way of reimbursement, $8.00 per day per man in travel status. Such transportation and per diem allowances shall be paid in connection with transfer of employees and their dependents to and from the sites of the work, including a reasonable time allowed to obtain new residences, provided, however, that the amounts payable to the Contractor for transportation under this provision shall be limited to the amounts for which employees are actually reimbursed. All travel shall be authorized or approved by the Contracting Officer.

j. Temporary rights in land required in connection with the work.

k. Premiums on such bonds and insurance policies as the Contracting Officer may approve or require as reasonably necessary for the protection of the Government or the Contractor, including the cost of any bonds required for protection of the Government in connection with advances made under Article XV. In every instance where this contract requires or permits the United States to pay the premium on a bond or insurance policy, either directly or ultimately as a reimbursable item, the bond or insurance policy shall contain an indorsement or other recital excluding by appropriate language any claim on the part of the insurer or obligor to be subrogated, on payment of a loss or otherwise, to any claim against the United States. It is recognized that complete insurance

[redacted]

coverage may not be readily obtainable for this project at acceptable rates. The Contracting Officer will make every effort, therefore, to effect an arrangement with the Contractor or to enable the Contractor to effect an arrangement with a reputable insurance carrier or carriers (including the Department of Labor and Industries of the State of Washington) to the end and for the purpose that mutually satisfactory coverage of the following obligations, but without limitation to these types, may be provided for by the Contractor: Workmen's Compensation, Occupational Disease, Employer's Liability, and Comprehensive Public Liability for bodily injury and property damage.

l. Losses and expenses, not compensated by insurance or otherwise (including settlements made with the written consent of the Contracting Officer), actually sustained by the Contractor in connection with the work, whether before or after completion of such work, unless reimbursement therefor is expressly prohibited.

m. Taxes and assessments which the Contractor may be required to pay on account of this contract, including but not limited to, all property, sales, excise, use, import or export taxes, duties or imposts which the Contractor is required to pay on or for any land site, plant, laboratory, equipment, process, organization, materials, supplies, or personnel or on moneys received as reimbursement therefor.

n. Permits, license fees and royalties on patents used in connection with the work; provided, that the use of such patents shall have had the prior written approval of the Contracting Officer.

o. Administrative and other expenses of the Contractor not otherwise reimbursable hereunder, deemed to be incident to the work under this contract in the amount of Two Hundred Thousand Dollars ($200,000) per month from July 1, 1946 to the termination or completion of this Contract. In the event of termination under this contract, the Contractor shall be reimbursed for such administrative and other expenses in such reasonable monthly amount as shall be agreed upon for work and services performed after termination. Promptly after the close of each calendar month hereunder, the Contractor shall submit a request for payment under the foregoing provisions and upon presentation thereof, the Contracting Officer shall approve the same for payment, anything elsewhere in this Contract to the contrary notwithstanding. Payments under this paragraph shall not limit or affect in any way, and shall be independent of, the reimbursement or payment by the Government under all other provisions of this Contract,



[redacted]

~~SECRET~~

p. Disbursements incident to the establishment and maintenance of bank accounts in connection with the work hereunder, including but not limited to, service charges, the cost of disbursing cash, necessary guards, cashiers and paymasters. If payments to employees are made by check, facilities for cashing checks must be provided without expense to the employees, and the Contractor shall be reimbursed therefor.

KLW
H.W

q. Accounting (including salaries and other expenses/ and expenses under Section 8 of Article XIII) in connection with special audits of accounts for the Government relating to the work hereunder.

r. All costs and expenses, in connection with the work hereunder, incurred subsequent to May 15, 1946, pursuant to Letter Contract W-31-109 Eng-52, dated May 15, 1946, and said Letter Contract insofar as it relates to the work hereunder will be merged into and superseded by this Contract upon adoption of this Contract by the Atomic Energy Commission as Provided in Article XXXVI.

s. The cost of correcting and/or replacing rejected material and/or workmanship and the cost of any rectifications required in connection with the work called for under this Contract, whether before or after completion of such work, as well as the cost of any restoration or repairs to such work occasioned by or in connection with inspection, demonstration, use or test thereof.

t. Costs incurred in connection with paragraph 10 of Article II.

u. All Vandyke prints, paper blueprints and photolithic tracings furnished by the Contractor under this contract shall be paid for at the following rates, which are determined



~~SECRET~~

77

~~SECRET~~

in advance by the Contracting Officer and agreed to by the contracting parties as representing a fair and reasonable allowance for the direct cost of such items and as not including profit or mailing expenses:

| | |
|---|---|
| Bromide Vandykes | 27 cents per sq. ft. |
| Paper Vandykes | 13 " " " " |
| Photolithic tracings from ink originals | 85 " " " " |
| Photolithic tracings from pencil originals | 95 " " " " |
| Paper blueprints | 5 " " " " |

v. All bonuses, allowances or other extra payments to employees for service outside the Continental United States or for service in Alaska or the Canal Zone.

w. All expenditures for long distance telephone calls, telegrams, cablegrams and radiograms.

x. The cost including incidental expenses and premiums (if any) of providing such death, injury, interment and other benefits to the Contractor's employees engaged in performing services under this contract as the Contracting Officer may approve or ratify.



~~SECRET~~

y. Such other items, not expressly excluded by other provisions of this contract as should, in the opinion of the Contracting Officer, be included in the cost of the work; when such items are allowed by the Contracting Officer, they shall be specifically certified as being allowed under this paragraph.

z. In the event the Contracting Officer shall determine that the best interests of the Government require that the Contractor initiate or defend litigation in connection with claims of third parties arising out of the performance of this contract, the Contractor will proceed with such litigation in good faith and the costs and expenses of such litigation, including judgments and court costs, allowances rendered or awarded in connection with suits for wages, overtime or salaries, and reasonable attorneys' fees for private counsel when the Government does not furnish Government counsel shall be reimbursable under this contract.

6. In approving reimbursement for all costs and expenses for the Contractor under this contract, the Contracting Officer shall be governed by the provisions of Article XXXIV.

7. It is intended that the cost of the work under this contract (exclusive of the cost of services, materials and equipment supplied by the Government), will not exceed the sum of One Hundred Thirty-Seven Million, Two Hundred Thousand Dollars ($137,200,000.00), inclusive of the fee, and that the cost of closing out this contract will not exceed the sum of Eighteen Million Dollars ($18,000,000.00). If and when, in the opinion of the Contractor the cost of the work under the contract may exceed the sum of One Hundred and Thirty-Seven Million, Two Hundred Thousand Dollars ($137,200,000.00), the Contractor shall give notice thereof in writing to the Contracting Officer. Within fifteen days after receipt of such notice, the Contracting Officer shall advise the Contractor in writing as to the action the Government desires the Contractor to take in connection with further performance hereunder. Failure of the Contracting Officer to advise the Contractor within such period shall constitute a notice of termination of this contract with the same effect as though given under Article XX hereunder. Nothing herein shall be deemed to limit the amount for which the Contractor will be reimbursed under the provisions of this contract.

prior to Dec. 31, 1947 See Amend #7 See Amend #8 prior to Dec 31, 1947 See Amend No. 17

8. It is the intention of the parties that the Contractor shall be reimbursed, indemnified, and held harmless for or on account of all costs, expenses, and liabilities incurred by it in connection with the work, subject to the provisions of Article XXXIV. If, upon final settlement, the total reimbursements to the Contractor, including the monthly sums called for by paragraph o of Section 5 of Article XIII, under this contract entered into by the parties hereto in connection with the work hereunder, exceed the Contractor's total cost and expenses (for this purpose the negotiated prices under Subparagraph 2, d, of Article XIII shall be deemed to be costs) allocable to the work under this contract and the overhead percentage under subparagraph 4c

See Amend. No. 24

S E C R E T

as determined on the basis of the Contractor's customary accounting practices, it is the intention of the parties that any excess will be returned to the Government. This determination shall be made by the Contractor and shall be certified by a firm of public accountants acceptable to the Government and familiar with the Contractor's accounting practices, to be selected by the Contractor; but being a voluntary offer on the Contractor's part, the determination shall not be subject to audit or review by the Government. In making such determination, there shall be taken into account the difference, if any, between the amount by which the Contractor's Federal income and excess profits taxes are increased by reason of the receipt of reimbursements under this contract and the amount by which such taxes are reduced as a result of any repayment under this Article. A certified copy of the public accountant's certificate shall be furnished to the Government. No such refund to the Government shall be deemed to prejudice any right of the Contractor under Article XXXIV.

GENERAL

9. Reservation by Government.

a. The Government reserves the right to furnish any materials, construction equipment, machinery, tools, or services (except personal services), including communication services necessary for the completion of the work; provided that the Contractor shall not be obligated to use any of such items unless in the judgment of the Contractor and the Contracting Officer they are of suitable type and in satisfactory condition. The Contractor shall use reasonable care with respect to such property. Upon the completion of the work at the Plant or Government Laboratory or upon demand prior thereto, the Contractor shall return such equipment, machinery, tools, and unused materials to the place designated by the Contracting Officer. The Contractor shall, as required by the Contracting Officer, cause all equipment, machinery, and tools to which title is vested in the Government to be suitably marked with an identifying mark or symbol indicating that such items are the property of the United States.

b. The Government reserves the right to pay directly to common carriers any or all freight charges on construction plant, materials, and supplies.

c. The Government reserves the right to pay directly to the person concerned all sums due from the Contractor for labor, materials, or other charges.

10. Discounts

The Contractor shall, to the extent of its ability, take all cash and trade discounts, rebates, allowances, credits, salvage, commissions, and bonifications, and when unable to take advantage of such benefits, it shall promptly notify the Contracting Officer of the reason therefor.



