# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TODD KORTEKAMP AS EXECUTOR OF THE ESTATE OF JACK KORTEKAMP AND GERALDINE KORTEKAMP AS SURVIVING SPOUSE, | ) | C.A. No. 08-043S |
| Plaintiffs, | ) | |
| v. | ) | |
| 3M CO., et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF RECONSIDERATION OF TEXT ORDER DENYING PLAINTIFFS' MOTION TO STAY CONDITIONAL TRANSFER ORDER

## INTRODUCTION

Plaintiffs' submit this Memorandum in support of oral argument heard by this Honorable Court on Friday, March 14, 2008. Specifically, this Memorandum outlines the Plaintiffs' request for this Court to grant a hearing and oral argument for purposes of ruling on Plaintiffs' Motion to Remand.

**ISSUE PRESENTED: "Should this Honorable Court rule on Plaintiffs' Motion to Remand or should this Court not act and defer the Motion to the MDL 875?"**

At the oral argument regarding Plaintiffs' Motion for Reconsideration of the text order denying Plaintiffs Motion to stay the Conditional Transfer Order, this Honorable Court asked the above quoted question, or words to that effect. Considering the policy reasons behind the creation of MDL 875, the above question is certainly a reasonable one to ask. The answer is rooted in both an understanding of the reality of MDL 875 and the undisputed history of this District Court's handling of the same issue.

## I. Rhode Island Asbestos Litigation

Rhode Island has a long, well-established and nationally recognized history of efficient asbestos litigation. Asbestos litigation began in the mid to late 1970s in both state and federal courts. As federal filings increased, then Chief Judge Pettine of this Court entered the first Rhode Island Mass Litigation or RIML Case Management Order in 1978, covering existing cases and future filings. Cases continued to be filed in this Court through the 1980s. The plaintiffs in the majority of these cases were alleging non-malignant disease processes such as asbestosis (although there were some lung cancer and mesothelioma filings, as well). The cases were assigned in groups to Judges Boyle, Pettine and Laggueux, and were disposed of efficiently, generally within 12 to 15 months of filing. None of the cases went to verdict, and only one, before Judge Boyle, in 1982 actually started evidence. The only asbestos case to go to verdict in Rhode Island was in state court (Barbara Smith v. Celotex, et. al. (Judge Bourcier; summer 1986)).

The last group of asbestos cases, filed in Rhode Island Federal District Court, were settled before Judge Boyle in 1990, shortly after jury selection (the lead case was Kenneth Blomberg v Owens- Corning). Later in 1990, the Judicial Panel on Multidistrict Litigation stayed all pending asbestos disease cases in the federal courts across the country, pending the formation of the Asbestos MDL under the late Judge Charles Weiner of the Eastern District of Pennsylvania. MDL 875 was actually set up and put into motion the following year.

The creation of MDL 875 was motivated by two developments, neither of which had anything to do with this state or this district court. First, there had been a huge increase in filings, mostly by plaintiffs with minimal findings of non-malignant disease, in different parts of the country as the 1980s progressed. Second, juries in some of those states, such as Texas, were handing down

large verdicts in all types of cases, including those with (often disputed) minimal diagnostic findings. It was hoped that the MDL would further the possibility of a "global" resolution of much of the litigation. Interestingly, Judges Boyle and Pettine (both then on senior status) initially refused to send their cases to Philadelphia, but eventually relented. Plaintiffs surmise that this initial reluctance was based on the fact that the Rhode Island District Court was handling these asbestos cases efficiently and fairly.

Although, prior to 1990, cases were filed in both Rhode Island State Court and Federal Court; from 1990 until the present day, the great majority of asbestos cases have been filed in Providence Superior Court. Prior to 1990 (and some thereafter), a lot of the federal filings were cases involving non-malignant asbestos diseases. In 1995, Justice Vogel entered the first case management orders for the Rhode Island Superior Court. Shortly thereafter, the cases were transferred to Justice Fortunate, and then to the court of Justice Gibney – where they have remained since 1996.

In contrast with the filings in the 1980s, the vast majority of the cases filed in Superior Court over the last decade have been overwhelmingly mesothelioma and other malignancy cases. Over the last 12 years, cases have been disposed of efficiently and fairly as they have come up for trial dates. In fact, in the last 12 years, jury selection has never commenced in an asbestos personal injury and/or wrongful death case. In fact, the Rhode Island state court asbestos resolution system has been so efficient and fair to both defendants and plaintiffs, there are many cases that have been filed, litigated and resolved wherein the plaintiff was not exposed or even lived in Rhode Island. Yet, defendants, like GE, have routinely accepted the forum of Rhode Island State Court in order to benefit from the well-established, efficient Rhode Island system.