S E C R E T

SECRET

11. Revenue

HAW KDN All revenue received by the Contractor from the operation of the government owned hospital, commissaries, mess halls, cafeterias, dormitories, village and community facilities, or other government owned facilities, or from salvage, rebates, discounts, refunds, etc. shall be accounted for by the Contractor and, except for any reasonable compensation accruing to a Third party or parties in connection with such items, shall be applied in reduction of the cost of the work. HAW KDN

ARTICLE XIV - PAYMENTS

1. Reimbursement for costs and expenses. The Government shall currently reimburse the Contractor for costs and expenses incurred in accordance with this contract, and shall currently pay the Contractor the agreed compensation and predetermined agreed fixed amounts in lieu of actual costs, upon submission to and approval by the Contracting Officer of original payrolls for labor, receipted invoices for materials, supplies, and services, or other evidence satisfactory to the Contracting Officer. Generally, reimbursement will be made weekly but may be made at more frequent intervals if conditions so warrant.

2. Monthly Payments under Article XIII-5-o. The monthly payments called for by paragraph o of Section 5 of Article XIII shall be made promptly after the submission to the Contracting Officer by the Contractor of an invoice for each such amount.

3. Payment of the Fixed Fee. The fixed fee provided for in Article XII shall be paid upon completion of the work under this contract.

4. Payments by Contractor. If bills for purchase of material, supplies, services, machinery or equipment, or payrolls covering employment of laborers or mechanics incurred by the Contractor or by any subcontractor hereunder are not paid promptly by the Contractor or by any subcontractor hereunder, the Government shall have the right to pay such bills or payrolls directly.

5. Failure of the Government to Make Payments. In the event of failure of the Government to make any payments or advances as provided in this contract (other than by reason of normal delay in the payment of current expenditures incident to the checking by the disbursing officer of statements of such expenditures), the Contractor may suspend its performance hereunder until the full amount of any deficiency shall have been paid. The exercise of this right shall be without prejudice to any other rights or remedies of the Contractor on account of such failure by the



SECRET

~~SECRET~~

Government; and failure of the Contractor to exercise such right shall not constitute a waiver thereof with respect to any continuing or subsequent failure on the part of the Government.

6. Payment upon Completion of Work hereunder. Upon completion of the work hereunder and its final acceptance in writing by the Contracting Officer, the Government shall pay to the Contractor the unpaid balance of the cost of the work to be determined under Article XIII, less any sum that may be necessary to settle any unsettled claims in connection with this contract. The Contracting Officer shall accept the completed work with reasonable promptness. The Contractor shall, if required, furnish the Government with a release of all claims which it has against the Government arising under and by virtue of this contract other than such claims, if any, as may be specifically excepted by the Contractor from the operation of the release, and other than any claims subsequently found or determined to have been incurred in the performance of this contract and not known to the Contractor at the time of furnishing the foregoing release.

ARTICLE XV - ADVANCES

1. At any time and from time to time after the execution of this contract, the Government at the request of the Contractor and subject to the approval of the Contracting Officer, or his duly authorized representative, or the person to whom authority to make advance payments has been delegated, as to the present need therefor shall advance to the Contractor, without payment of interest thereon by the Contractor, sums not to exceed thirty per cent (30%) of the estimated cost of this contract (exclusive of the Contractor's fixed fee), as it may be amended from time to time, as set forth in Article XII.

2. As a condition precedent to the making of any advance payment or payments as hereinbefore provided, the Contractor shall furnish the Government with such adequate security as the Under Secretary of War or the person to whom authority has been delegated to make advance payments shall prescribe; provided that if other security is not prescribed the terms of this contract shall be considered adequate security for such advance payments; and provided, further, that if at any time the Under Secretary of War deems the security furnished by the Contractor inadequate, the Contractor shall furnish such additional security in the form of a surety bond or surety bonds, as shall be satisfactory to the Under Secretary of War.

3. Until all advance payments hereunder are liquidated, all funds received as advance payments under this contract, together with all funds received as reimbursements and by way of allowances and other payments for the cost of the work under Article XIII, exclusive of the Contractor's fixed fee, shall be deposited in a

special bank account or accounts at a member bank or banks of the Federal Reserve System or any "insured" bank within the meaning of the Act creating the Federal Deposit Insurance Corporation (Act of August 23, 1935; 49 Stat. 684) as amended (12 U.S.C. 264) separate from the Contractor's general or other funds. Such special bank account or accounts shall be so designated as to indicate clearly to the bank their special character and purpose, and the balance in such account or accounts shall be used by the Contractor exclusively as a revolving fund for making payments for the cost of the work as provided in Article XIII and for carrying out the other purposes of the principal contract and any amendments thereto and not for other business of the Contractor. Any balances from time to time in such special account or accounts shall at all times secure the repayment of the advances in connection with which the special account or accounts are opened, and the Government shall have a lien upon such balances to secure the repayment of such advances, which lien shall be superior to any lien of the bank or any other person upon such account or accounts by virtue of assignment to it of such contract or otherwise; provided that the bank shall be under no liability to any party hereto for the withdrawal of any funds from said special account upon checks, properly endorsed and signed by the Contractor, including checks in which the Contractor is the payee, except that after the receipt by the bank of written directions from the Contracting Officer or his duly authorized representative, the bank shall act thereon and be under no liability to any party hereto for any action taken in accordance with the said written directions. Any instructions or written directions received by the bank through the Contracting Officer upon War Department stationery and purporting to be signed by, or by the direction of, the Contracting Officer or his duly authorized representative, shall, insofar as the rights, duties, and liabilities of the bank are concerned, be conclusively deemed to have been properly issued and filed with the bank by the Contracting Officer or his duly authorized representative.

4. It is agreed that the aggregate of the advance payments outstanding under this contract, together with funds received as reimbursement for the cost of the work by the Contractor under Article XIII, shall at no time exceed the total estimated cost of the work under this contract as outlined in Article XII and as it may be revised from time to time, and any such excess shall be immediately repaid by the Contractor to the Government, or, if any reimbursement is due from the Government to the Contractor, shall be deducted therefrom; provided, however, that if the total cost of the work shall be in excess of the amount so paid to the Contractor, including said advance payments, the Government upon

[redacted]

presentation of satisfactory evidence shall currently and promptly reimburse the Contractor to the extent of such excess cost (subject to any delay in the availability of appropriated funds).

5. If, upon completion of the contract, or upon the termination thereof for other than the fault of the Contractor, the advance payments made to the Contractor in respect of such contract have not been fully liquidated in the manner herein provided, the unliquidated balance of such advance payments shall be deducted from any payments otherwise due the Contractor in respect of this contract; and if the sum or sums due the Contractor be insufficient to cover such balance, the deficiency shall be paid by the Contractor in cash forthwith after demand and final audit by the Government of all accounts hereunder in respect of such contract;



[redacted]

provided, however, that in the event of such termination of the contract for other than the fault of the Contractor, such deduction shall not be made prior to final audit unless and only to the extent that, the Contracting Officer or his duly authorized representative shall determine that such action is reasonably required in order to secure the eventual repayment in full to the Government of such unliquidated advance payments. In the event of cancellation or termination of this contract because of the fault of the Contractor, subject to appeal by the Contractor pursuant to Article XXI, "Disputes" with respect to any determination of fault, the Contractor, notwithstanding any ultimate rights to be reimbursed, agrees to return to the Government, upon demand, without set-off of any sums alleged to be due the Contractor the unliquidated balance of any advance payment. Furthermore, if, in the opinion of the Contracting Officer or his duly authorized representative the unobligated balance of the advance payments made by the Government under Section 1 hereof exceeds the amount necessary for the current needs of the Contractor, as determined by the Contracting Officer or his duly authorized representative, the amount of such excess shall, upon demand by the Contracting Officer or his duly authorized representative, be promptly returned to the Government and will be credited against the balance due the Government on advances previously made. If the demand made in any event set forth in this Section is not met upon receipt of such demand by the Contractor, the amount demanded will bear interest at the rate of six per cent (6%) per annum from the date of the receipt of the demand until payment is made; provided, however, that such payment of interest is hereby waived as to any sum paid by the Contractor within 15 days after the amount becomes due hereunder. If and when the Contractor has by means of deductions or otherwise, reimbursed the Government in full for payments made, any money remaining in the special bank account or accounts shall be free and clear of any lien hereunder and the bank or banks concerned shall have authority to pay same to the Contractor and shall thereupon be relieved of any further obligation to the Government on account thereof.

6. The Contractor shall, at all times, afford to the Contracting Officer, or his duly authorized representative, proper facilities for the inspection and audit of the Contractor's accounts, and the Contractor hereby agrees that the Contracting Officer, or his duly authorized representative shall have the right so far as the Contractor's rights are concerned, during business hours, to inspect and make copies of any entries in the books and records of the bank or banks relating to the said special account or accounts.

7. Subject to the approval of the Contracting Officer or his duly authorized representative, the Contractor may make payments to subcontractors and materialmen in advance out of the special account, for labor or services, or to pay for materials in advance of delivery at the site of the work or at an approved storage site. Such subadvances shall not exceed thirty per cent (30%) of the subcontract price or estimated cost, as the case may be, and the subcontractor or materialmen, to whom such advances are made, shall furnish adequate security therefor. Unless other security is furnished, covenants in subcontracts, expressly made for the benefit of the Government, providing for a sub-special account with Government lien thereon and for a Government lien on or title to property, tangible or intangible, purchased from the special account, and imposing upon the subcontractor substantially the same duties and giving the Government substantially the same rights as are provided herein between the Government and the Contractor, have been prescribed by the Under Secretary of War as minimum adequate security for such subadvances. The Contractor shall not be subject to any liability with respect to funds so advanced except to return or credit to the Government such amounts of said funds as shall be returned to the Contractor by said subcontractors and materialmen.