## II. This District Court Has Routinely Ruled Upon Motions To Remand In Removed Asbestos Cases

Since 2002, 28 Rhode Island asbestos cases have been removed to Federal Court. Eleven of those removals were not challenged by the plaintiffs and the cases were appropriately transferred to the MDL. However, a Motion to Remand was filed in 17 of these removed cases. Of those 17 cases, "Show Cause" hearings were held in 12 cases. In all 17 cases, this District Court remanded back to state court. Clearly, this Honorable Court has been the appropriate court to rule on Motions to Remand in asbestos cases, despite the existence of MDL 875 and any Conditional Transfer Order. Moreover, the plain language of the Conditional Transfer Order makes clear that this Court is the appropriate court to rule. It would be a striking departure from this District Court's long history related to asbestos cases, to simply defer to the MDL and not rule on the pending Motion to Remand. *See generally Plaintiffs Exhibit A*, attached hereto (Pacer Documents, including previous Remand Orders and research detailing previous asbestos removed cases and resulting action).

## III. Because The Jurisdictional Question Is Fundamental And Unique To The Plaintiffs, This Court Should Rule On Plaintiffs' Motion To Remand

Despite the Conditional Transfer Order, this Court has the authority to rule on Plaintiffs' Motion to Remand. "The pendency of a motion, order to show cause, Conditional Transfer Order or Conditional Remand Order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. §1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." *See Rules of Procedure Jud. Panel on Multidist. Litig.* Rule 1.5 (*attached as Exhibit B*).

Other courts have ruled on pretrial matters concerning jurisdictional issue when conditional

transfer was pending. In, *Morales v. American Home Products Corp.*, Chief Judge Kazen declined to stay the pending Motion to Remand while awaiting action on the transfer order and went on to consider whether there was fraudulent joinder of a defendant to avoid diversity jurisdiction. *See Morales*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002). Similarly in *Zglinicki v. Armstrong International, Inc., et al*, Judge Scott noted that "while the court has deferred to the Multidistrict Litigation court when presented with an issue common among the other cases, when the issue is discrete to that particular case "there is no reason to ask a federal court in Washington to make that decision. *See Remand Order of Judge Hugh B. Scott in Zglinicki,*(W.D.N.Y. 2007) Case No. 07CV278S at 10 (*attached as Exhibit C*).

The purpose of the MDL is to achieve Judicial efficiency through the administration of groups of similar cases with common issues. However, Plaintiffs' Motion to Remand involves unique issues from all other transferred cases listed in Conditional Transfer Order 303. Plaintiffs' Motion to Remand necessarily requires a determination of whether General Electric was a federal officer pursuant to §1442(a)(1).

## IV. It Would Be Unjust And Violation Of The Plaintiffs' Rights If They Are Required To Navigate The Maze Of MDL-875 Before Federal Jurisdiction Has Been Established

There is no dispute that MDL-875 has resulted in the closure of tens of thousands of cases. There equally can be no dispute, however, that there are massive delays in MDL-875. Such delays may be an unavoidable reality in *cases where federal jurisdiction has been determined to be proper*. However, it is grossly inequitable that Plaintiffs might have to wait 1, 2 or even 3 years in MDL-875 only to have the original transferor Court determine that federal jurisdiction does not exist upon return of the case to the transfer court at the completion of the procedures of MDL-875.

The *factual reality* is that MDL-875 does not consider jurisdictional motions and that "speedy return" from MDL-875 is impossible. While return to the transferor court can, occasionally, be secured, plaintiffs are required to navigate the maze or MDL-875, including mandatory settlement conference and potential discovery, *prior to any determination regarding whether the federal courts have jurisdiction over the case at all.* That process is not "speedy" – especially in light of the fact that there was a firm state court trial date for April, 14 2008 (*Attached as Exhibit D*).

The lengthy delays in MDL-875 have resulted in it being frequently referred to as a "black-hole" from which cases rarely, if ever, emerge. The fate of cases condemned to the "black hole" of MDL-875 was graphically described by The Honorable Mark Davidson of the District Court of Harris County, Texas, who presides over the Texas intra-state MDL relating to asbestos cases.