8. Notwithstanding any of the foregoing provisions of this Article XV, and in view of the unusual and unpredictable hazards involved in carrying out the work under this contract as well as abnormal conditions now existing, the Contractor is authorized to make payments in advance out of the special account to an insurance carrier or carriers or to a special fund operated by the Contractor (hereinafter referred to as the "Carrier") for the purpose of establishing and replenishing a collateral or guarantee fund or funds to secure the payment of premiums for such insurance coverage or to meet losses and expenses not covered by insurance as may be required or approved by the Contracting Officer. Except with respect to monies which may be furnished to the Contractor's special fund as herein provided, the Contractor shall not be subject to any liability with respect to funds so advanced except to return or credit to the Government such amounts of said funds as shall be returned to the Contractor by said Carrier. The funds furnished to any Carrier hereunder shall be handled in the following manner:

a. Until liquidated, the funds so advanced shall be deposited in a special bank account or accounts at a bank or banks to be selected by the Carrier, except that such bank or banks shall be a member of the Federal Reserve System or any "insured" bank within the meaning of the Act creating the Federal Deposit Insurance Corporation (Act of August 23, 1935; 49 Stat. 684) as amended (12 U.S.C. 264) separate from the general or other funds of the Carrier. Such special bank account or accounts shall be so designated as to indicate clearly to the bank their special character and purpose. The balance in such account or accounts shall be used by the Carrier

exclusively for carrying out the purposes of this paragraph 8, and not for other business of the Carrier.

8. b. At the discretion of the Carrier the funds advanced hereunder may from time to time be invested in whole or in part in United States Government securities. The Carrier shall have the right to sell all or any part of such securities as they see fit and to determine how much of the funds advanced shall be invested and how much retained in cash on deposit. All securities purchased with such funds shall be deposited in a safety deposit box or custody account in such bank. Suitable provisions shall be made so that all purchases and sales of such securities shall be upon the recommendation and approval of the Finance Committee or other similar executive body of the carrier approved by the Contracting Officer.

c. The interest earnings, if any, actually earned from the investment of the whole or any part of the funds advanced to the Carrier hereunder, less expenses incurred in the investment, management, custody and safekeeping of said funds shall be paid to the Contractor for the account of the Government.

d. The Carrier shall have the right to draw on the special account with any such bank, subject only to the provisions under which the funds were advanced.

e. Whenever the face amount of securities purchased with such advanced funds and deposited at any bank is either increased or decreased the bank shall report the amount of such increase or decrease to the Contractor and in addition to such reports, the bank shall also furnish periodic reports to the Contractor as to such advanced funds showing the amount of cash on hand in its special account and the face amount of the securities deposited with it.

9. Notwithstanding any other provision of this Article XV, the Government upon the request of the Contractor from time to time throughout the effective period of this contract, shall advance to the Contractor, without interest, sums not to exceed the amounts necessary to replenish in full the collateral or guarantee funds provided for by Section 8 of this Article XV and the Employees Benefit Fund provided for by Article XXXV of this contract. Upon

~~SECRET~~

the making by the Contractor of payments to carriers (including the Department of Labor and Industries of the State of Washington) pursuant to Section 8 of this Article XV or of the withdrawals from the special bank account for the purpose of the Employees Benefit Fund pursuant to Article XXXV hereof, or the Annunity Fund pursuant to Article XVI hereof, the advance payments made to the Contractor by the Government under this Article XV shall be deemed to be liquidated to the extent of the payments and withdrawals so made by the Contractor.



~~SECRET~~

~~SECRET~~

## ARTICLE XVI - ANNUITY FUND

1. In order to retain the services of certain employees of du Pont, now at Hanford Engineer Works, whose continued employment on the research, engineering, construction and production work covered by this contract is considered necessary by the Contractor, and in order to compensate such employees for loss of pension rights with du Pont, the Contractor is authorized to withdraw such amount or amounts as may be necessary from sums advanced to the Contractor by the Government pursuant to Article XV hereof, for the purpose of establishing an escrow fund, hereinafter referred to as the "Annuity Fund", which the Contractor will use in purchasing annuity contracts from an insurance company mutually satisfactory to the Government and the Contractor for the benefit of said employees, who are transferred to the Contractor's payroll as of September 1, 1946, on the following terms and conditions:

Annuities purchased will be single premium, non-refundable, with annuity payments for men starting at age 65, and for women starting at age 60, or at earlier ages (not before age 60 for men or 55 for women) at the option of the employee in amounts reduced on an actuarial basis as determined by the insurance company.

The amount of the annuity at age 65 for men and age 60 for women will be a percentage of the employee's annual rate of salary as of September 1, 1946, less an amount in lieu of the Social Security deduction called for by the du Pont pension plan, as follows:

| Year in which his continuous service with du Pont commenced | Percentage of salary | Deduction |
|---|---|---|
| 1946 | 1% | $ 10 |
| 1945 | 2 | 20 |
| 1944 | 3 | 30 |
| 1943 | 4 | 40 |
| 1942 | 5 | 50 |
| 1941 | 6 | 60 |
| 1940 | 7 | 70 |
| 1939 | 8 | 80 |
| 1938 | 9 | 90 |
| 1937 | 10 | 100 |
| 1936 | 11 | 100 |
| 1935 | 12 | 100 |
| Etc. | (Increasing 1% per year) | (No further increase) |



~~SECRET~~

SECRET

An annuity contract will be delivered to each employee as soon as possible after September 1, 1946, or the 15th anniversary of his continuous service date with du Pont, whichever is later, provided he maintains continuous service with the Contractor in accordance with the rules of the Contractor from September 1, 1946 to such 15th anniversary.

The annuity will normally be payable to the employee in equivalent monthly installments. If such monthly installment would be less than $10, payments shall be made quarterly. If the quarterly payment would be less than $10, the cash equivalent of the annuity shall be paid to the employee in a lump sum, at age 65 for men, or age 60 for women.

2. At the sole discretion of the Contractor, the Annunity Fund may be held in cash on deposit or invested and reinvested in United States Government securities either in whole or in part and from time to time, and the Contractor shall have the right to sell all or any part of such securities as and when it may see fit. All such cash shall be deposited in a bank which is a member of the Federal Reserve System, and all such securities shall either be held under a custody account with, or kept in a safety deposit box in, the same bank. All purchases and sales of such securities shall be upon the approval of any two of the Contractor's officers or employees who may be so authorized by the Contractor from time to time. Any such deposit account, custody account or safety deposit box shall be so designated as to indicate clearly to the bank its special character and purpose. The bank shall be obligated to furnish periodic written reports to the Contracting Officer setting forth the amount of cash in the deposit account and the face amount of the securities in the custody account, together with the deposits in and withdrawals from each of such accounts during the period covered by each such report. The Contractor shall furnish periodic written reports to the Contracting Officer, as well as such special reports as he may request from time to time, setting forth the face amount of securities in said safety deposit box, together with all deposits in and withdrawals from said box during the period covered by each such report. The bank shall be under no liability to any party hereto for the withdrawal of any funds or securities from the deposit account, the custody account or the safety deposit box upon proper authorization by the Contractor. Accounting for income and expense of the Annuity Fund shall be on a cash basis and not on an accrual basis. All realized interest, earnings and profits from said cash and securities and dividends from the insurance company shall be credited



SECRET

to the Annuity Fund, and all purchases of annuities, incurred costs, expenses, losses and taxes in connection with the handling and investment of and income from said cash and securities shall be charged to said Annuity Fund. Promptly after the first of July of each calendar year the Contractor will render an accounting to the Government for the preceding fiscal year showing securities and cash on hand, the profit or loss resulting from investments and reinvestments made, the disbursements made for annuities purchased in accordance with this agreement, and the cost of administration of the fund.

3. The Annuity Fund shall be used by the Contractor solely for the purposes set forth in this Article. Any sums remaining in said Annuity Fund after the purchase of all the annuities provided for in Section 1 of this Article shall be promptly paid or credited to the Government by the Contractor.

4. With the approval of the Contracting Officer, the Annuity Fund or a part thereof may be used for the purchase of a group annuity policy from an insurance company mutually satisfactory to the Government and the Contractor.

ARTICLE XVII - RECORDS AND ACCOUNTS, INSPECTION AND AUDIT

1. Records and Books of Account. The Contractor agrees to keep records and books of account, on a recognized cost accounting basis, showing the actual cost to it of all items of labor, materials, equipment, supplies, services and other expenditures of whatever nature for which reimbursement of actual cost is authorized under the provisions of this contract. The system of accounting to be employed by the Contractor shall be such as is satisfactory to the Contracting Officer, but no material change need be made from the Contractor's customary procedure if it conforms to good accounting practice and is applicable to the nature of the work to be performed under this contract.

2. Access to Records by Contracting Officer and Contractor. The Contracting Officer shall at all times be afforded proper facilities for inspection of the work and shall at all times have access to the premises, work and materials, to all books, records, correspondence, instructions, plans, drawings, receipts, vouchers, and memoranda of every description of the

~~SECRET~~

Contractor pertaining to said work except such documents as are submitted in support of reimbursement vouchers; and the Contractor shall preserve such papers, or photographs; or microphotographs thereof (in the manner directed by the Contracting Officer or his duly authorized representative pursuant to Army Regulations, AR 380-5 dated 6 March 1946), at a location or locations, in the vicinity of the Contractor's principal office, or the site of the work, selected by the Contractor and approved by the Contracting Officer, without additional compensation therefor other than the actual costs thereof, for a period of ten (10) years after completion or termination of work under this contract, provided that the Contractor may with the approval of the Contracting Officer destroy such papers as are deemed to be of no potential value. Likewise, any duly authorized representative of the Contractor shall be accorded the privilege of examining the books, records, and papers of the Contracting Officer relating to the actual cost of the work for the purpose of checking and verifying such costs. Upon the expiration of the ten (10) year period following completion or termination of work under this contract, no further compensation or reimbursement of cost for the preservation of records will be paid and the Contractor shall be free to retain or dispose of said records as it sees fit; provided, that if at any time subsequent to the ten (10) year period the Contractor shall conclude that the further preservation of all or any part of said records is unnecessary, it will not destroy them without giving the Contracting Officer not less than sixty (60) days written notice of its intention so to do. Within said period of sixty (60) days the Government shall have the right to notify the Contractor to pack and ship immediately to the Government, at a destination then specified by the Contracting Officer, all or any part of the records designated by the Contractor in its notice to the Contracting Officer. The cost of such packing and shipment shall be borne by the Government. Upon the failure of the Government to give such notice to the Contractor within said period of sixty (60) days, the Contractor shall be free to dispose of all or any part of such records; provided that, any such dis-



[redacted]

~~SECRET~~

posal of classified records shall be as directed by the Contracting Officer or his duly authorized representative pursuant to the requirements of Army Regulations for the Destruction of Classified Documents.