> Plaintiffs claimed in argument before the court that if the case is refiled in Maine, it will immediately be removed to Federal Court, and from there transferred to the Federal MDL. What will happen to the cases there? Apparently the judge will not give the plaintiff an opportunity to have his case heard before his death. The judge will attempt to get the case to settle. When and if the case is remanded, there will have been little, if any, judicial decision making performed that will assist the trial court. It will sit in this court, if it does not settle, for several years before it is remanded. The case will then go to the end of the docket in the federal court to which it is assigned. This isn't just what I have been able to find out from conferring with federal judges around the nation – this is what the Judge D. Brock Hornby, Chief Judge of the Federal Courts of the District of Maine, wrote in *In re Maine Asbestos Cases*, 44 F.Supp.2d 368 (D.Me. 1999).

*See Decision of Judge Davidson in Austin Richards, et. ux. v. Carver Pump Company et al.*; Case No. 2006-22,116 (September 5, 2006) (*attached as Exhibit E*). Judge Davidson then referred to the Federal MDL as it has existed for many years as a "black hole." *Id.*

Lest removing Defendants attempt to characterize Judge Davidson's "black hole" comment as unfounded hyperbole, the agenda for the 2007 Defense Research Institute (DRI) conference

regarding asbestos litigation demonstrates the generally accepted view of the defense bar regarding this issue. *See Agenda for DRI "Asbestos Medicine" Conference, November 8-9, 2007 (attached as Exhibit F)*. The first presentation at this convention of asbestos-defense lawyers was entitled:

> **MDL 875: Navigating the Black Hole – Its Future and Ramifications for State Courts:** Hear about the current role of the MDL and its projected impact on existing and future cases.

*Id.* at p. 4.

## V. What Actually Happens In MDL-875

MDL-875 does not rule upon Motions to Remand. It has been the practice of MDL-875 to NOT RULE upon pending Motions to Remand and, instead, to leave such motions pending until the case is returned to the transferor court years after transfer. The transferor court then ends up ruling on the jurisdictional Motion to Remand that had been pending all along.

This is precisely what occurred in recent case that ended up in MDL-875 because the transferor court chose, without prior explanation, to not rule on the Motion the Remand. *See Order Remanding Case To State Court in Hauck v. Borg Warner, et. al., Case No. 6:04-cv-01835* (M.D. Fla. October 12, 2006) (*attached as Exhibit G*) (setting forth facts discussed below). The *Hauck* case provides a perfect example of the inequity of allowing transferor courts to arbitrarily decide, without explanation and without possibility of review, to not rule on jurisdictional Motions to Remand prior to transfer to MDL-875.

On December 16, 2004, the *Hauck* case was removed to federal court on the sole ground of diversity of citizenship, despite the fact that the case had been diverse since filing. In January, 2005, Plaintiff moved to remand the case to state court, asserting that the federal court lacked jurisdiction over the case. On February 17, 2005, the U.S. District Court for the Middle District of Florida heard

oral argument on the Motion to Remand.

In June 2005, six months after removal, five months after filing of the Motion to Remand, and over three months after oral argument on the motion, this Panel entered the final transfer order in the *Hauck* case, over Ms. Hauck's objection that the federal courts lacked jurisdiction. Despite having had months to decide the jurisdictional remand motion, the U.S. District Court for the Middle District of Florida refused to substantively rule on the Motion to Remand. No explanation for that refusal was ever provided. Instead, after entry of the transfer order, the U.S. District Court for the Middle District of Florida simply entered a pro-forma Order denying the Motion to Remand without prejudice to the refilling of the Motion in MDL-875.

Plaintiff promptly renewed her jurisdictional Motion to Remand in MDL-875. Despite this, for the 14 months that the *Hauck* case remained in MDL-875, the court made no attempt to rule upon the motion or to even consider the jurisdictional arguments raised by Ms. Hauck. To the contrary, MDL-875 required Ms. Hauck to undergo two useless settlement conferences and informal discovery before Judge Giles eventually recommended "remand" of the case to the Middle District of Florida for further proceedings. That Order was then confirmed by MDL Panel – again without consideration of the jurisdictional Motion to Remand – and the case returned to the Middle District of Florida with the fundamental question of federal jurisdiction still pending.

Upon re-argument of Plaintiff's Motion to Remand, the *Hauck* court determined that federal jurisdiction did not exist **(and had never existed)** and ordered remand to the state court system on October 12, 2006 – nearly 22 months after it was removed and nearly 20 months after the transferor court first heard oral argument on the Motion to Remand.

In making the Motion herein, the Plaintiffs do not cast any aspersions at the hard work of

Judge Weiner during his tenure or Judge Giles since his assumption of MDL-875. Indeed, Plaintiffs do not question the statement of the MDL Panel that "whenever the transferee judge has deemed remand of any claims or actions appropriate, procedures have been utilized to accomplish Section 1407 remand for trial with a minimum of delay." *Id.* at 1350. In fact, during oral argument, GE cited to this very language. The fact remains, however, that the "remand" discussed in that comment is not remand to state court due to determination that the federal courts lack jurisdiction. To the contrary, it refers to remand to the transferor court for trial or further proceedings *after completion of the maze of MDL-875*. However, there is no way to complete that maze, "with a minimum of delay".