3. Auditing Functions. In order to avoid so far as possible duplication in accounting and auditing functions performed by the Contractor and the Government, it is agreed that the following accounting and auditing functions shall be performed by the Government exclusively:

a. Time checking (not time keeping) in the field, in the Plant, and the Government Laboratory.

b. Audit of original payrolls of the Contractor and subcontractors, the preparation of such payrolls and payment thereof to be performed by the Contractor or Subcontractors.

c. Checking of equipment rentals and the preparation and delivery of properly approved rental rolls to the Contractor for payment.

d. Such other accounting and auditing functions as may be effectively performed by Government employees and to which the Contracting Officer and the Contractor may mutually agree in writing.

4. Discharge of Functions. It is further agreed that if any of the accounting and auditing functions performed exclusively by the Government do not adequately discharge such accounting and auditing functions to the satisfaction of the Contractor, the Contractor, with the approval in writing of the Contracting Officer, may perform such additional checking and auditing as may be so approved. The Contractor shall be reimbursed for the cost of such additional accounting and auditing functions as are so approved.

5. Any loss, expense, damage, or liability, so far as it arises out of or in connection with the work to be performed by the Government under Section 3 of this Article, shall not be deemed for the purposes of Article XXXIV hereof to have been "caused directly by bad faith or wilful misconduct on the part of some corporate officer or officers (i.e., the Chairman of the Board of Directors, President, Vice Presidents, Secretary, Assistant Secretaries, Treasurer, Assistant Treasurers, Controller and Assistant Controllers) of the Contractor acting within the scope of his or their authority or employment."

## ARTICLE XVIII - DRAWINGS AND OTHER DATA

1. All drawings, designs and specifications (including a manual of operations) prepared by the Contractor specifically



~~SECRET~~

[redacted]

for this contract are to become the property of the Government on completion thereof as outlined in this contract, subject to the right of the Contractor to retain duplicates thereof for use as records only, and the Government shall have full right, subject to the provisions of Section 4 of Article XXXVII hereof, to use said drawings, designs, and specifications as instruments for the purpose of constructing, under contract or otherwise, any buildings or other structures for the sole use of the Government when and where the Government may designate without any claim on the part of the Contractor for additional compensation.

2. All designs, drawings and specifications (including the manual of operations) concerning the project shall be delivered to the Government whenever requested by the Contracting Officer and, furthermore, access to such designs, drawings and specifications as may contain classified information shall be restricted to trusted and duly authorized representatives of the Government and the Contractor, except as specifically authorized by the Government.

ARTICLE XIX - SPECIAL REQUIREMENTS

The Contractor hereby agrees that it will:

See Amend. No. 19

a. ~~Procure~~ and maintain bonds and insurance if obtainable in such forms and ~~in such~~ amounts and for such periods of time as the Contracting Officer ~~may approve~~ or require. Insurance if obtainable shall cover all work ~~required~~ by this contract, regardless of whether it is performed by ~~Contractor's~~ own forces or its subcontractors at the site of the Plant, or the ~~Labora-~~ tories..

b. Procure all necessary permits and licenses; obey and abide by all applicable laws of the United States of America, of the State, Territory, or political subdivision thereof wherein the work is done, or of any other duly constituted public authority. It is understood and agreed that the respective undertakings to conform to the requirements of the several statutes referred to in this and other Articles of this contract shall be operative only so long as and to the extent that such statutory requirements are applicable hereunder.

c. Reduce to writing, unless this provision is waived in writing by the Contracting Officer, every contract in excess of Two Thousand Dollars ($2,000) made by it for the purpose of the work hereunder, for services (except contracts for employment), materials, supplies, machinery, equipment, or for the use thereof; insert therein a provision that such contract is assignable to the Government; make all such contracts in its own name and not bind nor purport to bind the Government or the Contracting Officer thereunder. No purchase order or contract in excess of Five Thousand Dollars ($5,000), (and in the case of construction in excess of Two Thousand Dollars ($2,000), shall be made or placed without the prior approval or ratification of the Contracting Officer.



[redacted]

d. Enter into no subcontract for any portion of the construction work except in the form approved by the Contracting Officer. Subcontracts are defined as contracts entered into by the Contractor with others which involve the performance, in whole or in part at the site of the work, of some part of the work described in this contract.

e. Dismiss from the work such employee or employees as the Contracting Officer deems incompetent, careless or insubordinate or whose continued employment is deemed by the Contracting Officer to be inimical to the public interest, subject to the right of appeal by the Contractor pursuant to Article XXI "Disputes". The Contractor shall make every reasonable effort in the selection of its employees and in the prosecution of the work under this contract to safeguard drawings and specifications and to prevent the theft or unauthorized use of the same.

f. Immediately upon termination of third party rental agreement, make all repairs to equipment rented thereunder which are required to be made by the terms of such rental agreements and remove such equipment from the site of the work. In cases where such repairs and removal cannot promptly be made, the Contractor shall notify the Contracting Officer of the reasons for such delay.

g. When, in the opinion of the Contracting Officer, the Contractor's personnel and/or overhead at the Plant or Government Laboratory is excessive for the proper performance of this contract, reductions thereof shall be made as required by the Contracting Officer subject to the right of appeal by the Contractor pursuant to Article XXI "Disputes".

## ARTICLE XX - TERMINATION

1. The Government may terminate the work under this contract in whole or in part at any time by a notice in writing from the Contracting Officer to the Contractor. Such termination shall be effective in the manner and upon the date specified in said notice, which date shall be not less than six (6) months after the date of delivery to the Contractor of such notice, and shall be without prejudice to any claims which the Government may have against the Contractor or which the Contractor may have against the Government. It is expressly understood and agreed that no such termination shall be deemed to limit or destroy the effectiveness of the various provisions of this contract which, by their terms, are to remain in force subsequent to the termination of the physical work under this contract.

2. Upon effective date of such notice or upon expiration of the contract, or upon the effective day of termination thereof for any other reason, the Contractor shall immediately, except

[redacted]

in those cases in which the terms of this contract specifically provide otherwise, discontinue all work and the placing of all subcontracts for materials, facilities, supplies and services in connection with the performance of this contract or part thereof terminated by said notice, and proceed to terminate promptly all existing subcontracts, insofar as such subcontracts are chargeable to this contract or part thereof terminated by said notice. The Contractor shall also take any and all steps necessary to vest in the Government any and all rights and benefits resulting to the Contractor by reason of such termination, and the Contractor shall take any and all steps necessary to finally settle all matters in connection therewith (including protection of Government property in the possession of subcontractors and preparation thereof for removal or for storage) as may be required or approved by the Contracting Officer.

3. a. Thereafter the Contractor shall proceed with the settlement of his fixed-price subcontracts in accordance with the termination provisions thereof, if any, or, in the absence of such provisions, shall enter into negotiations with such fixed-price subcontractors, looking toward a negotiated settlement and an agreement upon cancellation charges, if any, resulting from the termination or cancellation of such subcontracts by reason of termination, in whole or in part, of this contract. The Contractor shall make every reasonable effort to arrive at a negotiated settlement in each such instance. Each such negotiated settlement shall be made expressly subject to the written approval of the Contracting Officer. Upon receipt of such written approval the amount of such settlement shall be paid by the Contractor unless payment direct by the Government is otherwise required. Approval of negotiated settlements of subcontracts shall be based upon such inquiry by the Contracting Officer as he deems reasonable under the circumstances.

b. The Contractor shall effect settlement and payment of each cost-plus-a-fixed-fee subcontract, unless payment direct by the Government is otherwise required in accordance with the termination provisions of such subcontract. In the event no termination provision is included in any such subcontract the Contractor shall make every reasonable effort to settle and terminate such subcontract and shall be reimbursed by the Government for all expenditures made in accordance with the terms of such subcontract and not previously reimbursed by the Government. The Contractor shall also be reimbursed for any fixed-fee payments made by him on such terminated cost-plus-a-fixed-fee subcontracts, to the extent that such payments have not previously been reimbursed, it being recognized that equitable adjustments in such fixed-fees may be necessitated by such termination. Any such settlements or adjustments in fee shall be made expressly subject to the written approval of the Contracting



[redacted]

~~SECRET~~

Officer as he deems reasonable under the circumstances.

c. The Contractor shall make every reasonable effort to effect settlement and payment (unless payment direct by the Government is otherwise required) of all other obligations, commitments and claims, the cost of which would be reimbursable in accordance with the provisions of this contract, that the Contractor, prior to the effective date of termination, may have undertaken or incurred in connection with the work terminated. Such settlements shall be made expressly subject to the written approval of the Contracting Officer. Approval of such settlements shall be based upon such inquiry by the Contracting Officer as he deems reasonable under the circumstances.

d. In the event the Contractor, after diligent effort, is unable to effect a negotiated settlement as provided for in paragraphs a, b, or c of this Section 3, or in the event any such settlement is disapproved by the Contracting Officer, and the Contractor is unable, by further negotiation, to effect a settlement acceptable to the Contracting Officer, the Government shall assume and become liable for the Contractor's liability under such subcontract, obligation, commitment or claim and the Contractor shall execute and deliver to the Government all such papers and take all such steps as the Contracting Officer may require for the purpose of fully vesting in the Government the rights and benefits of the Contractor under such subcontract, obligation, commitment or claim.

e. Any other provision of this Section 3 to the contrary notwithstanding, the Government shall assume and become liable to the Contractor for the amount of any final judgment rendered against the Contractor by a court of competent jurisdiction determining the liability of the Contractor under any subcontract, obligation, commitment or claim, the cost of which would be reimbursable in accordance with the provisions of this contract, that the Contractor prior to the effective date of termination may have undertaken or incurred in connection with the work terminated; provided (1) that the Contracting Officer shall find that the Contractor in good faith made a reasonable attempt to negotiate an adjustment of such liability without litigation and (2) that the Contractor gave the Contracting Officer prompt notice of the initiation of the proceedings in which such judgment was rendered and had offered the Government control of the defense of the proceedings; provided, further, the Government shall reimburse the Contractor for all his costs in connection with said suit, including, but not limited to, cost of litigation, attorney fees, accounting fees, and clerical expenses; provided, further, that if at any time prior to final judgment a settlement is finally negotiated and approved in writing by the Contracting Officer the Contractor shall



~~SECRET~~

pay the amount of such settlement and shall be reimbursed therefor and for all costs and expenses in connection therewith unless payment direct by the Government is otherwise required.

f. As a condition of any settlement by the Contractor as provided for in this Section 3, the Contractor shall obtain a release approved by the Contracting Officer as evidence that such payment constitutes complete and final settlement of the claim of the third party against the Contractor; provided that, with the approval of the Contracting Officer, such release may except any claims which the third party may have against the Contractor and which have not become liquidated at the time of such payment.