It is unjust to require the Plaintiffs to negotiate the tortured maze of MDL-875 before they can obtain a ruling on a jurisdictional Motion to Remand. Lacking jurisdiction over the case at all, it is unconstitutional to require a plaintiff to navigate the inevitable delays of MDL-875 before jurisdiction of the federal courts is determined. As demonstrated by the Hauck case, contrary to the assumption of the Panel, MDL-875 does not and will not consider jurisdictional Motions to Remand. To the contrary, if a case is transferred to MDL-875 with a pending Motion to Remand, that motion remains pending while the plaintiff waits for referral back to the transferor court. Only at that point – one, two, three or even more years later – will the Plaintiffs obtain their constitutionally guaranteed ruling upon the Motion to Remand.

**VI. Conclusion**

The unfairness and harsh injustice depicted in the *Hauck* example above, is not far removed from a reality that could happen in the case at bar or any other asbestos case filed in Rhode island State Court. A previous case before this District Court, contained within the findings provided in Exhibit 1, is the *Pollis* case. The Pollis case was filed in State Court on October 25, 2004. It was removed,

based on diversity grounds, on December 15, 2004. However, just like in *Hauk,* the removal was improper because not all defendants consented to the removal. In *Pollis,* plaintiffs filed a Motion to Remand. The District Court, via a Report and Recommendation by the Federal Magistrate Judge, remanded back to state court. If, however, this District Court would have not ruled and allowed the case to go to the MDL, the plaintiffs, in *Pollis,* like *Hauk*, would have been subject to navigating the maze of the MDL for months or years even though federal jurisdiction never existed in the first place.

Finally, this Court should consider the potential drastic effect that denying Plaintiffs a hearing on the Motion to Remand might have on all existing and future asbestos cases filed in the Providence Superior Court. Removal to federal court is a unilateral action performed by a defendant. The plaintiff has no recourse other than filing a Motion to Remand. If the District Court were to adopt a policy of denying a hearing on the Remand Motion and allowing transfer to the MDL, then, hypothetically, a defendant or defendants could unilaterally remove the entire Rhode Island State Court Asbestos Docket to federal court to achieve the strategic victory of getting the cases to the great big black hole.

This Honorable Court, at Oral Argument, understandably challenged Plaintiffs' hypothetical by commenting that such a result would be unlikely considering that there must be a basis for removal in the first place. However, a basis for removal is determined at a hearing on the Motion to Remand. If no hearing is allowed (at least, in a timely fashion), then, factually, no removal basis is needed. A defendant could unilaterally remove a properly filed state case and have that case sit for years without any challenge to the basis for removal.

The factual reality is that this Honorable Court will ultimately have to rule on Plaintiffs' Motion

to Remand. It is a widely held misperception that the MDL Court will rule on remand motions back to state court. The MDL Court and/or Panel will simply rule on a remand motion - back to the transferor federal court. It is the original Federal District Court that will rule on the Motion to Remand – back to state court. In short, this Court will ultimately have to rule on the Motion to Remand. Allowing the case to transfer to the MDL without a ruling, will simply delay the ultimate ruling. Simply put, what happened in *Hauk*, will happen in *Kortekamp* - the case at bar.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court, in accordance with the previous tradition and practice of this District Court, to grant Plaintiffs a hearing on the Motion to Remand and stay the transfer of this case to the MDL until this Court has reached a decision regarding remand.

Dated: March 20, 2008
Providence, Rhode Island

Respectfully Submitted,
The Plaintiffs,

By: /s/ Mark T. Boivin
**John E. Deaton, Esq. (#6537)**
jdeaton@deatonlawfirm.com
**Mark T. Boivin, Esq. (#7515)**
mboivin@deatonlawfirm.com
**Mason J. Waring, Esq. (#7737)**
mwaring@deatonlawfirm.com
The Deaton Law Firm
One Richmond Square, Suite 163W
Providence, Rhode Island 02906
(401) 351-6400 Tel.
(401) 351-6401 Fax

**CERTIFICATION OF SERVICE**

I hereby certify that on this 20th day of March 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system. Additionally, notice of this filing will be sent to all defendants via R.I. Asbestos Litigation Electronic Filing Service provided by Lexis Nexis.

/s/ Mark T. Boivin
Mark T. Boivin