4. If this contract or any part thereof is terminated for the fault of the Contractor, the Contracting Officer may enter upon the Plant and Government Laboratory for the purpose of completing the work so terminated, may take possession of any and all materials, tools, machinery, equipment and appliances which are the property of the Government or under rental thereto, and may exercise all options, privileges, and rights in connection therewith, and may complete or employ any other person or persons to complete said work.

5. The Government shall reimburse the Contractor for all costs and expenses incurred pursuant to this Article in accordance with the provisions of Article XIII. Without limiting the generality of the foregoing, it is expressly understood and agreed that the following costs and expenses are included:

a. Costs incurred by the Contractor in preventing or reducing loss resulting from termination and for the protection, removal, storage, transportation, (including delivery costs resulting from directions of the Contracing Officer) of property in which the Government has an interest under this contract;

b. Accounting, legal, litigation, clerical and other expenses in connection with the termination of this contract, or part thereof, and any subcontract hereunder;

c. All sums paid to subcontractors or to third parties on account of termination; provided such payments have been approved or ratified by the Contracting Officer.

~~SECRET~~

6. The obligation of the Government to make any of the payments to the Contractor or any subcontractor required by this Article shall be subject to any claims in connection with this contract which the Government may have against the Contractor.

7. Prior to final settlement the Contractor shall furnish the release referred to in Section 6 of Article XIV of this contract, when required.

8. Any other provision of this Article to the contrary notwithstanding, it is expressly understood and agreed that the work done by the Contractor pursuant to any notice of termination given under this Article or pursuant to this Article is part of the work under this contract, and that such work will be done and all payments in connection therewith will be made under and in accordance with the applicable terms of this contract, including but not limited to the terms providing for reimbursement, advances, disput s and responsibility of the Contractor.

9. No settlement hereunder shall prejudice the Contractor's rights to reimbursement with respect to claims subsequently found or determined to have been incurred in the performance of this contract and not known or determined at the time of such settlement.

10. For the purposes of this Article the word "subcontract" is defined as any agreement by the Contractor with any third person which involves the furnishing of any materials, supplies, machinery, equipment, or services in connection with the performance, wholly or in part, of any of the work described in this contract. A "subcontractor" is any person with whom any such agreement is made.

## ARTICLE XXI - DISPUTES

Except as otherwise specifically provided in this contract, all disputes concerning questions of fact which may arise under this contract and which are not disposed of by mutual agreement, shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail a copy thereof to the Contractor at his address shown herein. Within 30 days from said mailing the Contractor may appeal

See Amend. No. 20



~~SECRET~~

in writing to the Secretary of War, whose written decision or that of his designated representative or representatives thereon shall be final and conclusive upon the parties hereto. The Secretary of War may, in his discretion, designate an individual, or individuals other than the Contracting Officer, or a board as his authorized representative to determine appeals under this Article. The Contractor shall be afforded an opportunity to be heard and offer evidence in support of his appeal. The President of the board, from time to time, may divide the board into divisions of one or more members and assign members thereto. A majority of the members of the board or of a division thereof shall constitute a quorum for the transaction of the business of the board or of a division, respectively, and the decision of a majority of the board or of a division shall be deemed to be the decision of the board or of a division, as the case may be. If a majority of the members of a division are unable to agree on a decision or if within 30 days after a decision by a division, the board or the president thereof directs that the decision of the division be reviewed by the board, the decision will be so reviewed, otherwise the decision of a majority of the members of a division shall become the decision of the board. If a majority of the members of the board is unable to agree upon a decision, the president will promptly submit the appeal to the Under Secretary of War for his decision upon the record. A vacancy in the board or in any division thereof shall not impair the powers, nor affect the duties of the board or division or of the remaining members of the board or division respectively. Any member of the board, or any examiner designated by the president of the board for that purpose, may hold hearings, examine witnesses, receive evidence and report the evidence to the board or to the appropriate division, if the case is pending before a division. Pending decision of a dispute hereunder the Contractor shall diligently proceed with the performance of this contract. Any sum or sums allowed to the Contractor under the provisions of this Article shall be paid by the United States as part of the cost

of the articles or work herein contracted for and shall be deemed to be within the contemplation of this contract. All disputes, concerning questions of fact, involving matters classified by the Government as "secret" hereunder shall be decided by the Contracting Officer subject to appeal by the Contractor to the Secretary or Under Secretary of War, personally notwithstanding any contrary provision of this contract. The decision of the Secretary or the Under Secretary shall be final and conclusive upon the parties hereto.

## ARTICLE XXII - CONVICT LABOR

The Contractor shall not employ any person undergoing sentence of imprisonment at hard labor. This provision shall not be construed to prevent the Contractor or any subcontractor hereunder from obtaining any of the supplies, or any component parts or ingredients thereof, to be furnished under this contract or any of the materials or supplies to be used in connection with the performance of this contract, directly or indirectly from any Federal, State or territorial prison or prison industry; provided that such articles, materials, or supplies are not produced pursuant to any contract or other arangement under which prison labor is hired by or employed or used by any private person, firm or corporation.

~~SECRET~~

## ARTICLE XXIII - LABOR

A. The following provisions shall apply only to labor employed in construction work at the site of the Plant and the Government Laboratory:

1. Rates of Wages

(a) The Contractor or his subcontractors shall pay all mechanics and laborers employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less or without the approval of the Commission more than those stated in Appendix B attached hereto and made a part hereof ~~(subject to Executive Order Number 9250 and the General Orders and Regulations issued thereunder)~~ regardless of any contractual relationship which may be alleged to exist between the Contractor or subcontractor and such laborers and mechanics; and the scale of wages to be paid shall be posted by the Contractor in a prominent and easily accessible place at the site of the work. The Contracting Officer shall have the right to withhold from the Contractor so much of accrued payments as may be considered necessary by the Contracting Officer to pay to laborers and mechanics employed by the Contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by such laborers and mechanics and not refunded to the Contractor, subcontractors, or their agents. See Amend. #9

(b) In the event it is found by the Contracting Officer that any laborer or mechanic employed by the Contractor or any subcontractor directly on the site of the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required by the contract to be paid as aforesaid, the Government may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been a failure to pay said required wages and prosecute the work to completion by contract or otherwise, and the Contractor and his sureties shall be liable to the Government for any excess costs occasioned the Government thereby.

(c) The regulations of the Secretary of Labor, referred to in Section 4 hereof, allow certain "permissible deductions" from the wages required by this article to be paid.

2. Eight-Hour Law. No laborer or mechanic doing any part of the work contemplated by this contract, in the employ of the Contractor or any subcontractor contracting for any part of said work contemplated, shall be required or permitted to work more than 8 hours in any one calendar day upon such work at the site thereof, except upon the condition that compensation is paid to



~~SECRET~~

such laborer or mechanic in accordance with the provisions of this article. The wages of every laborer and mechanic employed by the Contractor or any subcontractor engaged in the performance of this contract shall be computed on a basic day rate of 8 hours per day and work in excess of 8 hours per day is permitted only upon the condition that every such laborer and mechanic shall be compensated for all hours worked in excess of 8 hours per day at not less than one and one-half times the basic rate of pay. For each violation of the requirements of this Article a penalty of $5.00 shall be imposed upon the Contractor for each laborer or mechanic for every calendar day in which such employee is required or permitted to labor more than 8 hours upon said work without receiving compensation computed in accordance with this article and all penalties thus imposed shall be withheld for the use and benefit of the Government; provided that this stipulation shall be subject in all respects to the exceptions and provisions of U. S. Code, title 40, Sections 321, 324, 325 and 326, relating to hours of labor, as modified by the provisions of Section 303 of Public Act No. 781, 76th Congress, approved September 9, 1940, relating to compensation for overtime.

3. <u>Excess Wage Rates on Overtime Compensation.</u> All wage rates, including compensation for overtime under Section 2 of this article, for laborers and mechanics engaged in work under this contract shall be approved in writing by the Contracting Officer or a representative expressly designated by him for that purpose, and any amount paid by the Contractor to any laborer or mechanic in excess of the wage rate approved for such laborer or mechanic by the Contracting Officer or a representative expressly designated by him for this purpose shall be at the expense of the Contractor and shall not be reimbursed by the Government. When, in connection with the audit and check by the Contracting Officer, or his authorized representative, of the Contractor's payrolls prior to reimbursement as contemplated in Section 3 of Article XVII hereof, it is found that one or more laborers and/or mechanics have been paid wages at rates in excess of the wage rates approved as herein provided, the reimbursement made to the Contractor on account of such payrolls shall not include any such excess payments.

4. Nonrebate of Wages. The Contractor shall comply with the regulations of the Secretary of Labor pursuant to the Act of June 13, 1934, 48 Stat. 948 ( U. S. Code, title 40, secs. 276b and 276c), and any amendments or modifications thereof, shall cause appropriate provisions to be inserted in subcontracts to insure compliance therewith by all subcontractors subject thereto, and shall be responsible for the submission of affidavits required of subcontractors thereunder, except as the Secretary of Labor may specifically provide for reasonable limitations, variations, tolerances, and exemptions from the requirements thereof.

5. Responsibility of subcontractors. The Contractor shall cause appropriate provisions to be inserted in all subcontracts covering work to be performed at the site of the Plant, or Government Laboratory, whereby the subcontractors will be required to conform to the foregoing sections of this Article, but the Contractor shall not be held responsible for the failure of any subcontractor to adhere to said provisions.

B. The following provisions shall apply only to the operation of the Plant:

The operation of the Plant under Article VI of this contract shall be performed under and in accordance with all applicable provisions of the Walsh-Healey Public Contracts Act (Act of June 30, 1936; Public Law 846 - 74th Congress; 49 Stat. 2036; 41 U.S.C. 35-45) and all applicable regulations, determinations and exemptions of the Secretary of Labor now or hereafter in effect issued by the Department of Labor pursuant thereto.

## ARTICLE XXIV - ACCIDENT PREVENTION

See Amend. No. 21

1. In order to protect the life and health of its employees in the performance of the Construction work under this contract, the Contractor will comply with all pertinent provisions of the "Safety Requirements" approved by Chief of Engineers December 16, 1941, and revised 1 January 1946, (a copy of which is on file in the Office of the Contracting Officer), as it may be amended, and will take or cause to be taken such additional measures as the Contracting Officer may determine to be reasonably necessary for this purpose. The Contractor will maintain an accurate record of, and will report to the Contracting Officer, all cases of death, occupational disease, and traumatic injury arising out of or in the course of employment on work under this contract.

2. The Contracting Officer will notify the Contractor of any non-compliance with the foregoing provisions and the action to be taken. The Contractor shall, after receipt of such notice, immediately correct the conditions to which attention has been directed. Such notice when served on the Contractor or its representative at the site of the work shall be deemed sufficient for the purpose aforesaid.

3. If the Contractor fails or refuses to comply promptly the Contracting Officer may issue an order stopping all or any part of the work. When satisfactory corrective action is taken, a start order will be issued.

## ARTICLE XXV - NOTICE TO GOVERNMENT OF LABOR DISPUTES

Whenever an actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor will immediately give notice thereof to the Contracting

Officer. Such notice shall include all relevant information with respect to such dispute.

ARTICLE XXVI - OFFICIALS NOT TO BENEFIT

No member of or delegate to Congress, or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

ARTICLE XXVII - COVENANT AGAINST CONTINGENT FEES

The Contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or in its discretion, to deduct from payments due the Contractor the amount of such commission, percentage, brokerage or contingent fee. This warranty shall not apply to commissions payable by the Contractor upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the Contractor for the purpose of securing business.

ARTICLE XXVIII - CONTRACTOR'S ORGANIZATION

Upon the execution of this contract, the Contractor shall submit to the Contracting Officer a chart showing in general the executive and administrative organization, duties and personnel to be employed in connection with the work under the contract; the data so furnished shall be supplemented as additional information becomes available.

ARTICLE XXIX - PROGRESS REPORTS AND CHANGES IN PERSONNEL

1. The Contractor shall, promptly after the execution of this contract, prepare and submit to the Contracting Officer, for approval, a schedule showing the order in which the Contractor proposes to carry on the construction work, with dates on which he will start the several salient features of said work and the contemplated dates for completing the same. The schedule shall be in the form of a progress chart at suitable scale so as to indicate with symbols the percentage completed at any time. The Contractor shall correct the progress schedule at the end of each week and shall immediately deliver to the Contracting Officer three copies of the same.

2. The Contractor shall make all reasonable efforts to furnish sufficient technical, supervisory and administrative personnel to insure the prosecution of the construction work in accordance with the approved progress schedule. If, in the opinion of the Contracting Officer, the Contractor falls behind the progress

~~SECRET~~

schedule, the Contractor shall take such steps as may be necessary to improve his progress, and the Contracting Officer may direct him to increase working days per week, or hours of labor per day; and failure to promptly comply with such directions shall be deemed sufficient cause to terminate this contract due to default of the Contractor.

ARTICLE XXX - LOADING AND UNLOADING RAILWAY CARS

The Contractor shall load promptly all railroad cars furnished for loading upon his order and shall unload from railroad cars promptly upon arrival all shipments consigned to him and shall provide storage facilities and other facilities necessary for these purposes; and the Contractor shall not order railway cars for loading unless they can be loaded promptly and shall not cause or permit shipments to be consigned to him unless they can be unloaded from railroad cars promptly upon arrival.

ARTICLE XXXI - ASSIGNMENT OF CLAIMS

Neither this contract, nor any interest therein or claims thereunder, shall be assigned or transferred by the Contractor to any party or parties.

ARTICLE XXXII DISCLOSURE OF INFORMATION

1. It is understood that disclosure of information relating to the work contracted for hereunder to any person not entitled to receive it, or failure to safeguard all secret, confidential and restricted matter that may come to the Contractor or any person under his control in connection with the work under this contract, may subject the Contractor, his agents, employees, and subcontractors to criminal liability under the laws of the United States. See Title 1 of an Act approved June 15, 1917 (40 Stat. 217; 50 U.S.C. 31-42), as amended by an Act approved March 28, 1940 (54 Stat., Chap. 79), and the provisions of an Act approved January 12, 1938 (52 Stat. 3; 50 U.S.C., 45-45d), as supplemented by Executive Order No. 8381, dated March 22, 1940, 5 F.R. 1147; see also, generally, the Atomic Energy Act of 1946, Public Law 585 - 79th Congress. (See Amend. No. 22)

See Amend No. 22 for new ¶

2. ~~The Contractor~~ shall cause a like provision to be inserted in all subcontracts ~~under this~~ contract where classified information will be disclosed to the sub~~contractor~~.

3. Information contained in the plans and specifications may be disclosed to officers, agents, or employees of the Contractor to the extent that such disclosure is essential to the performance of this contract, subject to the provisions of Article



~~SECRET~~

XXXII and to any restrictions which may be imposed by the Contracting Officer or the inspector charged with the duty of inspecting the work and/or materials covered by this contract. Information contained in the plans and specifications may be disclosed to officers, agents, or employees of corporations, partnerships or persons undertaking the performance of subcontracts or purchase orders made or placed under this contract only if the Contracting Officer shall consent to such disclosure.

4. The Government agrees that, in the event of the initiation of any investigation, examination or inquiry by any branch, agency, or instrumentality of the Government concerning the undertaking or performance of the work under the contract by the Contractor, the Contractor shall have the right to present to and to use in dealing with the Government representatives engaged in the investigation, examination or inquiry, this contract ~~and the Record of Negotiations~~ and all other documents, memoranda, correspondence and information concerning the undertaking or performance of the work under the contract, provided that the Contracting Officer shall first be given a reasonable opportunity, if he so desires, to consult with the highest official of such Government branch, agency or instrumentality and to inform said official that the investigation, examination or inquiry will involve the disclosure of secret matters; and provided further that, if in connection with a proposed or current investigation, examination or inquiry the Secretary of War deems that the disclosure of all or part of such information by the Contractor to any representative or representatives of the Government engaged in the investigation, examination or inquiry, would be inimical to the prosecution of the war or the national defense, and so notifies the Contractor by written directive signed by the Secretary of War, or the Acting Secretary of War, personally, the permission herein given to the Contractor to make disclosure shall be suspended with respect to that investigation, examination or inquiry to the extent set forth in such directive.

See Amend. No. VV

## ARTICLE XXXIII - EMPLOYMENT OF ALIENS

1. The Contractor will not permit any alien employed or to be employed by it to have access to the classified drawings, specifications and accompanying enclosures relating to the performance of this contract, or to the classified models or material referred to therein, or to engineering principles, composition, subassemblies, or assemblies which are classified and vital to the functioning or use of the article or articles forming the subject matter of this contract, without the written

consent beforehand of the Secretary of War.

2. The Contractor shall cause a like provision to be inserted in all subcontracts under this contract where classified information will be disclosed to the subcontractor.

ARTICLE XXXIV - RESPONSIBILITY OF CONTRACTOR - CONTINGENCIES

1. The Government deems the work to be performed under this contract to be in the national interest and has requested the Contractor to undertake such work. In view of the fact that the Contractor is undertaking the work for a fixed fee of One Dollar ($1.00) and in view of the unusual and unpredictable hazards involved in carrying out the work under this contract, as well as the abnormal conditions now existing, it is agreed that all work under this contract is to be performed at the expense of the Government, and that the Contractor shall not be liable for, and the Government shall indemnify and hold the Contractor harmless against, any delay, failure, loss, expense (including expense of litigation) or damage (including personal injuries and deaths of persons and damage to property) of any kind and for any cause whatsoever, arising out of or connected with the work, and whether or not any employee or employees of the Contractor is or are responsible therefor, unless such delay, failure, loss, expense, or damage should be established by the Government to have been caused directly by bad faith or wilful misconduct on the part of some corporate officer or officers (i.e., the Chairman of the Board of Directors, President, Vice President, Secretary, Assistant Secretaries, Treasurer, Assistant Treasurers, Controller and Assistant Controllers) of the Contractor acting within the scope of his or their authority and employment; that the Government shall assume and carry on the defense of all claims, suits, or legal proceedings which may be asserted or instituted against the Contractor on account of acts or omissions in the performance of the work; and that the Government shall pay directly and discharge completely all final judgments entered against the Contractor in such litigation and all claims which may be settled by agreement approved by the Contracting Officer.

2. The necessary property records in connection with Government property furnished under this contract will be maintained by the Contractor at the Laboratories and as may be mutually agreed upon at the Plant, and the Contractor assumes no responsibility for the loss or destruction of any such property unless caused by bad faith or wilful misconduct on



[redacted]

~~SECRET~~

the part of some corporate officer or officers (as defined in paragraph 1 of this Article XXXIV) of the Contractor acting within the scope of his or their authority or employment.

3. It is recognized that the remaining life of certain of the manufacturing equipment at the Plant is problematical and the Contractor assumes no responsibility for any failure of such equipment and any replacement thereof is to be made only by mutual agreement and at the expense of the Government.

4. The Contractor shall not be required to account or pay over to the Government any unclaimed wages, salaries or other payments owed to employees, agents, subcontractors or vendors of the Contractor by reason of work performed under this contract or any unclaimed wage or salary deductions or other accumulations held for the account of any employees or agents of the Contractor so long as the Contractor is under any liability or obligation with respect to such wages, salaries, deductions, accumulations or other payments.

ARTICLE XXXV - EMPLOYEES BENEFIT FUND

1. Recognizing that the performance of manufacturing, developmental and research operations under this contract will subject employees to serious and unusual hazards with respect to which it is impossible to provide adequate protection and that the Contractor has been unable, despite extended efforts with the assistance of the Contracting Officer, to obtain satisfactory insurance coverage therefor, the Government agrees that the Contractor shall have the right to establish, maintain, and utilize, as hereinafter set forth, a benefit fund from which payments, in addition to those provided for by Workmen's Compensation Laws or other statutes or under the terms of the Contractor's employee welfare plans and policies, may be made to or on account of employees who become totally and permanently disabled or die as a result of such hazards. The Contractor, therefore, is authorized to withdraw from time to time from the sums advanced to the Contractor by the Government, pursuant to Article XV hereof, amounts sufficient to establish and replenish an Employees Benefit Fund (hereinafter referred to as the "Benefit Fund") of five million dollars ($5,000,000). The Contractor shall have the right to establish said Benefit Fund immediately upon the execution of this contract and to maintain the same for a period of ten (10) years after the termination of work hereunder.



~~SECRET~~

SECRET

2. Whenever the Contractor shall determine, with the approval of the Contracting Officer, that any employee has become totally and permanently disabled or has died as a result of any of the hazards specified in the Secret Letter referred to in Article XLII hereof, the Contractor shall have the right to pay, from the amount available in the Benefit Fund, to such employee or to his spouse, next of kin, designee or legal representative the sum of ten thousand dollars ($10,000), provided that, when any such payment has been made to an employee who has become totally and permanently disabled, no further payment under this Article shall be made by reason of the death of such employee. It is expressly understood and agreed that the Contractor assumes no obligation hereunder to make any such payment from the Contractor's own funds. No such payment shall be made except upon securing a release, in form approved by the Contracting Officer, relieving the Contractor and the Government, to the extent of the payment so made, from all claims of the recipient on account of such disability or death, except claims under workmen's compensation laws or occupational disease statutes.

3. At the sole discretion of the Contractor, the Benefit Fund may be held in cash on deposit or invested in and reinvested in United States Government Securities either in whole or in part



SECRET

S-E-C-R-E-T

and from time to time, and the Contractor shall have the right to sell all or any part of such securities as and when it may see fit. All such cash shall be deposited in a bank which is a member of the Federal Reserve System, and all such securities shall either be held under a custody account with, or kept in a safety deposit box in, the same bank. All purchases and sales of such securities shall be upon the approval of any two of the Contractor's officers or employees who may be so authorized by the Contractor from time to time. Any such deposit account, custody account or safety deposit box shall be so designated as to indicate clearly to the bank its special character and purpose. The bank shall be obligated to furnish periodic written reports to the Contracting Officer setting forth the amount of cash in the deposit account and the face amount of the securities in the custody account, together with all deposits in and withdrawals from each of such accounts during the period covered by each such report. The Contractor shall furnish periodic written reports to the Contracting Officer, as well as such special reports as he may request from time to time, setting forth the face amount of securities in said safety deposit box, together with all deposits in and withdrawals from said box during the period covered by each such report. The bank shall be under no liability to any party hereto for the withdrawal of any funds or securities from the deposit account, the custody account or the safety deposit box upon proper authorization by the Contractor. Accounting for income and expense of the Benefit Fund shall be on a cash basis and not on an accrual basis. All realized interest, earnings and profits from said cash and securities shall be credited to the Benefit Fund, and all incurred costs, expenses, losses and taxes in connection with the handling and investment of and income from said cash and securities shall be charged to said Benefit Fund. Promptly after the first day of July of each calendar year hereunder the Contractor shall pay to the Government by check drawn to the order of the Treasurer of the United States the amount, if any, by which the total amount of said cash on deposit and the total amount of par value of said securities, as of the first day of said month, shall exceed the sum of five million dollars ($5,000,000). For the purpose of determining the amounts to be advanced by the Government to the Contractor from time to time to maintain the Benefit Fund at five million dollars ($5,000,000) pursuant to Section 9 of Article XV, the total sum then in the Benefit Fund shall be deemed to be the amount of cash on deposit plus the market value or the par value of securities on hand whichever is less.

4. The Benefit Fund shall be used by the Contractor solely for the purposes set forth in the Article. Any sums remaining in said Benefit Fund at the expiration of the period set forth in Section 1 of this Article shall be promptly paid or credited to the Government by the Contractor.



S-E-C-R-E-T

5. The term "employee" as used in this Article shall mean any person who is or has been employed by the Contractor or any subcontractor and who has engaged in work under this contract.

## ARTICLE XXXVI - STATUTORY AUTHORIZATION

This instrument was executed on the 6th day of September 1946, pursuant to Letter Contract designated by the same number, entered into on the 15th day of May, 1946, pursuant to the authority conferred by Section 201 of the First War Powers Act of 1941 (Act of December 18, 1941, Public No. 354, 77th Congress) and delegated thereunder by the President of the United States through the Secretary of War to the Contracting Officer. On July 27, 1946, subsequent to the signing of said Letter Contract and prior to the signing of this instrument, the Atomic Energy Act of 1946 was enacted but as of the date of the execution of this instrument the members of the Atomic Energy Commission established by that Act have not taken office. Because of the necessity in the interests of common defense and security for proceeding with the operations contemplated by said Letter Contract and by this Contract, this Contract has been signed for the Government by the Contracting Officer pursuant to said Letter Contract and the provisions of the First War Powers Act of 1941. HAW XDN

It is hereby agreed that this Contract shall terminate on the 30th day of September, 1946, the date of expiration of said Letter Contract as heretofore extended by amendment dated the 15th day of July, 1946, unless on or before the 30th day of September, 1946, this Contract is adopted by the Atomic Energy Commission, or its duly authorized representative, or this Contract and said Letter Contract are extended by direction of said Commission subject to termination, with the effect hereinafter in this paragraph provided, if this Contract is not adopted by said Commission prior to a subsequent date to be fixed in the extension. In the event of such termination said Letter Contract shall terminate on its expiration date pursuant to Section 6(a) of said Letter Contract as though no definitive contract had been executed by said expiration date and the Contractor thereupon shall be reimbursed as provided in said Letter Contract for all costs incurred in the performance of said Letter Contract and as a result of the termination thereof.

See Supp. #1 and Supp. #2

~~SECRET~~

ARTICLE XXXVII - PATENTS

1.a) It is understood and agreed that the Contractor, at the instance of the Government, will consult with representatives of the Government and when, as a result of these consultations, it is determined by the Government that any discovery made by the Contractor or its employees in the course of the work called for in this contract is novel or inventive, the Contracting Officer shall have the sole power to determine whether or not and where a patent application shall be filed, and to determine the disposition of the title to and the rights under any application or patent that may result. It is further understood and agreed that the judgment of the Contracting Officer on such matters shall be accepted as final and the Contractor, for itself, and for its employees, agrees that the inventor or inventors will execute all documents and do all things necessary or proper to carry out the judgment of the Contracting Officer. The form of agreement covering inventions and patents which the Contractor customarily makes with technical personnel employed by it has been submitted to and approved by the Contracting Officer as being sufficient for the purposes of the foregoing provisions of this Section 1. The Contractor agrees to secure the execution of said agreement by such of the personnel assigned to the work under this contract as to whom the Contractor customarily would require the execution of such an agreement as a condition of employment. All records of the Contractor, concerning the work performed under this contract shall be available to the Contracting Officer. It is understood, however, that the making of prior art searches, the preparation, filing and prosecution of patent applications, the determination of questions of novelty, patentability and inventorship, as well as all other functions of a patent attorney, are excluded from the duties of the Contractor.



~~SECRET~~

2. In view of the fact that the Contractor has not made an investigation as to the possibility of patent infringement or infringement of secret inventions and both parties desire to avoid the delay incident to an investigation of such possibilities, and further, in view of the fact that there is not included in the Contractor's fee any allowance for the settlement of possible claims for such infringement, it is agreed that the Government shall hold and save the Contractor harmless from liability of any nature or kind including costs and expenses for the infringement of or use of the patent rights or secret inventions of third parties arising in connection with the performance of this contract.

3. The Contractor shall promptly notify the Contracting Officer in writing of any and all claims of infringement that may from time to time be brought to the attention of the Contractor, and in the event of litigation on account thereof, the Contractor shall assist the Government at the Government's expense, in furnishing such evidence as to the use of the patents and other matters of fact as may be required by the Government in such litigation.

4. The Contractor hereby grants to the Government a perpetual, royalty-free license to practice in the Plant and in the Government Laboratory, but not elsewhere, all patented inventions, secret processes, technical information and know-how of the Contractor which are incorporated in the construction or operation of the Plant and the Government Laboratory by the Contractor. This license shall not be assignable to any transferee of the Plant and/or the Government Laboratory or any part thereof, and the Contractor reserves the privilege of asserting any and all legal rights in or to such patented inventions, secret processes, technical information and know-how against any firm or corporation; provided, however, that this Article shall not supersede or modify any existing agreements between the Contractor and the Government applying to any such inventions, processes, information or know-how.

5. The Patent Adviser attached to the Office of Scientific Research and Development, Washington, D. C., will act as the representative of the Contracting Officer for the purpose of administering the provisions of this Article, unless another representative is appointed in writing by the Contracting Officer. It is understood, however, that such Patent Adviser shall not be considered a representative of the Contracting Officer for the purpose of making any financial commitments or incurring any financial obligations hereunder.

(A) See Amendment #4

~~SECRET~~

ARTICLE XXXVIII - TERM OF THE CONTRACT

(Unless sooner terminated by the Government pursuant to Article XX or unless sooner terminated by the Contractor as hereinafter provided, this contract shall continue until December 31, ~~1947.~~) 1950 *See Amend #.* By mutual agreement of the Contracting Officer and the Contractor, the contract may be extended from year to year, provided written agreement for such extension is entered into not less than 180 days prior to the year-end expiration of the contract. *See Amend #39* Notwithstanding the foregoing or any other provisions of this contract, in the event of the enactment of legislation, or of the issuance of regulations or directives under existing or future legislation, controlling or restricting or dealing with research developmental or manufacturing activities relating to the subject matter of this contract, or in the event of a denial to the Contractor of the right to subcontract certain portions of the work as permitted by this contract, or in the event the Contracting Officer directs the closing down of the Government Laboratory, *or directs the Contractor to discontinue its operation of the Government Laboratory* the Contractor at its election may terminate this contract upon six months prior written notice to the Contracting Officer. During this period of six months prior to cessation by the Contractor of its operations under this contract, whether at the end of said period the Contractor is to be succeeded by another operator of the Plant, or the Government Laboratory, or whether operation of the Plant or the Government Laboratory is to be discontinued, the Contractor shall have the right to curtail its operations and to take such other steps as may be desirable in the judgment of the Contractor in order either to facilitate the transfer of the Plant and the Government Laboratory to another party or to place the Plant and the Government Laboratory in standby condition as the case may be. *See Amend No. 23*

ARTICLE XXXIX - OPTIONS

1. The Contractor hereby grants to the Government an option to purchase the land upon which the Government Laboratory shall be situated, and as set forth in the drawing annexed hereto as Appendix A, at a price equal to the price the Contractor shall have actually paid therefor. Such option shall continue during the term of this contract or any extension thereof, plus six months thereafter. In the event the Government shall exercise the option granted hereunder, the Contractor agrees that upon payment of the price herein provided, it will convey to the Government title to said land and all easements and appurtenances thereto, free and clear of all liens and incumbrances which may be suffered to be levied against the land by the Contractor on its behalf by a special warranty deed mutually satisfactory to the parties.



~~SECRET~~

~~SECRET~~

2. The Government Laboratory buildings to be erected on land owned by the Contractor and all appurtenances and additions thereto and all equipment used therein, furnished by the Government or for which the Government is obligated to reimburse the Contractor, shall at all times be the property of the Government and shall be and remain personal property and may be removed by the Government at any time within twelve (12) months after the expiration of this contract, and permission is hereby granted by the Contractor to the Government to enter upon its premises for the purpose of removing said buildings, appurtenances, additions and equipment. In the event that the Government at any time elects to sell the Government Laboratory, or any part thereof, the Government shall give written notice thereof to the Contractor, and the Contractor shall have an option for the purchase of said Laboratory, or any part thereof, at the then fair value thereof. Within ten days after receipt by the Contractor of written notice that the Government elects to sell the Government Laboratory, or any part thereof, the Contractor may request the Government to make a finding as to the fair value of the Government Laboratory, or any part thereof, and in the event that the Contractor disagrees with such finding of fair value and no mutually satisfactory adjustment of this fair value can be made, the matter shall be determined under the Disputes clause, Article XXI of this contract. The option of the Contractor for the purchase of said Laboratory, or any part thereof, may be exercised by written notice to the Government at any time within ninety days after such final determination of fair value. To the extent permitted by law, the Government agrees that it will not sell the Government Laboratory site, buildings or facilities, or any part thereof, to any party or parties for a period of 90 days following the expiration of the aforesaid option period unless it shall first have offered the same for sale to the Contractor at a price equal to the best offer received by the Government and the Contractor shall have failed or refused to purchase the same within 30 days after the receipt of such offer. In the event of any sale to the Contractor pursuant to the provisions of this Article, the transfer of title shall be made without representations or warranties whatsoever on the part of the Government.

HAW KDN

HAW KDN

## ARTICLE XL - DISPOSITION OF GOVERNMENT-OWNED PROPERTY

It is recognized that property (including without limitation, radioactive isotopes, machine tool and processing equipment, manufacturing aids, raw, manufactured, scrap and waste material), title to which is or may hereafter become vested in the Government, will be used by or will be in the care, custody or possession of the Contractor in connection with the performance of this contract. With the prior approval in writing of the Contracting Officer, (whether such approval is given prior to or after the giving of a notice of the termination of this contract for the convenience of



~~SECRET~~

~~SECRET~~

the Government), the Contractor may transfer or otherwise dispose of such Government-owned property to such parties and upon such terms and conditions as the Contracting Officer may approve, or, with like approval by the Contracting Officer, the Contractor may itself acquire title to such property or any of it at a price mutually agreeable. The proceeds of any such transfer or disposal or the agreed price of any property, title to which is so acquired by the Contractor, shall be applied in reduction of any payment to be made by the Government to the Contractor under this contract, or shall otherwise be paid in such manner as the Contracting Officer may direct.

ARTICLE XLI - ANTI-DISCRIMINATION

1. The Contractor, in performing the work required by this contract, shall not discriminate against any employee or applicant for employment because of race, creed, color, or national origin.



~~SECRET~~

~~SECRET~~

2. The Contractor agrees that the provisions of paragraph (1) above will also be inserted in all of its subcontracts. For the purpose of this Article, a subcontract is defined as any contract entered into by the Contractor with any individual, partnership, association, corporation, estate, or trust, or other business enterprise or other legal entity, for a specific part of the work to be performed in connection with the supplies or services furnished under this contract; provided, however, that a contract for the furnishing of standard or commercial articles or raw material shall not be considered as a subcontract.

ARTICLE XLII - CODE TERMS

It is understood and agreed that the meaning of the code terms "Products", "production units", "Type B production units" and "principal raw material" as used in this contract, the term "specifications" as used in Article VI hereof, and the term "hazards" as used in Article XXXV hereof shall have the meaning agreed upon by the parties and set forth in a Secret Letter dated 6th September, 1946, from the Contracting Officer to the Contractor, the contents of said letter constituting a part of this contract to the same extent as if set forth fully herein.

HAW
KDN

See added sentence. Amend's No. 24 + 30.

ARTICLE XLIII - DEFINITIONS

Also, Supp. #10, Amend. 36
" " #13 " 41

1. The terms "Secretary of War" and "Chief of Engineers" shall include their duly authorized representatives, as the case may be, except as otherwise expressly provided herein.

2. The term "his duly authorized representative" shall mean any person or board authorized by the Secretary of War or the Chief of Engineers, as the case may be, to act for him, except as otherwise expressly provided herein.

3. The term "Contracting Officer" shall mean the District Engineer, Manhattan District, Corps of Engineers, United States Army and, except for the signing of this contract, shall include any successory and any duly authorized representative of said District Engineer or of such successor.

See added paragraphs 4 + 5. Amend. No. 25

ARTICLE XLIV - ALTERATIONS

The following alterations were made in this contract before it was signed by the parties hereto; which corrections and additions have been initialled by the persons executing this contract and appear on pages 1, 5, 18, 22, 26, 57, 60, 61 and 63.

HAW
KDN



~~SECRET~~

~~SECRET~~

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA

BY K. D. NICHOLS (signed)
K. D. NICHOLS,
Colonel, Corps of Engineers,
Contracting Officer.

WITNESSES:

LEWIS F. HUCK (signed)
1 River Rd
Schenectady, N. Y.

GENERAL ELECTRIC COMPANY

BY H. A. WINNE (signed)
H. A. WINNE
Vice-president

S. W. SKOWBO (signed)
1 River Road
Schenectady, N. Y.

ATTEST:

A. K. WILLEY (signed)
Assistant Secretary

(SEAL)



~~SECRET~~

CONTRACTS, EXECUTION OF

Upon motion, duly seconded, it was

RESOLVED that resolution of this Board No. 956 on the above subject, passed at its meeting on December 17, 1937 be and hereby is rescinded.

Upon motion, duly seconded, it was

RESOLVED that contracts, bonds and other obligations, conveyances, powers of attorney, proxies, court pleadings and other instruments may be executed for and on behalf of this Company by the Chairman of the Board, the President, a Vice President, the Treasurer, or an Assistant Treasurer, and attested by the Secretary or an Assistant Secretary.

* * * * * * * * * * 

STATE OF NEW YORK )
: ss:
COUNTY OF SCHENECTADY )

I, A. K. WILLEY Assistant Secretary of the General Electric Company, do hereby certify that the foregoing is a true and correct copy of resolution adopted by the Board of Directors of the General Electric Company at a meeting duly called and held on December 29, 1939, a quorum being present and voting; and that said resolution has not been rescinded or amended and I do further certify that ....H. A. Winne....................who executed the attached document is...Vice President................of the General Electric Company.

WITNESS my hand and seal of said Company this ..6th...day of ............September....................194.6...

A. K. WILLEY (signed)

ASSISTANT SECRETARY

(SEAL)

CONTRACTS, EXECUTION OF

Upon motion, duly seconded, it was

RESOLVED that resolution of this Board No. 956 on the above subject, passed at its meeting on December 17, 1937 be and hereby is rescinded.

Upon motion, duly seconded, it was

RESOLVED that contracts, bonds and other obligations, conveyances, powers of attorney, proxies, court pleadings and other instruments may be executed for and on behalf of this Company by the Chairman of the Board, the President, a Vice President, the Treasurer, or an Assistant Treasurer, and attested by the Secretary or an Assistant Secretary.

* * * * * * * * * *

STATE OF NEW YORK )
: ss:
COUNTY OF SCHENECTADY )

I, A. K. WILLEY Assistant Secretary of the General Electric Company, do hereby certify that the foregoing is a true and correct copy of resolution adopted by the Board of Directors of the General Electric Company at a meeting duly called and held on December 29, 1939, a quorum being present and voting; and that said resolution has not been rescinded or amended and I do further certify that ....H. A. Winne.......................who executed the attached document is...Vice President..................of the General Electric Company.

WITNESS my hand and seal of said Company this ..6th... day of ..............September......................194.6...

A. K. WILLEY (signed)

ASSISTANT SECRETARY

(SEAL)